**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BANDSPEED, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:10-CV-00215-TJW |
| ACER, INC., et al. | § | |
| | § | |
| | § | |
| Defendants. | § | |

<u>DEFENDANTS' MOTION TO DISMISS CLAIMS THREE THROUGH ELEVEN OF
BANDSPEED'S AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF</u>

US2008 2270660.12

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

SUMMARY OF ARGUMENT ............................................................................................. 2

BACKGROUND ................................................................................................................... 3

STANDARD ......................................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

    I.     Bandspeed Has Failed to Allege Sufficient Facts to State An
             Antitrust Conspiracy Claim. ................................................................... 7

    II.    Bandspeed Cannot State A Viable Antitrust Conspiracy Claim. ............................ 9

           A.     The Alleged Conduct On Which Bandspeed Bases Its
                   Antitrust Claims Enjoys *Noerr-Pennington* Immunity. ............................ 9

           B.     Any Antitrust Claim Attacking the 2001 Bluetooth SIG
                   License Would Be Time-Barred. .............................................................. 10

    III.   Bandspeed's Monopsonization and Attempted Monopsonization
             Claims Fail Because It Does Not Adequately Allege a Relevant
             Market and Market Power. ...................................................................... 12

           A.     Bandspeed Has Failed to Allege a Plausible Relevant
                   Market. ................................................................................................... 12

           B.     Bandspeed Fails to Plead the Requisite Market Power
                   Necessary for a Monopsonization or Attempted
                   Monopsonization Claim. ......................................................................... 14

    IV.   Bandspeed Has Not Sufficiently Alleged Any Antitrust Injury. .......................... 18

           A.     Allegations of Harm to Bandspeed Do Not Constitute
                   Antitrust Injury. ..................................................................................... 18

           B.     Bandspeed's Conclusory Allegations of Harm to
                   Competition Are Insufficient. ................................................................. 19

    V.    Bandspeed's Derivative State Law Claims and Claim for
             Injunctive Relief Should Also Be Dismissed. ........................................ 21

CONCLUSION ..................................................................................................................... 23

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*,
   Civ. A. No. H-09-0646, 2010 WL 565283 (S.D. Tex. Feb. 17, 2010)................................... 7, 8

*Ancar v. Sara Plasma, Inc.*,
   964 F.2d 465 (5th Cir. 1992)................................................................................... 15

*Apani Sw. Inc v. Coca-Cola Enters. Inc.*,
   300 F.3d 620 (5th Cir. 2002).......................................................................... 12, 15, 16

*Asahi Glass Co. v. Pentech Pharms., Inc.*,
   289 F. Supp. 2d 986 (N.D. Ill. 2003) ........................................................................ 6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................ 6

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990).............................................................................................. 20

*Bandspeed, Inc. v. Sony Elects, Inc. et al.*,
   Case No. A-09-CA-593-LY (W.D. Tex. Filed Aug. 7, 2009) ................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... passim

*Boston Scientific Corp. v. Schneider (Europe) AG*,
   983 F. Supp. 245 (D. Mass. 1997) ......................................................................... 21

*Broadcom Corp., v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007)..................................................................................... 5

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) .............................................................................................. 18

*Brunswick Corp. v. Riegel Textile Corp.*,
   752 F.2d 261 (7th Cir. 1984).................................................................................. 10

*Bryant v. Military Dep't*,
   597 F.3d 678 (5th Cir. 2010).................................................................................. 10

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) .............................................................................................. 10

## TABLE OF AUTHORITIES
(Continued)

*Campfield v. State Farm Mut. Auto Ins. Co.*,
  532 F.3d 1111 (10th Cir. 2008) ...................................................................... 13, 15

*CBC Cos. v. Equifax, Inc.*,
  561 F.3d 569 (6th Cir. 2009) ................................................................................ 20

*Decorative Ctr. of Houston v. Direct Response Publ'ns*,
  264 F. Supp. 2d 535 (S.D. Tex. 2003) .................................................................. 22

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds,* 525 U.S. 128 (1998) ....... 16

*Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*,
  732 F.2d 480 (5th Cir.1984) ............................................................................ 14, 16

*Edgenet, Inc. v. GS1 AISBL*,
  No. 09-CV-65, 2010 WL 3812798 (E.D. Wis. Sept. 27, 2010) ............................... 20

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
  547 F.3d 266 (5th Cir. 2008) .................................................................................. 8

*Heatransfer Corp. v. Volkswagenwerk, A. G.*,
  553 F.2d 964 (5th Cir.1977) .................................................................................. 12

*Hudgens v. Goen*,
  673 S.W.2d 420 (Tex. App. 1984) .......................................................................... 22

*Kinnett Dairies, Inc. v. Farrow*,
  580 F.2d 1260 (5th Cir. 1978) ................................................................................. 9

*Korea Kumho Petrochemical v. Flexsys Am.*,
  2007 WL 2318906 (N.D. Cal. 2007) ...................................................................... 20

*Little Caesar Enters., Inc. v. Smith*,
  34 F. Supp. 2d 459 (E.D. Mich. 1998) .................................................................. 14

*Little Rock Cardiology Clinic**, P.A. v. Baptist Health*,
  573 F. Supp. 2d 1125 (E.D. Ark. 2008) ................................................................ 13

*Los Cucos Mexican Café, Inc. v. Sanchez*,
  No. 13-05-578-CV, 2007 Tex. App. LEXIS 3408 (Tex. App. 2007) ....................... 22

*MacMillan Bloedel Ltd. v. Flintkote Co.*,
  760 F.2d 580 (5th Cir. 1985) .................................................................................. 6

## TABLE OF AUTHORITIES
(Continued)

*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) ........................................................................................ 18, 19

*Norwood v. Raytheon Co.*,
    501 F. Supp. 2d 836 (E.D.Tex. 2006) ............................................................................ 11

*Person v. Google, Inc.*,
    No. C 06-7297 JF (RS), 2007 WL 832941 (N.D. Cal. Mar. 16, 2007) ........................ 13

*Princo v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010) ..................................................................................... 14

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ........................................................................................................ 10

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
    615 F.3d 412 (5th Cir. 2010) ...................................................................... 12, 13, 14, 19

*Reading Int'l Inc. v. Oaktree Capital Mgmt. LLC*,
    317 F. Supp. 2d 301 (S.D.N.Y. 2003) .......................................................................... 16

*Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*,
    *802 F. Supp. 1544 (S.D. Tex 1991)* ............................................................................. 17

*RTLC AG Prods. V. Treatment Equip. Co.*,
    195 S.W.3d 824 (Tex. App. 2006) ................................................................................ 22

