```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
2                       AUSTIN DIVISION

3   BANDSPEED, INC.,                                    )
        Plaintiff,                                      )
4                                                       )
    VS.                                                 )AU:09-CV-00593-LY
5                                                       )
    SONY ELECTRONICS INC., NINTENDO OF AMERICA, INC., APPLE, )
6   INC., SONY COMPUTER ENTERTAINMENT AMERICA, INC., LEGO )
    SYSTEMS,  INC., PARROT, INC., SCOSCHE INDUSTRIES, INC.,  )
7   CAMBRIDGE SILICON RADIO LIMITED, BANDSPEED, INC., SCOSCHE)
    INDUSTRIES, INC., APPLE, INC., SONY ELECTRONICS, INC.,   )
8   SONY COMPUTER ENTERTAINMENT AMERICA, INC., PARROT, INC., )
    BANDSPEED, INC., BANDSPEED,INC., CAMBRIDGE SILICON RADIO )
9   LIMITED,                                            )
        Defendants.                                     )
10  ------------------------------------------------------- )
    BANDSPEED, INC.,                                    )
11      Plaintiff,                                      )
                                                        )
12  VS.                                                 ) AU:11-CV-00771-LY
                                                        )
13  ACER, INC., ACER AMERICA CORPORATION, BELKIN        )
    INTERNATIONAL, INC., BELKIN, INC., CASIO COMPUTER CO., )
14  LTD., CASIO HITACHI MOBILE COMMUNICATIONS CO., LTD.,   )
    CASIO AMERICA, INC., GARMIN INTERNATIONAL, INC.,    )
15  GARMIN USA, INC., GN NETCOM A/S, GN U.S., INC.,     )
    HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD DEVELOPMENT )
16  COMPANY, L.P., HTC CORPORATION, HTC AMERICA, INC.,  )
    HUAWEI TECHNOLOGIES COMPANY, LTD., KYOCERA          )
17  CORPORATION, KYOCERA INTERNATIONAL, INC., KYOCERA   )
    COMMUNICATIONS, INC., KYOCERA WIRELESS CORPORATION, )
18  LENOVO (UNITED STATES) INC., LG ELECTRONICS, INC.,  )
    LG ELECTRONICS U.S.A., INC., LG ELECTRONICS MOBILECOMM )
19  U.S.A., INC., MOTOROLA SOLUTIONS, INC., NOKIA       )
    CORPORATION, NOKIA INC., PANTECH WIRELESS, INC.,    )
20  PLANTRONICS, INC., RESEARCH IN MOTION LIMITED, RESEARCH )
    IN MOTION CORPORATION, SAMSUNG TELECOMMUNICATIONS   )
21  AMERICA, LLC, TOMTOM INTERNATIONAL B.V., TOMTOM, INC., )
    TOSHIBA CORPORATION, TOSHIBA AMERICA INFORMATION    )
22  SYSTEMS, INC., TOSHIBA AMERICA, INC., BLUETOOTH SIG, )
    INC., MOTOROLA MOBILITY, INC., PANTECH WIRELESS, INC., )
23  BELKIN, INC., BELKIN INTERNATIONAL, INC., LENOVO    )
    (UNITED STATES) INC., MOTOROLA SOLUTIONS, INC., TOSHIBA )
24  CORPORATION, TOSHIBA AMERICA, INC., TOSHIBA AMERICA )
    INFORMATION SYSTEMS, INC., TOMTOM, INC., PLANTRONICS, )
25  INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,      )
```

```
 1  HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD DEVELOPMENT    )
    COMPANY, L.P., GARMIN USA, INC., GARMIN INTERNATIONAL,  )
 2  INC., KYOCERA COMMUNICATIONS, INC., KYOCERA             )
    INTERNATIONAL, INC., GN U.S., INC., GN NETCOM A/S, LG   )
 3  ELECTRONICS, INC., LG ELECTRONICS MOBILECOMM U.S.A.,    )
    INC., LG ELECTRONICS U.S.A., INC., RESEARCH IN MOTION   )
 4  LIMITED, RESEARCH IN MOTION CORPORATION, HUAWEI         )
    TECHNOLOGIES COMPANY, LTD., HTC AMERICA, INC.,          )
 5  HTC CORPORATION, TOMTOM INTERNATIONAL B.V., MOTOROLA    )
    MOBILITY, INC., BANDSPEED, INC., TOSHIBA AMERICA        )
 6  INFORMATION SYSTEMS, INC,                               )
        Defendants.                                         )

 7          ************************************************

 8               TRANSCRIPT OF NON-EVIDENTIARY HEARING
                   BEFORE THE HONORABLE LEE YEAKEL
 9          ************************************************

10  APPEARANCES:

11  FOR THE PLAINTIFF:          KURT MATTHEW SAUER
                                DAFFER MCDANIEL, LLP
12                              700 LAVACA, SUITE 720
                                AUSTIN, TEXAS 78701
13
                                CHRISTOPHER V. GOODPASTOR
14                              WATT'S GUERRA CRAFT LLP
                                811 BARTON SPRINGS ROAD, SUITE 725
15                              AUSTIN, TEXAS 78704

16  FOR SONY ELECTRONICS, INC.: B. RUSSELL HORTON
                                KINCAID & HORTON, L.L.P.
17                              114 WEST 7TH STREET, SUITE 1100
                                AUSTIN, TEXAS 78701
18
                                ANDREW J. BRAMHALL
19                              QUINN EMANUEL URQUHART SULLIVAN
                                555 TWIN DOLPHIN DRIVE, 5TH FLOOR
20                              REDWOOD SHORES, CALIFORNIA 94065

21  FOR LEGO SYSTEMS, INC.:     STACY ALLEN
                                JACKSON WALKER L.L.P.
22                              100 CONGRESS, SUITE 1100
                                AUSTIN, TEXAS 78701
23
                                ELIZABETH A. ALQUIST
24                              DAY PITNEY LLP
                                242 TRUMBULL STREET
25                              HARTFORD, CONNECTICUT 06103-1212
```

```
 1   FOR CAMBRIDGE SILICON        CLAUDIA WILSON FROST
     RADIO, LIMITED:              PILLSBURY WINTHROP SHAW PITTMAN
 2                                909 FANNIN, SUITE 2000
                                  HOUSTON, TEXAS 77010
 3
     FOR PARROT, INC.:            BRENNA G. NAVA
 4                                HAYNES AND BOONE, L.L.P.
                                  112 EAST PECAN, SUITE 1200
 5                                SAN ANTONIO, TEXAS 78205

 6   FOR ACER, INC.:             BRIAN CRAFT
                                 FINDLAY CRAFT, LLP
 7                               6760 OLD JACKSONVILLE HWY, STE 101
                                 TYLER, TEXAS 75703
 8
     FOR HTC CORPORATION:         ERIC H. FINDLAY
 9                                FINDLAY CRAFT, LLP
                                  6760 OLD JACKSONVILLE HWY, STE 101
10                                TYLER, TEXAS 75703

11   FOR BELKIN INTERNATIONAL,    KEVIN JAMES TERRAZAS
     INC:                         YETTER COLEMAN LLP
12                                221 WEST 6TH STREET, SUITE 750
                                  AUSTIN, TEXAS 78701
13
     FOR GARMIN INTERNATIONAL,    STEVEN J. WINGARD
14   INC.:                        SCOTT, DOUGLASS & MCCONNICO, LLP
                                  600 CONGRESS AVENUE, SUITE 1500
15                                AUSTIN, TEXAS 78701

16   FOR HUAWEI TECHNOLOGIES      DANIEL T. O'BRIEN
     COMPANY, LTD.:               JONES DAY
17                                2727 NORTH HARWOOD STREET
                                  DALLAS, TEXAS 75201-1515
18
     FOR RESEARCH IN MOTION, LTD: PHILIP W. WOO
19                                SIDLEY AUSTIN LLP - SAN FRANCISCO
                                  555 CALIFORNIA STREET, SUITE 2000
20                                SAN FRANCISCO, CALIFORNIA 94104

21                                BRIAN RALPH NESTER
                                  SIDLEY AUSTIN - WASHINGTON
22                                1501 K STREET NORTHWEST
                                  WASHINGTON, DC 20005
23
                                  DAVID B. WEAVER, JANICE LE TA
24                                VINSON & ELKINS, LLP
                                  2801 VIA FORTUNA, SUITE 100
25                                AUSTIN, TEXAS 78746
```

```
 1                                    ANTHONY S. KIM
                                      RESEARCH IN MOTION CORP.
 2                                    2000 BRIDGE PKWY., STE. 100
                                      REDWOOD CITY, CALIFORNIA 94065
 3
    FOR LG ELECTRONICS, INC.:         GARLAND T. STEPHENS
 4                                    FISH & RICHARDSON PC
                                      1221 MCKINNEY STREET, STE 2800
 5                                    HOUSTON, TEXAS 77010

 6  FOR MOTOROLA                      BONNIE M. GRANT
    SOLUTIONS, INC.:                  KILPATRICK TOWNSEND AND
 7                                    STOCKTON LLP
                                      1100 PEACHTREE ST. NE, SUITE 2800
 8                                    ATLANTA, GEORGIA 30309

 9                                    MARK T. MITCHELL
                                      GARDERE WYNNE SEWELL LLP
10                                    600 CONGRESS AVENUE, SUITE 3000
                                      AUSTIN, TEXAS 78701-2978
11
    FOR PLANTRONICS, INC.:            J. PAT HEPTIG
12                                    HEPTIG LAW GROUP, LTD.
                                      1700 PACIFIC AVENUE, SUITE 2650
13                                    DALLAS, TEXAS 75201

14  FOR TOMTOM                        LARRY F. YORK
    INTERNATIONAL B.V.:               MCGINNIS, LOCHRIDGE & KILGORE, LLP
15                                    600 CONGRESS AVENUE, SUITE 2100
                                      AUSTIN, TEXAS 78701
16
    FOR TOSHIBA CORPORATION:          J. ROGER WILLIAMS
17                                    ANDREWS KURTH LLP
                                      111 CONGRESS AVENUE, SUITE 1700
18                                    AUSTIN, TEXAS 78701

19  FOR BLUETOOTH SIG, INC.:          CLYDE M. SIEBMAN
                                      SIEBMAN REYNOLDS BURG PHILLIPS &
20                                    SMITH LLP
                                      300 NORTH TRAVIS STREET
21                                    SHERMAN, TEXAS 75090

22  COURT REPORTER:                   ARLINDA RODRIGUEZ, CSR
                                      200 WEST 8TH STREET
23                                    AUSTIN, TEXAS 78701
                                      (512) 916-5143
24
    Proceedings recorded by computerized stenography, transcript
25  produced by computer.
```

