```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                       AUSTIN DIVISION

 3   BANDSPEED, INC., CAMBRIDGE SILICON RADIO LIMITED,      )
                                                            )
 4   VS.                                                    ) AU:11-CV-00771-LY
                                                            )
 5   ACER, INC., ACER AMERICA CORPORATION, BELKIN           )
     INTERNATIONAL, INC., BELKIN, INC., CASIO COMPUTER CO., )
 6   LTD., CASIO HITACHI MOBILE COMMUNICATIONS CO., LTD.,   )
     CASIO AMERICA, INC., DELL INC., GARMIN INTERNATIONAL,  )
 7   INC., GARMIN USA, INC., GN NETCOM A/S, GN U.S., INC.,  )
     HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD DEVELOPMENT   )
 8   COMPANY, L.P., HTC CORPORATION, HTC AMERICA, INC., HUAWEI)
     TECHNOLOGIES COMPANY, LTD., KYOCERA CORPORATION, KYOCERA )
 9   INTERNATIONAL, INC., KYOCERA COMMUNICATIONS, INC.,     )
     KYOCERA WIRELESS CORPORATION, LENOVO (UNITED STATES)   )
10   INC., LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., )
     LG ELECTRONICS MOBILECOMM U.S.A., INC., MOTOROLA       )
11   SOLUTIONS, INC., NOKIA CORPORATION, NOKIA INC., PANTECH )
     WIRELESS, INC., PLANTRONICS, INC., RESEARCH IN MOTION  )
12   LIMITED, RESEARCH IN MOTION CORPORATION, SAMSUNG       )
     TELECOMMUNICATIONS AMERICA, LLC, TOMTOM INTERNATIONAL  )
13   B.V., TOMTOM, INC., TOSHIBA CORPORATION, TOSHIBA AMERICA )
     INFORMATION SYSTEMS, INC., TOSHIBA AMERICA, INC.,      )
14   BLUETOOTH SIG, INC., MOTOROLA MOBILITY, INC., PANTECH  )
     WIRELESS, INC., BELKIN, INC., BELKIN INTERNATIONAL, INC.,)
15   LENOVO (UNITED STATES) INC., MOTOROLA SOLUTIONS, INC., )
     TOSHIBA CORPORATION, TOSHIBA AMERICA, INC.,, TOSHIBA   )
16   AMERICA INFORMATION SYSTEMS, INC., TOMTOM, INC.,       )
     PLANTRONICS, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, )
17   LLC, HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD DEVELOPMENT)
     COMPANY, L.P., GARMIN USA, INC., GARMIN INTERNATIONAL, )
18   INC., KYOCERA COMMUNICATIONS, INC., KYOCERA            )
     INTERNATIONAL, INC., GN U.S., INC., GN NETCOM A/S, LG  )
19   ELECTRONICS, INC., LG ELECTRONICS MOBILECOMM U.S.A.,   )
     INC., LG ELECTRONICS U.S.A., INC., DELL INC., RESEARCH )
20   IN MOTION LIMITED, RESEARCH IN MOTION CORPORATION,     )
     HUAWEI TECHNOLOGIES COMPANY, LTD., HTC AMERICA, INC.,  )
21   HTC CORPORATION, TOMTOM INTERNATIONAL B.V., MOTOROLA   )
     MOBILITY, INC., BANDSPEED, INC., TOSHIBA AMERICA       )
22   INFORMATION SYSTEMS, INC., SONY ELECTRONICS INC., SONY )
     COMPUTER ENTERTAINMENT AMERICA, INC., LEGO SYSTEMS, INC.,)
23   PARROT, INC., SONY COMPUTER ENTERTAINMENT AMERICA, INC., )
     SONY ELECTRONICS INC., KYOCERA COMMUNICATIONS, INC.,   )
24   KYOCERA INTERNATIONAL, INC., CAMBRIDGE SILICON RADIO    )
     LIMITED, PARROT, INC., CAMBRIDGE SILICON RADIO LIMITED, )
25   CAMBRIDGE SILICON RADIO LIMITED, BLUETOOTH SIG, INC.   ) APRIL 12, 2012
```

```
 1            ************************************************
               TRANSCRIPT OF NON-EVIDENTIARY HEARING
 2               BEFORE THE HONORABLE LEE YEAKEL
              ************************************************
 3
     APPEARANCES:
 4
     FOR BANDSPEED, INC.:         KURT MATTHEW SAUER
 5                                DAFFER MCDANIEL, LLP
                                  700 LAVACA, SUITE 720
 6                                AUSTIN, TEXAS 78701

 7                                CHRISTOPHER V. GOODPASTOR
                                  WATT'S GUERRA CRAFT LLP
 8                                811 BARTON SPRINGS ROAD, SUITE 725
                                  AUSTIN, TEXAS 78704
 9
                                  ANDREW G. DINOVO
10                                ADAM G. PRICE
                                  7000 NORTH MOPAC, SUITE 350
11                                AUSTIN, TEXAS 78731

12                                PATRICK E. KING (VIA TELEPHONE)
                                  SIMPSON THACHER & BARTLETT LLP
13                                2550 HANOVER STREET
                                  PALO ALTO, CALIFORNIA 94304
14
                                  BRIAN AE SMITH (VIA TELEPHONE)
15                                DEWEY & LEBOEUF LLP
                                  1 MONTGOMERY ST., STE. 3500
16                                SAN FRANCISCO, CALIFORNIA 94104

17                                MICHAEL FALCON
                                  JUSTIN STREITBERGER
18
     FOR LEGO SYSTEMS, INC.:      STACY ALLEN
19                                JACKSON WALKER L.L.P.
                                  100 CONGRESS, SUITE 1100
20                                AUSTIN, TEXAS 78701

21                                NICHOLAS A. PISARSKY
                                  DAY PITNEY LLP
22                                242 TRUMBULL STREET
                                  HARTFORD, CONNECTICUT 06103-1212
23
     FOR CAMBRIDGE SILICON        CLAUDIA WILSON FROST
24   RADIO, LIMITED:              PILLSBURY WINTHROP SHAW PITTMAN
                                  909 FANNIN, SUITE 2000
25                                HOUSTON, TEXAS 77010
```

```
 1  APPEARANCES:
    (CONTINUED)
 2
    FOR LG ELECTRONICS, INC.:   WASIF QURESHI
 3                              FISH & RICHARDSON PC
                                1221 MCKINNEY ST, STE 2800
 4                              HOUSTON, TEXAS 77010

 5  FOR PARROT, INC.:           BRENNA G. NAVA
                                HAYNES AND BOONE, L.L.P.
 6                              112 EAST PECAN, SUITE 1200
                                SAN ANTONIO, TEXAS 78205
 7
    FOR ACER, INC.:             BRIAN CRAFT
 8                              FINDLAY CRAFT, LLP
                                6760 OLD JACKSONVILLE HWY, STE 101
 9                              TYLER, TEXAS 75703

10  FOR BELKIN INTERNATIONAL,   KEVIN JAMES TERRAZAS
    INC:                        YETTER COLEMAN LLP
11                              221 WEST 6TH STREET, SUITE 750
                                AUSTIN, TEXAS 78701
12
    FOR GARMIN INTERNATIONAL,   STEVEN J. WINGARD
13  INC.:                       SCOTT, DOUGLASS & MCCONNICO, LLP
                                600 CONGRESS AVENUE, SUITE 1500
14                              AUSTIN, TEXAS 78701

15                              MICHELLE L. MARRIOTT
                                ERISE IP, P.A.
16                              5251 W. 116TH PLACE
                                LEAWOOD, KANSAS 66211
17
    FOR KYOCERA INTERNATIONAL,  WILLIAM B. NASH
18  INC.:                       HAYNES AND BOONE, LLP
                                112 E. PECAN STREET, SUITE 1200
19                              SAN ANTONIO, TEXAS 78205

20  FOR HUAWEI TECHNOLOGIES     DANIEL T. O'BRIEN
    COMPANY, LTD.:              JONES DAY
21                              2727 NORTH HARWOOD STREET
                                DALLAS, TEXAS 75201-1515
22
    FOR RESEARCH IN MOTION, LTD: PHILIP W. WOO
23                              SIDLEY AUSTIN LLP - SAN FRANCISCO
                                555 CALIFORNIA STREET, SUITE 2000
24                              SAN FRANCISCO, CALIFORNIA 94104

25
```

```
 1  APPEARANCES:
    (CONTINUED)
 2                              DAVID B. WEAVER
                                JANICE LE TA
 3                              AJEET P. PAI
                                VINSON & ELKINS, LLP
 4                              2801 VIA FORTUNA, SUITE 100
                                AUSTIN, TEXAS 78746
 5
                                ANTHONY S. KIM
 6                              RESEARCH IN MOTION CORP.
                                2000 BRIDGE PKWY., STE. 100
 7                              REDWOOD CITY, CALIFORNIA 94065

 8  FOR MOTOROLA               BONNIE M. GRANT
    SOLUTIONS, INC.:           WILLIAM H. BOICE
 9                              KILPATRICK TOWNSEND AND
                                STOCKTON LLP
10                              1100 PEACHTREE ST. NE, SUITE 2800
                                ATLANTA, GEORGIA 30309
11
    FOR PLANTRONICS, INC.:     THOMAS E. BEJIN
12                              RADER FISHMAN & GRAUER
                                39533 WOODWARD AVENUE, SUITE 140
13                              BLOOMFIELD HILLS, MICHIGAN 48304

14  FOR TOSHIBA CORPORATION:   DAVID PHILIP WHITTLESEY
                                ANDREWS KURTH LLP
15                              111 CONGRESS AVENUE, SUITE 1700
                                AUSTIN, TEXAS 78701
16
    FOR BLUETOOTH SIG, INC.:   CLYDE M. SIEBMAN
17                              SIEBMAN REYNOLDS BURG PHILLIPS &
                                SMITH LLP
18                              300 NORTH TRAVIS STREET
                                SHERMAN, TEXAS 75090
19
    COURT REPORTER:            ARLINDA RODRIGUEZ, CSR
20                              200 WEST 8TH STREET
                                AUSTIN, TEXAS 78701
21                              (512) 916-5143

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 09:39:30 | 1 | (Open Court) |
| 10:02:58 | 2 | THE COURT:  Are there any lawyers left in Austin that |
| 10:03:01 | 3 | are not in front of me today?  Well, anybody who is left in |
| 10:03:10 | 4 | Austin who is not here and doesn't have a member of his or her |
| 10:03:13 | 5 | firm here clearly is suffering through the recession unlike the |
| 10:03:19 | 6 | rest of us. |
| 10:03:20 | 7 | I'm not going to take up your time going around the |
| 10:03:24 | 8 | room and having you announce.  Just whenever you get up to |
| 10:03:28 | 9 | speak, announce who you are and who you represent.  And before |
| 10:03:35 | 10 | everyone leaves, make sure that Ms. Rodriguez, the reporter, |
| 10:03:39 | 11 | has your appearance.  And we'll do it that way.  Otherwise, we |
| 10:03:43 | 12 | burn up what precious time I have to be here before my next |
| 10:03:48 | 13 | matter. |
| 10:03:49 | 14 | All right.  What we are here for is a hearing that |
| 10:03:57 | 15 | was ordered in my order of December 14th, 2011, which reads: |
| 10:04:09 | 16 | The case is set for a scheduling conference on Thursday, |
| 10:04:12 | 17 | April 12th, 2012 at 10 a.m. in Courtroom Number 1, second |
| 10:04:17 | 18 | floor, United States Courthouse, et cetera, to discuss |
| 10:04:21 | 19 | revisions to the order that I rendered that date that may be |
| 10:04:23 | 20 | necessary of additional chip manufactures or suppliers added as |
| 10:04:29 | 21 | parties in the case, as well as a schedule for the issues |
| 10:04:32 | 22 | beyond those in Bandspeed and CSR. |
| 10:04:36 | 23 | The Court anticipates determining all scheduling |
| 10:04:40 | 24 | matters not specifically addressed in this order at the |
| 10:04:42 | 25 | conference.  The parties are ordered to meet and confer prior |

10:04:45  1  to the conference to agree on a schedule that reasonably

10:04:55  2  accommodates one another.

