IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2012 MAY 22  AM 10: 20
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
            DEPUTY

| | | |
|---|---|---|
| BANDSPEED, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. A-11-CV-771-LY |
| SONY ELECTRONICS, INC., et al., | § § | JURY TRIAL DEMANDED |
| Defendants, | § § § | |

**STIPULATION AND ORDER REGARDING DISCOVERY BETWEEN
BANDSPEED, INC. AND BLUETOOTH SIG, INC.**

Plaintiff Bandspeed, Inc. ("Bandspeed" or "Plaintiff") and Defendant Bluetooth SIG, Inc. ("Bluetooth SIG," "BT SIG" or "Defendant") pursuant to the Federal Rules of Civil Procedure, hereby stipulate and agree to the provisions below governing discovery.

I.   **GENERAL CONDITIONS**

1.   The Parties agree to withdraw prior requests for production of documents and interrogatories to each other.

2.   BT SIG agrees to produce the documents or information within its possession responsive to the discovery requests below. BT SIG shall not be required to produce documents that are not in its possession but are in the possession of any of its members. BT SIG agrees to make a reasonable search of all sources reasonably likely to contain responsive documents.

3.   The Parties agree to respond to the discovery requests below according to the schedule set forth in the Scheduling Order entered by the Court. In the event that a Party believes that the Scheduling Order entered by the Court

1

does not provide an adequate time for production, disclosure and/or responses to the stipulated discovery provided for herein, then the Parties agree to meet and confer in good faith regarding the timing for completion of production, disclosure and/or responses.

4. This Stipulation shall not require the production of documents or information protected from discovery by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest privilege, or any other privilege or applicable law. This Stipulation does not waive the right of any party to object to the admissibility in evidence of any information, document, or other material sought or provided pursuant to this Stipulation. Any privileged documents or information inadvertently produced can be clawed back upon demand made within thirty (30) days after becoming aware of such inadvertent disclosure.

5. The parties will meet and confer with respect to the production of documents or information responsive to any discovery request below that Bluetooth SIG believes it is prohibited from producing by prior agreement or court order. Bluetooth SIG agrees to give Bandspeed notice of any such documents or information as soon as possible. The parties agree to work in good faith to facilitate the production of such documents or information in compliance with the applicable agreements or court orders. To the extent the parties are unable to agree on a procedure for the production of the documents or information and/or satisfy the terms and conditions of the applicable agreements or court orders, Bandspeed may move to compel the production of such documents or information.

6. The Parties may not make additional objections to the discovery requests below.

7. If documents responsive to a particular request to produce documents cannot be found, the Parties agree to provide an answer stating that no documents were located after diligent search.

8. The Parties agree to provide a verified response to the Interrogatories in Section (II) below. A verified response shall be signed by one or more corporate representatives of the responding Party. A "corporate representative" means an officer, director, or managing agent of the Party, or another person designated by the Party who agrees to testify on the Party's behalf, and who has sufficient knowledge to provide information known or reasonably available to the Party.

9. The Parties agree that litigation of the claims between Bluetooth SIG and Bandspeed and discovery in addition to that required by this Stipulation will be postponed until after the trial between Bandspeed and CSR. Neither Party is limited to the discovery, including depositions, exchanged under this Stipulation or between CSR and Bandspeed in the subsequent litigation among Bluetooth SIG, End-Product Defendants, and Bandspeed. Both Parties reserve the right to obtain additional discovery regarding the claims and defenses between Bluetooth SIG and Bandspeed after the trial between Bandspeed and CSR.

10. Electronic searches of email required to comply with requests III(28) – (45) (the Antitrust Requests) in this Stipulation shall be conducted using mutually agreed search terms established after good-faith collaboration of the Parties.

11. All other discovery between Bandspeed and Bluetooth SIG, other than allowed by this Stipulated Discovery Order, is stayed absent agreement or unless the Court orders otherwise.

## II. BANDSPEED'S INTERROGATORIES TO BLUETOOTH SIG

1. Identify all Bluetooth SIG Members that are authorized to conduct Bluetooth Compliance Testing internally without employing a third-party testing lab.

