IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BANDSPEED, INC., <br><br> Plaintiff, <br><br> v. <br><br> PARROT INC., ET AL., <br><br> Defendants. | Case No. A-11-CV-771-LY <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS TOMTOM INTERNATIONAL B.V. AND TOMTOM, INC.'S
REPLY TO BANDPSEED'S OPPOSITION TO TOMTOM'S MOTION TO DISMISS ON
THE PLEADINGS OR FOR SUMMARY
<u>JUDGMENT ON BANDSPEED'S ANTITRUST CLAIMS</u>**

Bandspeed, in response to Defendant's TomTom International B.V. and TomTom, Inc.'s ("TomTom") nine page motion to dismiss or alternatively for summary judgment, filed a brief of 30 pages, with over 300 pages of exhibits, in a transparent effort to burden the Court with smoke and mirrors, so that proper consideration of TomTom's motion is delayed and so Bandspeed can continue to harass TomTom now that CSR, the party that supplied over 99% of the accused Bluetooth chips to TomTom, is out of the case. Notably, despite trying to foment discovery disputes to delay the case on the merits, in opposing summary judgment Bandspeed has still failed to comply with Federal Rule of Civil Procedure 56(d) and has not submitted the requisite declaration or affidavit.

**I.   Motion to Dismiss on the Pleadings**

A motion to dismiss focuses on allegations in the Complaint. Bandspeed's sole allegation is that TomTom is a member of the Bluetooth SIG and thus a signatory to the

Bluetooth SIG License Agreement.  TomTom joined the Bluetooth SIG on January 17, 2003; consequently TomTom's signing of the Bluetooth SIG license agreement falls outside the statute of limitations in antitrust matters.[1]  Thus, the sole allegation stated in the Second Amended Complaint against TomTom remains that TomTom is and was a member of the Bluetooth SIG. Bandspeed's new accusation of TomTom's "participation in a concerted retroactive reinterpretation of the BPLA" though absent from the Second Amended Complaint and, indeed, remarkably imaginative, is unsupportable in law because it is based entirely on Bandspeed ascribing nefarious motives to TomTom and the other defendants' strategy in defending litigation brought by Bandspeed.  Thus Bandspeed's allegations in the pleadings are again reduced to a single alleged fact; that TomTom was a member of the Bluetooth SIG.  A complaint without operative facts is insufficient under *Twombly* and must be dismissed.[2]

## II.  Purported Direct Evidence Against TomTom

The first part of Bandspeed's 30 page brief is devoted to a redacted catalogue of actions Bandspeed alleges defendants – other than TomTom – participated in.  A review of the redacted brief renders it transparent that none of the actions Bandspeed points to is one in which TomTom was, in any way, a participant.  Thus it does not constitute direct evidence against TomTom.

The second part of Bandspeed's brief argues that TomTom, in asserting a defense of license in the Eastern District of Texas and before this Court was somehow evidence of TomTom's participation a conspiracy of "concerted retroactive reinterpretation."   However,

---

[1] 15 U.SC. §15(b) provides "an antitrust suit must commence within four years after the cause of action has accrued." TomTom's membership in the Bluetooth SIG is public information that has at all times been available on the Bluetooth SIG website.  The statute of limitations therefore had run on TomTom's signing of the license agreement on January 17, 2007 (four years after TomTom joined), well before this lawsuit was filed.

[2] *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 553-54 (2007).  Although *Twombley* is the relevant standard, Bandspeed in its reply cites it just once, on page 6.  Many of the cases Bandspeed relies on instead pre-date *Twombley*, often substantially and their reliability as precedent over *Twombley* is at best, dubious.

Bandspeed predicates its entire accusation on pleadings filed in *this* case.  Thus Bandspeed asserts in its Brief that TomTom joined the alleged conspiracy by joining the motion to transfer its part in this case from the Eastern District of Texas to this Court:

> In the agreed Motion to Transfer filed in the Eastern District matter in October 2010, TomTom and Acer, Belkin, Casio, Dell, Garmin, GN, Hewlett-Packard, HTC, Kyocera, Motorola, Nokia, Pantech, Plantronics, Samsung, and Toshiba jointly agreed to and adopted the same retroactive reinterpretation of the BPLA previously discussed and agreed to by other defendants…

Bandspeed's Response to TomTom's Motion (Dkt. # 1243) at p. 18.

First, although Bandspeed' Second Amended Complaint (Dkt. # 731) was filed well after the Motion to Transfer, it does not make this allegation with respect to TomTom. Second, this contention is entirely based on a pleading filed in this case, that was on its face well founded since the Motion to Transfer was granted by the Eastern District of Texas and accepted by this Court.