*Spectrofuge Corp. v. Beckman Instruments, Inc.*,
    575 F.2d 256 (5th Cir.1978) .......................................................................................... 12

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ...................................................................................................... 15

*Sports Ctr., Inc. v. Riddell, Inc.*,
    673 F.2d 786 (5th Cir. 1982) ......................................................................................... 14

*Sunshine Cellular v. Vanguard Cellular Sys., Inc.*,
    810 F. Supp. 486 (S.D.N.Y. 1992) ............................................................................... 15

*T & T Geotechnical, Inc. v. Union Pac. Res. Co.*,
    944 F. Supp. 1317 (N.D. Tex. 1996) ............................................................................ 12

*Taylor Publ'g Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) .................................................................................... 21, 22

iv

# TABLE OF AUTHORITIES

(Continued)

*TCA Bldg. Co. v. Nw. Res. Co.*,
  861 F. Supp. 1366 (S.D. Tex. 1994) ....................................................................... 11

*Texas v. Allan Constr. Co.,*
  851 F.2d 1526 (5th Cir. 1988).................................................................................. 10

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
  549 U.S. 312 (2007)................................................................................................. 15

**Statutes**

15 U.S.C. § 15b............................................................................................................ 10

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................... 11

**Other Authorities**

Joseph Farrell *et al.*, *Standard Setting, Patents and Hold-up*, 74 Antitrust L. J. 603
  (2007) ....................................................................................................................... 21

U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidelines for the
  Licensing of Intellectual Property* § 5.5 (1995) ...................................................... 21

Defendants Motorola Solutions, Inc., f/k/a Motorola, Inc.[1] ("Motorola"), Belkin International and Belkin, Inc. ("Belkin"), GN Netcom A/S and GN U.S., Inc. ("GN Netcom"), and Kyocera International Inc. and Kyocera Communications, Inc. ("Kyocera") (collectively, "Moving Defendants"), respectfully move to dismiss Claims Three through Eleven of Bandspeed, Inc.'s ("Bandspeed") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule CV-7 on the following grounds:

(1) Bandspeed's antitrust conspiracy claims (claims Three, Four, and Five) under sections 1 and 2 of the Sherman Act fail to state a claim for conspiracy because it has not alleged an agreement between or among Moving Defendants, only actions that are as consistent with independent, legitimate activities as with an alleged conspiracy;

(2) Bandspeed's monopsonization and attempted monopsonization claims under section 2 of the Sherman Act (claims Six and Seven, which allege the maintenance or acquisition of a monopoly on the buyer side of a market) fail to state a claim because the Amended Complaint fails to allege facts necessary either to identify a plausible relevant market or to describe circumstances in which Defendants Motorola or Bluetooth SIG, singled out in claims Six and Seven, could be considered to have the requisite market power needed for such claims;

(3) All of Bandspeed's antitrust claims (claims Three through Seven) are all deficient as a matter of law for failure to adequately plead antitrust injury; and

(4) Bandspeed's claims of unfair competition (Eighth Claim), conspiracy (Ninth Claim), and unjust enrichment (Tenth Claim), as well as its claim for injunctive relief (Eleventh Claim) are derivative of its antitrust allegations and are therefore similarly deficient as a matter of law.

---

[1] On January 4, 2011, Motorola, Inc. underwent a corporate name change, and is now Motorola Solutions, Inc. The entity that now sells the accused products identified in Plaintiff's First Amended Complaint is Motorola Mobility, Inc. ("Motorola Mobility"), which is not a party to this lawsuit.

US2008 2270660.12

## SUMMARY OF ARGUMENT

In an Amended Complaint filed after many of the Defendants filed a Motion to Transfer, Bandspeed attempts to add a complicated and far-reaching series of antitrust claims based solely on Moving Defendants' response to its original patent claims.  Bandspeed, however, has not pled and cannot adequately plead facts necessary to state any viable antitrust claim.

First, Bandspeed's antitrust conspiracy claims simply lack any allegations from which one could plausibly infer any agreement or understanding among Moving Defendants – a necessary prerequisite to any conspiracy claim.  Bandspeed bases its antitrust conspiracy claims on Moving Defendants' efforts in this lawsuit to enforce a 2001 license agreement against Bandspeed that, according to Bandspeed, does not require it to license its patents to Moving Defendants.  Thus, Bandspeed's conspiracy theory hinges on Moving Defendants' recent assertions in this lawsuit that they each hold royalty-free licenses to Bandspeed's patents.  Bandspeed neglects to allege any facts that would tend to show that Moving Defendants agreed or coordinated in raising these recent assertions, which dooms its conspiracy claims.

Indeed, Bandspeed's conspiracy claims are between a proverbial rock and a hard place. Its present allegations lack the factual details necessary to state a conspiracy claim under the pleading standards enunciated by the Supreme Court in *Twombly*.  Bandspeed cannot afford to plead more detailed circumstances surrounding Moving Defendants' license assertions, however, because it would then have to specify that Defendants raised these assertions as counterclaims and defenses in this action, making this conduct immune from antitrust scrutiny under the *Noerr-Pennington* doctrine.  Nor can Bandspeed find refuge for its conspiracy claims in pointing to the 2001 license as the allegedly operative antitrust agreement.  Any efforts to do so would fail given the applicable four-year statute of limitations.  In short, no matter which way Bandspeed turns, its antitrust conspiracy claims necessarily fail as a matter of law.

2

Second, Bandspeed's remaining antitrust claims similarly fail given deficiencies in pleading essential elements. For instance, Bandspeed's monopsonization and attempted monopsonization claims under Sherman Act section 2 (Claims Six and Seven) require, among other things, allegations sufficient to identify a plausible relevant market within which Defendants Motorola and Bluetooth SIG possess market power. But Bandspeed alleges entirely implausible relevant markets, either encompassing non-competing products on the one hand or excluding competing products on the other hand. In addition, based on the allegations in the Amended Complaint, Bluetooth SIG and Motorola cannot possibly have market power in the alleged relevant markets. Bluetooth SIG, according to Bandspeed's allegations, does not even compete in the alleged markets. And to the extent that Motorola may compete, it does so against a relatively crowded field thereby negating any relevant purported market power.

Third, Bandspeed also has not sufficiently alleged antitrust injury, and thus all of its antitrust counts necessarily fail to state a claim. Although antitrust injury is an essential element of its claims and requires allegations of not only harm to Bandspeed but also harm to competition generally, Bandspeed only alleges harm to itself. Moreover, competition would not suffer any harm from the conduct Bandspeed alleges. In fact, the alleged conduct would benefit competition in that more, not less, technology would be more readily available in the marketplace. Lacking antitrust injury, all of Bandspeed's antitrust claims fail as a matter of law.