| | | |
|---|---|---|
| 10:00:16 | 1 | (Open Court) |
| 10:00:16 | 2 | THE COURT:  We're here this morning on both of the |
| 10:00:21 | 3 | Bandspeed cases, the 593 and the 771 cases.  I called this |
| 10:00:28 | 4 | conference because I had concern that some or many of you might |
| 10:00:33 | 5 | be running a little short on your hourly billing requirements |
| 10:00:36 | 6 | in your firm here at the end of the year.  So this might be a |
| 10:00:40 | 7 | good opportunity to give you a little bit more. |
| 10:00:44 | 8 | I have reviewed the status report in the 771 case and |
| 10:00:50 | 9 | the amended report in the 593 case.  And so really what I |
| 10:00:54 | 10 | anticipate trying to do today is give you-all the direction |
| 10:01:03 | 11 | that I'm going to take in this case. |
| 10:01:05 | 12 | Let me start and find out who is here.  And I'll |
| 10:01:10 | 13 | start with the plaintiffs.  If you'll make announcement, |
| 10:01:13 | 14 | please. |
| 10:01:13 | 15 | MR. GOODPASTOR:  Good morning, Your Honor. |
| 10:01:15 | 16 | Chris Goodpastor for Plaintiff Bandspeed, joined by Kurt Sauer. |
| 10:01:23 | 17 | MS. FROST:  Good morning, Your Honor.  Claudia Frost |
| 10:01:25 | 18 | for CSR. |
| 10:01:27 | 19 | MR. WEAVER:  Good morning, Your Honor.  David Weaver |
| 10:01:29 | 20 | on behalf Research in Motion. |
| 10:01:31 | 21 | MR. MITCHELL:  Mark Mitchell and Bonnie Grant on |
| 10:01:34 | 22 | behalf of the Motorola entities. |
| 10:01:36 | 23 | MS. ALQUIST:  Good morning, Your Honor.  Beth Alquist |
| 10:01:38 | 24 | for Lego. |
| 10:01:41 | 25 | MR. WILLIAMS:  Good morning, Your Honor.  Roger |

```
10:01:42   1   Williams on behalf of the Toshiba defendants.
10:01:46   2           MR. TERRAZAS:  Good morning Your Honor,
10:01:47   3   Kevin Terrazas on behalf of Belkin.
10:01:50   4           MR. FINDLAY:  Good morning, Your Honor.  Eric Findlay
10:01:52   5   on behalf of HTC.
10:01:53   6           MR. CRAFT:  Good morning.  Brian Craft.  I'm here on
10:01:55   7   behalf of the Acer entities.
10:01:57   8           MR. HORTON:  Your Honor, Russ Horton along with
10:01:59   9   Andrew Bramhall on been behalf of the Sony entities.
10:02:02  10           MR. BRAMHALL:  Good morning, Your Honor.
10:02:03  11           MR. STEPHENS:  Good morning, Your Honor.
10:02:03  12   Garland Stephens, here for LG today.
10:02:07  13           MR. O'BRIEN:  Good morning, Your Honor.  Dan O'Brien
10:02:08  14   on behalf of Huawei.
10:02:09  15           MS. NAVA:  Good morning, Your Honor.  Brenna Nava on
10:02:11  16   behalf of Parrot in the 593 and GN Netcom in the 791.
10:02:17  17           MR. NESTER:  Good morning, Your Honor.  Brian Nester
10:02:19  18   on behalf of RIM.
10:02:21  19           MS. GRANT:  I'm Bonnie Grant.  My co-counsel Mark
10:02:24  20   introduced me.  I'm here for the Motorola defendants.
10:02:26  21           MR. WINGARD:  Good morning, Your Honor.
10:02:27  22   Steve Wingard on behalf of Garmin.
10:02:32  23           MR. HEPTIG:  Good morning, Your Honor.  Pat Heptig
10:02:33  24   for Plantronics.
10:02:33  25           MR. SIEBMAN:  Good morning, Your Honor.  Clyde
```

10:02:36  1  Siebman on behalf of Bluetooth.

10:02:37  2         MR. YORK:  Good morning, Your Honor.  Larry York for

10:02:38  3  TomTom.

10:02:41  4         MR. ALLEN:  And good morning, Your Honor.

10:02:42  5  Stacy Allen for Lego.

10:02:43  6         THE COURT:  All right.  Well, thank you-all.  And if

10:02:45  7  any of you speak during the course of this conference, please

10:02:49  8  again announce your name and who you represent when you get up

10:02:52  9  to speak in order that the court reporter will be able to get

10:02:56 10  that.  She's really quick, but I'll bet she didn't hold all of

10:03:00 11  your names firmly in her head for this.

10:03:03 12         This conference got a little bit easier with the

10:03:13 13  settlement with Dell, because as many of you understood, I had

10:03:17 14  a conflict with Dell that I was wrestling with how best to

10:03:22 15  resolve it.  And some of you may like what the solution was

10:03:27 16  going to be or not the solution, but you were getting ready to

10:03:31 17  get your Christmas present as a transfer to Judge Sparks's

10:03:35 18  Court because I satisfied myself that it was an unwaivable

10:03:39 19  conflict.  Odd, but that's the way it was.

10:03:44 20         So those of you who wanted to go downstairs can be

10:03:47 21  sad during the holidays, and those of you who didn't can be

10:03:51 22  happy because, of all of the assembled other parties in this

10:03:55 23  case, that was the only one I had a problem with.

10:03:57 24         I will tell you that I am leaning strongly toward the

10:04:02 25  supplier-first option that was set forth in the status reports

| | | |
|---|---|---|
| 10:04:07 | 1 | that I received and reviewed.  It seems to me that there is no |
| 10:04:11 | 2 | perfect solution to resolve a case of this size.  I am not as |
| 10:04:22 | 3 | concerned as some of you were in your status reports about how |
| 10:04:26 | 4 | long it may take to try if I were to just proceed ahead to try |
| 10:04:31 | 5 | the case all at once. |
| 10:04:33 | 6 | Even though we have large dockets here, the way you |
| 10:04:39 | 7 | handle -- or at least the way I believe that I handle large and |
| 10:04:44 | 8 | complex cases is you just get started with them and you try |
| 10:04:48 | 9 | them and you finish them.  But I do think in this case a lot |
| 10:04:52 | 10 | would be accomplished by determining the situation with regard |
| 10:04:57 | 11 | to suppliers initially. |
| 10:05:05 | 12 | Now in our last conference, and as noted in the |
| 10:05:07 | 13 | reports that you have filed, Dell had definitely indicated that |
| 10:05:13 | 14 | it wanted to add another supplier to the case -- Broadcom.  Let |
| 10:05:23 | 15 | me ask the rest of you:  Is there anyone else who desires to |
| 10:05:29 | 16 | add any other parties to this case or anyone who does not |
| 10:05:39 | 17 | believe that all of the appropriate parties that need to be in |
| 10:05:42 | 18 | this case are in this case if we were to proceed with the |
| 10:05:50 | 19 | supplier-first option? |
| 10:05:54 | 20 | Mr. Weaver? |
| 10:05:56 | 21 | MR. WEAVER:  Your Honor, David Weaver on behalf of |
| 10:05:59 | 22 | Research in Motion.  As the case is currently postured, |
| 10:06:03 | 23 | Your Honor, there is only one product for RIM that has been |
| 10:06:07 | 24 | accused.  It is the Pearl 8100.  That product has only a CSR |
| 10:06:14 | 25 | chip in it.  So from RIM's perspective, as the case is |

10:06:17  1   currently postured we would not need or desire to add in

10:06:26  2   another chip manufacturer.

10:06:27  3          However, as the Court is fully aware from the status

10:06:30  4   reports, both of them, Bandspeed intends to add in or has

10:06:34  5   indicated that they do intend to add in numerous additional

10:06:39  6   products.  If that occurs, then RIM, and I think many of the

10:06:43  7   other defendants in this room, would have additional chips that

10:06:47  8   would be implicated.  As it currently stands, Your Honor, I

10:06:51  9   have no idea because, Bandspeed has not formally told us what

10:06:56  10  additional RIM products they intend to add.

10:06:58  11         But at the very least, we anticipate that if this

10:07:03  12  Court is inclined to allow them to add new products, that they

10:07:06  13  would accuse products that would implicate TI-based chips.  If

10:07:14  14  that is the case, then RIM would intend to bring in that

10:07:17  15  additional chip supplier, TI, or would at least finally be in a

10:07:21  16  position where it could tender the defense of the case to that

10:07:25  17  chip supplier.  As it's currently postured, obviously,

10:07:29  18  Your Honor, we can't tender a defense where a claim has not

10:07:32  19  been asserted against one of those accused products.

10:07:37  20         I think there are other defendants in the room that

10:07:39  21  would be in the same posture.  Currently there's only a CSR

10:07:41  22  chip that may be implicated.  But if more products were

10:07:44  23  accused, because they only have a single product accused, other

10:07:48  24  chips would be indicated.

10:07:49  25         THE COURT:  Thank you.  Is there anyone that wants to

10:07:52  1  speak in addition or disagrees with the statements Mr. Weaver

10:07:55  2  just made?

10:07:59  3          MR. STEPHENS:  Your Honor, Garland Stephens for LG.

10:08:02  4          I don't disagree with anything Mr. Weaver said.  I

10:08:04  5  will point out that at least for LG, the products that are

10:08:07  6  currently accused involve Broadcom chips.  And we were

10:08:11  7  expecting Broadcom to be impleaded by Dell.  Since that has not

10:08:15  8  happened, I have taken it up with my client whether they want

10:08:18  9  to attempt to implead Broadcom themselves.

10:08:22  10          THE COURT:  You have taken it up with your client?

10:08:26  11          MR. STEPHENS:  I have.  We haven't resolved yet how

10:08:28  12  to accomplish that, but I have asked them about it.  It's under

10:08:32  13  consideration.

10:08:32  14          THE COURT:  All right.  Thank you.  Anyone else from

10:08:34  15  the defendant?  Mr. Mitchell?

10:08:35  16          MR. MITCHELL:  On behalf of the Motorola entities,

10:08:39  17  Your Honor, we agree with Mr. Weaver's statement and are

10:08:41  18  similarly situated and would be in a position, if additional

10:08:46  19  accused products were added to the case to tender the defense

10:08:48  20  to those chip manufacturers.

10:08:53  21          MR. BRAMHALL:  Your Honor, Andrew Bramhall for the

10:08:57  22  Sony defendants.  We are in the first case, the 593 case, and

10:09:01  23  we also have only CSR, or product with CSR chips at issue

10:09:07  24  currently.  So we also agree with Mr. Weaver's statements.