10:04:57  3         Now, first off, however, before I get there, let me

10:05:00  4  say that paragraph 7 of that order states that on or before

10:05:03  5  April 5th, 2012, any chip supplier or manufacturer who has

10:05:06  6  joined as a party in this case after the date of this order

10:05:09  7  shall file and serve a list of claims other than those claims

10:05:13  8  construed in this Court's August 12th, 2011 claims construction

10:05:18  9  order contained in any patent-in-suit that the parties request

10:05:23  10 the Court to construe and any objection the party may have to

10:05:28  11 the Court's August 12th order.  In every respect, the Court's

10:05:31  12 August 12th order shall govern claims construction in the

10:05:35  13 consolidated case.

10:05:37  14        Although I got in a bunch of things recently, I would

10:05:47  15 say that this is an environmental disaster with the amount of

10:05:51  16 paperwork and things we've got, except some of you came in a

10:05:54  17 little early and heard me hearing closing arguments on the

10:05:59  18 Sierra Club case.  And lawyers pointed that out that in that

10:06:02  19 case, it is environmental cases that do the most damage to the

10:06:06  20 environment as opposed to patent cases.  So you-all are off the

10:06:10  21 hook on that.

10:06:11  22        But I have not found any additional lists of claims

10:06:20  23 that any party desires me to construe, nor have I found an

10:06:25  24 objection that any party may have to the August 12th order.  Am

10:06:29  25 I correct in that, or are there documents or electronic filings

| 10:06:35 | 1 | floating around that I have not yet seen, because that would |
| 10:06:38 | 2 | not be unusual? |
| 10:06:41 | 3 | MR. BOICE:  Your Honor, Bill Boice for Motorola. |
| 10:06:45 | 4 | THE COURT:  Come to the podium. |
| 10:06:45 | 5 | MR. BOICE:  Sorry, Your Honor.  Bill Boice for |
| 10:06:47 | 6 | Motorola.  I believe you are correct.  We are not seeking any |
| 10:06:50 | 7 | additional claims construction nor any objections. |
| 10:06:58 | 8 | THE COURT:  All right.  I just want to make sure, |
| 10:06:59 | 9 | because when I look at the docket in this case, we're already |
| 10:06:59 | 10 | at 877 documents.  And that presumes that the clerk got all of |
| 10:07:03 | 11 | the documents transferred over when I consolidated the existing |
| 10:07:07 | 12 | cases.  So I'm just trying to focus on what I have not dealt |
| 10:07:15 | 13 | with. |
| 10:07:15 | 14 | Now, the second matter, then -- we'll go to |
| 10:07:19 | 15 | paragraph 8 -- is the joint submission of proposed amended |
| 10:07:25 | 16 | scheduling orders.  Who wants to tell me about those?  I will |
| 10:07:34 | 17 | allow you to talk, but first let me address this to Ms. Frost. |
| 10:07:43 | 18 | Is CSR in any way a party to any of these proposed amended |
| 10:07:49 | 19 | scheduling orders?  It's easy for me to read everybody else, |
| 10:07:53 | 20 | but some of them are exhibits to others.  They only came in |
| 10:07:56 | 21 | yesterday.  I cannot tell you how thrilled I am to get things |
| 10:08:00 | 22 | of this length the day before I have a hearing scheduled.  So I |
| 10:08:05 | 23 | may not cover as much ground as I want to cover today, because |
| 10:08:10 | 24 | if my docket wasn't large enough, it has gone off the charts in |
| 10:08:14 | 25 | April and I have very little time in April. |

| 10:08:18 | 1 | Were it not for the fact that I was concerned that |
| 10:08:21 | 2 | many of you were not having good billing months in April, I |
| 10:08:24 | 3 | might have considered resetting this case.  So, Ms. Frost, what |
| 10:08:28 | 4 | is CSR's position on the joint proposed amended scheduling |
| 10:08:36 | 5 | orders?  And I presume you have seen them, number one? |
| 10:08:39 | 6 | MS. FROST:  Good morning, Your Honor.  And, yes, I |
| 10:08:40 | 7 | saw them briefly last evening, probably a little after they |
| 10:08:43 | 8 | were filed in the Court.  And right now there's nothing that |
| 10:08:47 | 9 | I'm aware of that impacts us directly. |
| 10:08:56 | 10 | THE COURT:  So then let me then speak with |
| 10:08:58 | 11 | Mr. Goodpastor about what they do, because I have not compared |
| 10:09:02 | 12 | the dates in them yet to the dates that I had previously |
| 10:09:06 | 13 | scheduled.  So tell me what you attempt to do by these orders. |
| 10:09:12 | 14 | MR. GOODPASTOR:  Chris Goodpastor for Bandspeed, |
| 10:09:17 | 15 | Your Honor.  Just one clarification with respect to what we've |
| 10:09:19 | 16 | proposed as it relates to the CSR case.  We sent an E-mail to |
| 10:09:24 | 17 | Ms. Frost yesterday with this one particular issue, and |
| 10:09:28 | 18 | Ms. Frost has told me that they oppose the addition of it. |
| 10:09:31 | 19 | But if you look on Exhibit A under -- on page 3 next |
| 10:09:36 | 20 | to the date, December 28th, 2012, Bandspeed proposes adding |
| 10:09:46 | 21 | another date by which we would limit our claims to ten in |
| 10:09:50 | 22 | advance of trial and we would also ask CSR limit their |
| 10:09:53 | 23 | invalidity references or accommodations to two at that time. |
| 10:09:57 | 24 | I understand that -- |
| 10:09:58 | 25 | THE COURT:  Where is that -- one of the things |

| | | |
|---|---|---|
| 10:10:00 | 1 | that -- you heard me say this before, but you always get to |
| 10:10:08 | 2 | hear me get on my high horse over and over again.  And some |
| 10:10:10 | 3 | people are new here, so they haven't heard this speech before. |
| 10:10:14 | 4 | Electronic filing is wonderful for lawyers and clerks |
| 10:10:16 | 5 | of court.  It is not particularly good for judges.  One of the |
| 10:10:25 | 6 | reasons it's not particularly good is represented by this |
| 10:10:27 | 7 | filing, in that I have no problem probably with the substance |
| 10:10:31 | 8 | of what you're doing, but it takes me a while to get what |
| 10:10:35 | 9 | you're referring to because when we print it out, it doesn't |
| 10:10:39 | 10 | give me tabbed pages where you can say, if you go to Tab A. |
| 10:10:43 | 11 | You can just tell me go to exhibit something, and that still |
| 10:10:48 | 12 | means I've got to flip through until I get to it. |
| 10:10:52 | 13 | So I am on page 3 of Exhibit A.  And what paragraph |
| 10:10:54 | 14 | are you referring to, Mr. Goodpastor. |
| 10:10:57 | 15 | MR. GOODPASTOR:  The top paragraph.  If you look at |
| 10:10:59 | 16 | the -- |
| 10:11:00 | 17 | THE COURT:  I've got it. |
| 10:11:01 | 18 | MR. GOODPASTOR:  -- case number, it's Document 867-1 |
| 10:11:04 | 19 | on page 3.  And the top paragraph is December 28th, 2012. |
| 10:11:09 | 20 | THE COURT:  All right.  And, Ms. Frost, what is your |
| 10:11:12 | 21 | or CSR's objection to that? |
| 10:11:15 | 22 | MS. FROST:  Your Honor, first I obviously missed it, |
| 10:11:18 | 23 | too, reading it on my Blackberry.  So I empathize. |
| 10:11:21 | 24 | THE COURT:  It's a hard effort.  I understand that. |
| 10:11:23 | 25 | MS. FROST:  Our objection is twofold.  First, in our |

| | | |
|---|---|---|
| 10:11:26 | 1 | scheduling order, I believe we have a date of August 4 -- |
| 10:11:32 | 2 | sometime in August for the close of fact discovery, and that it |
| 10:11:35 | 3 | was our understanding that the limitation of claims by -- by |
| 10:11:41 | 4 | Bandspeed would be made at the close of fact discovery and |
| 10:11:45 | 5 | before the commencement of expert discovery in order to try to |
| 10:11:50 | 6 | minimize inefficiencies and burdensomeness that having an |
| 10:11:54 | 7 | expert go through 50 claims and do an analysis of 50 claims, |
| 10:12:00 | 8 | when they're ultimately going to be boiled down to 10, seems |
| 10:12:05 | 9 | inefficient and wasteful to us. |
| 10:12:08 | 10 | So our proposal has always been, if claims are going |
| 10:12:12 | 11 | to be limited, which we believe they should be, they should be |
| 10:12:14 | 12 | limited at the close of discovery.  So for us that would be |
| 10:12:17 | 13 | August of 2012. |
| 10:12:18 | 14 | With regard to limiting the number of invalidity |
| 10:12:22 | 15 | contentions that we can make or references we can use, I have |
| 10:12:25 | 16 | frankly never had anybody ask me to do that before and I can't |
| 10:12:28 | 17 | possibly know whether that's a reasonable request at all until |
| 10:12:31 | 18 | I know which claims are at issue.  There may be claims about |
| 10:12:35 | 19 | which we have to combine references.  For example, for a 103 |
| 10:12:38 | 20 | rejection, we would -- our argument, for obviousness we would |
| 10:12:42 | 21 | make, we might need four or five claims for that -- four or |
| 10:12:46 | 22 | five references for that instead of just two.  So we can't |
| 10:12:50 | 23 | agree certainly in the abstract that, and I don't think we can |
| 10:12:53 | 24 | agree to it in principle at all.  And I'm sorry I missed it in |
| 10:12:57 | 25 | the order. |

| | | |
|---|---|---|
| 10:12:58 | 1 | THE COURT:  No.  That's all right.  And I applaud |
| 10:13:02 | 2 | Mr. Goodpastor for pointing it out. |
| 10:13:06 | 3 | MR. GOODPASTOR:  Your Honor, I have three bullet |
| 10:13:08 | 4 | points, if I may? |
| 10:13:09 | 5 | THE COURT:  You may. |
| 10:13:09 | 6 | MR. GOODPASTOR:  Okay.  The limitation that's |
| 10:13:12 | 7 | previously in the order after the close of fact discovery does |
| 10:13:15 | 8 | not expressly state the number of claimants that we're to limit |
| 10:13:19 | 9 | to. |
| 10:13:19 | 10 | THE COURT:  I know it doesn't. |
| 10:13:21 | 11 | MR. GOODPASTOR:  And, secondly, we do believe that |
| 10:13:23 | 12 | expert discovery is relevant to our further limitation to |
| 10:13:26 | 13 | claims.  It's our understanding that it's preferable to get |
| 10:13:32 | 14 | down to ten right before trial, and that's what we're trying to |
| 10:13:35 | 15 | do.  Also, we feel the same obligation should be put on CSR |
| 10:13:39 | 16 | with respect to invalidity. |
| 10:13:42 | 17 | My -- what I'm hearing from Ms. Frost is maybe they |
| 10:13:44 | 18 | have some problem with the number, but not the concept.  But we |
| 10:13:49 | 19 | think it would be appropriate, if we're going to limit and |
| 10:13:52 | 20 | offer to make that limitation to ten, that there should be some |
| 10:13:55 | 21 | limitations on the invalidity references. |
| 10:13:58 | 22 | THE COURT:  Well, I'm not going to take that up here |
| 10:14:00 | 23 | today.  It's something y'all should have discussed before you |
| 10:14:02 | 24 | came in here today.  I don't have time or the desire to conduct |
| 10:14:09 | 25 | conferences between the two of you.  Right now what I am trying |

```
10:14:18   1    to do is get the trial in this case, the first phase of it
10:14:31   2    between Bandspeed and CSR, to trial as I have previously
10:14:37   3    scheduled it.  Let me inquire, because I haven't read through
10:14:47   4    this, does your proposed scheduling changes affect the trial
10:14:53   5    date, Mr. Goodpastor.