2. Identify all entities that are currently members of the Bluetooth SIG and the date that each named Defendant joined the Bluetooth SIG. In addition, provide a verified statement that these current members of the Bluetooth SIG have agreed to the Bluetooth SIG Patent/Copyright License Agreement.

3. Identify the three to five persons most knowledgeable (and their job titles) of (a) the qualification testing required by the Bluetooth SIG for each compliant product; and (b) the topics identified in III(12) below.

4. Identify all certified Bluetooth Compliance Testing Labs.

## III. BANDSPEED'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO BLUETOOTH SIG

1. After providing a response to Interrogatory II(1), and upon request by Bandspeed, documents sufficient to identify Bluetooth SIG Members that are authorized to conduct Bluetooth Compliance Testing internally without employing a third-party testing lab.

2. Documents identifying the due diligence or other information required to be submitted by any BT SIG Member to obtain authorization to conduct Bluetooth Compliance Testing internally without employing a third-party testing lab.

4

3.      Bluetooth SIG Profile Implementation Conformance Statements (PICS) regarding CSR Accused Products and the products made, used, sold, offered for sale, or imported into the United States by End-Product Defendants that use or incorporate any of the CSR Accused Products or other CSR Bluetooth chips ("EP Defendant CSR Products").

4.      Documents identifying the Bluetooth Qualification Testing Facility (BQTF) and relevant personnel, including but not limited to, any Bluetooth Qualification Expert (BQE) employed to perform any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products.

5.      Documents identifying the procedures used in performing any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products.

6.      Documents identifying the hardware and software used in performing any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products.

7.      The Test Case Reference List (TCRL) used in performing any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products.

8.      The Test Plan Generator (TPG) used in performing any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products.

9.      The Profile Tuning Suite (PTS) used in performing any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products.

10. The Bluetooth Qualification Program Reference Document (PRD) used in performing any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products.

11. Documents regarding the testing, documentation and test results of any qualification testing required by the Bluetooth SIG for CSR Accused Products and EP Defendant CSR Products:

   a. Test planning, notes or protocols;
   b. Test reports and accompanying notes, memoranda, analysis, photographs, video and audio;
   c. Notes or other documentation regarding the personnel performing any of the qualification testing; and
   d. Test charts.

12. Documents sufficient to show the specific requirements for determining the correct entry of information (e.g. how to determine whether to indicate Yes or No in the "Support [Yes] or [No]" column for each item in the tables) in the following portions of the PICS:

   a. **Baseband Vol. 2, Part B**, Table 1: Physical Channel; Table 11: Piconet Capabilities; and Table 12: Scatternet Capabilities
   b. **Link Manager Vol. 2, Part C**, Table 2: Supported Features; Table 3: Authentication; Table 6: Encryption; Table 20: Quality of Service; and Table 26: Adaptive Frequency Hopping;
   c. **802.11 Protocol Adaptation Layer Vol. 5, Part A**, Table 2: Capabilities;
   d. **Host Controller Interface Vol. 2, Part E**, Table 13: Physical Links and Table 15: Link Information;
   e. **AMP Host Controller Interface Vol. 5, Part A**, Table 15: Link Information;

      f. **Link Layer Vol. 6, Part B**, Table 6 Protocol Slave Role Features; Table 7: Protocol Master Role Features; and Table 8: Physical Channels; and

      g. **4.0 Host Controller Interface Vol. 3, Part E**, Table 13: Physical Links and Table 15: Link Information

13. Copies of all submissions by Bandspeed and/or its employees to Bluetooth SIG regarding adaptive frequency hopping ("AFH").

14. Copies of all submissions by Bandspeed and/or its employees to Bluetooth SIG from January 1, 2000 through December 31, 2002.

15. Documents evidencing BT SIG policies and procedures regarding disclosure of intellectual property, including patents and patent applications, by members from January 1, 2000 through and including December 31, 2003.

16. All documents evidencing any request for disclosure of intellectual property, including patents and patent applications, by members from January 1, 2000 through and including December 31, 2003, including but not limited to minutes, notes, or other recordings, including audio recordings, of meetings that evidence an oral request for disclosure.