Thus, Bandspeed seeks to base its antitrust claim on an actions that falls squarely within the protections afforded under the *Noerr Pennington* doctrine.  Bandspeed continues to then cite oral argument made before this Court, seeking transfer – again plainly protected activity falling within the *Noerr Pennington* doctrine.  On its face, Bandspeed's entire argument is that TomTom (and other defendants) raised the defense of license.  No other actual fact is alleged, nor is any evidence offered, that TomTom did anything other than state a lawful defense.

### III. Federal Rule of Civil Procedure 56(d) and 56(h)

Federal Rule of Civil Procedure 56(d) is very clear, a party seeking a delay on a motion for summary judgment must file a 56(d) declaration stating what facts or evidence it lacks.  In

the course of this motion Bandspeed has, no less than five times in pleadings,[3] sought to delay consideration of TomTom's alternative summary judgment part of TomTom's motion while evading requisite Rule 56(d) declaration altogether.  The Rule 56(d) declaration is required for a reason – to preclude parties, like Bandspeed, from seeking to delay consideration of issues ripe for consideration with threadbare allegations of a need for more discovery.  Rule 56(h) provides an enforcement mechanism for improper Rule 56(d) declarations, in that it states a declaration filed solely for delay is subject to an award of expenses and attorney's fees.

### IV.     Bandspeed's Disputed Facts Are Not "Genuinely" Disputed

Bandspeed has tried to create a fog of uncertainty by submitting a table of so-called "disputed" facts.  However, when carefully read, the facts stated therein are, in reality, not disputed.  For example, in disputed fact number 2, TomTom only alleges that Bandspeed joined the Bluetooth SIG in September 2001 – Bandspeed contrives to claim this fact to be disputed, while admitting that it did in fact join the Bluetooth SIG in September 2001.  In fact number 1, Bandspeed refutes the factual assertion that the Bluetooth SIG is a standards development organization by alleging that the Bluetooth SIG engaged in "other" conduct – but the fact remains that, at all relevant times, the Bluetooth SIG was engaged in developing standards, even if there was unspecified "other" activity.[4]  Similarly, Bandspeed challenges TomTom's assertion that it is and was willing to pay a license on the same terms as those paid by CSR – but the

---

[3] Bandspeed's Motion to Extend Time (Dkt. # 1211); Bandspeed's Reply in Support of Motion to Extend Time (Dkt. # 1213); Bandspeed's Opposed Motion to Strike, (Dkt. # 1217); Bandspeed's Reply to Response to Motion to Strike (Dkt. #1221); Bandspeed's Response to TomTom's Motion (Dkt. # 1243).  Bandspeed has also informally sought additional time, both from the Court and in requests to counsel for TomTom.

[4] Bandspeed in its brief makes reference to the provisions of 15 U.S.C. §4302 (note 11, page 12) and the protections it offers standards setting organisations.  However, the provision at issue is 15 U.S.C. §4304 which provides that defendants of antitrust claims predicated on standards setting acties shall receive reasonable attorney's fees.  It is, on its face, not limited to standards setting organisations.

Spours letter is an open offer and remains open, and yet TomTom remains a defendant in the Bandspeed's patent infringement case.[5]

TomTom (and presumably other defendants) is willing to enter into a settlement with Bandspeed on reasonable terms comparable to existing settlements. However, Bandspeed has refused to offer such terms to TomTom. The fact that TomTom will not accept an exorbitant settlement demand from Bandspeed does not make such refusal an antitrust violation.

Although prior settlements are not directly relevant to a decision on TomTom's Motion to Dismiss or the alternative Motion for Summary Judgment (Dkt. #1195), TomTom nonetheless is appending to this brief a table showing the amounts of settlements entered into by Bandspeed and the publicly known Bluetooth sales in the relevant period for this case.[6] Also attached is the demand letter sent on ███████████ referred to in the declaration of ███████████ (in which he extensively discusses communications that Bandspeed at the time asserted were under Federal Rule of Evidence 408, including the ███████████ discussion). See <u>Exhibit 6</u> to Bandspeed's Response to TomTom's Motion (Dkt. # 1243). The demand letter doesn't state a

---

[5] The CSR license is 

Bandspeed's Response to TomTom's Motion (Dkt. # 1243), <u>Exhibit 20</u>, section 3, page 4 (emphasis added)
CSR paid ███████ for this license. Publicly disclosed information shows that relevant worldwide sales of Bluetooth "chips" by CSR were 2 billion units. This leads to a royalty rate of ██¢ per chip if based on worldwide sales, or ██¢ a chip if one assumed that only U.S. sales formed the basis and they were half the total (i.e., 1 billion.).
The license to Scosche Industries, Inc., the only license produced to TomTom before this current motion that ███████████████████████████████████████████████████████████████████████████████ see Bandspeed's Response to TomTom's Motion (Dkt. # 1243), <u>Exhibit 21</u>, at § 4.5. That the license was ███ leads to the inference that it is little more than contrived evidence.