The above deficiencies in Bandspeed's antitrust claims also doom Bandspeed's derivative state law and other claims for unfair competition, conspiracy, unjust enrichment, and injunctive relief, and those claims should be dismissed as a matter of law as well.

## BACKGROUND

Bandspeed's Amended Complaint asserts claims against Moving Defendants pursuant to sections 1 and 2 of the Sherman Act. Specifically, Bandspeed claims that Moving Defendants

have engaged in a conspiracy to boycott Bandspeed's licensing of Patent Nos. 7,027,418 ("the '418 patent") and 7,570,614 ("the '614 patent") and to fix the price for licenses to these patents at zero in violation of section 1 of the Sherman Act.  Amend. Compl. ¶¶ 123, 125.  Additionally, Bandspeed claims that these Defendants violated section 2 of the Sherman Act by conspiring to monopsonize the market for Bluetooth technology, and that Motorola and Bluetooth SIG have monopsonized or attempted to monopsonize the market for patent licenses to Bluetooth technology.  *Id.* at ¶¶ 131, 136, 139.   Essentially, Bandspeed's claims reduce to an allegation that Defendants have conspired to fix the prices that they pay for patent licenses by asserting that Bandspeed must grant them royalty-free licenses to Bandspeed's Bluetooth technology.

Bandspeed, along with many of the Defendants, was a member of Bluetooth SIG, a standard-setting organization ("SSO") dedicated to developing industry standards for Bluetooth technology.  *Id.* at ¶ 85.  Bluetooth is a short range wireless connectivity standard used in a variety of devices, including personal computers, GPS units, and cellular telephones.  Bandspeed alleges that all members of Bluetooth SIG, including Bandspeed, were required to accept and agree to the terms of the Bluetooth SIG License Agreement.  *Id.* at ¶ 89.  Bandspeed joined Bluetooth SIG and entered into the Bluetooth SIG License Agreement in or around September 2001 ("Bluetooth SIG License").  *Id.* at ¶ 94.  Indeed, Bandspeed joined Bluetooth SIG in 2001 in reliance on the terms set out in the Bluetooth SIG License.  *Id.*  The terms of the Bluetooth SIG License, among other things, allegedly:

> force . . . a company seeking to offer Bluetooth products and/or services to grant a <u>royalty-free</u> license to [all] other Members of Bluetooth SIG to claims in the company's issued patents and pending patent applications that are 'necessary' to practice any final Bluetooth Specifications that are adopted by the Bluetooth SIG . . . .

US2008 2270660.12

*Id.* at ¶ 90.  Such agreements are common in SSOs, as they prevent participants from engaging in what is known as a "patent holdup" – *i.e.*, a practice whereby a patentee negotiates to have its technology become part of an industry standard, then refuses to license its patents on reasonable terms or at all.  *Broadcom Corp., v. Qualcomm Inc.*, 501 F.3d 297, 313 (3d Cir. 2007).

After participating in Bluetooth SIG's standard-setting activities for roughly fifteen months, Bandspeed alleges that it withdrew in or around December 2002.  Amend. Compl. ¶ 95. The Bluetooth Specification on which Bandspeed worked, Version 1.2, issued on November 3, 2003.  *Id.* at ¶ 96.  This Specification allegedly incorporated technology covered in Bandspeed's patents.  *Id.*  By allegedly withdrawing from Bluetooth SIG (a fact that Defendants dispute), Bandspeed claims that it avoided any agreement regarding its licensing obligations to the other SSO members and, therefore, that no such licensing obligation now exists or ever arose.  *Id.*

In 2010, Bandspeed filed suit for infringement of the '418 and '614 patents against Defendants, all of which are Bluetooth SIG members and make products that use Bluetooth technology.  *Id.* at ¶ 98.  In their Answers to Bandspeed's suit, Moving Defendants each asserted defenses and counterclaims based on claims that Bandspeed had previously granted them licenses to the patents-in-suit on a royalty-free basis in the Bluetooth SIG License.  *Id.* at ¶ 99; *see also* ECF No. 168, ¶ 95; ECF No. 177, ¶¶ 21-24; ECF. No. 300, ¶¶ 123-32; ECF No. 301, ¶¶121-130.  Bandspeed then amended its complaint to add Bluetooth SIG as a defendant and to assert the antitrust counterclaims addressed herein.[2]

---

[2] Before filing this action, Bandspeed filed an action alleging infringement of the same patents in the Western District of Texas against other defendants (the "Western District action"), and several of those defendants previously raised the same license-based defenses in that matter that Bandspeed complains of here.  *Bandspeed, Inc. v. Sony Elects., Inc.*, Case No. A-09-CA-593-LY (W.D. Tex. filed Aug. 7, 2009). However, Bandspeed has not asserted similar antitrust claims against the defendants who did so in the Western District action.  Moreover, Bandspeed never sought to raise such claims here until after Defendants filed a Motion to Transfer.  The Court may take judicial

Bandspeed does not allege that Moving Defendants reached any agreement or even coordinated with each other in raising their defenses and counterclaims in 2010. *Id*. at ¶ 98-99. And Bandspeed's Amended Complaint provides no facts whatsoever regarding the circumstances surrounding Moving Defendants' assertions that they each possess licenses to the patents-in-suit. *See id.* At most, therefore, Bandspeed has merely alleged parallel conduct among the Moving Defendants in asserting rights under the Bluetooth SIG License as a defense to Bandspeed's patent infringement action.

## STANDARD

To state a claim adequate to survive a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the ASSUMPTION THAT ALL THE allegations in the complaint are true. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted, emphasis in original).

All claims must be pled with sufficient factual detail to state a claim that is not merely possible, but plausible. *Id.* at 570. This is particularly true when considering a patent-related antitrust case, given the high cost and burdens imposed by discovery in those cases. *Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (holding that "some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

---

notice of these relevant facts regarding the Western District action in considering this motion. *MacMillan Bloedel Ltd. v. Flintkote Co.* 760 F.2d 580, 587 (5th Cir. 1985).