10:09:10  25          THE COURT:  All right.  If you agree, you don't have

```
10:09:12   1   to come tell me you agree.  You're welcome to.  I'm more
10:09:16   2   interested right now knowing what you don't agree on than what
10:09:19   3   you are going to agree on.
10:09:21   4          MR. WEAVER:  Your Honor, people so seldom agree with
10:09:23   5   me, I'm appreciating the reinforcement of that position.
10:09:26   6          THE COURT:  Well, it is a holiday season.
10:09:29   7          MR. WEAVER:  I understand.
10:09:29   8          THE COURT:  You're entitled to that.
10:09:31   9          MR. TERRAZAS:  Your Honor, Kevin Terrazas for the
10:09:33  10   Belkin defendant.  Your Honor, we agree with Mr. Stephens and
10:09:35  11   LG.  We have Broadcom chips.  We are still ongoing in
10:09:38  12   discussion with our client whether or not to try to implead
10:09:41  13   Broadcom as well.  But that's still an open issue for us.
10:09:47  14          THE COURT:  All right.
10:09:49  15          Now, Mr. Goodpastor, Mr. Sauer, the 593 case has been
10:10:02  16   around for a relatively long period of time.  It's an '09 case
10:10:12  17   that with filed in '09.  I would have thought that I would have
10:10:18  18   had more discussion from you-all with regard to what other
10:10:22  19   products you might want to implead.  I realize that we have
10:10:28  20   been dealing with Markman and other matters, and then we had
10:10:32  21   the transfer of this case down.
10:10:35  22          I would like to get at least the first stage of this
10:10:40  23   case moving and done as quickly as possible.  So let me hear
10:10:46  24   from you-all on why it is important to identify further
10:10:54  25   infringing products at this time, what it would accomplish, and
```

| 10:11:00 | 1 | what would be the difference between having additional |

10:11:00  1  what would be the difference between having additional

10:11:03  2  infringing products and additional chip manufacturers other

10:11:09  3  than Broadcom in here instead of just proceeding ahead and

10:11:18  4  allowing anyone who wants to bring Broadcom in to bring

10:11:21  5  Broadcom in and proceeding with the product we have and seeing

10:11:24  6  how that sorts itself out.

10:11:28  7          MR. GOODPASTOR:  Your Honor, if I may address that

10:11:30  8  Chris Goodpastor for Bandspeed.

10:11:33  9          We think it's important to bring in additional

10:11:36  10  products to avoid an argument by defendants that by not

10:11:41  11  bringing additional products in this suit regarding these

10:11:43  12  patents we somehow waived the right to do that in the future.

10:11:47  13  And, therefore, to avoid that argument -- we're not saying we

10:11:49  14  necessarily agree with that.  But to avoid that argument, we

10:11:52  15  think it's important to do it.

10:11:53  16          Typically what happens in a case like this, you'll

10:11:58  17  take some discovery on reasonably similar products and you get

10:12:03  18  that discovery back.  And after you have that discovery, then

10:12:05  19  you have a deadline to add the other reasonably similar

10:12:08  20  products that are related to the patent that are infringing.

10:12:11  21          We haven't had that opportunity for discovery in this

10:12:13  22  case.  We've had a little opportunity for discovery in the 771

10:12:17  23  case.  But most of the defendants have taken the position that

10:12:20  24  they're not going to answer that discovery given the current

10:12:24  25  state of pleadings.

| 10:12:25 | 1 | So what we've decided to do is add products based |
|---|---|---|

10:12:25 1    So what we've decided to do is add products based

10:12:30 2 upon information that we've be able to, after extensive

10:12:35 3 analysis, glean from the third party and possibly from

10:12:39 4 Defendants and use that information to add some additional

10:12:41 5 products, knowing that we're going to have to take additional

10:12:44 6 discovery and that product list based on that discovery may

10:12:47 7 change.

10:12:48 8    However, based on the additional analysis -- and it's

10:12:52 9 been fairly extensive -- we believe that we can be in a

10:12:57 10 position to file an amended compliant with additional products

10:13:00 11 by these defendants within a week's time.

10:13:02 12    So it's important to note the reason why we want to

10:13:07 13 do that and how we're going to go about it and that -- and the

10:13:11 14 fact that that product list may change.  But it's also

10:13:14 15 important to note two issues with respect to Defendants' plans

10:13:18 16 or at least options to implead certain IC makers in this case.

10:13:22 17    The issues are twofold:  One is, if the defendants

10:13:26 18 add the IC makers, it is unclear to us at this point -- and

10:13:33 19 maybe this won't be an issue -- but it's unclear to us at this

10:13:35 20 point whether those IC makers will actually assert a

10:13:38 21 declaratory judgment action against Bandspeed and whether

10:13:42 22 without that declaratory judgment action Bandspeed will be

10:13:46 23 required to assert counterclaims for infringement against those

10:13:50 24 IC makers.

10:13:51 25    Two, if they do in any respect -- even if they don't

10:13:55  1  actually -- in all respect, Bandspeed is going to need

10:13:58  2  additional discovery against and from the IC makers for the

10:14:04  3  same reasons we told you over a year ago we needed additional

10:14:07  4  discovery to assert the claims against CSR when they sought to

10:14:11  5  intervene.

10:14:12  6         We'll need the additional discovery to assert the

10:14:14  7  claims, and we'll definitely need the additional discovery to

10:14:19  8  assert the infringement contentions against the IC makers.

10:14:23  9  Because of the nature of the product and that -- we detailed

10:14:26 10  that in response to the motion to intervene by CSR several

10:14:31 11  months back.

10:14:32 12         So I wanted to make the Court aware of all of those

10:14:35 13  separate issues regarding the potential impleader of the

10:14:39 14  defendants.  But to answer your question simply, Your Honor, we

10:14:41 15  can be ready with a new amended complaint with some new

10:14:45 16  products that are subject to confirmation and possibly change

10:14:48 17  after discovery within about a week's time from today.

10:14:51 18         THE COURT:  Let me ask you a question:  You are

10:14:54 19  familiar, of course, with the proposed dates and schedule that

10:15:01 20  was in the joint status report in the 771 case?

10:15:05 21         MR. GOODPASTOR:  Yes, Your Honor.  And we came today

10:15:07 22  armed with some revisions to both the proposed schedules

10:15:13 23  depending on whether we had a trial with only current

10:15:15 24  defendants or we actually brought in the IC makers.  And I

10:15:18 25  could hand those to the clerk, if you want.

10:15:20  1          THE COURT:  Have you had occasion to circulate those

10:15:23  2   to the other parties in this case?

10:15:24  3          MR. GOODPASTOR:  We have not, Your Honor.  We just

10:15:27  4   finalized them this morning.  And I brought extra copies that

10:15:32  5   are circulating now.  But, essentially, there are two versions

10:15:36  6   of this.  One version has a scheduling order with the current

10:15:40  7   parties only, assuming there aren't going to be any new

10:15:43  8   IC makers impleaded.  And the other one is a revised version of

10:15:47  9   the other scheduling order, assuming that additional IC makers

10:15:53  10  will be impleaded as part of the case.

10:15:55  11          And essentially, Your Honor, the difference is the

10:15:57  12  need for further discovery and give the additional IC makers

10:16:01  13  time to enter the case, determine what their response is going

10:16:05  14  to be, and make sure that everybody has time to do those type

10:16:08  15  of things before we start that discovery.

10:16:12  16          But with respect to the scheduling order for the

10:16:14  17  current parties only, Your Honor, it basically just moves most

10:16:17  18  of the dates back a few months.

10:16:19  19          THE COURT:  Well, don't spend a whole lot of time on

10:16:22  20  that, because what I believe I've heard from several of these

10:16:26  21  people today is that there -- is that there is at least a

10:16:29  22  strong chance we're not going to proceed with the current

10:16:33  23  parties only.  But there is at least talk underway about

10:16:38  24  impleading other parties.  What I want to get to is a situation

10:16:43  25  where we know if there are going to be other parties and get

| | | |
|---|---|---|
| 10:16:51 | 1 | them in here and then get this case moving along. |
| 10:16:54 | 2 | I did see Judge Ward the other day, and I thanked him |
| 10:16:58 | 3 | for sending his case down.  He apprised me that he bestowed |
| 10:17:04 | 4 | several of those going-away presents on district judges around |
| 10:17:12 | 5 | the state and the country and he was pleased to leave it behind |
| 10:17:15 | 6 | him. |
| 10:17:15 | 7 | So if we're looking at -- let me initially, I guess, |
| 10:17:22 | 8 | address this to, well, all of you.  If the -- the first step is |
| 10:17:34 | 9 | for you to file an amended pleading that adds the new products |
| 10:17:41 | 10 | you desire to add, then there probably should be some time for |
| 10:17:48 | 11 | the defendants to review that pleading and determine whether |
| 10:17:55 | 12 | they're going to implead other chip suppliers. |
| 10:17:58 | 13 | MR. GOODPASTOR:  We agree, Your Honor.  And the -- |
| 10:18:01 | 14 | its title -- it's the Excel spreadsheet here. |
| 10:18:04 | 15 | THE COURT:  Yeah.  I know.  I see that. |
| 10:18:08 | 16 | MR. GOODPASTOR:  And the schedule we've set up is |
| 10:18:10 | 17 | basically a week after you issue your scheduling order, we'll |
| 10:18:13 | 18 | file our motion for leave to amend.  And then 14 days after the |
| 10:18:17 | 19 | order on the motion for leave to amend, if a motion is |
| 10:18:20 | 20 | required -- assume that you require a motion for leave instead |
| 10:18:23 | 21 | of just granting us leave, they would have 14 days to bring in |
| 10:18:27 | 22 | whomever they desire.  And we think with the products |
| 10:18:30 | 23 | identified in the amended complaint, that would be plenty of |
| 10:18:34 | 24 | time to identify who is the chip supplier and determine whether |
| 10:18:38 | 25 | they want to bring them in. |

10:18:42  1          THE COURT:  All right.  Y'all have now had a chance

10:18:45  2  to look at this proposal on the plaintiff's part.  It's fairly

10:18:55  3  similar to what was in the proposed order.  It was just that

10:19:03  4  you're not my only case, and I couldn't get to you by early

10:19:06  5  October when I got this scheduling order back.

10:19:13  6          Mr. Weaver, you rise?

10:19:15  7          MR. WEAVER:  Yes, Your Honor.  Let me address a

10:19:17  8  couple of things.  I have had an opportunity to review their

10:19:20  9  proposal, which is similar to what was in the original joint

10:19:24 10  status report.  I guess a couple of comments:  One is certainly

10:19:31 11  I welcome the one-week deadline within which to file an amended

10:19:34 12  complaint naming the accused products.  I'm a little concerned

10:19:39 13  with the vagueness that Mr. Goodpastor suggested about what new

10:19:46 14  products would be in there and then the potential for

10:19:49 15  additional new products downstream, et cetera.

10:19:53 16          THE COURT:  Here's what we need -- Mr. Goodpastor,

10:19:55 17  you need to get this.  I do not want to do something as this

10:19:59 18  case sits right now and then get down the line on it and we

10:20:03 19  have a whole bunch of new products after that and the case gets

10:20:06 20  bigger and bigger and bigger without resolution because of

10:20:12 21  products being added and added and added.