10:14:57   6              MR. GOODPASTOR:  Or proposed scheduling changes do
10:14:59   7    not currently affect the trial date.  However, we do state in
10:15:02   8    our footnote on page 867-1 -- I think it's the one marked page
10:15:07   9    2 of 7 -- that much of this schedule depends upon our ability
10:15:13   10   to get the stipulated discovery from the -- what we call the
10:15:18   11   CSR end-product defendants.  That is the discovery we need from
10:15:24   12   those end-product defendants who use CSR chips to prosecute our
10:15:29   13   claims and defenses with respect to the CSR case.
10:15:32   14             It's discovery we've requested.  We think it's due.
10:15:36   15   But to kind of cut to the chase and streamline things as much
10:15:40   16   as possible, we put in very specific proposals about what
10:15:44   17   information needs to be disclosed on April 26th regarding all
10:15:49   18   of the end-product accused products, all of the chips used in
10:15:53   19   those accused products, and the volume of those products sold.
10:15:56   20   That information --
10:15:57   21             THE COURT:  All right.  Now, where do I find that?
10:15:59   22             MR. GOODPASTOR:  Your Honor, that is on document
10:16:01   23   867-1, page 2 of 7.  It's the first entry of April 26th, 2012.
10:16:11   24             THE COURT:  867-1.  Page 2 what?
10:16:17   25             MR. GOODPASTOR:  Page 2 of 7.  It's the very first
```

| | | |
|---|---|---|
| 10:16:19 | 1 | entry on Bandspeed's proposed order that's attached as |
| 10:16:23 | 2 | Exhibit A. |
| 10:16:25 | 3 | THE COURT:  All right.  I'm just trying to figure out |
| 10:16:28 | 4 | what page number.  Oh.  Two of seven.  I wasn't understanding |
| 10:16:31 | 5 | you.  All right.  And do you define in here "end-product |
| 10:16:42 | 6 | defendant"? |
| 10:16:43 | 7 | MR. GOODPASTOR:  We could add that. |
| 10:16:45 | 8 | THE COURT:  I mean, do they know who they are? |
| 10:16:47 | 9 | MR. GOODPASTOR:  It's everyone but Bluetooth SIG and |
| 10:16:50 | 10 | CSR. |
| 10:16:51 | 11 | THE COURT:  It's not hard. |
| 10:16:52 | 12 | MR. GOODPASTOR:  We can definitely add that.  But |
| 10:16:57 | 13 | what it does is we've asked for this information in discovery. |
| 10:17:00 | 14 | The end-product defendants have previously taken the |
| 10:17:03 | 15 | position -- I don't know if they continue to take the |
| 10:17:05 | 16 | position -- that they're not going to respond to the |
| 10:17:07 | 17 | discovery.  But I think we've had some discussions that -- |
| 10:17:10 | 18 | THE COURT:  Well, I'm going to tell you basically |
| 10:17:13 | 19 | where I am.  I'm tired of worrying about discovery.  My default |
| 10:17:16 | 20 | is probably going to be, after I talk to you-all today, to give |
| 10:17:20 | 21 | everybody all the discovery they want and be done with it.  I'm |
| 10:17:23 | 22 | tired of trying to manage discovery.  I'm tired of dealing with |
| 10:17:27 | 23 | y'all not being able to agree on it.  I understand that you |
| 10:17:31 | 24 | have good reasons, both of you, to resist things.  I'm just |
| 10:17:36 | 25 | tired of messing with it. |

```
10:17:36   1        I think I've given you ample time to reach
10:17:39   2   agreement.  You cannot do it.  I'm likely -- not to pick a
10:17:42   3   side, I'm likely to come down -- I'm in the latter stages of
10:17:46   4   dealing with the order that handles the previous discovery
10:17:53   5   requests between CSR and Bandspeed that you couldn't agree on
10:17:56   6   and the protective order that you can't agree on.
10:18:00   7        The problem that you run into is, once you can't
10:18:04   8   agree, it becomes mine.  That's why the taxpayers pay me.  And
10:18:13   9   what you run into is it takes me time to get things out because
10:18:17  10   of the other cases that I have on my docket.  That's the cross
10:18:21  11   you bear.  That will all get simpler when we get in the new
10:18:28  12   courthouse, because we will have sufficient courtrooms for me
10:18:31  13   to bring in a visiting judge to handle parts of my docket while
10:18:35  14   I work on other parts of my docket.  Right now I don't have any
10:18:38  15   place to put a visiting judge if I got one up here.  So it
10:18:46  16   takes me longer and is taking me longer to deal with those
10:18:48  17   matters than I thought it was going to take me to deal with
10:18:52  18   those matters.
10:18:53  19        So the problem that you-all face, and I say this to
10:18:59  20   everyone, is when you can't agree on something, it becomes mine
10:19:02  21   to work out, which I don't mind doing.  But it takes time to do
10:19:07  22   that.  And the time comes out of your time, when you could be
10:19:12  23   doing something else or knowing how you're going to approach
10:19:14  24   that.  And that's just the world you live in.  As I stated the
10:19:19  25   last time we were all together, lawyers have a hard job and not
```

| | | |
|---|---|---|
| 10:19:26 | 1 | every case is easy.  This case is a hard case, primarily |
| 10:19:33 | 2 | logistically.  I don't find it very difficult when I get the |
| 10:19:36 | 3 | time to look at parts of it substantively, but it is a logistic |
| 10:19:43 | 4 | problem for you-all and for the Courts. |
| 10:19:46 | 5 | One of things that was discussed at our last |
| 10:19:54 | 6 | conference is how we handle -- if there is not a settlement |
| 10:19:57 | 7 | after I try Bandspeed and CSR, the other cases, some people |
| 10:20:03 | 8 | have concern about the American Invents Act and whether one can |
| 10:20:08 | 9 | try this as a joint case.  I explained to everyone, and I hope |
| 10:20:12 | 10 | everyone is now comfortable with it, that I am not trying and |
| 10:20:16 | 11 | am not going against the American's Invents Act when I combine |
| 10:20:19 | 12 | everything for discovery. |
| 10:20:21 | 13 | To the extent there is disagreement on how to try the |
| 10:20:23 | 14 | other cases, the way we will handle that is divide it out into |
| 10:20:29 | 15 | the number of cases that the individual defendants desire to |
| 10:20:35 | 16 | have tried alone.  We will spend whatever time it takes to |
| 10:20:43 | 17 | select a series juries, and we will line the cases up in the |
| 10:20:46 | 18 | order they appear in the caption and try them *ad seriatim*.  As |
| 10:20:53 | 19 | soon as one jury goes out to deliberate, we will start the next |
| 10:20:56 | 20 | case.  I will have someone else handling the rest of my docket, |
| 10:20:59 | 21 | and we will just proceed ahead and move through them all. |
| 10:21:05 | 22 | To the extent that anybody desires to combine the |
| 10:21:10 | 23 | case and have one trial, I am not concerned about the length of |
| 10:21:14 | 24 | it.  I'm here full business days every day, and it matters not |
| 10:21:21 | 25 | to me if I'm trying one case for six weeks or I'm trying six |

| | | |
|---|---|---|
| 10:21:29 | 1 | cases in six weeks.  So you need not worry about our end on the |
| 10:21:35 | 2 | logistics. |
| 10:21:36 | 3 | The plan is going to be to try Bandspeed and CSR.  A |
| 10:21:44 | 4 | judgment is rendered in that case, and then we will get |
| 10:21:49 | 5 | together and determine what's left to try, and we're going to |
| 10:21:52 | 6 | schedule it at one time.  We will pick the juries.  There will |
| 10:21:58 | 7 | be six-person juries.  We will pick the juries on an |
| 10:22:02 | 8 | accelerated basis, which means there won't be a whole lot of |
| 10:22:08 | 9 | voir dire.  And then we'll try the cases one after the other |
| 10:22:10 | 10 | until I get this cause resolved. |
| 10:22:14 | 11 | So that's what I'm dealing with, because we're going |
| 10:22:22 | 12 | to get it resolved.  Now while I'm on the question of these |
| 10:22:26 | 13 | scheduling orders, I note that I have the one problem that |
| 10:22:33 | 14 | Ms. Frost points out.  Are there any other defendants known to |
| 10:22:39 | 15 | the plaintiff as an end-product defendant who has any |
| 10:22:44 | 16 | disagreement with any of the proposed scheduling orders that I |
| 10:22:49 | 17 | received yesterday, which are all combined in some way, shape, |
| 10:22:54 | 18 | or form into document 867, with exhibits for purposes of the |
| 10:23:00 | 19 | Court's record.  And I want to hear if anybody else has any |
| 10:23:03 | 20 | violent disagreement with any of this? |
| 10:23:14 | 21 | MR. BOICE:  Your Honor, we have proposed some -- |
| 10:23:16 | 22 | THE COURT:  State who you are. |
| 10:23:17 | 23 | MR. BOICE:  I'm sorry.  Bill Boice for Motorola |
| 10:23:20 | 24 | Mobility and Motorola Solutions.  We have proposed some minor |
| 10:23:24 | 25 | modifications to the proposed schedule that Bandspeed sent to |

| | | |
|---|---|---|
| 10:23:29 | 1 | us last night.  And our proposal is Exhibit B, and then there's |
| 10:23:33 | 2 | a red line of the two, which is Exhibit C -- or attachment C I |
| 10:23:37 | 3 | think is what it's called -- to what you have there, |
| 10:23:40 | 4 | Your Honor. |
| 10:23:40 | 5 | THE COURT:  I have that.  Have you had time to |
| 10:23:42 | 6 | discuss those minor proposals with Bandspeed? |
| 10:23:48 | 7 | MR. BOICE:  No, Your Honor.  I don't believe we |
| 10:23:50 | 8 | have.  And we can do that.  We just have not had chance to do |
| 10:23:56 | 9 | that.  We may have had some discussions over the course of |
| 10:23:59 | 10 | time, but we did not yesterday have a discussion, Your Honor. |
| 10:24:04 | 11 | THE COURT:  All right.  Well, what I want is for you |
| 10:24:06 | 12 | to have that discussion, and I want to know what can be agreed |
| 10:24:11 | 13 | on.  And then I want to know with specificity what the open |