17. All minutes, notes, or other recordings, including audio recordings, of meetings attended by Bandspeed or one or more Bandspeed employees at which a request for disclosure of intellectual property, including patents and patent applications, by members was made or should have been made, or at which a member allegedly should have disclosed intellectual property, including patents and patent applications.

18. All submissions of patents and patent applications made by BT SIG members in response to a request for disclosure made from January 1, 2000 through and including December 31, 2003.

19. The Periodic Working Group Status Reports pertaining to Bluetooth Specification 1.2.

20. Documents evidencing the Specification Management Process for Bluetooth Specification 1.2.

21. All documents relating to the voting, approval, adoption, promulgation, and notice thereof of AFH Specification 0.7h, AFH specification v0.1, AFH Improvement Proposal 0.7h, AFH Specification v0pt7h, the Hopset Switch discussion document v0.91, the LMP commands and behavior document v0.73, and/or draft 0.7 specification.

22. Notice of Adoption for Bluetooth Specification 1.2.

23. The Study Group Charter Approval for Bluetooth Specification 1.2.

24. The Coexistence Working Group's internal documentation for the development of AFH for Bluetooth Specification 1.2

25. Documents evidencing each named Defendant's agreement to the Bluetooth SIG Patent/Copyright License Agreement.

26. All versions of the form BT SIG Patent/Copyright License Agreement from 2000 to present.

27. All minutes of meetings of the board of directors; meetings of board committees; and meetings of committees or group that have been established by, appointed by, or that report to the board of directors and that refer or relate to Bandspeed, Inc., and for the Patents-In-Suit, including without limitation the Bluetooth Patent/Copyright License Agreement.

28. All documents, including without limitation communications with the Bluetooth SIG or any other member of the Bluetooth SIG, concerning whether and how the antitrust laws of the United States (or any other State or country)

apply to the Bluetooth SIG and/or the conduct of any of its members with regard to licensing of intellectual property, the pricing of licenses of intellectual property, the Bluetooth Patent/Copyright License Agreement, the Bluetooth Trademark License Agreement, and any agreement or conditions for membership in Bluetooth SIG, Inc.

29. All communications and documents relating to communications with the U.S. Department of Justice, the Federal Trade Commission, and/or the Federal Communications Commission concerning whether and how the antitrust laws of the United States (or any other State or country) apply to the Bluetooth SIG and/or the conduct of any of its members relating to the Bluetooth SIG.

30. All documents, including without limitation communications with any member of the Bluetooth SIG, concerning the interpretation of the license provisions of and/or the enforceability of the Bluetooth Patent/Copyright License Agreement.

31. All documents, including without limitation communications with any member of the Bluetooth SIG, concerning pricing of patent licenses of technology related to or incorporated in any Specification promulgated by Bluetooth SIG, Inc.

32. All documents, including without limitation communications with any member of the Bluetooth SIG, concerning any decision or consideration of entering into, requesting, and/or negotiating terms for licenses of technology of Bandspeed, including but not limited to license of the Patents-in-Suit.

33. All documents, including without limitation communications with any member of the Bluetooth SIG, concerning the "royalty-free" license referred to in section 5(b) of the Bluetooth Patent/Copyright License Agreement.

34. All documents, including without limitation communications with any member of the Bluetooth SIG, concerning the effect of the Bluetooth Patent/Copyright License Agreement on the purchase market for licenses of patented technology related to or incorporated in any Specification promulgated by Bluetooth SIG.

35. All documents, including without limitation communications with any member of the Bluetooth SIG, concerning the effect of the Bluetooth Patent/Copyright License Agreement on the prices of, or market for, products incorporating Bluetooth technology sold by any member of the Bluetooth SIG.

36. All documents, including without limitation communications with any member of the Bluetooth SIG, regarding Bluetooth SIG, Inc's policy, practice, procedure, and/or requirement that any company incorporating Bluetooth wireless technology into products, using the technology to offer goods and services, or simply rebranding a product with Bluetooth technology must become a Member of the Bluetooth SIG.

37. All documents, including without limitation communications with any member of the Bluetooth SIG, regarding the terms and/or conditions under which the Bluetooth SIG or its Promoter Members will license Bluetooth copyrights and/or trademarks.