[6] The Parrot, GN, Plantronics and Acer settlements were not made available to TomTom to consider until early on May 8, 201, after TomTom had filed its motion. The suggestion made by counsel for Bandspeed that an offer was extended based on these settlement agreements is thus, at best, misleading. *See* Bandspeed's Reply to TomTom's Response to Motion to Strike (Dkt. # 1221). The terms of these settlements are on first review, opaque at best.

royalty rate – it simply announces a demand of $▮ with no sensible explanation of its basis.

Given TomTom's actual US sales of the only accused product in the case – the Link 310 that amounts to a mere ▮ units – this is a royalty of approximately $▮ per unit. Even if unaccused Broadcom products were included, the demanded royalty rate comes out to $▮ per unit – or at least ▮ times the rate that CSR paid. This royalty demand in context is far higher than the cost for the operative Bluetooth chips themselves, whose current market price is between 80¢ and $1.10. Similarly, more recent Bandspeed offers cited are about $▮ per accused unit, ▮¢ an un-accused unit, for a license ▮▮▮.

### V.  Texas Antitrust Claims

In its Second Amended Complaint, Bandspeed asserts that "[t]his Court has supplemental jurisdiction over Bandspeed's state-law claims pursuant to 28 U.S.C. § 1367." Second Amended Complaint (Dkt. # 731) at ¶ 39. If this Court dismisses Bandspeed's claims against TomTom made under federal antitrust laws, no federal claim "forming part of the same case or controversy" or having the same core of operative fact will exists against TomTom. Thus jurisdiction over the Texas Antitrust Claim, Count 8, necessarily fails and the claim should be dismissed.

### VI.  Conclusion

Bandspeed's only direct factual allegation against TomTom, as stated in the Second Amended Complaint, remains that TomTom was a member of the Bluetooth SIG. Hence its

antitrust claims should be dismissed on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

If this Court chooses, in the alternative, to consider this motion as a Rule 56 motion for summary judgment, it should dismiss the antitrust claims asserted against TomTom because no evidence has been adduced that shows that TomTom participated in or did anything to further the alleged conspiracy described in the Second Amended Complaint. Further, as Bandspeed's "concerted retroactive reinterpretation" argument is entirely based on pleadings filed in this case, it must be rejected under the *Noerr Pennington* doctrine.

If TomTom's motion is not granted, Bandspeed's antitrust claims against TomTom should be stayed pending resolution of both Bandspeed's patent infringement claims against TomTom and Bandspeed's antitrust claims against the party or parties that Bandspeed contends have masterminded the alleged antitrust conspiracy. Because Bandspeed makes no direct allegations against TomTom, it concedes, as it must, that TomTom is no more than a "reluctant participant" in the alleged conspiracy. *See* Bandspeed's Response to TomTom's Motion (Dkt. # 1232) at pp. 8-9 ("Reluctant participants who have been enticed or coerced into an anticompetitive scheme are subject to the same liability as those who fomented the conspiracy … regardless of whether it participates in each phase of the conspiracy").

Given TomTom's minimal exposure in the case for patent infringement damages, TomTom should not be forced to expend substantial resources defending antitrust claims directed more appropriately at others.

Dated: May 28, 2013

        Respectfully submitted,

        Colm MacKernan
        ORIGIN LTD.
        Twisden Works
        Twisden Road
        London NW5 1DN, United Kingdom
        Telephone: +44 (0)20 7424 1950
        Facsimile: +44 (0)20 7209 0643
        Email: colm.mackernan@origin.co.uk

        James H. Wallace, Jr.
        Kevin P. Anderson
        Brian H. Pandya
        Joseph Shin
        WILEY REIN LLP
        1776 K Street NW
        Washington, DC 20006
        Telephone: (202) 719-7000
        Facsimile: (202) 719-7049
        Emails: jwallace@wileyrein.com,
        bpandya@wileyrein.com, jshin@wileyrein.com

        Larry F. York
        State Bar No. 22164000
        Nicholas P. Laurent
        State Bar No. 24065591
        McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
        600 Congress Avenue, Suite 2100
        Austin, Texas 78701
        Phone: (512) 495-6075
        Fax:   (512) 505-6375
        Email:  lyork@mcginnislaw.com
        Email:  nlaurent@mcginnislaw.com

        By:  */s/ Nicholas P. Laurent*
            Nicholas P. Laurent

        COUNSEL FOR DEFENDANTS
        TOMTOM, INC. AND TOMTOM
        INTERNATIONAL BV

- 9 -

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this May 28, 2013.

*/s/ Nicholas P. Laurent*
Nicholas P. Laurent