US2008 2270660.12

## ARGUMENT

**I.      Bandspeed Has Failed to Allege Sufficient Facts to State An Antitrust Conspiracy Claim.**

To state an antitrust conspiracy claim under either section 1 or section 2 of the Sherman Act, Bandspeed must allege facts from which one could reasonably infer that the defendants entered into an illegal agreement.  *See Twombly,* 550 U.S. at 555-56; *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, Civ. A. No. H-09-0646, 2010 WL 565283, at *6 (S.D. Tex. Feb. 17, 2010).  Indeed, to plead an antitrust conspiracy, the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly,* 550 U.S. at 556.  Mere "labels and conclusions" will not suffice.  *Id.* at 555-56.  And simply alleging parallel conduct among the defendants coupled with bare assertions of conspiracy likewise fails to provide the factual content necessary to state a conspiracy claim.  *Id.* at 556-57; *Am. Surgical Assistants, Inc.*, 2010 WL 565283, at *6.

Bandspeed does not and cannot plead an agreement as required by *Twombly*.  In fact, Bandspeed claims that no agreement to license arose from the Bluetooth SIG License.  Amend. Compl. ¶¶ 92-97.  As such, it concedes the absence of any agreement between and among Moving Defendants on the allegedly illicit subject at least for the time period from 2001 until when it filed suit.  Even with regard to the post-suit time period, Bandspeed's Amended Complaint lacks any allegations that suggest Moving Defendants reached any agreement regarding efforts either to assert that Bandspeed has or is required to license Moving Defendants or to refuse to deal with Bandspeed regarding licensing.

Rather, Bandspeed rests its vague conspiracy theory on allegations that, in 2010, each of the Moving Defendants separately asserted that they had each obtained a license to the patents-in-suit through the 2001 Bluetooth SIG License.  *Id.* at ¶¶ 98-99.  But the Amended Complaint

does not allege in any way, shape, or form that Moving Defendants came to any meeting of the minds, *i.e.*, reached an agreement, with respect to raising these assertions, as opposed to deciding independently and in parallel to raise these allegations, just as other parties had done previously in Bandspeed's Western District action.

Courts have made plain that factual allegations merely describing parallel conduct fail to adequately plead an antitrust conspiracy claim. *Twombly*, 550 U.S. at 556; *Am. Surgical Assistants, Inc.*, 2010 WL 565283, at *6; *see also Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) (parallel conduct cannot establish antitrust conspiracy). This follows from the rule that an illegal agreement cannot be inferred from acts as consistent with legitimate, unilateral conduct as with illegal conspiracy. *Twombly*, 550 U.S. at 556-67. For parallel conduct to raise an inference of conspiracy, the circumstances must show, among other things, that in the absence of a conspiracy, the conduct at issue would have been against the individual defendants' economic interests. *Id.*

Here, the circumstances Bandspeed alleges do not suggest that, in the absence of a conspiracy, it would have been contrary to any of the Moving Defendant's individual interests to claim that Bandspeed had granted a royalty-free license to the patents-in-suit. In fact, this is precisely what any company who believed it had a license would do in defending against an infringement suit, and is precisely what certain parties to the Western District action did previously without Bandspeed having accused them of antitrust violations by doing so. Accordingly, the allegations concerning Defendants' 2010 licensing assertions fail to provide a sufficient basis from which to infer a conspiracy.

US2008 2270660.12

The Amended Complaint fails to state an antitrust conspiracy claim and, therefore, the antitrust conspiracy claims, *i.e.*, the Third Claim for Price Fixing, the Fourth Claim for Group Boycott, and the Fifth Claim for Conspiracy to Monopsonize, should be dismissed.

## II.    Bandspeed Cannot State A Viable Antitrust Conspiracy Claim.

Moreover, Bandspeed is unable to amend to provide more details about its vague antitrust conspiracy claims.  If Bandspeed were to allege the factual circumstances surrounding the Defendants' 2010 licensing assertions, it would become clear that Moving Defendants' conduct enjoys antitrust immunity under the *Noerr-Pennington* doctrine, which covers any conduct reasonably related to efforts to petition a government entity.  Alternatively, if Bandspeed were to point to the 2001 Bluetooth License as the allegedly anticompetitive agreement, its claim would be barred by the four-year statute of limitations governing private antitrust claims.

### A.    The Alleged Conduct On Which Bandspeed Bases Its Antitrust Claims Enjoys *Noerr-Pennington* Immunity.

As noted above, Moving Defendants have asserted in their Answers in this action defenses and counterclaims seeking a declaratory judgment that Bandspeed granted them royalty-free licenses to the patents-in-suit under the 2001 Bluetooth SIG License.[3]  ECF No. 168, ¶ 95; ECF No. 177, ¶¶ 21-24; ECF. No. 300, ¶¶ 123-32; ECF No. 301, ¶¶121-130.  Even if Bandspeed were to amend its complaint to allege facts suggesting that Moving Defendants agreed to coordinate their efforts regarding such counterclaims, Bandspeed could not assert an antitrust challenge to any such conduct.  Under the *Noerr-Pennington* doctrine, conduct undertaken in an effort to petition a government body, including a court, cannot be subject to

---

[3] The Court may take judicial notice of the fact that Moving Defendants have raised these assertions as Counterclaims in this litigation and may consider this fact in deciding this Motion to Dismiss.  *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) (permitting judicial notice of a court's own records).

challenge under the antitrust laws.  *See Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S.
508 (1972); *Bryant v. Military Dep't,* 597 F.3d 678, 690 (5th Cir. 2010).  *Noerr-Pennington*
immunity extends to conduct undertaken in litigating a defense to a patent infringement action.
*See Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 272 (7th Cir. 1984); *see also Prof'l
Real Estate Investors, Inc. v. Columbia Pictures Indus.*, *Inc.,* 508 U.S. 49, 56 (1993) (prosecution
of a litigation is covered by *Noerr-Pennington*).

In an attempt to avoid the *Noerr-Pennington* buzzsaw, Bandspeed provides no details
whatsoever about the circumstances surrounding Moving Defendants' assertions, except to
suggest that the assertions were raised in response to Bandspeed's patent suit.  Amend.
Compl.¶ 98.  But if Bandspeed were to plead the factual context Moving the Defendants' 2010
assertions, it would be evident that those assertions were made as claims and defenses in
connection with this litigation and therefore would be immune under *Noerr-Pennington*.  By
alleging no facts whatsoever about the 2010 assertions to avoid *Noerr-Pennington* problems,
Bandspeed creates another equally insurmountable problem – it has failed to allege sufficient
facts regarding its conspiracy claims, subjecting those claims to dismissal under *Twombly*, as
discussed above.