10:20:14 22          I want to find out from you-all -- and I expect you

10:20:19 23  as the professionals you are, because you know this case better

10:20:22 24  than I -- what it is going to take to package this case up so I

10:20:29 25  are can render scheduling order and we can get it finished.  I

| | | |
|---|---|---|
| 10:20:33 | 1 | will tell you again, I don't care how long it takes to try. |
| 10:20:35 | 2 | I'm not going to be worried about that.  If it takes two months |
| 10:20:38 | 3 | to try, I will just have to explain that to all of the other |
| 10:20:45 | 4 | lawyers who are desiring to do things in my Court. |
| 10:20:48 | 5 | It's clearly going to take over a year.  We're going |
| 10:20:55 | 6 | to be in the new courthouse in a year, and that gives me a lot |
| 10:20:59 | 7 | of flexibility I haven't had before in that I have other |
| 10:21:00 | 8 | courtrooms.  And if I need to bring in a visiting judge to try |
| 10:21:02 | 9 | your case or other cases, I'll be able to do that when we get |
| 10:21:10 | 10 | moved.  But what I want and what I'm trying to accomplish with |
| 10:21:12 | 11 | you-all is to get the vagueness out of here. |
| 10:21:15 | 12 | You have done what I asked, and I appreciate that in |
| 10:21:18 | 13 | that I have the status reports.  There have been some cases |
| 10:21:20 | 14 | that have been settled out.  But I don't want to keep moving |
| 10:21:27 | 15 | this down with unknown factors in it that could change. |
| 10:21:29 | 16 | So Mr. Weaver, you can stay there.  Mr. Goodpastor, |
| 10:21:36 | 17 | you can address that.  I want to get a point where we have all |
| 10:21:39 | 18 | of the products and all of the parties and we have a schedule. |
| 10:21:49 | 19 | MR. WEAVER:  Your Honor, if I might, one thing that |
| 10:21:51 | 20 | could actually short-circuit this:  There is a very narrow and |
| 10:21:55 | 21 | limited universe of chip supplies for potentially similar |
| 10:22:00 | 22 | chips.  Mr. Goodpastor knows that list quite well in addition |
| 10:22:02 | 23 | to CSR.  One of the fastest way to expedite this process would |
| 10:22:07 | 24 | frankly be for them to sue the chip suppliers directly.  He can |
| 10:22:12 | 25 | file suit against TI, against Broadcom.  In fact, he said in |

| 10:22:16 | 1 | his joint status report that one of his concerns with the |
|---|---|---|
| 10:22:19 | 2 | CSR-only trial that was proposed in the 593 case was that he'd |
| 10:22:23 | 3 | have to file a second trial against Broadcom directly.  So he |
| 10:22:27 | 4 | clearly understands that he's capable of doing that. |
| 10:22:30 | 5 | If we brought in simply TI through the amended |
| 10:22:33 | 6 | complaint, Broadcom, Qualcomm -- and I don't remember.  I think |
| 10:22:38 | 7 | there's one other that may be implicated -- that gets all the |
| 10:22:42 | 8 | parties before Your Honor immediately without the need to go |
| 10:22:46 | 9 | through an impleading process, which as Your Honor will no |
| 10:22:50 | 10 | doubt appreciate, some suppliers may grudgingly object to being |
| 10:22:56 | 11 | added into a suit by one of their customers and we may have a |
| 10:23:03 | 12 | whole briefing cycle go on with that. |
| 10:23:05 | 13 | So just for Your Honor to consider. |
| 10:23:08 | 14 | MR. GOODPASTOR:  If I may address that, Your Honor? |
| 10:23:10 | 15 | THE COURT:  You may, Mr. Goodpastor. |
| 10:23:13 | 16 | MR. GOODPASTOR:  I don't believe this is something |
| 10:23:15 | 17 | Mr. Weaver participated in.  But the reason we can't bring in |
| 10:23:18 | 18 | the IC makers other than CSR at this point are all those |
| 10:23:21 | 19 | reasons we discussed in response to the CSR motion to |
| 10:23:24 | 20 | intervene.  And, therefore, we believe if the additional |
| 10:23:28 | 21 | IC maker is going to be brought in, they're going to have to be |
| 10:23:31 | 22 | brought in by defendants in this case. |
| 10:23:33 | 23 | We can add in, you know, a week's time after the |
| 10:23:36 | 24 | scheduling order a fairly broad set of products based upon our |
| 10:23:41 | 25 | analysis of some information that we've received.  It's |

10:23:45  1  probably -- I would say it's likely -- I can't guarantee it, I

10:23:48  2  would say it's likely that that broad list of products will

10:23:51  3  address most of the chip manufacturers.  I can't guarantee

10:23:55  4  that, though.

10:23:56  5          What we will likely do after that point, after

10:23:59  6  getting some discovery, is if we add new products, it will

10:24:03  7  likely just be new products that are introduced after that

10:24:06  8  point for the most part.  We will want to take discovery,

10:24:10  9  though, to confirm our product list.  And one way to do that

10:24:14  10  and do it quickly is to, as soon as the discovery stay is

10:24:17  11  lifted, allow us to take discovery on reasonably similar

10:24:21  12  products either through interrogatories or other means and just

10:24:25  13  get that list from defendants.  They know what the products

10:24:29  14  are.  We get that list from defendants, and then if there is

10:24:32  15  anything additional to add other than new products that are

10:24:35  16  coming out, we'll add them at that time.  And that would get us

10:24:38  17  to a point where we could be fairly certain we've got all the

10:24:40  18  products in a pretty short amount of time.

10:24:42  19          Like I said, though, we're going to add a fairly

10:24:44  20  broad array of products in the amended complaint, and I hope

10:24:48  21  that that will address all of the potential impleading issues

10:24:52  22  with respect to the IC makers.

10:24:55  23          THE COURT:  Mr. Weaver or anyone else?

10:24:58  24          MR. WEAVER:  Your Honor, again, getting that clarity

10:25:02  25  soon is what is critical here.  If they are going to be allowed

| | | |
|---|---|---|
| 10:25:06 | 1 | to add new products, getting a date certain for when those are |
| 10:25:10 | 2 | going to be added into the case.  I was not in the 593 case, |
| 10:25:15 | 3 | Your Honor, and I'm not aware of all of the details as to why |
| 10:25:18 | 4 | Mr. Goodpastor says he can't accuse the chip manufacturers |
| 10:25:22 | 5 | themselves.  The fact of the matter is I think he can.  He |
| 10:25:25 | 6 | can -- he's got all of information from RIM on their products. |
| 10:25:28 | 7 | THE COURT:  Well, I can't resolve that here today. |
| 10:25:30 | 8 | He says he can't.  You say he can.  Ms. Frost is here because |
| 10:25:35 | 9 | she intervened.  Her manufacturer in here.  So there are ways |
| 10:25:40 | 10 | to do it.  I'm not going to let another two or three months go |
| 10:25:43 | 11 | by while we figure out who can bring in who.  You know, it's -- |
| 10:25:47 | 12 | we're at the time that we need to get this thing started one |
| 10:25:53 | 13 | way or the other. |
| 10:26:00 | 14 | Now, if I were to look at the proposal by |
| 10:26:09 | 15 | Mr. Goodpastor, he says he can amend his complaint within a |
| 10:26:15 | 16 | week.  So he suggests two weeks after that, for any defendant |
| 10:26:28 | 17 | to file any additional pleadings to bring in any chip supplier. |
| 10:26:34 | 18 | It's not a mystery to anyone that I have been |
| 10:26:40 | 19 | considering the supplier-first option, at least since our last |
| 10:26:44 | 20 | conference on this.  So the parties ought to be close enough to |
| 10:26:50 | 21 | where that's three weeks to decide whether you're going to |
| 10:26:56 | 22 | bring in the chip suppliers and to file an amended pleading in |
| 10:27:04 | 23 | that regard.  Tell me, Defendants, about that.  I'm sure I'm |
| 10:27:16 | 24 | going to hear from somebody that you can't do it. |
| 10:27:18 | 25 | MR. WEAVER:  Your Honor, what I'm hearing from folks |

10:27:21  1  around the room is that, as we proposed in our original

10:27:24  2  schedule to the Court in the status conference, was 30 days was

10:27:28  3  about what we thought was the fastest time from once we get the

10:27:33  4  list of accused products from Mr. Goodpastor, to go through,

10:27:39  5  identify which chips belong to which chip manufacturers in

10:27:42  6  those products, and then go through, find those contracts, and

10:27:46  7  then tender the defense and prepare the pleadings and try to

10:27:50  8  either bring them voluntarily or through cross-claim.

10:27:53  9          I think 30 days was what we thought was a reasonable

10:27:56  10  period of time from the point at which we get that list from

10:28:01  11  Bandspeed.  And I don't know if others have a --

10:28:06  12          THE COURT:  Do you still belief that?  Just tell me

10:28:08  13  if somebody thinks 30 days is not reasonable.

10:28:13  14          By your silence -- well, one rises.  A little slow

10:28:16  15  there.

10:28:19  16          MR. FINDLAY:  I apologize.  Eric Findlay for HTC.

10:28:22  17  Once we know exactly what is in the case by an amended

10:28:27  18  complaint, I don't think 30 days is necessarily too quick.  But

10:28:30  19  I think I can speak for my client and maybe others that I'm a

10:28:34  20  little concerned that we're skipping the step of their having

10:28:38  21  to move and hopefully seek leave from Your Honor to do this.

10:28:41  22          I think there are defendants who, while they would --

10:28:46  23  Plaintiff's may argue the case is early, I think there are

10:28:49  24  defendants who would want the ability, at least for the record,

10:28:52  25  Your Honor, to be able to argue strenuously to you that they

10:28:55 1    should not be allowed to add certain products to the case at

10:28:58 2    this time.  And I would like to see that at least baked into

10:29:01 3    the schedule so we have the ability to do that if we deem it

10:29:04 4    appropriate.

10:29:05 5        THE COURT:  Well, see, what that argument does to me

10:29:06 6    is make me want to go back and go ahead and try the 593 case

10:29:11 7    and not try to do this what I thought was an easy way now,

10:29:16 8    because now it's not getting to be the easy way.  And that's

10:29:19 9    the problem I get into with a big case.  I'm looking for the

10:29:22 10   best way to resolve this.  And every time I build in other

10:29:27 11   things to allow you-all to plead, you're going to do it,

10:29:31 12   whether it's well-taken or whether you think it's well-taken or

10:29:34 13   not.

10:29:35 14       And I hate to be harsh, but I see a lot of frivolous

10:29:38 15   things in big cases just because lawyers want to put it on the

10:29:42 16   record.  I find that it very seldom gets considered by the

10:29:45 17   Federal Circuit, but it takes a long time in this Court.  So if

10:29:50 18   I need to go back and not consider the supplier-first option,

10:29:55 19   and put the 771 case on a different schedule and go ahead and

10:29:59 20   schedule the 593 case, then I'm prepared to do that.