| 10:24:15 | 14 | issues are, and I will just make the decision as to how I'm |
| 10:24:20 | 15 | going deal with scheduling this case.  I'm not going to spend a |
| 10:24:26 | 16 | lot of time talking to everybody about that. |
| 10:24:28 | 17 | MR. BOICE:  Your Honor, if I might, I will tell you |
| 10:24:30 | 18 | that we generally agree with the approach that Bandspeed has |
| 10:24:34 | 19 | taken and agree with most of the dates.  Consequently, we tried |
| 10:24:37 | 20 | to use their schedule, and we made just some edits to it to add |
| 10:24:41 | 21 | in and change a few dates because of our inability to meet |
| 10:24:45 | 22 | those dates.  And then we put in couple of additional things |
| 10:24:48 | 23 | that we can discuss with them. |
| 10:24:50 | 24 | But the general concept of waiting until after the |
| 10:24:52 | 25 | CSR trial and beginning discovery then and up until that point |

| | | |
|---|---|---|
| 10:24:58 | 1 | focusing on CSR discovery, we agree with and focusing on |
| 10:25:03 | 2 | stipulated discovery, we agree with.  We have -- we just got |
| 10:25:07 | 3 | the proposed stipulated discovery on Monday.  They actually |
| 10:25:11 | 4 | served it on Friday, but we got it on Monday.  And we're |
| 10:25:13 | 5 | talking with our client and going through that.  And we do need |
| 10:25:16 | 6 | to meet with them, and I do believe we will be able to come to |
| 10:25:20 | 7 | a substantial agreement on that.  The concept is agreeable with |
| 10:25:23 | 8 | us. |
| 10:25:24 | 9 | THE COURT:  All right.  Thank you.  Anyone else who |
| 10:25:27 | 10 | desires to speak? |
| 10:25:32 | 11 | MR. NASH:  Your Honor, Bill Nash for Kyocera.  Just |
| 10:25:35 | 12 | because of the rush last night of putting out our revision to |
| 10:25:38 | 13 | that, we did run into a typographical error.  I just wanted to |
| 10:25:46 | 14 | point that out.  We failed to insert a mandatory settlement |
| 10:25:49 | 15 | conference which Kyocera feels it may be time for the parties |
| 10:25:54 | 16 | to get together with a mediator and try to discuss this. |
| 10:25:57 | 17 | Kyocera would suggest July of 2012 and no later than |
| 10:26:02 | 18 | that.  We've had the Markman, there's been some fact discovery, |
| 10:26:05 | 19 | and some possibility, one would hope, that all around the table |
| 10:26:14 | 20 | we might be able to resolve it. |
| 10:26:16 | 21 | THE COURT:  What date did you suggest? |
| 10:26:18 | 22 | MR. NASH:  We're just suggesting no later than July |
| 10:26:21 | 23 | 2012, before we get going into the next phase of all this |
| 10:26:24 | 24 | discovery and attorney time and expert time. |
| 10:26:26 | 25 | THE COURT:  Mr. Goodpastor? |

| | | |
|---|---|---|
| 10:26:29 | 1 | MR. GOODPASTOR:  I think we could confer with our |
| 10:26:31 | 2 | client on that and get back with Mr. Nash very quickly.  We're |
| 10:26:35 | 3 | generally open to settlement discussions, of course.  It would |
| 10:26:37 | 4 | just be the timing and how he wants to structure it that we |
| 10:26:40 | 5 | need to check with the client on, Your Honor. |
| 10:26:44 | 6 | THE COURT:  All right. |
| 10:26:45 | 7 | MR. GOODPASTOR:  I do have two very specific |
| 10:26:47 | 8 | proposals regarding how to resolve the discovery issues in this |
| 10:26:50 | 9 | case and the issues regarding the pending orders that I'd like |
| 10:26:55 | 10 | to address, if you don't mind? |
| 10:26:57 | 11 | THE COURT:  I don't mind. |
| 10:26:58 | 12 | MR. GOODPASTOR:  We have -- and I can show you, |
| 10:27:01 | 13 | Your Honor.  We have sort of a time line that I can hand to the |
| 10:27:25 | 14 | Clerk. |
| 10:27:25 | 15 | THE COURT:  Is this what you put in your letter? |
| 10:27:27 | 16 | MR. GOODPASTOR:  This is essentially a time line of |
| 10:27:29 | 17 | our efforts to -- |
| 10:27:30 | 18 | THE COURT:  Well, I don't want to hear what you have |
| 10:27:33 | 19 | done and what CSR has blocked you from doing.  I've got far too |
| 10:27:40 | 20 | many better things to do with my time at this point than |
| 10:27:45 | 21 | determine who has been reasonable and who has not been |
| 10:27:48 | 22 | reasonable.  Honestly, I don't care. |
| 10:27:50 | 23 | MR. GOODPASTOR:  Understood.  And so I'll get |
| 10:27:52 | 24 | directly to our proposal. |
| 10:27:54 | 25 | THE COURT:  All right. |

| | | |
|---|---|---|
| 10:27:55 | 1 | MR. GOODPASTOR:  We have given proposed stipulated |
| 10:27:58 | 2 | discovery to CSR, to the end-product defendants, and to |
| 10:28:02 | 3 | Bluetooth SIG.  They all have that.  CSR has had it since March |
| 10:28:06 | 4 | 28th, and end-products defendants have had it since last Friday |
| 10:28:09 | 5 | or Monday.  Bluetooth SIG just got it a couple of days ago. |
| 10:28:14 | 6 | What we propose is basically a very narrow set of |
| 10:28:17 | 7 | discovery and make it very easy for them to respond.  What we |
| 10:28:20 | 8 | propose is all those defendants provide their responses to all |
| 10:28:23 | 9 | of the items we put in that stipulated discovery by April 19th; |
| 10:28:27 | 10 | that by that date, CSR provide a list of items in their |
| 10:28:32 | 11 | proposed stipulated discovery that they gave to Bandspeed that |
| 10:28:36 | 12 | has not already been provided in the 425,000 of pages of |
| 10:28:40 | 13 | documents that we produced to CSR already; and that we hold a |
| 10:28:45 | 14 | further status conference on April 23rd. |
| 10:28:47 | 15 | Come here, tell you exactly what's still in dispute, |
| 10:28:50 | 16 | and at that time set a very accelerated briefing schedule for |
| 10:28:56 | 17 | any motion to compel that may be required with the hope of -- |
| 10:28:59 | 18 | with that oversight and that schedule, that such a motion to |
| 10:29:04 | 19 | compel would not be required. |
| 10:29:06 | 20 | We think that would be the most efficient way to |
| 10:29:08 | 21 | getting what we need to prosecute the case without taking the |
| 10:29:11 | 22 | Court's time and without actually -- actually minimizing the |
| 10:29:16 | 23 | burden on the defendants in terms of discovery. |
| 10:29:18 | 24 | So those dates again would be responses from all the |
| 10:29:22 | 25 | defendants by April 19th, CSR provide a list of documents it |

| | | |
|---|---|---|
| 10:29:26 | 1 | believes it does not already have by that date, further status |
| 10:29:29 | 2 | conference by April 23rd, and then at which time we set a |
| 10:29:32 | 3 | briefing schedule with a four-day response date on the motion |
| 10:29:35 | 4 | to compel, if necessary. |
| 10:29:36 | 5 | With regard to the -- |
| 10:29:38 | 6 | THE COURT:  Tell me who disagrees with that. |
| 10:29:42 | 7 | MR. BOICE:  We disagree with those dates, |
| 10:29:44 | 8 | Your Honor.  We can't do it.  Bill Boice, again, for Motorola. |
| 10:29:49 | 9 | We just got this, like I said, on Monday and there |
| 10:29:52 | 10 | are a number of things that we could do. |
| 10:29:55 | 11 | THE COURT:  That's fine.  I just want to know who |
| 10:29:58 | 12 | objects to it. |
| 10:29:59 | 13 | Ms. Frost? |
| 10:30:00 | 14 | MS. FROST:  Yes, Your Honor.  We object to the timing |
| 10:30:02 | 15 | as well. |
| 10:30:03 | 16 | THE COURT:  Well, April 23rd is out, because I don't |
| 10:30:05 | 17 | have any time to hear you on anything this month.  May is bad |
| 10:30:08 | 18 | enough, but this month is a goner.  On April 23rd, |
| 10:30:11 | 19 | particularly, I have pretrial conferences in the morning and |
| 10:30:14 | 20 | then I have naturalization ceremony in the afternoon that I |
| 10:30:17 | 21 | will be preparing for.  I have a speaker coming in from out of |
| 10:30:21 | 22 | town to speak to the soon-to-be-established new citizens.  The |
| 10:30:28 | 23 | proceeding is at the LBJ Auditorium, and we anticipate 300 to |
| 10:30:33 | 24 | 400 new citizens.  And there certainly is no time that day to |
| 10:30:37 | 25 | hold another conference in this case. |

| 10:30:40 | 1 | MR. GOODPASTOR: Given that -- |
| 10:30:41 | 2 | THE COURT: Mr. Whittlesey, please rise. |
| 10:30:44 | 3 | MR. WHITTLESEY: Yes, sir. David Whittlesey on |
| 10:30:46 | 4 | behalf of Toshiba. I had a brief conversation with |
| 10:30:49 | 5 | Mr. Goodpastor this morning. I just want to make sure that |
| 10:30:52 | 6 | we're on the same page. You had proposed April 19th for us to |
| 10:30:57 | 7 | get back to you on whether or not we could comply with your |
| 10:31:00 | 8 | proposed limited discovery. And if there are disputes, then we |
| 10:31:03 | 9 | could talk about the disputes. Not to actually provide you |
| 10:31:06 | 10 | with all the discovery one week from today. I think you may |
| 10:31:09 | 11 | have -- some defendants may be misunderstanding what you're |
| 10:31:12 | 12 | saying. |
| 10:31:12 | 13 | MR. GOODPASTOR: No. You're correct, |
| 10:31:14 | 14 | Mr. Whittlesey. We would want the responses by the 19th. We |
| 10:31:17 | 15 | put in our scheduling order that -- |
| 10:31:18 | 16 | THE COURT: How do you define responses? The |
| 10:31:20 | 17 | response Mr. Whittlesey refers to or the response to your |
| 10:31:24 | 18 | requested discovery? That's where the -- am I wrong, |
| 10:31:28 | 19 | Mr. Whittlesey? |
| 10:31:30 | 20 | MR. WHITTLESEY: What I'd understood him to say is |
| 10:31:32 | 21 | he's given us a list of stipulated discoveries as, Can you give |
| 10:31:36 | 22 | us this information? A lot of the defendants just got it this |
| 10:31:38 | 23 | week. What I'd understood he was asking is we're going to get |
| 10:31:40 | 24 | back to him within one week and say, yes, we can do item one; |
| 10:31:43 | 25 | no, we can't do item two; yes, we can do item three. Try to |

```
10:31:48  1   limit the scope of the disagreement, if any, and maybe we can
10:31:52  2   do all of it.  But that's what I understood by the proposal.