38. Documents relating or referring to any government investigation Bluetooth SIG and/any member of the Bluetooth SIG relating in any way to the possible violation(s) of the Sherman Antitrust Act, or any similar foreign or state antitrust or "competition laws," or of Bluetooth SIG, Inc.'s policy concerning compliance with these laws; any government investigation into any meeting, communication, arrangement understanding, "agreement," or plan by Bluetooth

SIG, Inc. or any member of Bluetooth SIG, Inc. relating or referring to its competition with or business with any other member of Bluetooth SIG or any supplier of technology relating to Bluetooth wireless functionality.

39. Documents referring or relating to any policy directed to compliance with applicable antitrust or competition laws, including without limitation policies concerning adopting or implementing any understanding agreement or plan, express or implied, formal or informal, by Bluetooth SIG, or any member of Bluetooth SIG, regarding prices, terms, or conditions of sale, production, of any product or service related to Bluetooth wireless functionality.

40. Accurate, complete, and unredacted copies of any filing, submission, pleading, brief, motion, request, notice, memorandum, statement, or similar document with any public authority, including without limitation any state or federal court and any agency of the United States (e.g., the United States International Trade Commission), regarding or relating to the enforceability of any version of the Bluetooth Patent/Copyright License Agreement.

41. All documents, including, without limitation, analyses, reports, and studies referring or relating to the characteristics and scope of the market regarding the purchase or acquisition, of patent licenses relating to Bluetooth wireless technology (including licenses of Bandspeed's patented technology), including, without limitation, consumer surveys, analysis of competitors, market share information, or market research prepared by you, any Promoter Member, or any party.

42. All documents that constitute, mention, discuss, refer, or relate to business plans, strategic plans, annual plans, purchase plans, marketing plans, pricing strategies, pricing guidelines, as well as all amendments or updates to

such plans of you or any Promoter Member with respect to the purchase, acquisition, or otherwise obtaining of patent licenses relating to Bluetooth wireless technology (including licenses of Bandspeed's patented technology), including, but not limited to, all documents and reports relating to purchase forecasts.

43. All documents constituting or evidencing any filing, submission, or notification made pursuant to the Standards Development Organization Advancement Act, 15 U.S.C. § 4301 et seq., or any amendment thereto, including without limitation 15 U.S.C. §4305.

44. All documents concerning any decision considering any actual or potential filing, submission, or notification by Bluetooth SIG and/or its members under the Standards Development Organization Advancement Act, 15 U.S.C. §4301 et seq., or any amendment thereto, including without limitation 15 U.S.C. § 4305.

45. All communications concerning any decision considering any actual or potential filing, submission, or notification by Bluetooth SIG and/or its members under the Standards Development Organization Advancement Act, 15 U.S.C. §4301 et seq., or any amendment thereto, including without limitation 15 U.S.C. § 4305.

## IV.   BLUETOOTH SIG'S REQUEST FOR PRODUCTION OF DOCUMENTS TO BANDSPEED

1. Within twenty (20) days after production, Bandspeed will provide Bluetooth SIG with a copy of documents produced by Bandspeed to another party in this lawsuit, including the actions consolidated into this lawsuit, as part of discovery, stipulated or otherwise, as allowed by court orders.

V. **BANDSPEED'S DEPOSITIONS OF BLUETOOTH SIG**

1. **30(b)(6) Depositions**

Upon request, Bandspeed shall be allowed to conduct a Fed. R. Civ. P. 30(b)(6) deposition of Bluetooth SIG on each of the general subject matters stated below; provided, however, Bluetooth SIG does not waive any of its rights under, and these depositions shall be conducted pursuant, to the Federal Rules of Civil Procedure. The topics relevant to each general subject matter shall be stated in the deposition notice(s) as required by Fed. R. Civ. P. 30(b)(6). All 30(b)(6) depositions of Bluetooth SIG and all depositions of its employees shall be conducted in Kirkland, Washington, unless otherwise agreed to by the Parties.

   a. Organizational Structure.
   b. Requirements for Compliance Testing of Accused Products, PICS, and Related Information.
   c. Pricing of Licenses, purchase of licenses, agreements regarding the same, market for purchase of licenses, participation in Bluetooth SIG by Defendants, Bandspeed, and Other Entities, and Related Topics.