**B.      Any Antitrust Claim Attacking the 2001 Bluetooth SIG License Would Be
          Time-Barred.**

Bandspeed also cannot allege that Defendants conspired in 2001 to force Bandspeed to
grant other Bluetooth SIG members' licenses to its technology through the Bluetooth SIG
License, because any conspiracy claim based on such allegations would be time-barred under the
four-year statute of limitations which applies to all private antitrust claims.  15 U.S.C. § 15b;
*Tex. v. Allan Constr. Co.,* 851 F.2d 1526, 1528 (5th Cir. 1988).  Moving Defendants' efforts to
enforce this contract occurred in 2010 do not start the limitations period running anew because

US2008 2270660.12

10

such efforts to enforce the license are merely "the abatable but unabated inertial consequences of some pre-limitations action," as opposed to "some injurious act actually occurring during the limitations period." *TCA Bldg. Co. v. Nw. Res. Co.*, 861 F. Supp. 1366, 1377-78 (S.D. Tex. 1994) (citing and quoting cases). Thus, if Moving Defendants' license defenses and counterclaims succeed (and even if such defenses and counterclaims could be challenged under the antitrust laws), Bandspeed could not avoid the four-year statute of limitations by alleging that the Bluetooth SIG License entered in 2001 is the antitrust conspiracy of which it complains.

Bandspeed suggests that Defendants in some unspecified way have "actively concealed their fraudulent and anticompetitive intent." Amend. Compl. ¶ 103. To the extent that Bandspeed means to suggest by this allegation that it somehow can avoid the four-year statute of limitations, any such argument would fail. Bandspeed makes no specific allegations regarding how exactly Defendants allegedly actively concealed or engaged in any fraudulent conduct. The Amended Complaint merely alleges in a conclusory manner that this is so. *Id.* As with all types of fraud, however, fraudulent concealment allegations sufficient to circumvent the statute of limitations must meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b) ("[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); *Norwood v. Raytheon Co.*, 501 F. Supp. 2d 836, 838-39 (E.D. Tex. 2006). Moreover, Bandspeed cannot plausibly contend that any relevant information has been in any way withheld or concealed from it. Indeed, Bandspeed itself knew of and agreed to enter into the Bluetooth SIG License when it joined the SIG in 2001. Amend. Compl. ¶ 94. It thus can hardly allege that the existence or terms of the Bluetooth SIG License were concealed from it.

US2008 2270660.12

Accordingly, any attempt by Bandspeed to assert an antitrust challenge to the Bluetooth SIG License would fail as a matter of law because Bandspeed failed to file suit within the applicable four-year statute of limitations.

### III. Bandspeed's Monopsonization and Attempted Monopsonization Claims Fail Because It Does Not Adequately Allege a Relevant Market and Market Power.

Bandspeed also fails to allege certain other facts needed to state a claim under section 2 of the Sherman Act, as it seeks to do with respect to Moving Defendants Motorola and Bluetooth SIG in Claims Six and Seven.  Specifically, to state a claim under section 2 of the Sherman Act, Bandspeed must sufficiently plead both: (1) the contours of the relevant antitrust market within which the alleged violation occurs; and (2) the requisite degree of market power held by the alleged monopsonist or would-be monopsonist.  *See Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 276 (5th Cir. 1978).  Bandspeed does neither.

### A. Bandspeed Has Failed to Allege a Plausible Relevant Market.

If an antitrust complaint does not allege sufficient facts to support the plaintiff's proposed market definition, or if that market definition is implausible on its face, the complaint should be dismissed.  *See PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010); *Apani Sw. Inc v. Coca-Cola Enters. Inc.*, 300 F.3d 620 (5th Cir. 2002).  To be plausible, a relevant market must "encompass all interchangeable substitute products."[4]  *Apani,* 300 F.3d at 628.  To put it another way, the relevant market must include the group of sellers or purchasers who have the "actual or potential ability to deprive each other of significant levels of business." *T & T Geotechnical, Inc. v. Union Pac. Res. Co.*, 944 F. Supp. 1317, 1323 (N.D. Tex. 1996).

---

[4] As with a proposed relevant market, an alleged submarket must encompass all reasonably interchangeable substitutes.  *PSKS*, 615 F.3d at 418 n.2.  Generally, "[t]he boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Heatransfer Corp. v. Volkswagenwerk, A. G.,* 553 F.2d 964, 980 (5th Cir. 1977).

Courts should reject allegations proposing obviously overly broad or unduly narrow relevant markets and should dismiss any antitrust claims dependent on such defective market allegations. *See, e.g.*, *Apani,* 300 F.3d at 628; *Little Rock Cardiology Clinic**, P.A. v. Baptist Health,* 573 F. Supp. 2d 1125, 1144 (E.D. Ark. 2008); *Person v. Google, Inc.*, No. C 06-7297 JF (RS), 2007 WL 832941, at *4 (N.D. Cal. Mar. 16, 2007).

Bandspeed alleges a relevant technology market for patent licenses to Bluetooth wireless communication technology.  Amend. Compl. ¶ 83.  According to the Amended Complaint, a distinct submarket for licenses to Bandspeed's patents-in-suit exists within the broader relevant technology market.[5]  Neither the proposed relevant market nor the proposed relevant submarket makes economic sense, and both fail to adhere to the applicable rules for pleading plausible relevant markets and therefore are insufficient as a matter of law.

Bandspeed's proposed relevant technology market would cover all technologies or perhaps all patents relating to Bluetooth communications.  Common sense dictates that not all products in this proposed market could possibly be considered substitutes for each other.  Indeed, given the breadth of the alleged market, Amend. Compl. ¶ 86, it is a certainty that most technologies in such a broad market would not be interchangeable with most other technologies grouped into this illogical market construct.  This proposed relevant market is therefore implausible on its face and deficient as a matter of law.[6]  *PSKS,* 615 F.3d at 418.

---

[5] Although Bandspeed alleges a relevant Bluetooth technology market and submarket, its antitrust counts discuss not just these alleged markets, but also a purchase market for licenses to such technology.  *See, e.g.* Amend. Compl. ¶¶ 124, 126, 129, and 131. As a general matter, purchase markets differ from product markets in that they are defined from the perspective of sellers, not consumers.  *See, e.g. Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008).  As discussed *infra* regarding market power, even if Bandspeed meant to allege violations in a relevant purchase market, its antitrust claims would still fail.

[6] While Bandspeed alleges an overly broad relevant market, that proposed market may at the same time be unduly narrow.  For instance, Bandspeed limits the proposed markets to only patented technologies.  But non-patented

13

As with its alleged relevant market, Bandspeed alleges an implausible relevant submarket.  Bandspeed alleges a relevant submarket limited to the '418 and '614 patents.  In alleging this relevant submarket, Bandspeed seeks to advance a single-brand market for its technology, and only its technology.  Courts, however, have generally declined to accept single-brand markets as relevant markets for antitrust purposes and reject such market allegations even at the motion to dismiss stage.  *See, e.g.*, *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 487-88 (5th Cir. 1984); *PSKS,* 615 F.3d at 418; *Little Caesar Enters., Inc. v. Smith,* 34 F. Supp. 2d 459, 477 n. 30 (E.D. Mich. 1998) (collecting cases).  Because Bandspeed has failed to allege any facts suggesting that, based on reasonable interchangeability of use, its proposed single-brand relevant submarket is plausible, the submarket allegations also fail as a matter of law. *PSKS*, 615 F.3d at 418.

Bandspeed cannot state any viable antitrust claim under Section 2 of the Sherman Act without adequately pleading a viable relevant market.[7]  It has failed to do so.  Accordingly, its Claims Six and Seven should be dismissed.

**B.      Bandspeed Fails to Plead the Requisite Market Power Necessary for a Monopsonization or Attempted Monopsonization Claim.**

Moreover, to state a claim under section 2, Bandspeed also must, but has not and cannot, adequately plead another required element, namely market power.  Monopsonization is the mirror image of monopolization (*i.e.*, from the buyer's rather than the seller's side) and, therefore, the same legal standards that apply to monopolization claims also apply to

---

technologies in the public domain may be viewed as reasonably interchangeable with some patented Bluetooth technologies.

[7] Stating a "rule of reason" claim under section 1 of the Sherman Act also requires properly pleading a relevant market.  *Sports Ctr., Inc. v. Riddell, Inc.,* 673 F.2d 786, 790-91 (5th Cir. 1982).  Bandspeed's section 1 claims are governed by the rule of reason not the *per se* rule.  *Princo v. ITC,* 616 F.3d 1318, 1336 (Fed. Cir. 2010) (conduct reasonably ancillary to legitimate standards-setting activities are judged under the rule of reason).  This provides additional grounds for dismissing Bandspeed's  section 1 claims, *i.e.*, Claims Three and Four.

US2008 2270660.12

monopsonization claims, although in the inverse. *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 323 (2007). Under section 2, an antitrust plaintiff must allege that the defendant possesses a heightened degree of market power – *i.e.,* monopoly power for a monopolization claim and a dangerous probability of obtaining monopoly power for an attempted monopolization claim, or monopsony power for a monopsonization claim and a dangerous probability of obtaining monopsony power for an attempted monopsonization claim. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 469 (5th Cir. 1992); *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 493-94 (S.D.N.Y. 1992).

Bandspeed's monopsonization and attempted monopsonization claims fail as a matter of law for the additional reason that Bandspeed has not and cannot plead that Defendants Motorola or Bluetooth SIG have the requisite market power in any plausible relevant market. For purposes of these claims, Bandspeed's allegations seem to suggest that the purported violations arose in some alleged purchase market for either Bluetooth technology or perhaps the patents-in-suit. Amend. Compl. ¶¶ 135, 139.

As a preliminary matter, however, a plaintiff cannot adequately plead market power for a section 2 case without sufficiently pleading a plausible relevant market, which Bandspeed has failed to do with respect to the alleged technology market and submarket. *See supra* Section III.A.1. Moreover, Bandspeed has failed as a matter of law to allege a plausible purchase market because it has failed to allege any market boundaries drawn by reference to the rule of reasonable interchangeability of purchasers. *See Apani*, 300 F.3d at 628; *Campfield*, 532 F.3d at 1118. Indeed, it provides no allegations whatsoever that suggest what the total universe of companies may be that license or allegedly need to license the technology at issue. And thus there is no way

15

of knowing all of the alternative buyers that may be available to Bandspeed, and other Bluetooth

technology licensors, to which they may sell their technologies.  As such, Bandspeed's market

power arguments must fail because its alleged relevant market definition necessarily fails.

*Domed Stadium Hotel*, 732 F.2d at 487.

Furthermore, Defendant Bluetooth SIG cannot have any market power in the alleged

purchase markets.  Indeed, it does not buy anything in these markets.  By Bandspeed's own

admission, Bluetooth SIG does not manufacture or sell Bluetooth-enabled products, and

therefore it is not a participant in any alleged market for the purchase of Bluetooth technologies,

which are merely inputs needed to make Bluetooth products.  Amend. Compl. ¶ 85.  It is

impossible for Bluetooth SIG to monopsonize or attempt to monopsonize a market in which it

does not compete.  *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996), *vacated on*

*other grounds,* 525 U.S. 128 (1998); *Reading Int'l Inc. v. Oaktree Capital Mgmt. LLC*, 317 F.

Supp. 2d 301, 324 (S.D.N.Y. 2003).

With regard to Motorola, Bandspeed also fails to plead sufficient facts from which one

could reasonably infer either monopsony power or something dangerously close.  The Amended

Complaint contains nothing more than conclusory allegations that Motorola has monopsony

power or something dangerously close.  Amend. Compl. ¶¶ 135, 140.  Obviously, conclusory

allegations such as these will not suffice.  *Twombly*, 550 U.S. at 561.  An antitrust plaintiff

cannot properly plead the market power element for a section 2 claim without alleging, among

other things, facts sufficient to show that the defendant has a dominant market share.  *Apani*, 300

F.3d at 633.  Indeed, a plaintiff alleging monopolization in the Fifth Circuit must allege facts

sufficient to show that the defendant has greater than a 50% market share.  *See, e.g.*, *Rockbit*

16

*Indus. U.S.A., Inc. v. Baker Hughes, Inc.,* 802 F. Supp. 1544, 1551 (S.D. Tex 1991). Bandspeed has failed to make any such allegations with respect to Motorola.

In fact, Bandspeed's allegations make clear that Motorola cannot and does not have a dominant share in any possible purchase market for licenses to Bluetooth technology or to the patents-in-suit. Any effort by Bandspeed to suggest a relevant purchase market limited to Motorola would have to be considered economically implausible. Bandspeed has admitted that other companies have purchased licenses to its patents. *See* Amend. Compl. ¶ 96 n.1. And Bandspeed has alleged that, in addition to Motorola, many more companies identified in the Amended Complaint use Bandspeed's technologies and are therefore sources for potential sales of licenses. *Id*. at ¶¶ 110-114. Bandspeed has sued other Bluetooth product manufacturers for infringement of the patents-in-suit in the Western District of Texas, and these defendants also would have to be considered competitors of Motorola in any relevant purchase market.

In fact, Bandspeed suggests that any relevant purchase market likely is exceedingly large, given its allegation that "[t]here are over three billion Bluetooth devices in the marketplace … [m]ore than eight new Bluetooth enabled products are qualified every working day and more than 30 million Bluetooth units are shipping per week." *Id*. at ¶ 86. Moreover, Bandspeed itself alleges that the patents-in-suit concern not just Bluetooth wireless communications, but also wireless communications in general. *Id*. at ¶ 82. According to Bandspeed, therefore, its technologies would have applications beyond Bluetooth devices. Given these allegations, any plausible relevant purchase market also would have to include those companies who would purchase or may purchase licenses to Bandspeed's patents for non-Bluetooth wireless communication applications, so as to encompass all the alternative purchasers to whom Bandspeed could sell its technologies. In short, it seems highly likely that hundreds, if not

US2008 2270660.12

thousands, of companies compete in the type of purchase market suggested by Bandspeed's allegations.

Therefore, because Bandspeed has failed to allege facts from which one could infer that Motorola or Bluetooth SIG have the requisite degree of market power in any relevant purchase market (or any other relevant markets), or anything dangerously close to it, the monopsonization and attempted monopsonization claims under Sherman Act section 2 are deficient as a matter of law and should be dismissed.

**IV.     Bandspeed Has Not Sufficiently Alleged Any Antitrust Injury.**

All of Bandspeed's antitrust claims (Third through Seventh Claims) should further be dismissed because Bandspeed has failed to allege that it suffered antitrust injury—an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Bandspeed's Amended Complaint spells out the harm that it allegedly suffered as a result of Moving Defendants' purported misuse of its patented technology; however, to establish antitrust injury, Bandspeed must show that the allegedly illegal conduct not only caused Bandspeed to suffer an injury to its business or property, but also harmed competition generally in the marketplace, both resulting from the alleged anticompetitive conduct. *See Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007). Bandspeed's Amended Complaint fails to allege the requisite competitive harm necessary to support a showing of antitrust injury.

**A.     Allegations of Harm to Bandspeed Do Not Constitute Antitrust Injury.**

Bandspeed alleges that Moving Defendants' refusal to pay royalties for its patents "greatly harmed Bandspeed," causing it to "los[e] substantial revenues, profits, and the value of its business." Amend. Compl. ¶¶ 104-05. Bandspeed thus complains that the *inclusion* of its technology into the Bluetooth standard has caused it an injury, and it seeks to assert the antitrust

18

laws to redress that perceived harm.  But it is axiomatic that the antitrust laws are designed to protect *competition*, not *competitors*.  *PSKS*, 615 F.3d at 419.  To survive a motion to dismiss, Bandspeed must plead that the harm it suffered flows from the anticompetitive nature of Moving Defendants' conduct.  *Norris,* 500 F.3d at 464.  Bandspeed has not done so, and mere allegations of harm to Bandspeed are insufficient to properly allege a claim.

### B.     Bandspeed's Conclusory Allegations of Harm to Competition Are Insufficient.

Bandspeed's Amended Complaint similarly fails to allege the necessary harm to competition, and Bandspeed cannot allege any such harm.  The Complaint is couched in terms of Moving Defendants' purportedly "grievous" injury to competition, Amend. Compl. ¶ 104, and sprinkled with antitrust buzzwords, including claims that Defendants "harmed competition and consumers," "excluded competitors from the market," "reduc[ed] the incentive or firms… to engage in research and development," and "raising barriers to entry." *Id*. at ¶¶ 107-109.  The Complaint, however, lacks factual support for these sweeping and conclusory allegations of harm to competition.  As addressed in detail above in Section I, *Twombly* and its Fifth Circuit progeny have made plain that plaintiffs must plead sufficient facts to support their claims, not merely recite vague and conclusory allegations.  *See also Norris*, 500 F.3d at 464 (quoting *Twombly*, 550 U.S. 544 (2007)).  In this respect, Bandspeed's Amended Complaint is fatally flawed.

Bandspeed's allegations about competitive harm merely assert *legal* conclusions unsupported by any *factual* allegations.  Without supporting factual allegations, inclusion of formulaic references to harm to competition cannot push the allegations in Bandspeed's Amended Complaint across the line from speculative to plausible.  As another district court recently concluded in a case involving similar claims brought by a plaintiff who alleged that its proprietary information was misappropriated in a standards-setting process:

allegations of *reduced competition, reduced innovation, reduced consumer choice,* and *lack of lower prices* are also insufficient to establish plausible antitrust injury.  Alleging reduced competition is little more than a hidden legal conclusion alleging anti-competitive conduct.  Alleging that lower prices will not occur is not the same as plausibly claiming that consumer prices will be raised.   Alleging reduced innovation as a result of defendants' conduct does not create an inference of raised consumer prices or reduced output.

*Edgenet, Inc. v. GS1 AISBL*, No. 09-CV-65, 2010 WL 3812798, at *7 (E.D. Wis. Sept. 27, 2010) (emphasis added); *see also CBC Cos. v. Equifax, Inc*., 561 F.3d 569, 572 (6th Cir. 2009); *Korea Kumho Petrochemical v. Flexsys Am.*, No. C07-01057, 2007 WL 2318906, at *3 n.3 (N.D. Cal. Aug. 13, 2007).  Here, as in *Edgenet*, Bandspeed has failed to plead the requisite factual support for its claims of reduced competition and innovation.

Moreover, inasmuch as the antitrust laws are aimed at protecting consumer welfare, whether conduct harms competition must be evaluated from the consumer's perspective.  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 336-37 (1990)  But Bandspeed's allegations do not suggest in the least that the alleged conduct in question has caused any harm to competition, from the consumer's perspective or otherwise.  To the contrary, the alleged conduct of licensing patents in the standards-setting context would allow for greater, not less, dissemination of technologies at lower costs, which benefits competition and consumers.  *Edgenet*, 2010 WL 3812798, at *7.  Bandspeed cannot seriously contend that Moving Defendants' conduct has had any negative effect on competition,[8] such as allegedly limiting

---

[8] Bandspeed tries to suggest that Bluetooth SIG members are forced to grant licenses to all other members without receiving any compensation for their intellectual property rights.  Amend. Compl. ¶ 90.  But Bandspeed's own allegations refute this suggestion.  Indeed, as Bandspeed alleges, all participants in the Bluetooth SIG standard-setting process agree to the standard license terms.  *Id.*  Bluetooth SIG members therefore not only grant licenses to other Bluetooth SIG members but they also receive royalty-free licenses to other members' proprietary technologies.  In effect, Bluetooth SIG members cross-license one another on a non-exclusive basis.  Courts and commentators have recognized that such cross-licensing is procompetitive because it represents an efficient way to clear the "patent thicket" and prevent "patent hold-ups."  *See, e.g.,* U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust*

output in any Bluetooth-related market, especially given Bandspeed's allegations that billions of Bluetooth-enabled products are already on the market and several new products are qualified every day.  Amend. Compl. ¶ 86.

Moreover, the actual and potential harm to competition becomes even more attenuated once one isolates the conduct actually alleged to have caused Bandspeed harm, namely the mere attempt to force it to license its technology, which Bandspeed claims has not and will not succeed.  *Id.* at ¶¶ 93-95, 103 & 107.  The general, conclusory allegations of harm to competition may appear to sound in antitrust at first blush, but ultimately are no more than restatements of the legal conclusions that make up an antitrust claim.  Bandspeed's Amended Complaint should therefore be dismissed for failure to properly allege antitrust injury.

## V.   Bandspeed's Derivative State Law Claims and Claim for Injunctive Relief Should Also Be Dismissed.

Bandspeed's state law claims of unfair competition (Eighth Claim), conspiracy (Ninth Claim), and unjust enrichment (Tenth Claim) are derivative of its antitrust allegations and based on the same core allegations of anticompetitive conduct; they therefore face the same fate.  In Texas, a claim for unfair competition "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  *Taylor Publ'g Co. v. Jostens, Inc*., 216 F.3d 465, 486 (5th Cir. 2000).  As a threshold matter, unfair competition claims are reserved for competitors, and Bandspeed has not pled that it competes in any market with defendants. *See Hudgens v. Goen*, 673 S.W.2d 420,

---

*Guidelines for the Licensing of Intellectual Property* § 5.5 (1995); Joseph Farrell *et al.*, *Standard Setting, Patents and Hold-up*, 74 Antitrust L. J. 603,  624, 640 (2007) (SSO rules designed to prevent patent hold-up through ex ante clearance of patent rights generally procompetitive, royalty-free cross-license can be procompetitve way to achieve clearance, and rules limiting use of such cross-licenses harmful); *Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F. Supp. 245 (D. Mass. 1997) (non-exclusive cross-license without more insufficient to provide anticompetitive predicate act necessary to maintain Sherman Act § 2 claim).

423 (Tex. App. 1984) ("the gist of a cause of action based on unfair competition is … the appropriation of a competitor's business to his injury.") (internal quotation marks omitted).

Moreover, to succeed on an unfair competition claim, something more than mere spitefulness is required. "[T]he tort [of unfair competition] requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business. . . Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Taylor Publ'g Co.*, 216 F.3d at 486 (citation omitted). Bandspeed's allegations of unfair competition are based upon the same conduct that it tries to use in support of its antitrust claims. Amend. Compl. ¶¶ 143-44. Accordingly, if Bandspeed's antitrust claims are dismissed it will necessarily be unable to articulate any "illegal act," and the unfair competition claim must likewise fail for lack of foundation. *See id.* (affirming dismissal of unfair competition claims where trial court granted judgment as a matter of law on underlying antitrust allegations); *Decorative Ctr. of Houston v. Direct Response Publ'ns*, 264 F. Supp. 2d 535, 556-57 (S.D. Tex. 2003) (dismissing plaintiff's unfair competition claim because plaintiff did not have a valid Lanham Act claim).

Similarly, Bandspeed's other derivative claims of conspiracy and unjust enrichment should also be dismissed. *See, e.g., RTLC AG Prods. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App. 2006) (summary judgment was proper as to conspiracy claim when there was no evidence of an underlying antitrust violation); *Los Cucos Mexican Café, Inc. v. Sanchez*, No. 13-05-578-CV, 2007 Tex. App. LEXIS 3408, at *13-14 (Tex. App. 2007) (affirming summary judgment on unjust enrichment claims and holding that they fell under the umbrella of unfair competition in a trade misappropriation case). Finally, Bandspeed's claim for injunctive relief,

which likewise rests upon the allegations of anticompetitive foreclosure underpinning its

antitrust claims, should also be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Bandspeed has failed to state claims and cannot state claims

upon which relief may be granted with regard to claims Three through Eleven of its Amended

Complaint.  Accordingly, these claims should be dismissed with prejudice.

Respectfully submitted this 22nd day of February, 2011

| | |
|---|---|
| *For Defendant Motorola Solutions, Inc.,<br>f/k/a Motorola Inc:* | *For Defendants Belkin International, Inc. and Belkin,<br>Inc.:* |
| */s/ Steven D. Moore* | */s/ Lawrence G. Kurland* |
| William H. Boice | Lawrence G. Kurland |
| Steven D. Moore | Joseph J. Richetti |
| Michael J. Turton | **BRYAN CAVE LLP** |
| Leroy Toliver | 1290 Avenue of the Americas |
| Bonnie M. Grant | New York, NY 10104 |
| **KILPATRICK TOWNSEND LLP** | (212) 541-1235 |
| Suite 2800 | (212) 541-4630  (facsimile) |
| 1100 Peachtree Street | |
| Atlanta, Georgia 30309-4530 | Earl Glenn Thames, Jr. |
| (404) 815-6500 | **POTTER MINTON, PC** |
| (404) 815-6555 (facsimile) | 110 N. College, Suite 500 |
| | P.O. Box 359 |
| Michael E. Jones | Tyler, Texas 75710 |
| Allen F. Gardner | (903) 597-8311 |
| **POTTER MINTON, PC** | (903) 593-0846 (facsimile) |
| 110 N. College Ave, Suite 500 | |
| Tyler, Texas 75702 | |
| (903) 597-8311 | |
| (903) 593-0846 (facsimile) | |

US2008 2270660.12

*For Defendants Kyocera International,*
*Inc. and Kyocera Communications, Inc.:*

/s/ Victor M. Felix
Victor M. Felix
**PROCOPIO, CORY, HARGREAVES**
**SAVITCH, LLP**
525 B Street, Suite 2200
San Diego, CA 92101
(619) 515-3229
(619) 744-5409 (facsimile)

*For Defendants GN Netcom A/S and*
*GN U.S., Inc. a/k/a GN Netcom, Inc.:*

/s/ William B. Nash
William B. Nash
Jacqueline Shipchandler
**HAYNES AND BOONE, LLP**
112 East Pecan Street, Suite 1200
San Antonio, Texas 78205
(210) 978-7477 (direct)
(210) 363-6274 (facsimile)

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Court Rule CV-5(a)(3) on February 22, 2011.  Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/ Steven D. Moore*

US2008 2270660.12