10:30:06 21       I don't think that's the best way to do it, but I'm

10:30:09 22   not going to sit here and have us go, "Then we want to file

10:30:12 23   this motion, then we want to file that motion, then we want to

10:30:16 24   file the other motion."

10:30:18 25       I don't care what your clients think.  Let me tell

10:30:22  1    you this.  I think -- and tell your general counsels that, and

10:30:25  2    you can tell your presidents that.

10:30:27  3                MR. FINDLAY:  Yes, Your Honor.

10:30:27  4                THE COURT:  The most expeditious way to do this is to

10:30:30  5    forget about who can out-plead one another, tee this thing up

10:30:34  6    the most expeditious way to get the issues before the Court,

10:30:40  7    and to quit worrying about the procedures to get it done and

10:30:44  8    get it tried.  That will save your clients a lot of money in

10:30:47  9    the long run.

10:30:49  10               MR. FINDLAY:  Your Honor, I understand.  I agree

10:30:50  11   completely.  But the only point I was trying to make is by the

10:30:53  12   proposal that Counsel had given to us, it appeared he was

10:30:59  13   contemplating the motion for leave to do this.  And all I was

10:31:02  14   suggesting, Your Honor, respectfully, is that if that is the

10:31:06  15   course that is taken, that we have the ability to respond to

10:31:08  16   that.  And we can do so on an expedited basis, if that's what

10:31:13  17   the Court would want us to do, not anything that would slow

10:31:16  18   down or further stall the case from moving forward, Your Honor.

10:31:19  19               THE COURT:  Well, I'm not -- I can decide the

10:31:23  20   question of whether I'm going to grant that leave today.  If

10:31:29  21   we're going to have additional infringing product to get this

10:31:33  22   case to conclusion, then I can tell you I'm not going to deny

10:31:37  23   leave to bring them in.  We get them in and we get it tried and

10:31:42  24   that's the way it is.

10:31:48  25               You know, I don't care -- they don't have to file

| | | |
|---|---|---|
| 10:31:50 | 1 | leave to amend.  That's why we're having this conference.  You |
| 10:31:53 | 2 | wouldn't have to file a leave to amend to implead chip |
| 10:31:56 | 3 | suppliers after the fact.  Both of these cases have been |
| 10:31:59 | 4 | kicking around a while, one in the Eastern District and one |
| 10:32:02 | 5 | here. |
| 10:32:05 | 6 | So that's what I'm looking at, is to get from you-all |
| 10:32:08 | 7 | as lawyers, as the professionals you are, the most expeditious |
| 10:32:13 | 8 | way to get this case to conclusion.  And it's not by arguing |
| 10:32:17 | 9 | over every little nuance that any lawyer can come up with in |
| 10:32:22 | 10 | the pleadings. |
| 10:32:23 | 11 | I am here every day.  There is just a limited number |
| 10:32:29 | 12 | of hours in the day.  So I would like to do this an easier way |
| 10:32:32 | 13 | that is cheaper for your clients.  But if I can't get agreement |
| 10:32:37 | 14 | out of you how to do that, then we will do it how I find it |
| 10:32:42 | 15 | most expeditious and we will work through it. |
| 10:32:44 | 16 | And if it is involved with trying the same case |
| 10:32:47 | 17 | twice, I will try the same case twice.  I don't think it's the |
| 10:32:50 | 18 | best way to do it. |
| 10:32:52 | 19 | MR. FINDLAY:  I agree with that conclusion, |
| 10:32:53 | 20 | Your Honor.  Thank you. |
| 10:32:54 | 21 | THE COURT:  Ms. Frost? |
| 10:32:55 | 22 | MS. FROST:  Good morning, Your Honor.  I'm going to |
| 10:33:02 | 23 | try to see if I can talk about a couple of things that I think |
| 10:33:05 | 24 | will help clarify the situation for the Court and one that |
| 10:33:08 | 25 | hasn't been discussed yet. |

| | | |
|---|---|---|
| 10:33:10 | 1 | There are two issues as we see it, and we agree |
| 10:33:16 | 2 | completely with the Court's aspirations to try to get this case |
| 10:33:21 | 3 | resolved as expeditiously as possible.  Obviously, CSR |
| 10:33:27 | 4 | intervened two years ago with that in mind, to try to vindicate |
| 10:33:31 | 5 | its clients, its customers' products, and its own.  So it is |
| 10:33:34 | 6 | totally consummate with our view that we want the case tried |
| 10:33:37 | 7 | quickly and efficiently. |
| 10:33:39 | 8 | The chip supplier option is obviously one that we |
| 10:33:43 | 9 | endorsed, and we suggested it to you and it's been suggested in |
| 10:33:47 | 10 | the status reports from us as well.  We think from a legal and |
| 10:33:51 | 11 | a procedural and practical standpoint, it is the best way to |
| 10:33:55 | 12 | go.  There is a problem incident in it, though, that hasn't |
| 10:33:59 | 13 | been raised with the Court that I think needs to be raised |
| 10:34:03 | 14 | right now in order to put all the issues out on the table. |
| 10:34:07 | 15 | Putting to the side the second issue, which is delay, |
| 10:34:10 | 16 | there will be delay -- I think a substantial amount of delay -- |
| 10:34:15 | 17 | from the parties who are similarly situated to CSR, Broadcom |
| 10:34:19 | 18 | and others, who have not been in this case.  There have been |
| 10:34:23 | 19 | Broadcom products, by the way, that have been accused since |
| 10:34:27 | 20 | 2009.  And unlike CSR, those chip makers have not attempted to |
| 10:34:33 | 21 | intervene.  Their particular customers have not impleaded |
| 10:34:36 | 22 | them.  And so I can think one can assume that they will resist |
| 10:34:42 | 23 | any effort to be drawn into this controversy now. |
| 10:34:45 | 24 | So there will be some Rule 12 practice and other |
| 10:34:48 | 25 | things that will of necessity cause delay in addition to those |

10:34:53  1   things that Mr. Goodpastor himself has acknowledged and that

10:34:55  2   you're gathering from some of the discussions you're hearing

10:34:59  3   from the customer defendants.  But there is this other problem,

10:35:02  4   and this other problem is joinder.

10:35:04  5        And there is a big problem with regard to joinder, in

10:35:07  6   fact.  And I've got -- I've cited a case in the joint status

10:35:11  7   report for the 593 case called *Rudd*.  And *Rudd* was the case

10:35:18  8   cited by -- in the legislative history from the -- of the

10:35:22  9   America Invents Acts.  And *Rudd* states -- is acknowledged to

10:35:27 10   state the majority view of joinder issues.  And *Rudd* cites a

10:35:33 11   whole string of cases under Rule 20 that talk about the

10:35:37 12   impropriety of joinder of competing manufacturers when the only

10:35:44 13   common issue is the allegation that both of those competing

10:35:48 14   manufacturers have infringed claims of the same patent.

10:35:53 15        I brought a couple of other cases with me today that

10:35:59 16   I thought I'd hand up to Your Honor and, of course, share with

10:36:03 17   opposing counsel.  These are cases cited in -- cited in *Rudd*.

10:36:14 18   *Spread Spectrum*, *Androphy*, and *Billups* are the three cases.

10:36:18 19   And I think Spread Spectrum says it to me best, anyway, in the

10:36:23 20   Spread -- except I can't say the two words without stuttering.

10:36:27 21        In the *Spread Spectrum* case, both Kodak and

10:36:33 22   Heidelberg were alleged to infringe the same patent by the

10:36:37 23   plaintiff.  And Heidelberg and Kodak were competitors.  The

10:36:45 24   Court considered the motion to sever under Rule 21 based on

10:36:53 25   improper joinder and granted it and stated the following:

| | | |
|---|---|---|
| 10:36:58 | 1 | Although Kodak and Heidelberg have both allegedly |
| 10:37:02 | 2 | infringed the '623 patent, this does not conclusively establish |
| 10:37:06 | 3 | that the actions arise from a common transaction or occurrence, |
| 10:37:09 | 4 | which of course we know is a requirement of Rule 20.  In fact, |
| 10:37:12 | 5 | joinder is often improper where two competing businesses have |
| 10:37:16 | 6 | allegedly infringed the same patent by selling different |
| 10:37:20 | 7 | products. |
| 10:37:20 | 8 | In the instant case, the causes of action against |
| 10:37:25 | 9 | Kodak and Heidelberg are arguably related only because they are |
| 10:37:29 | 10 | derived from the '623 patent.  The accused infringing software, |
| 10:37:32 | 11 | other evidence, and witnesses are all different and unique to |
| 10:37:35 | 12 | the actions against Kodak and Heidelberg.  Because |
| 10:37:38 | 13 | plaintiff's -- |
| 10:37:38 | 14 | THE COURT:  Tell me where you're going with this. |
| 10:37:41 | 15 | MS. FROST:  Your Honor, if you try to bring in or we |
| 10:37:44 | 16 | try to bring in Broadcom or TI or whomever, they will be |
| 10:37:48 | 17 | misjoined in a case with CSR.  CSR will move to sever or to |
| 10:37:54 | 18 | have a separate trial and have a CSR-only case.  And the law I |
| 10:38:00 | 19 | submit is clear.  We don't have to rely on the America Invents |
| 10:38:03 | 20 | Act, although it certainly accords with it.  Existing Rule 20 |
| 10:38:07 | 21 | law will make a combined case with a CSR, Broadcom, and TI |
| 10:38:13 | 22 | product in the same case improper.  And Rule 21 will support a |
| 10:38:20 | 23 | motion for severance and separate trial of those cases. |
| 10:38:24 | 24 | THE COURT:  I understand that.  When I talk about |
| 10:38:31 | 25 | combining things, believe me, that does not mean we just have |

10:38:35  1  to have one trial.  But I am more concerned at this point,

10:38:38  2  because I see most of what we discussed several months ago has

10:38:46  3  now become less enticing to everyone.  And that if we attempted

10:38:57  4  to have a suppliers-first system, then I have not accomplished

10:39:04  5  anything if we go that way, because I'm going to have a whole

10:39:07  6  series of motions that have been described by not only other

10:39:11  7  defendants but you as intervenor.

10:39:13  8       So it looks like we are -- nobody has offered me a

10:39:16  9  better solution.  Where am I wrong?  Am I now back to looking

10:39:22  10  at the 593 case and looking at the 593 case alone and worrying

10:39:27  11  about the 771 case another day?

10:39:31  12       One of these days, perhaps over a drink, I would like

10:39:34  13  to hear why Bandspeed chose to file one case in the Eastern

10:39:38  14  District and one case in the Western District.  But I don't

10:39:43  15  need to worry about that right now.  If they had both been

10:39:46  16  filed here in the first instance, I would be a lot further

10:39:49  17  along with both of these cases than having them split up.

10:39:55  18       But I understand what you're saying about joinder.

10:40:00  19  So if I'm now discussing with you the 593 case alone, how much

10:40:07  20  time do you need to get it to trial?  And I'm not going to give

10:40:10  21  you a whole lot, because you both ought to be pretty familiar

10:40:14  22  with it.

10:40:14  23       MS. FROST:  Your Honor, from our standpoint whether

10:40:16  24  it's a -- and I'll at my own peril here suggest a second

10:40:24  25  alternative.  If it's not the 593 case, I think another case

| | | |
|---|---|---|
| 10:40:28 | 1 | that could proceed with equal dispatch and achieve an awful lot |
| 10:40:32 | 2 | is a CSR only case going first.  So that case could actually go |
| 10:40:34 | 3 | to trial first.  That case would be your chip supplier |
| 10:40:37 | 4 | solution. |
| 10:40:39 | 5 | The other parties could do whatever they're talking |
| 10:40:41 | 6 | about that has all this delay in discovery built into it over |
| 10:40:45 | 7 | here in a second case that would involve other chip suppliers. |
| 10:40:49 | 8 | But the CSR-only case would in fact resolve I would say |
| 10:40:53 | 9 | 80 percent of the dispute that's in this courtroom right now |
| 10:40:58 | 10 | currently. |
| 10:40:58 | 11 | It doesn't matter, by the way, and I'm sure the Court |
| 10:41:01 | 12 | is well aware, the CSR declaratory judgment action covers all |
| 10:41:05 | 13 | CSR products regardless of whether they have been accused, |
| 10:41:11 | 14 | regardless of whether the customers who use them are in the |
| 10:41:13 | 15 | courtroom or not.  It covers the waterfront.  So it's a very |
| 10:41:17 | 16 | big dispute resolution device that the Court could use |
| 10:41:21 | 17 | separately.  Use it as the bellwether, if you will, for the |
| 10:41:23 | 18 | rest of these cases and go ahead and go to trial.  And I think |
| 10:41:26 | 19 | we could get to trial in that case or in the 593 case, either |
| 10:41:30 | 20 | one, in Q1 of 2013, maybe Q2. |
| 10:41:36 | 21 | THE COURT:  I was thinking earlier than that.  What |
| 10:41:38 | 22 | do you need to do to get that case ready to go to trial? |
| 10:41:41 | 23 | MS. FROST:  We need regular discovery, Your Honor. |
| 10:41:44 | 24 | THE COURT:  Well, how long do you need?  I don't want |
| 10:41:46 | 25 | to hear generalities. |

| | | |
|---|---|---|
| 10:41:48 | 1 | MS. FROST: Well -- |
| 10:41:48 | 2 | THE COURT: I think we can get it to trial in a year. |
| 10:41:51 | 3 | MS. FROST: And that's pretty much -- |
| 10:41:52 | 4 | THE COURT: Or less. Next fall would be what I would |
| 10:41:54 | 5 | have in mind. And I think you can get all the discovery done |
| 10:41:58 | 6 | in that period of time. Mr. Goodpastor? |
| 10:42:04 | 7 | MR. GOODPASTOR: Your Honor, we did submit a |
| 10:42:05 | 8 | scheduling order with the 593 case with the current parties |
| 10:42:10 | 9 | only. And, basically, it took our scheduling order that we had |
| 10:42:13 | 10 | proposed last time we were here for that portion and just moved |
| 10:42:16 | 11 | it back a couple of months. And we ended up hitting the |
| 10:42:19 | 12 | holiday, so it actually moves it to the first quarter of 2013. |
| 10:42:23 | 13 | A couple of points, though, with the joinder issue, I |
| 10:42:26 | 14 | think if you decide ultimately you need to have separate trials |
| 10:42:31 | 15 | with separate IC makers, you can do that. But the discovery is |
| 10:42:34 | 16 | going to be the same. |
| 10:42:39 | 17 | And so -- |
| 10:42:41 | 18 | THE COURT: That's the other thing to discuss, and |
| 10:42:45 | 19 | you raise it appropriately. But go ahead. |
| 10:42:45 | 20 | MR. GOODPASTOR: And so we're not sure that really |
| 10:42:47 | 21 | creates a problem that would prevent you from going ahead |
| 10:42:51 | 22 | according to your original plan. |
| 10:42:53 | 23 | And I'm not sure if the recent revision to the |
| 10:42:58 | 24 | Patent Act will have any effect on that at all given the nature |
| 10:43:01 | 25 | of the way those defendants or third parties would be brought |

| | |
|---|---|
| 10:43:04 | 1 |

10:43:04  1  in.

10:43:05  2         So we still think, you know, we're ready to go

10:43:08  3  forward.  We have a proposed schedule for a 593 case alone, if

10:43:11  4  that's the course you want to take.  But we also think that you

10:43:14  5  can proceed down your original course as well.

10:43:17  6         In both cases, though, we're going to have to add new

10:43:20  7  products and in both cases we're going to have the same issues

10:43:23  8  about needing discovery to assert claims against CSR as well as

10:43:27  9  do infringement contentions against CSR.  So we're going to

10:43:32  10 encounter those problems and those discovery issues whether you

10:43:35  11 go forward with the 593 case alone or you go forward with your

10:43:39  12 original plan.  And I want to make the Court aware of that.

10:43:43  13        But given that additional discovery needed in the 593

10:43:47  14 case alone and where we are today, we've submitted this new

10:43:50  15 proposed order.  And I think it's essentially in line with what

10:43:54  16 you suggested, but we knocked it to the first quarter of 2013

10:43:58  17 because of some holiday issues surrounding different key dates

10:44:03  18 in the order.

10:44:08  19        THE COURT:  Mr. Weaver?

10:44:10  20        MR. WEAVER:  Your Honor, I actually think you got it

10:44:13  21 exactly right when you started out this morning.  You should --

10:44:18  22        THE COURT:  You're the only one.

10:44:19  23        MR. WEAVER:  I actually don't think -- I'll use the,

10:44:24  24 I guess it was President Nixon's phrase, the silent majority.

10:44:28  25 I think the vast majority of folks in this room prefer a chip

10:44:33    1    supplier-only trial.  Whether as Ms. Frost suggests there would
10:44:38    2    be potentially two, three, or four chip supplier trials, we
10:44:43    3    both know that the chance of all of them going to trial reduces
10:44:49    4    dramatically as you approach the courthouse steps.  But that
10:44:53    5    is -- that is an issue for another day.
10:44:55    6            The issue is what is the most efficient way for this
10:45:00    7    Court to conduct this case between now and when it eventually
10:45:05    8    goes to trial.  And I submit that the chip supplier-only option
10:45:08    9    is the most efficient way to do it.
10:45:10   10            The difference in timing I find a little bit
10:45:14   11    curious.  What I heard Ms. Frost say was that we do either a
10:45:20   12    first quarter or second quarter of 2013 trial.  That's what
10:45:23   13    Mr. Goodpastor just said.  And the proposal by the chip
10:45:26   14    supplier-only model has us doing it in the summer of 2013.
10:45:31   15    Those sound like a difference without a distinction.  We'd be
10:45:35   16    on the same approximate schedule, discovery would go hand in
10:45:39   17    hand in both cases for all chip suppliers, and it would be the
10:45:44   18    most efficient way to dispatch this case.
10:45:46   19            I submit you've got it right as you've currently got
10:45:50   20    it contemplated.
10:45:53   21            THE COURT:  Ms. Frost?
10:45:55   22            MS. FROST:  I do have a couple of comments.  I do
10:46:00   23    think that CSR-only case will go much faster than a combined
10:46:07   24    chip supplier case, even if there are separate trials at the
10:46:10   25    end, principally because they are going -- there is going to be

| | | |
|---|---|---|
| 10:46:14 | 1 | a very significant amount of delay in bringing in the |
| 10:46:19 | 2 | additional suppliers. |
| 10:46:20 | 3 | There are going to be multiple -- it will be on an |
| 10:46:23 | 4 | indemnity basis.  It's going to be contract -- on a contract |
| 10:46:27 | 5 | basis.  Each of these different defendants will have to bring |
| 10:46:30 | 6 | in a supplier based on a particular contract claim that it may |
| 10:46:35 | 7 | have based on an indemnity agreement under myriad laws of |
| 10:46:40 | 8 | myriad countries probably that will get before you.  Those |
| 10:46:44 | 9 | defendants who have not -- those suppliers who have not stepped |
| 10:46:47 | 10 | up to the plate yet -- and it's been a long time -- won't be |
| 10:46:51 | 11 | here voluntarily.  You will have a very arduous motion practice |
| 10:46:57 | 12 | before you. |
| 10:46:57 | 13 | Those parties, if they are ultimately held in the |
| 10:47:00 | 14 | case, will want to have another look at the Markman.  And I |
| 10:47:06 | 15 | just see this as getting -- it's getting way off the track |
| 10:47:10 | 16 | by -- |
| 10:47:11 | 17 | THE COURT:  No.  Here -- but there are ways to do |
| 10:47:14 | 18 | this.  One is to proceed in that fashion and deal with things |
| 10:47:21 | 19 | as they come along.  We can proceed in one case with everything |
| 10:47:29 | 20 | parallel with the idea that CSR could very well be tried first |
| 10:47:35 | 21 | and tried alone.  I do not need and will not need to engage in |
| 10:47:39 | 22 | any additional claims construction with regard to getting that |
| 10:47:43 | 23 | issue to trial.  We and my chambers are capable of keeping |
| 10:47:48 | 24 | track of these things. |
| 10:47:49 | 25 | The most important thing about putting these cases in |

| | | |
|---|---|---|
| 10:47:55 | 1 | some way together is to get all of the discovery in a position |
| 10:47:59 | 2 | where it can be used in any case, whenever it's tried, and we |
| 10:48:02 | 3 | don't have complaints that somebody didn't get the opportunity |
| 10:48:05 | 4 | to engage in that discovery.  That's why we're having this |
| 10:48:09 | 5 | conference, is because I can think of a million ways to handle |
| 10:48:14 | 6 | this case. |
| 10:48:14 | 7 | And so, you know, we've had a lot roadblocks thrown |
| 10:48:19 | 8 | up here today.  But hearing from you, I can figure out ways to |
| 10:48:23 | 9 | resolve these things.  I can handle a motions practice very |
| 10:48:30 | 10 | easily.  There's nothing in the rules that compels me to deal |
| 10:48:33 | 11 | with a certain motion before I deal with another motion.  I can |
| 10:48:36 | 12 | see what the motions are and I may very well hold some |
| 10:48:39 | 13 | motions.  Just because somebody jumps in and wants to file a |
| 10:48:47 | 14 | motion for severance or separate trials doesn't mean I have to |
| 10:48:50 | 15 | rule on it right of way. |
| 10:48:52 | 16 | Just because somebody jumps in and wants to do |
| 10:48:55 | 17 | additional claims construction, then I can deal with that as we |
| 10:48:58 | 18 | come along.  And if I need to schedule another claims |
| 10:49:01 | 19 | construction along the way at the same time, you're getting the |
| 10:49:04 | 20 | discovery you need and we're working toward getting one case to |
| 10:49:07 | 21 | trial, and if we can combine other cases with that, fine. |
| 10:49:10 | 22 | I don't find this that hard.  I find that you have a |
| 10:49:13 | 23 | lot harder job than I do, and that you need to spend a whole |
| 10:49:18 | 24 | lot of time and it's hard with a group this large working out |
| 10:49:21 | 25 | these little nuances.  But there's not going to be a perfect |

10:49:26  1   solution to this.  This is going to be a difficult case for me,

10:49:29  2   and it's going to be a difficult case for you.  And that's just

10:49:33  3   the world we live in.

10:49:35  4        And what I want to do is get it moved along in a way

10:49:38  5   that gets it to trial.  I'm a lot more concerned about getting

10:49:43  6   it to trial.  I think many of you have heard this speech

10:49:46  7   before, but we spend as much time trying to out-plead one

10:49:51  8   another as we do trying a case -- in most cases, more.  This

10:49:57  9   case, if we tried it altogether, if I combined the two cases

10:50:02  10  and schedule one trial, we do it all at one time.  It's still

10:50:06  11  going to take less time than all of the time y'all are going to

10:50:10  12  spend filing motions, many of which I can just tell you,

10:50:13  13  because I've been down the road before, are not going to be

10:50:16  14  well-taken.  But everybody is going to be proud of them, and

10:50:19  15  their clients are going to be happy with them and we're going

10:50:22  16  to go that way.

10:50:23  17       So, on the one hand, I'm very moved toward getting

10:50:27  18  this case moved -- moving as a combined thing because that gets

10:50:31  19  discovery going.  And it gets discovery in a way that it can be

10:50:36  20  used in every case no matter how much we divide it up later.

10:50:42  21       MS. FROST:  I think -- may I respond to one part of

10:50:44  22  that, Your Honor?  I think the discovery that's unique to CSR,

10:50:48  23  obviously, Bandspeed's already -- as I understand it, Bandspeed

10:50:53  24  has already done its document production under the Eastern

10:50:57  25  District rules.  So it's got it all locked an loaded over

10:50:59  1  there.

10:50:59  2       The CSR discovery will actually be only unique to CSR

10:51:03  3  and its customer defendants.  It won't be usable by, and I

10:51:07  4  submit shouldn't be really accessible to, the Broadcoms and the

10:51:12  5  others because, I mean, obviously this is source code, this is,

10:51:16  6  you know, very confidential information and proprietary

10:51:19  7  information and very aggressive competitors.

10:51:22  8       THE COURT:  I don't -- that's really easy to do.

10:51:24  9       MS. FROST:  Right.  But it's out of sync in the

10:51:27  10  schedule.

10:51:28  11       THE COURT:  Yeah.  Because it got out of sync when I

10:51:31  12  got a second case.

10:51:32  13       MS. FROST:  I understand.

10:51:33  14       THE COURT:  Like I said this is just hard.  It's not

10:51:35  15  going to go on a perfect way.  The way to handle this

10:51:39  16  information that's proprietary is not rely on a protective

10:51:45  17  order that we provide in our local rules as a default

10:51:48  18  protective order.  Sit down and work out protective orders on

10:51:52  19  various classes of documents.

10:51:54  20       MS. FROST:  Right.  Which we'll do.

10:51:55  21       THE COURT:  And that can be done.  What it may mean

10:52:00  22  is that y'all have to recognize that this is going to be the

10:52:06  23  squeaky wheel that's going to need your grease for a year and a

10:52:11  24  half as opposed to all other case that you have.  Maybe I can

10:52:15  25  help you with your billable hours for 2012, too.

| | | |
|---|---|---|
| 10:52:18 | 1 | MS. FROST:  Well, my biggest concern, Your Honor, is |
| 10:52:20 | 2 | this, is that we're going to get the CSR -- we're ready to go. |
| 10:52:22 | 3 | You know, we're ready to go get our case set for trial, and we |
| 10:52:25 | 4 | think we can do it in 12 months.  We'll do our discovery with |
| 10:52:28 | 5 | Bandspeed who has got a head start on us because they've |
| 10:52:31 | 6 | already done a lot in the Eastern district.  But we'll get our |
| 10:52:35 | 7 | discovery done, and then there will be this -- there will be |
| 10:52:40 | 8 | this disconnect, there will be all of this activity on the |
| 10:52:42 | 9 | other side of the case where we're stymied because we can't go |
| 10:52:45 | 10 | forward with things because that -- this group is now -- |
| 10:52:50 | 11 | THE COURT:  No. |
| 10:52:52 | 12 | MS. FROST:  -- stuck. |
| 10:52:52 | 13 | THE COURT:  I can get you to trial.  I can give you a |
| 10:52:55 | 14 | separate trial.  That is not a problem with me.  I've said |
| 10:53:00 | 15 | earlier I think the CSR case can go to trial next winter. |
| 10:53:04 | 16 | MS. FROST:  Okay. |
| 10:53:05 | 17 | THE COURT:  I don't think we have to wait for the |
| 10:53:06 | 18 | first quarter of 2013.  But we might. |
| 10:53:14 | 19 | But here is the deal:  Just because if I were to say |
| 10:53:23 | 20 | I'm going to do a supplier option first and you raise the |
| 10:53:30 | 21 | question of whether there would be misjoinder doesn't mean that |
| 10:53:34 | 22 | I can't solve the joinder problems later -- |
| 10:53:36 | 23 | MS. FROST:  Absolutely. |
| 10:53:38 | 24 | THE COURT:  -- and still get you to trial. |
| 10:53:39 | 25 | MS. FROST:  Absolutely. |

10:53:41   1          THE COURT:  I see no reason why we can't get all of
10:53:43   2    the parties in here and worry about what we're going to do with
10:53:47   3    them later.  I just want everybody that's going to get sued
10:53:50   4    under these patents and that has a stake in these patents in
10:53:54   5    front of me so I can deal with it instead of leaving anything
10:53:58   6    else handing -- hanging out there.
10:54:00   7          I can tell you and I'll tell the plaintiffs that at
10:54:04   8    some point you're going to have run your string on new products
10:54:11   9    you want to bring and I'm not going to care very much about if
10:54:14  10    you got objections about it later.  At some point you have to
10:54:17  11    say, If we win, we're going to get enough money off of these
10:54:20  12    products.  And that's just the way it's going to be because
10:54:23  13    that's the way it is.
10:54:25  14          Now, you know, I'm not hearing a whole lot here that
10:54:28  15    makes me think that you-all are capable of sitting down and
10:54:34  16    working out an order on this.  I've got -- I mean, a schedule
10:54:38  17    on this.  I've got some proposals from the plaintiffs that I
10:54:42  18    can -- I can start with on this.  But it continues to sound to
10:54:48  19    me like that probably what I need to do is render an order that
10:54:56  20    allows discovery to go forward.  It's not the way I like to do
10:55:00  21    it, but I'm not a one-size-fits-all guy.  And even though this
10:55:05  22    will be a little bit different than the way I usually handle
10:55:10  23    patent cases, this is a little bit different than the usual
10:55:12  24    patent cases that I get.
10:55:14  25          So if I need to carve out and do another Markman

| | | |
|---|---|---|
| 10:55:21 | 1 | after we get everybody in here, I will do that related to those |
| 10:55:25 | 2 | things and if I need to work out a separate track. |
| 10:55:28 | 3 | But I don't -- the biggest thing I want to avoid in |
| 10:55:32 | 4 | this case, if I can possibly avoid it, is two separate sets of |
| 10:55:38 | 5 | discovery being done, because that is really, really |
| 10:55:43 | 6 | ineffective for you and a nightmare for me.  I want everything |
| 10:55:49 | 7 | that is discovered regarding these patents to be capable of |
| 10:55:54 | 8 | being used in every case that we may end up trying on it. |
| 10:55:57 | 9 | You know, it's not that hard.  You know, we get all |
| 10:56:01 | 10 | of the discovery done, you either get it settled or we go to |
| 10:56:05 | 11 | trial.  If we need to have several trials, we have several |
| 10:56:08 | 12 | trials.  You know, I could be trying you guys three times or I |
| 10:56:12 | 13 | could try three felony cases.  You know, a trial is a trial as |
| 10:56:16 | 14 | far as I'm concerned. |
| 10:56:18 | 15 | You came armed with something, Ms. Frost. |
| 10:56:20 | 16 | MS. FROST:  I did.  A CSR-only proposal so the Court |
| 10:56:25 | 17 | can see what we had in mind.  And it's not -- in terms of |
| 10:56:27 | 18 | timing, we've got Q1 of 2013, so it's not different terribly |
| 10:56:33 | 19 | from Bandspeed.  But it is a little different and just involves |
| 10:56:35 | 20 | our case.  And on discovery, obviously, you know, what CSR has |
| 10:56:40 | 21 | will be useful for it and for its customers.  I think it's the |
| 10:56:46 | 22 | Bandspeed discovery that will be the most applicable across the |
| 10:56:51 | 23 | spectrum of products and parties. |
| 10:57:51 | 24 | THE COURT:  Well, we are at a situation where no |
| 10:58:14 | 25 | matter what I do, we're going to have at least some differing |

| | | |
|---|---|---|
| 10:58:20 | 1 | tracks, because I have got to deal with a track -- track that |
| 10:58:28 | 2 | allows the plaintiff to assert additional infringing products |
| 10:58:39 | 3 | and the defendants an opportunity to determine whether they |
| 10:58:42 | 4 | want to implead other chip suppliers.  Because that is the only |
| 10:58:50 | 5 | way to -- that I see to get to a point where we have everybody |
| 10:58:59 | 6 | in this case that needs to get in this case or that anybody |
| 10:59:02 | 7 | wants to get in this case. |
| 10:59:04 | 8 | There is no reason why that can't be occurring while |
| 10:59:11 | 9 | we are proceeding ahead toward a Bandspeed CSR trial.  We are |
| 10:59:22 | 10 | just going to have to combine everything and have it moving in |
| 10:59:26 | 11 | some parallel nature, which appears to me that I just need to |
| 10:59:45 | 12 | sit down and come up with an order and just tell you-all what |
| 10:59:50 | 13 | it is and you have to live with it. |
| 10:59:54 | 14 | I will tell you, Mr. Goodpastor, Mr. Sauer, just at a |
| 11:00:02 | 15 | quick glance, I don't see a whole lot wrong with Ms. Frost's |
| 11:00:10 | 16 | proposal in getting CSR to trial.  I can always change my mind |
| 11:00:23 | 17 | about trying it first later as we proceed, but we need to |
| 11:00:28 | 18 | proceed in this case. |
| 11:00:40 | 19 | For instance, you-all could easily agree on the |
| 11:00:47 | 20 | protective order and serve initial disclosures.  I think |
| 11:00:58 | 21 | amended pleadings would pretty much take care of itself |
| 11:01:04 | 22 | because, if I'm going to allow you to amend for the lawsuit as |
| 11:01:11 | 23 | a whole, then other parties get to amend their responses or |
| 11:01:18 | 24 | whatever they have without leave. |
| 11:01:33 | 25 | So let me hear from anybody else that wants to talk |

| | | |
|---|---|---|
| 11:01:36 | 1 | about this.  There is not a consensus conclusion to this. |
| 11:01:43 | 2 | That's why I get paid the little bucks.  I will sit down -- |
| 11:01:48 | 3 | MR. WEAVER:  Your Honor, David Weaver on behalf of |
| 11:01:51 | 4 | RIM.  And others can -- can say if they disagree, but |
| 11:01:57 | 5 | Bandspeed's proposal that they submitted to Your Honor for the |
| 11:02:02 | 6 | chip supplier trial, we're fine with the dates that they've |
| 11:02:06 | 7 | proposed in there, at least conceptually, with the exception of |
| 11:02:09 | 8 | the one that I brought to Your Honor's attention, which is the |
| 11:02:12 | 9 | date for us to bring in the chip suppliers from the new |
| 11:02:18 | 10 | products which we said was 30 days rather than 14. |
| 11:02:22 | 11 | THE COURT:  Right.  Now, which date is that in the |
| 11:02:24 | 12 | order of the schedule that Ms. Frost proposed? |
| 11:02:28 | 13 | MR. WEAVER:  So she does not have that date.  I guess |
| 11:02:30 | 14 | the closest would be her deadline to amend pleadings.  So she's |
| 11:02:40 | 15 | got a date ... |
| 11:02:45 | 16 | THE COURT:  Well, that's why I said I'm going to have |
| 11:02:48 | 17 | work out -- neither one of -- none of the three proposals that |
| 11:02:51 | 18 | I have handle everything. |
| 11:03:02 | 19 | Now, let me ask you a question:  Under the |
| 11:03:05 | 20 | spreadsheet proposal for a general chip supplier trial, the |
| 11:03:08 | 21 | plaintiff had proposed a week after the scheduling order -- |
| 11:03:17 | 22 | now, I want to make sure I understand -- to file their amended |
| 11:03:21 | 23 | complaint.  Did you want 30 days after the filing of that |
| 11:03:24 | 24 | amended complaint or 30 days ... |
| 11:03:30 | 25 | MR. WEAVER:  After the amended compliant.  Yes, Your |

11:03:33    1    Honor.  That is where we would get the names of the products --

11:03:36    2    the new accused products.

11:03:37    3            THE COURT:  The difference is they had presumed they

11:03:40    4    would file leave to amend.  I'm not going to deal with leave to

11:03:43    5    amend.  I'm going to allow amendments.

11:03:54    6            MR. WEAVER:  So it would be 30 days after we got that

11:03:56    7    amended compliant.

11:03:57    8            THE COURT:  Well, I can work that into this.

11:04:04    9    Ms. Frost, on your proposal with regard to CSR, what did you

11:04:12   10    anticipate in the way of amended pleadings by February 21st?

11:04:22   11            MS. FROST:  I thought if the parties needed to clean

11:04:24   12    anything up in terms of eliminating affirmative defenses or

11:04:28   13    adding them or if Bandspeed had any claims they wanted to ask,

11:04:33   14    for example, we would want to do more discovery on equitable

11:04:37   15    conduct, for instance, to see if that was something we would

11:04:39   16    want to add because of the heightened pleading requirements and

11:04:42   17    the Rule 11 requirements for that.

11:04:44   18            I don't envision this is a product add amendment

11:04:49   19    because, as I mentioned, all CSR products are at issue

11:04:52   20    irrespective of that.

11:04:54   21            THE COURT:  No.  I understand that.  But I'm trying

11:04:56   22    to combine these two things so it works out.

11:04:58   23            MS. FROST:  Right.  I understand.

11:04:58   24            THE COURT:  If the plaintiff were to amend, then we

11:05:04   25    don't solve the whole amendment problem by giving a

| 11:05:13 | 1 | February 21st deadline to amend because we're still going to be |
| 11:05:18 | 2 | involved in fact discovery until August, which means, if I were |
| 11:05:30 | 3 | to look at this the way you have it, I can assure you I'm still |
| 11:05:33 | 4 | looking potentially at motions for leave to amend later when |
| 11:05:37 | 5 | you finish your discovery. |
| 11:05:40 | 6 | So I don't accomplish a whole lot by giving you a |
| 11:05:44 | 7 | February 21st deadline to cut off amended pleadings.  What I do |
| 11:05:51 | 8 | accomplish is giving -- your all discovery completion date is |
| 11:06:00 | 9 | not until November 7th.  But what I give you is -- give the |
| 11:06:10 | 10 | plaintiff an opportunity to amend, the defendants an |
| 11:06:15 | 11 | opportunity to implead other parties and to answer the amended |
| 11:06:25 | 12 | pleading, and then I still have another round of amended |
| 11:06:27 | 13 | pleadings somewhere that needs to be worked in. |
| 11:06:30 | 14 | MS. FROST:  My proposal, because it's CSR-only, |
| 11:06:35 | 15 | didn't envision any impleader.  So it was really just cleaning |
| 11:06:39 | 16 | up amendments more than anything else.  I thought we -- some of |
| 11:06:42 | 17 | the stipulated discovery things we talked about in the |
| 11:06:45 | 18 | CSR-Bandspeed camp that I thought we could probably get to.  We |
| 11:06:50 | 19 | would get comfortable with what we needed generally by then. |
| 11:06:54 | 20 | But, I mean, obviously, I'm not wedded to that date at all. |
| 11:06:58 | 21 | THE COURT:  All right.  Anything else from anybody? |
| 11:07:17 | 22 | (No response) |
| 11:07:17 | 23 | THE COURT:  All right.  Here is what I'm going to |
| 11:07:19 | 24 | do:  I'm going to consolidate the two cases, because that will |
| 11:07:35 | 25 | put everything together for purposes of discovery.  Then I'm |

11:07:44　1　going to render a scheduling order that will look similar but

11:07:50　2　not exactly like any of the proposals that I have.  It is far

11:07:58　3　and away not going to be a perfect scheduling order, but it

11:08:05　4　will get this thing moving.

11:08:09　5　　　　It is my intention right now, subject to changing

11:08:15　6　later, to draft that scheduling order in such a manner as it

11:08:27　7　gets us moving most quickly toward trying Bandspeed and CSR.

11:08:35　8　So it will probably be a hybrid type of all claims and

11:08:45　9　supplier-first options, but not perfect.

11:08:54　10　　　　There will be a supplement to that scheduling order

11:08:58　11　filed after I see who else is brought into the case and when

11:09:04　12　they answer and what we may need to do with regard to

11:09:13　13　accommodating those parties on additional claims that need to

11:09:21　14　be construed and things of that nature.  So the scheduling

11:09:27　15　order, what you need to understand -- and it will be difficult

11:09:29　16　for you -- will end up with various tentacles going out from it

11:09:36　17　to do certain things.

11:09:37　18　　　　It will undoubtedly involve us having other

11:09:44　19　conferences.  A couple of you inquired as to whether you can

11:09:52　20　appear by phone.  The reason the answer was no -- and that will

11:09:54　21　probably continue to be -- is you look at the number of people

11:09:57　22　you have in this room.  We're likely to have some more.  Maybe

11:10:00　23　we'll lose a few if there are additional settlements.  But we

11:10:07　24　end up taxing the limited electronic abilities that the

11:10:18　25　Judicial Branch has due to the actions of the Legislative

11:10:23  1  Branch, and so it will just be necessary to probably get you

11:10:28  2  all in here.

11:10:30  3       I will say this, as I have said before:  I realize

11:10:35  4  it's hard for a lot of lawyers and your clients to understand

11:10:39  5  this.  But when we have a conference, I can get by with one

11:10:46  6  lawyer to a party.  If you want to have additional lawyers to a

11:10:50  7  party, that's fine.  I'm not excluding that.  But when your

11:10:55  8  clients inquire as to why do we have to have two lawyers

11:10:58  9  there?  Why can't some of them be on the phone?  The reason

11:11:02  10  that I can't have some of them on the phone is because of our

11:11:05  11  capabilities here.  So if you want to send four lawyers, you're

11:11:09  12  welcome to.  If you only want to send one to the conferences,

11:11:13  13  you can.  So take that back to your general counsels and your

11:11:16  14  clients.

11:11:17  15       But it's my intention that, because of the size of

11:11:21  16  this case, we're going to have all of our conferences done like

11:11:27  17  we did today, because if I allow one of you the opportunity to

11:11:31  18  appear by phone, I have to allow all of you the opportunity to

11:11:35  19  appear by phone.  And that's what I can't get to with the size

11:11:39  20  like this.

11:11:39  21       I'm sure that all of you have law firm capabilities

11:11:47  22  that are better than what we have here.  Someday you will start

11:11:51  23  having these hearings in somebody's office, and then everybody

11:11:55  24  can appear by phone.  But we can't do it here.

11:11:58  25       So is there anything that anyone wants to say while

11:12:00  1  I've got you all here together?  If not, I will get out an

11:12:07  2  order.  Some will like it, some will not, or perhaps all of you

11:12:11  3  will not.  But it will at least get us moving, and it will

11:12:14  4  consolidate the cases and it will set an overall scheduling

11:12:18  5  order and it will incorporate, at least in this first instance,

11:12:22  6  the idea that Bandspeed and CSR will go to trial first at this

11:12:27  7  point.

11:12:27  8          So that's where we're headed.  Everybody be safe over

11:12:34  9  the holidays.  It was good seeing you here today, and we'll

11:12:38 10  move forward.  So at this time, the Court's in recess.

11:12:42 11          (End of transcript)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **UNITED STATES DISTRICT COURT      )**

2    **WESTERN DISTRICT OF TEXAS          )**

3         I, Arlinda Rodriguez, Official Court Reporter, United

4    States District Court, Western District of Texas, do certify

5    that the foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7         I certify that the transcript fees and format comply with

8    those prescribed by the Court and Judicial Conference of the

9    United States

10        WITNESS MY OFFICIAL HAND this the 14th day of

11   December 2011.

12

13                                   /S/ Arlinda Rodriguez
                                     Arlinda Rodriguez, Texas CSR 7753
14                                   Expiration Date:  12/31/2012
                                     Official Court Reporter
15                                   United States District Court
                                     Austin Division
16                                   200 West 8th Street, 2nd Floor
                                     Austin, Texas 78701
17                                   (512) 916-5143

18

19

20

21

22

23

24

25