10:31:55  3              THE COURT:  Is that what you understand?
10:31:56  4              MR. GOODPASTOR:  Yes, Your Honor.  I think I misused
10:31:59  5   the word "response."
10:32:00  6              THE COURT:  And you thought if you got that
10:32:02  7   information, then everybody would be ready to have a status
10:32:08  8   conference by the 23rd with this many people, that you could
10:32:11  9   sit down and discuss it all on Friday and over the weekend and
10:32:14 10   be back in here on Monday?  I think that's a little optimistic
10:32:19 11   based on everything else that has gone on in this case.
10:32:21 12              MR. GOODPASTOR:  Given the information about your
10:32:23 13   availability, Your Honor, essentially what we're dealing with
10:32:26 14   is Mr. Whittlesey and members of the firm that's co-counsel
10:32:30 15   with him, Ms. Frost, and counsel for Bluetooth SIG.  The
10:32:36 16   defendants have done a good job of appointing a liaison counsel
10:32:38 17   to address a lot of these issues.
10:32:40 18              But given your schedule and the inability to meet on
10:32:42 19   the 23rd, we may just have a date that you set whereby we file
10:32:49 20   just a joint status report and we have an agreed briefing
10:32:53 21   schedule for a motion to compel on some other date you set
10:32:56 22   today.  And we don't need a status conference in front of
10:33:00 23   Your Honor.  I think what will motivate the parties to reach
10:33:03 24   agreement is the fact that there are firm deadlines -- firm
10:33:05 25   deadlines by which we get answers to whether they agree or
```

```
10:33:09   1   don't agree, firm deadlines by which we report to the Court,
10:33:15   2   and a firm deadline by which a response is due.
10:33:18   3           THE COURT:  Well, it might have helped you, but it
10:33:20   4   hasn't helped me, because every time I roll over, I find
10:33:20   5   there's another case pending somewhere in the country involving
10:33:24   6   these same issues, which I was annoyed about when there was one
10:33:27   7   in the Eastern District, I was annoyed when there was one in
10:33:34   8   Arizona, and now I find there's one in California.  And I go
10:33:37   9   back to where I was two years, and I'm not going to ask you-all
10:33:43   10  to explain it now.  But I will never understand why you have
10:33:50   11  been filing cases all around the country, which does nothing
10:33:53   12  but disrupt scheduling orders every time one Court thinks that
10:33:58   13  the Court is ruling on something.
10:33:59   14          It seems to me that all the other judges seem to
10:34:02   15  think they're coming here.  I've now gotten the Arizona case.
10:34:06   16  I will admit to you there might be a certain amount of payback
10:34:11   17  in there because I sent a complex case to the District of
10:34:15   18  Arizona about eight months ago, and I have a suspicion that the
10:34:21   19  judges were lying in wait to see if something came that they
10:34:25   20  could send back to me.  And so that's why I got the part of
10:34:28   21  this case.  What is going to happen with the California case?
10:34:34   22          MR. GOODPASTOR:  Your Honor, we've -- the California
10:34:35   23  case was filed on January 20 approximately -- a little bit over
10:34:40   24  a month after you issued your order requiring claims be filed
10:34:43   25  in this litigation.  The California case expressly refers to
```

| | | |
|---|---|---|
| 10:34:49 | 1 | the patents in suit in this litigation.  It expressly refers to |
| 10:34:53 | 2 | this litigation itself.  Claims are we think virtually |
| 10:34:57 | 3 | identical to some of the defenses and counterclaims asserted by |
| 10:35:00 | 4 | CSR in this litigation.  And we share your, sort of, |
| 10:35:03 | 5 | frustration and questioning about why it was even filed in that |
| 10:35:05 | 6 | state. |
| 10:35:05 | 7 | So there is a motion to dismiss or, in the |
| 10:35:08 | 8 | alternative, a transfer filed on March 28th by Bandspeed. |
| 10:35:12 | 9 | THE COURT:  I can tell you what's going to happen. |
| 10:35:14 | 10 | MR. GOODPASTOR:  We don't know what's going to happen |
| 10:35:16 | 11 | with that. |
| 10:35:17 | 12 | THE COURT:  I could guess. |
| 10:35:18 | 13 | MR. GOODPASTOR:  We could guess, too, but -- |
| 10:35:18 | 14 | THE COURT:  This may be patent law, but it's not |
| 10:35:21 | 15 | always rocket science. |
| 10:35:22 | 16 | MR. GOODPASTOR:  That's true, despite what we'd like |
| 10:35:25 | 17 | to tell ourselves. |
| 10:35:27 | 18 | The two issues of the Arizona and the California |
| 10:35:29 | 19 | case, and Mr. Smith I believe is on the phone and I think |
| 10:35:32 | 20 | counsel for CSR is also on phone in those cases as well.  But |
| 10:35:37 | 21 | we believe those cases, along with another California patent |
| 10:35:40 | 22 | case, basically where CSR required patents and then filed suit |
| 10:35:45 | 23 | against us the next day, we think those are retaliatory.  And |
| 10:35:48 | 24 | we think that those will be resolved, or those issues will be |
| 10:35:52 | 25 | resolved or the dispute will be resolved by the trial that |

```
10:35:55   1   you've already set for scheduling here.
10:35:57   2           And so with respect to the transferred Arizona case
10:36:01   3   and the transfer -- what we think will probably be the
10:36:05   4   transferred of California case, we think that those transferred
10:36:07   5   cases should essentially be put on a schedule that begins after
10:36:14   6   the trial of the CSR-Bandspeed case ends in February.  And we
10:36:18   7   think at that time it will be likely that you won't even have
10:36:21   8   to proceed with those other cases.
10:36:25   9           THE COURT:  Well, I'm going to tell you about those
10:36:29  10   other cases.  To the extent they come here, I'm going to try
10:36:31  11   any issues in them that are between Bandspeed and CSR on the
10:36:36  12   trial setting that I have now.  I am not going to hold any
10:36:40  13   Bandspeed-CSR issues back.  I want everybody to be clear on
10:36:44  14   that.  What I'm holding back are the cases that we -- that I've
10:36:51  15   always referred to as the non-CSR defendants, because I want to
10:36:58  16   get the manufacturing claims done, as I made clear in my order
10:37:03  17   and in the last discussion we had, where we discussed the
10:37:11  18   correct way to go or not.  And I understand there's a
10:37:14  19   misunderstanding -- I mean disagreement.  But rightly or
10:37:16  20   wrongly, I've determined that's the way I'm going to do it.
10:37:20  21           So it's only going to be the end-product defendants'
10:37:22  22   cases that are going to have issues held until after that.  I'm
10:37:27  23   not going to -- if it comes in from California, fine.  Arizona
10:37:31  24   is here.  But one of the reasons that I have my staff contact
10:37:34  25   you to tell all sides if you wanted to have Arizona counsel
```

10:37:38  1  present by phone for this hearing, you could, was to make it

10:37:41  2  clear that I'm going to try all of the Bandspeed-CSR issues at

10:37:46  3  one time, however long it takes.

10:37:47  4       MR. GOODPASTOR:  Your Honor, there are a couple of

10:37:49  5  issues involved with that and -- that we're going to need to

10:37:53  6  address and we may not be able to address them today.  One is

10:37:56  7  that Bandspeed is represented by separate counsel in both the

10:37:59  8  California and the Arizona case.

10:38:00  9       THE COURT:  Number one, they're going to have to work

10:38:02  10  that out.  Your client is going to have to work that out with

10:38:05  11  you and the other lawyers.

10:38:06  12       MR. GOODPASTOR:  The other issue is that the transfer

10:38:08  13  of those cases and resolution of those issues on the current

10:38:12  14  trial schedule is going to be very difficult for Bandspeed with

10:38:15  15  regard to those -- those particular actions in those cases.  In

10:38:21  16  fact, they're both at very early stages.  One hasn't even

10:38:24  17  proceeded to Markman.  We would like the opportunity to confer

10:38:31  18  with Arizona and California counsel and with CSR to discuss the

10:38:34  19  scheduling of those.

10:38:36  20       THE COURT:  Well, you need to do that, because I'm

10:38:38  21  not going to be inclined to try Bandspeed-CSR issues

10:38:41  22  separately.

10:38:43  23       MR. GOODPASTOR:  Okay.  Then what we will do, then,

10:38:45  24  is confer with CSR and come up with a revised schedule for the

10:38:49  25  current trial between the two parties.

| | | |
|---|---|---|
| 10:38:52 | 1 | THE COURT:  Well, you need to give primary |
| 10:38:54 | 2 | consideration to how quickly you can get discovery done in it, |
| 10:38:58 | 3 | because I'm not very sympathetic to extending things.  I'll |
| 10:39:03 | 4 | just tell you that. |
| 10:39:05 | 5 | MR. GOODPASTOR:  We understand that.  We don't |
| 10:39:06 | 6 | believe in the case of the Arizona case or the California case, |
| 10:39:10 | 7 | we were the cause of that.  Because I'm not counsel in those |
| 10:39:15 | 8 | cases, I don't know what discovery is needed and what timing is |
| 10:39:18 | 9 | required.  I will agree that we will do our very best to confer |
| 10:39:22 | 10 | as quickly as possible and try to get some agreement with CSR |
| 10:39:26 | 11 | and put it in front of you. |
| 10:39:27 | 12 | THE COURT:  Well, I think all we can really |
| 10:39:29 | 13 | accomplish today is a time to get me a joint status report on |
| 10:39:33 | 14 | all of the matters that we have discussed here today so I can |
| 10:39:37 | 15 | look at the filings and determine what I'm going to do with my |
| 10:39:42 | 16 | schedule.  Know this:  The schedule is going to be fast, and |
| 10:39:47 | 17 | the chances of it being perceptively slower than what is |
| 10:39:53 | 18 | expressed in my existing order are not very good. |
| 10:39:57 | 19 | I've had this case or part of this dispute hanging |
| 10:40:01 | 20 | around with me for longer than I care.  My docket is doing |
| 10:40:06 | 21 | nothing but getting larger.  In this month alone I tried a |
| 10:40:13 | 22 | civil jury case the first week of the month, I had a bench |
| 10:40:16 | 23 | trial this week and a preliminary injunction hearing that we |
| 10:40:21 | 24 | wrapped up this morning on whether I'm going to preliminarily |
| 10:40:25 | 25 | enjoin a 100-million-dollar highway project.  I have a jury |

| | | |
|---|---|---|
| 10:40:30 | 1 | trial that I'm starting on Monday.  May is only marginally |
| 10:40:37 | 2 | better, but that is the way the docket is going. |
| 10:40:40 | 3 | The Congress shows no sympathy to the dockets any |
| 10:40:44 | 4 | where in this country, so I do not believe I'm going to have a |
| 10:40:48 | 5 | third federal judge.  Judge Sparks' docket is every bit as busy |
| 10:40:53 | 6 | as mine.  So when I find a hole and render scheduling orders, |
| 10:40:59 | 7 | every lawyer who practices in front of me needs to know that |
| 10:41:04 | 8 | it's going to be much harder to get any relief from those |
| 10:41:07 | 9 | orders just because I have a lot of demands on my time and a |
| 10:41:11 | 10 | lot of cases that we try. |
| 10:41:14 | 11 | Now, Mr. Whittlesey, let me ask you:  What do you |
| 10:41:21 | 12 | think would be a reasonable period of time, since you had an |
| 10:41:25 | 13 | issue with a disclosure on the 19th and then a hearing on the |
| 10:41:32 | 14 | 23rd, how much time do you think is necessary to get a |
| 10:41:38 | 15 | follow-up joint status report to this court. |
| 10:41:42 | 16 | MR. WHITTLESEY:  I certainly think, Your Honor, |
| 10:41:44 | 17 | within two weeks we ought to be able to get back in touch with |
| 10:41:49 | 18 | them and let them know what issues we have with the discovery |
| 10:41:53 | 19 | and then confer. |
| 10:41:54 | 20 | THE COURT:  Tell me when -- do you think the joint |
| 10:41:56 | 21 | status report could be filed in two weeks? |
| 10:41:59 | 22 | MR. WHITTLESEY:  Two weeks? |
| 10:42:00 | 23 | THE COURT:  That's what I'm interested in. |
| 10:42:03 | 24 | MR. WHITTLESEY:  Two weeks, Your Honor, would be |
| 10:42:05 | 25 | fine. |

10:42:06  1          THE COURT:  Mr. Goodpastor, do you think that will

10:42:09  2  work for you?

10:42:10  3          MR. GOODPASTOR:  That will work for us, Your Honor,

10:42:11  4  provided we get the response in a timely manner, which I think

10:42:16  5  we can most likely work out with Mr. Whittlesey.

10:42:18  6          THE COURT:  Well, it sounds like there's not any

10:42:20  7  reluctance on getting you the information you need.  It's a

10:42:22  8  question of how much time it's going to take.  I didn't hear

10:42:25  9  anybody saying they're not willing to do that.  It's just that

10:42:29 10  it couldn't be done on the schedule you first suggested.  If

10:42:32 11  somebody disagrees with that, let me know.

10:42:38 12          MS. FROST:  Excuse me, Your Honor.  This is

10:42:40 13  Claudia Frost for CSR.  I'm not sure whether I'm on this status

10:42:44 14  report on these scheduling issues and discovery.  But if I am,

10:42:48 15  with respect to Mr. Goodpastor's suggestion that it can be done

10:42:52 16  promptly, basically, what has happened is they recently

10:42:56 17  produced the documents they produced in the Eastern District to

10:42:59 18  us.  We haven't even seen them yet.  They're being loaded on a

10:43:03 19  computer database.

10:43:06 20          Instead of providing us answers to the questions of

10:43:09 21  whether Bandspeed can comply with our stipulated discovery

10:43:13 22  requests, they're basically telling us to look through the

10:43:17 23  400,000 pages they've given us and if there's anything else we

10:43:20 24  want, tell them.  And I think that's very inefficient, and I

10:43:25 25  certainly cannot commit to do that in two weeks.  So if they

10:43:28  1  could work with me a little bit to try to give me some better

10:43:30  2  clues about whether they've produced is covered by my topics, I

10:43:34  3  could probably meet that schedule.

10:43:35  4          THE COURT:  Mr. Goodpastor, tell her right now.

10:43:39  5          MR. GOODPASTOR:  What we proposed is that we get a

10:43:42  6  response from CSR in terms of discovery we asked for from them

10:43:46  7  and that they tell us, after we've already complied with all of

10:43:49  8  the discovery requests that they've asked for and produced the

10:43:53  9  documents they've asked for, what they think is missing.  We've

10:43:56  10  already complied with their single request for production that

10:44:00  11  they've issued.

10:44:01  12          THE COURT:  She says, based on what you complied

10:44:03  13  with, she can't know what else she needs in two weeks.

10:44:09  14          MR. GOODPASTOR:  Well, we -- I think we can get a

10:44:11  15  response from CSR to whether they're going to agree to our

10:44:15  16  request for discovery in two weeks.  It seems clear we can do

10:44:18  17  that.  If they need more time to tell us what else they need

10:44:21  18  from us, we're willing to give them more time.  But with

10:44:24  19  respect to the discovery we are asking for from them ...

10:44:28  20          THE COURT:  Well, let me just tell you-all again.

10:44:30  21  I'm not going to be in the time business in this case.  All of

10:44:33  22  these discussions we're having now are things that should have

10:44:36  23  been done a year ago.  We should have been at this stage a year

10:44:40  24  ago in this case.  I'm not pleased with either of the major

10:44:43  25  sides in this case.  And to a degree, I rue the day that I

10:44:49  1  allowed CSR's intervention, because I might have been able to

10:44:52  2  try all of these other people by now and had them out of it and

10:44:57  3  then having the debate with CSR on who is liable and who is

10:45:01  4  not.

10:45:02  5        But, you know, I'll tell you both, Ms. Frost, I'm not

10:45:05  6  looking at giving people a large amount of time here.

10:45:10  7  Mr. Goodpastor, when did you produce these documents from the

10:45:15  8  Eastern District of Texas?

10:45:17  9        MR. GOODPASTOR:  April 5th, Your Honor.

10:45:18  10        THE COURT:  That's pretty -- you know, this case came

10:45:21  11  to me, when, last September from the Eastern District of

10:45:24  12  Texas?  August?  It was before Judge Ward retired, because that

10:45:27  13  was his going-away present.  Had he taken senior status, I

10:45:31  14  would have had a way to get back at him.  But he retired so he

10:45:35  15  could avoid anything I might do to him.

10:45:39  16        MR. GOODPASTOR:  We -- frankly, we anticipated

10:45:43  17  producing that discovery.  We proposed that form production in

10:45:47  18  our discovery order.  We sent a similar request to CSR to see

10:45:51  19  if they would agree to that.  I think we informed the Court

10:45:54  20  that their request to us actually complied with our proposed

10:45:58  21  discovery order.  We couldn't get agreement from CSR to do

10:46:02  22  that, so we just produced it as quickly as we could.  We

10:46:04  23  re-labeled everything, got it over to them as quickly as we

10:46:07  24  could, and said, Here it is.  Here is everything you asked for.

10:46:09  25        THE COURT:  Because of the size of this case, what

```
10:46:11   1  Bandspeed and CSR needs to do -- and you need to take this
10:46:15   2  message back to your client -- is they need to have lawyers
10:46:19   3  doing nothing else but working on this case from that point --
10:46:24   4  from this point forward, if you don't already have that.  And
10:46:28   5  it needs to be the lawyers that are going to appear in front of
10:46:31   6  me.  If we have got to go through all of this discovery and
10:46:36   7  what we're going to do before you-all determine if you can
10:46:39   8  settle the case, that's fine.  But I'm not going to give you
10:46:42   9  much in the way of time to do it.  You're just going to -- if
10:46:45  10  it's that important, you're going to have to put the manpower
10:46:49  11  on it to get it done on a short schedule.
10:46:51  12          MR. GOODPASTOR:  What we propose is that CSR provide
10:46:54  13  their response to our stipulated discovery at the same time the
10:46:56  14  other defendants do, and then they get an extra two weeks to
10:46:59  15  provide us with whatever else they need.
10:47:02  16          THE COURT:  All right.  Let me hear from other
10:47:03  17  lawyers.
10:47:04  18          MR. BOICE:  Your Honor, I just didn't want to mislead
10:47:06  19  you there about what we are able to provide.  I don't know that
10:47:09  20  we'll be able to provide all the stipulated discovery without
10:47:12  21  talking to our client and whether we have it or not and whether
10:47:14  22  it makes any sense or not.  I know some of it we clearly will
10:47:17  23  be able to, but we certainly can meet this schedule to meet
10:47:21  24  with them and respond to the Court.
10:47:22  25          And, Your Honor, the second thing that, if I might,
```

```
10:47:24  1   on the time, you also mentioned that we should get back to you
10:47:28  2   on the proposed differences in our schedules for the
10:47:32  3   end-product defendants.  And we can meet with them and get that
10:47:36  4   in the same period of time, if that's what you had in mind.
10:47:39  5             THE COURT:  That is what I did have in mind.
10:47:44  6             MR. BOICE:  Okay.  Thank you.
10:47:45  7             THE COURT:  Anybody over here against the wall?  Did
10:47:48  8   y'all have anything you wanted to add?
10:47:53  9             MR. WHITTLESEY:  Your Honor, David Whittlesey again.
10:47:58 10   Just so we're clear, the proposal is we'll get back to
10:48:01 11   Mr. Goodpastor within a week and then we'll submit the joint
10:48:04 12   status report in two weeks?
10:48:05 13             THE COURT:  What I want is a joint status report no
10:48:08 14   later than 5 o'clock.  That means you don't get to file it at
10:48:12 15   11:59:55.  By 5 o'clock on the April the 22nd.  There may be
10:48:22 16   things you've agreed to.  There may be things you haven't
10:48:25 17   agreed to.  These issues on Ms. Frost's concern, all of that
10:48:31 18   needs to be in the joint status report, and you should tell me
10:48:34 19   what you have done to try to work those out and what's
10:48:37 20   realistic.
10:48:38 21             MR. WHITTLESEY:  Thank you, Judge.
10:48:39 22             THE COURT:  And then I will look at that and see,
10:48:43 23   once I know what criminal and civil cases I have to try in
10:48:47 24   May -- right now I continue to have four civil cases pending to
10:48:53 25   try for May, and right now I have 12 criminal jury trials to
```

| | | |
|---|---|---|
| 10:48:59 | 1 | try in May.  Now, I will tell you all of those cases aren't |
| 10:49:02 | 2 | going to go to trial.  But what we're having with increased |
| 10:49:06 | 3 | dockets is Judge Sparks and I are finding we're not trying a |
| 10:49:09 | 4 | higher percentage of our cases than we ever have.  But when you |
| 10:49:13 | 5 | increase the gross number and put the same percentage on it, |
| 10:49:17 | 6 | that results in more cases and there are no more -- you know |
| 10:49:22 | 7 | the days in the month do not respond to percentages. |
| 10:49:26 | 8 | And so that's what we're finding we're having |
| 10:49:29 | 9 | happening here.  We have more cases going to trial, not because |
| 10:49:33 | 10 | of the number of cases lawyers normally try, but when you have |
| 10:49:37 | 11 | a larger number and put the same percentage on it, you try more |
| 10:49:40 | 12 | cases.  So I have got to see how that is going to sort itself |
| 10:49:47 | 13 | out before I know when I'm going to be able to get you back in |
| 10:49:49 | 14 | here.  Ms. Frost, do you have something? |
| 10:49:52 | 15 | MS. FROST:  Yes, Your Honor, I do.  I have two brief |
| 10:49:54 | 16 | things.  One to mention -- what I neglected to mention earlier |
| 10:50:02 | 17 | is the issue of the antitrust claims that are in this case.  I |
| 10:50:06 | 18 | believe all the defendants have been -- or involved in some |
| 10:50:14 | 19 | antitrust allegation from Bandspeed here.  And all of those |
| 10:50:17 | 20 | claims are basically, except for the claim as to CSR are a |
| 10:50:21 | 21 | resident in the second phase of the case with the end-product |
| 10:50:24 | 22 | or customer defendants, as I call them.  And it seems to me |
| 10:50:29 | 23 | logical to put all the antitrust claims, because they're |
| 10:50:36 | 24 | conspiracy claims, in one bucket. |
| 10:50:38 | 25 | And so to the extent that requires a modification to |

10:50:41  1  the schedule or impacts this schedule -- the scheduling order

10:50:44  2  that you have before you, I would submit that the CSR part of

10:50:48  3  that case should reside in that bucket on that schedule.

10:50:53  4          THE COURT:  All right.  Well, I will submit to

10:50:55  5  you-all that y'all could explain that in something that

10:51:03  6  contains no more than three pages and get it to me.

10:51:06  7          MS. FROST:  I will do that.

10:51:07  8          THE COURT:  This goes much simpler if everybody is

10:51:10  9  not running around the country filing new lawsuits and

10:51:13  10  everybody is talking about this case.  I put the major burden

10:51:16  11  on the two of you.  I am not pleased with the fact that we have

10:51:19  12  other litigation filed in the Eastern District of Texas.  I am

10:51:25  13  not pleased with the fact we have other litigation filed in

10:51:29  14  Arizona.  I am not pleased with the fact we have other

10:51:31  15  litigation filed in California.

10:51:33  16          I understand that you perceive there to be a good

10:51:35  17  reason for doing that.  But due to the fact that those judges,

10:51:39  18  at least in two out of those three instances, transferred the

10:51:43  19  cases here, I would think being the good lawyers you are, you

10:51:49  20  might look at the way you have proceeded in this case and give

10:51:51  21  some thought to the fact that maybe you're not pleasing any

10:51:54  22  number of federal judges around the country with what you're

10:52:02  23  doing, because, you know, we're going to get this done, if I

10:52:06  24  haven't made that clear.  And we're going to get it done pretty

10:52:09  25  much on the schedule I have, if y'all have to spend 24 hours a

```
10:52:13   1  day to get it done.  So know that.
10:52:16   2          I don't care if you settle it.  I don't care if you
10:52:19   3  try it.  There is some merit to the idea that's been proposed
10:52:26   4  of mandatory mediation.  I will tell you I am not optimistic
10:52:29   5  about that, because every time I've gotten optimistic about
10:52:33   6  anything in this case, it's been like touching a hot stove.
10:52:36   7          But I want in that status report on April 26th, your
10:52:42   8  discussions about mandatory mediation and whether you think it
10:52:48   9  would be helpful and when you think you could get it done and
10:52:52  10  if you have an idea of a mediator.  I know several that are
10:52:58  11  good, but I don't handpick that.  If the parties want me to
10:53:03  12  select one, I will select one.  Otherwise, whoever you think
10:53:06  13  will be good, you can do it if you want to do this.
10:53:09  14          But I will tell you the good mediators that I know,
10:53:13  15  July is pretty close because they fill up and it takes a while
10:53:20  16  to get on their schedule.  So if you are seriously considering
10:53:25  17  asking me to order this case to mediation, you need to give
10:53:32  18  some thought about how serious you are about that and whether
10:53:34  19  you have an idea of a mediator and find out from that mediator
10:53:38  20  whether he owns an apartment building so each party can have
10:53:42  21  its own room or series of rooms to be in, because if you're
10:53:47  22  going to try to shoot for July, we're running out of time in a
10:53:52  23  big hurry to do that with people that could actually do you
10:53:55  24  some good if you wanted to do this.  So I give you that to
10:54:00  25  think about.
```

| | | |
|---|---|---|
| 10:54:00 | 1 | MS. FROST:  Thank you, Your Honor.  One other thing |
| 10:54:05 | 2 | just to be clear that would be appropriate for the status |
| 10:54:08 | 3 | report -- I assume that it would be, but just to be sure -- |
| 10:54:12 | 4 | there's a lot of activity right now by Bandspeed in the |
| 10:54:16 | 5 | United States Patent Office.  They are amending a number of |
| 10:54:20 | 6 | claims that are in the patents-in-suit and, at least with |
| 10:54:24 | 7 | regard to one of them, have added 400 new claims as of two days |
| 10:54:29 | 8 | ago.  So would you like us to bring that to your attention as |
| 10:54:32 | 9 | well in the status report or in some separate report or how you |
| 10:54:36 | 10 | like us to apprise you of -- |
| 10:54:37 | 11 | THE COURT:  Well, if you would like for me to know |
| 10:54:40 | 12 | that, I think everyone in this room knows that I am not prone |
| 10:54:43 | 13 | to stay a case while the PTO looks at re-examination.  I |
| 10:54:47 | 14 | understand that in the last two years they have revised their |
| 10:54:50 | 15 | rules.  I go around, I hear them talk about how streamlined |
| 10:54:54 | 16 | they are, and how they're dealing with things faster.  I'm not |
| 10:54:57 | 17 | believing it. |
| 10:55:04 | 18 | I fault the Congress more than I do them.  I think |
| 10:55:07 | 19 | the Congress should have dealt with it in the American Invents |
| 10:55:12 | 20 | Act parallel proceedings.  I don't think any district judge |
| 10:55:16 | 21 | would mind if the Congress said that the patent office has |
| 10:55:20 | 22 | primary jurisdiction or if the Congress said that the district |
| 10:55:23 | 23 | courts have primary jurisdiction.  They've chosen not to do |
| 10:55:27 | 24 | that.  So we're still left with that.  I as a general rule, |
| 10:55:31 | 25 | barring -- because I never say never, but barring some huge |

10:55:36  1   occurrence, I am not inclined to stay a proceeding in my Court
10:55:40  2   while I wait around and see what the patent office is going to
10:55:44  3   do.
10:55:45  4            And when I've looked at what they're doing, I find
10:55:47  5   out that we get notices that say we're not going to out these
10:55:54  6   claims.  And then six or eight weeks will pass, and I'll get
10:55:57  7   another notice and I'll find out it doesn't mean what it says
10:55:59  8   because there' still things going on up there.  So they're not
10:56:01  9   doing anything that helps me get the cases on my docket
10:56:05  10  resolved by parallel proceedings.
10:56:06  11           So you can report on anything you want to on that.
10:56:09  12  It's always nice to know.  But unless something comes up that
10:56:14  13  gives me more cold comfort from the PTO than I have now, I'm
10:56:19  14  not going to put anything off in this case while I wait and see
10:56:22  15  what they do.
10:56:23  16           MS. FROST:  Thank you, Your Honor.  We'll put
10:56:24  17  something in there.  I believe there are some intervening
10:56:25  18  rights issues which may actually have some impact.  And we'll
10:56:27  19  note those with special specificity.
10:56:31  20           THE COURT:  So what is the term of these patents?  We
10:56:33  21  have got -- we have bound to eaten into them a lot.  And if we
10:56:37  22  continue to have litigation, can't we all moot the thing
10:56:44  23  because the patent expired?
10:56:45  24           MR. GOODPASTOR:  We think we have several years left
10:56:47  25  on the patent.

| | | |
|--|--|--|
| 10:56:48 | 1 | THE COURT:  I think you might have several years left |
| 10:56:50 | 2 | before I clear every case that involves every one I'm looking |
| 10:56:54 | 3 | at. |
| 10:56:58 | 4 | All right.  Anything else? |
| 10:56:59 | 5 | MR. GOODPASTOR:  Your Honor, I did mention an earlier |
| 10:57:01 | 6 | proposal regarding the pending discovery orders, the protective |
| 10:57:04 | 7 | order, the discovery order, and the ESI order.  And I would |
| 10:57:09 | 8 | like to briefly respond to Ms. Frost's comments about the |
| 10:57:14 | 9 | antitrust claims. |
| 10:57:15 | 10 | We have been working with Ms. Frost back and forth to |
| 10:57:17 | 11 | try to get something in front of you on the protective order, |
| 10:57:21 | 12 | the discovery order, and the ESI order that is easier for you |
| 10:57:24 | 13 | to review because of the different formats that were submitted |
| 10:57:27 | 14 | by the parties.  We have basically met and conferred and come |
| 10:57:31 | 15 | up with a red line that we can put in front of you, we think -- |
| 10:57:35 | 16 | we wanted to do it before the hearing, but they -- Ms. Frost |
| 10:57:38 | 17 | wasn't in a position to do it. |
| 10:57:40 | 18 | THE COURT:  Put it on a disc, and send it to |
| 10:57:42 | 19 | Ms. Carmona.  She'll tell you how to get it there.  I will tell |
| 10:57:48 | 20 | you that has been a problem, and that's one of the reasons that |
| 10:57:51 | 21 | you're later -- later than I would normally do, because we have |
| 10:57:54 | 22 | spent no small amount of time excerpting pieces from both of |
| 10:57:59 | 23 | your proposals that I thought had merit and coming up with my |
| 10:58:05 | 24 | own document.  If you have made progress on yours and you can |
| 10:58:10 | 25 | give it to us on a disc that points out exactly where you have |

10:58:16  1    disagreement, that would make things go quicker.

10:58:18  2            MR. GOODPASTOR:  Okay.  And we'd like the parties to

10:58:20  3    agree to submit that by no later than Monday.

10:58:24  4            MS. FROST:  That's fine with us.

10:58:25  5            THE COURT:  Whatever you decide to do, put -- or

10:58:27  6    E-mail it.  Ms. Carmona, that would work, wouldn't it?  We just

10:58:31  7    want to get it from you electronically where we have it

10:58:35  8    electronically so we don't have to retype the whole thing,

10:58:39  9    which is what we've been doing.

10:58:40  10           MR. GOODPASTOR:  That's one of the objections to

10:58:42  11   producing some documents we've had, is the protective order.

10:58:43  12   So I think we can resolve that pretty quickly.

10:58:45  13           THE COURT:  Well, and that's one of my irritations,

10:58:46  14   because I have never been able to figure out why lawyers can't

10:58:49  15   agree on the form of protection you're going to put on it,

10:58:53  16   because -- know this, because some of you don't know my

10:58:58  17   thinking.  Some of you are getting the idea that when you file

10:59:02  18   all these things under seal that I think lawyers want to much

10:59:04  19   sealed.  We live -- we have a transparent court system.  We've

10:59:08  20   had this current court system since 1789, or shortly

10:59:14  21   thereafter, since the Judiciary Act.

10:59:18  22           It is an open system.  If you choose to go into

10:59:20  23   court, you don't get to do it secretly.  That's why during the

10:59:25  24   discovery phases I will allow sealing of documents that you may

10:59:29  25   assert are proprietary or something to that effect and why I

```
10:59:34   1   generally don't allow the sealing of pleadings, because I think
10:59:37   2   anyone here should be an adept enough pleader to plead
10:59:44   3   something that doesn't disclose proprietary or sensitive
10:59:48   4   information.  And if you can't do that, then you need to go
10:59:50   5   back to whoever taught you how to plead things and work on it.
10:59:54   6           Once we get to the trial, it's a different bag of
10:59:57   7   cat.  There's going to be very little that will be sealed.  So
11:00:03   8   once you're putting on your evidence and once you're having
11:00:06   9   your trial, a lot of this may come out.
11:00:12  10           So know this, so nobody is blind-sided, that it's a
11:00:16  11   bifurcated deal with me.  What I'm going to seal in discovery
11:00:19  12   is different from what I'm going to seal during trial.  So you
11:00:22  13   need to start thinking about that, because once you're in a
11:00:25  14   lawsuit, you're in a lawsuit.  Once you're in a public trial,
11:00:28  15   you're in a public trial.
11:00:32  16           MR. GOODPASTOR:  One other issues on the antitrust
11:00:34  17   claims.  From earlier statements at an earlier status
11:00:37  18   conference, the direction that we understood from the Court was
11:00:40  19   that all the antitrust claims regarding CSR were going to be
11:00:43  20   resolved in this one case against CSR, including CSR's
11:00:47  21   California antitrust claims.  And we think that's the most
11:00:49  22   efficient way.  We don't leave some claims against CSR hanging
11:00:52  23   out there, especially ones as important as our conspiracy
11:00:55  24   claims.  So I just want to make sure you knew that we disagreed
11:00:59  25   with Ms. Frost on this idea of pushing things out.
```

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
| 11:01:02 | 1  | THE COURT:  I understand that, and here -- I |
| 11:01:04 | 2  | understand what Ms. Frost is saying.  But CSR has told me |
| 11:01:08 | 3  | consistently, if we get the claims between Bandspeed and the |
| 11:01:12 | 4  | manufacturers done, it might resolve a lot of this lawsuit.  I |
| 11:01:15 | 5  | don't know why I would want to get the claims between Bandspeed |
| 11:01:19 | 6  | and CSR behind me and then have another lawsuit between |
| 11:01:26 | 7  | Bandspeed and CSR. |
| 11:01:29 | 8  | MR. GOODPASTOR:  I would tend to agree with you, |
| 11:01:31 | 9  | Your Honor. |
| 11:01:31 | 10 | THE COURT:  I would rather have a long lawsuit. |
| 11:01:34 | 11 | Because as I said, by the time we get there, I'm going to have |
| 11:01:40 | 12 | things I can do with my docket that I cannot do right now. |
| 11:01:43 | 13 | It is likely that Judge Sparks will have taken senior |
| 11:01:47 | 14 | status by then, and there will be another full-time federal |
| 11:01:50 | 15 | judge here.  Judge Sparks, I feel certain, is going to want to |
| 11:01:53 | 16 | carry a full senior status docket, which means he's going to be |
| 11:01:56 | 17 | handling 40 to 50 percent of the normal docket, which |
| 11:02:00 | 18 | effectively gives me half a judge to work with, which is a big, |
| 11:02:03 | 19 | big percentage.  Plus I'm going to have vacant courtrooms. |
| 11:02:09 | 20 | Austin is a nice place.  I already get offers from |
| 11:02:12 | 21 | judges around the country who would like to come and sit in |
| 11:02:16 | 22 | Austin.  I don't have any place to put them right now.  I will |
| 11:02:19 | 23 | come November.  In fact, Judge Head from Corpus strong-armed me |
| 11:02:24 | 24 | in January and forced me to tell him when I had a February |
| 11:02:27 | 25 | vacation set and came up here and handled a case in February. |

| | | |
|---|---|---|
| 11:02:32 | 1 | He said, You're going to have a vacant courtroom in February. |
| 11:02:35 | 2 | So let me come up and do that. |
| 11:02:37 | 3 | So it -- after I get passed November, all of the |
| 11:02:43 | 4 | docket problems I'm having right now don't go away, but they |
| 11:02:47 | 5 | become much easier for me to deal with.  So you need to be |
| 11:02:52 | 6 | aware of that. |
| 11:02:53 | 7 | MR. BOICE:  May I make one comment in response? |
| 11:02:55 | 8 | MR. GOODPASTOR:  Well, one other issue with regard to |
| 11:02:57 | 9 | the antitrust, if you don't mind.  One issue, and I think it |
| 11:03:01 | 10 | will help us reach agreement on the discovery stipulation that |
| 11:03:04 | 11 | we're going to report you.  The one issue that we've |
| 11:03:06 | 12 | encountered is that they claim that antitrust discovery isn't |
| 11:03:11 | 13 | appropriate right now because motions to dismiss are pending. |
| 11:03:12 | 14 | We disagree with that, and we just don't want to wait another |
| 11:03:16 | 15 | two weeks to have to put that issue in front of you.  We have |
| 11:03:20 | 16 | prepared a short memorandum on the issue which we could submit |
| 11:03:23 | 17 | to you at this time. |
| 11:03:24 | 18 | THE COURT:  Let me ask you a question:  Have I stated |
| 11:03:28 | 19 | that discovery on that antitrust should be held up while I deal |
| 11:03:33 | 20 | with motions to dismiss? |
| 11:03:34 | 21 | MR. GOODPASTOR:  No, you have not, Your Honor. |
| 11:03:36 | 22 | THE COURT:  Then you're eating into your discovery |
| 11:03:39 | 23 | time.  That's all I can tell you.  I'm not going to do that *ad* |
| 11:03:44 | 24 | *seriatim*.  I will get to the motions to dismiss as quickly as I |
| 11:03:47 | 25 | can get to the motions to dismiss.  But be forewarned:  You |

11:03:51  1  should be proceeding with everything.

11:03:54  2         MR. GOODPASTOR:  Thank you, Your Honor.

11:03:57  3         THE COURT:  Anything else?

11:03:58  4         MS. FROST:  I just have two brief responses, if I

11:04:01  5  may, one on the antitrust claims.  I think it is a little

11:04:05  6  different, Your Honor, than trying all the CSR and Bandspeed

11:04:08  7  claims in one because the same antitrust claim will be tried

11:04:15  8  against -- the very same antitrust claim will be tried against

11:04:18  9  everyone else in that second case.  And some of it will

11:04:21 10  potentially be affected by the licensing defense that's in the

11:04:25 11  first case.  So there is actually some sense to the idea.  But

11:04:28 12  I'll set that out in our status report.

11:04:31 13         The second thing I wanted to clarify, and just to

11:04:35 14  make sure that I am understanding so I can better communicate

11:04:38 15  with Mr. Goodpastor to work out whatever differences we have

11:04:42 16  that remain on our protective order, which are minor, by the

11:04:46 17  way, they deal primarily with source code and our source code,

11:04:49 18  which is our crown jewel.  So we're trying to be very

11:04:53 19  protective of that.

11:04:54 20         And one of the things we are working with each other

11:04:56 21  to try to resolve is some tension between -- the difference

11:05:00 22  between the way pretrial discovery protection is maintained and

11:05:05 23  trial protection is maintained.  And we are trying to make sure

11:05:08 24  that our source code receives the same amount of protection in

11:05:12 25  both proceedings.  And I don't take Your Honor's comments today

11:05:15  1  to be contrary to that understanding.

11:05:18  2          THE COURT:  They're not contrary to that, but you

11:05:19  3  shouldn't worry about that as much as you're worried about it.

11:05:24  4          MS. FROST:  Okay.  Good.

11:05:24  5          THE COURT:  What I am concerned about right now is

11:05:31  6  getting through the discovery phase and you reaching a

11:05:34  7  protective order on what gives you both cold comfort on

11:05:38  8  protecting your source code for purposes of discovery, you

11:05:41  9  get -- by the time we get to trial, a lot of these issues that

11:05:44  10 I'm dealing with are going to resolve themselves one way or the

11:05:49  11 other.  All of the discovery issues will.

11:05:51  12         You know, discovery is a big deal until you get down

11:05:54  13 to trying a case, and then none of it shows up in trial.  You

11:05:57  14 know, its as simple as that.  So you get another bite at the

11:06:02  15 apple on how you're going to have your source code protected at

11:06:05  16 trial.  You may write into your protective order, if you can

11:06:13  17 agree, any language you want about this applies for discovery

11:06:16  18 purposes and the parties recognize that they will bring it back

11:06:21  19 up and discuss it when the Court has an opportunity to meet

11:06:24  20 with you for final pretrial conference before trial.  And look

11:06:29  21 at what you actually need in the way of protection at trial.

11:06:33  22         Because as I told you, I -- public trial is a little

11:06:38  23 bit different than discovery, but I still recognize that there

11:06:41  24 are things that are going to need some type of protection.  But

11:06:45  25 whatever you -- you should be concentrating on the protection

| | | |
|---|---|---|
| 11:06:49 | 1 | you need for discovery, and we'll worry about the protection |
| 11:06:52 | 2 | that you need for trial later.  So you get another shot at |
| 11:06:57 | 3 | that. |
| 11:06:58 | 4 | MS. FROST:  Thank you, Your Honor.  That's helpful. |
| 11:07:00 | 5 | THE COURT:  Anything else? |
| 11:07:02 | 6 | (No response) |
| 11:07:02 | 7 | THE COURT:  All right.  Glad to have had y'all here |
| 11:07:05 | 8 | this morning.  It's always good to see you.  Everybody go out |
| 11:07:09 | 9 | and plead somebody else so we can have more lawyers here. |
| 11:07:13 | 10 | We're welcome -- we welcome our friends from the west who are |
| 11:07:18 | 11 | here by phone today.  You know, maybe the next time we have a |
| 11:07:23 | 12 | hearing, it will be during South by Southwest or one of our |
| 11:07:27 | 13 | other music festivals and you can come. |
| 11:07:30 | 14 | So at this time, the Court's in recess subject to |
| 11:07:32 | 15 | reconvening after I see the joint status report we have talked |
| 11:07:38 | 16 | about.  And with regard to Bandspeed and CSR, get what you can |
| 11:07:42 | 17 | on the protective order to Ms. Carmona electronically as |
| 11:07:47 | 18 | quickly as you can get it there. |
| 11:07:48 | 19 | Court's in recess. |
| 11:07:50 | 20 | (End of transcript) |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1  **UNITED STATES DISTRICT COURT       )**

2  **WESTERN DISTRICT OF TEXAS           )**

3       I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7       I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States

10      WITNESS MY OFFICIAL HAND this the 18th day of April 2012.

11

12                                   /S/ Arlinda Rodriguez
                                     Arlinda Rodriguez, Texas CSR 7753
13                                   Expiration Date:  12/31/2012
                                     Official Court Reporter
14                                   United States District Court
                                     Austin Division
15                                   200 West 8th Street, 2nd Floor
                                     Austin, Texas 78701
16                                   (512) 916-5143

17

18

19

20

21

22

23

24

25