2. **Employee Depositions**

Upon request, Bandspeed shall be allowed to conduct depositions of individual employees of Bluetooth SIG; provided however, Bluetooth SIG does not waive any of its rights under, and these depositions shall be conducted pursuant, to the Federal Rules of Civil Procedure.

VI. **DISPUTE RESOLUTION**

1. If a party determines during production that producing certain of the information creates an undue burden on the producing party it shall notify

the receiving party and the parties will negotiate in good faith in an attempt to resolve the issue in a way that gets the receiving party the material information they need in sufficient time to fully review, analyze, organize and use the material in whatever manner it sees fit without creating an undue burden on the producing party.

2. If a Party believes that additional documents or information responsive to the stipulated discovery requests herein are needed from another Party, it shall meet and confer with the other Party in a good faith to attempt to resolve the dispute. If the dispute is not resolved, the Party seeking the additional documents or information may move to compel further responses from the other Party after meeting and conferring with the other Party in good faith.

3. If a Party believes that it needs to serve additional discovery requests on another Party, it shall meet and confer with the other Party in a good faith attempt to reach agreement on the additional request(s). If the dispute is not resolved, the Party seeking additional discovery requests shall seek leave with the Court in order to serve the additional discovery requests.

4. Any response to a motion to compel or motion for leave to serve additional discovery requests must be filed within 5 business days of service of the motion. Any reply must be filed within 2 business days of service of the response to the motion. Additional time for the method of service under Rule 6(d) of the Federal Rules of Civil Procedure shall not apply to any motions filed under this Section VI.

Dated: May 7, 2012

Respectfully submitted,

By: /s/ Mikal C. Watts
Mikal C. Watts
State Bar. No. 20981820
Christopher V. Goodpastor
State Bar No. 00791991
WATTS GUERRA CRAFT LLP
811 Barton Springs Road
Suite 725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0502
Email: mcwatts@wgclawfirm.com
cgoodpastor@wgclawfirm.com

Edward W. Allred
State Bar No. 50511764
Francisco Guerra, IV
State Bar No. 00797784
Mark Fassold
State Bar No. 24012609
Shalimar S. Wallis
State Bar No. 24033191
WATTS GUERRA CRAFT LLP
300 Convent Street, Suite 100
San Antonio, Texas 78205
Telephone: (210) 527-0500
Facsimile: (210) 527-0501
Email: eallred@wgclawfirm.com
Fguerra@wgclawfirm.com
mfassold@wgclawfirm.com
swallis@wgclawfirm.com

Kurt M. Sauer
State Bar No. 17673700
Kevin L. Daffer
State Bar No. 05307300
DAFFER MCDANIEL, L.L.P.
901 S. Mopac Expressway
Barton Oaks Plaza Three, Ste. 310
Austin, Texas 78746
Telephone: (512) 476-1400
Facsimile: (512) 703-1250
Email: ksauer@dmtechlaw.com
       kdaffer@dmtechlaw.com

**ATTORNEYS FOR PLAINTIFF BANDSPEED, INC.**

**SIEBMAN, BURG, PHILLIPS & SMITH, L.L.P.**

/s/ *Clyde M. Siebman*
CLYDE M. SIEBMAN
Texas State Bar No. 18341600
BRYAN H. BURG
Texas State Bar No. 03374500
STEPHANIE R. BARNES
Texas State Bar No. 24045696
4949 Hedgcoxe Rd., Suite 230
Plano, Texas 75024
Telephone: 214-387-9100
Facsimile: 214-387-9125
clydesiebman@siebman.com
bryanburg@siebman.com
stephaniebarnes@siebman.com

CHARLES KELHOFFER
Arizona State Bar No. 005457
JOHN SHORB
Arizona State Bar No. 023995
Kelhoffer Manolio, and Firestone
9300 East Raintree Drive, Suite 120
Scottsdale, Arizona 85260
Telephone: 480-222-9100
Facsimile: 480-222-9106
ckelhoffer@kmflawfirm.com
jshorb@kmflawfirm.com

**ATTORNEYS FOR BLUETOOTH SIG, INC.**

IT IS SO ORDERED.

SIGNED this 22nd day of May, 2012.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE