# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| BANDSPEED, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **CAUSE NO. A-11-CV-771-LY** |
| v. | ) | |
| | ) | |
| GARMIN INTERNATIONAL, INC.; GARMIN | ) | |
| USA, INC.; LG ELECTRONICS, INC.; LG | ) | |
| ELECTRONICS U.S.A., INC.; LG | ) | |
| ELECTRONICS MOBILECOMM U.S.A., INC.; | ) | |
| MOTOROLA SOLUTIONS INC. FNA | ) | |
| MOTOROLA, INC.; MOTOROLA MOBILITY | ) | |
| INC.; RESEARCH IN MOTION LIMITED; | ) | |
| RESEARCH IN MOTION CORPORATION; | ) | |
| TOSHIBA CORPORATION; TOSHIBA | ) | |
| AMERICA INFORMATION SYSTEMS, INC.; | ) | |
| AND TOSHIBA AMERICA, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## MOTION FOR SUMMARY JUDGMENT OF
## BANDSPEED'S ANTITRUST AND ANCILLARY CLAIMS

## <u>TABLE OF CONTENTS</u>

I.      BACKGROUND ...........................................................................................................1

II.     Argument ......................................................................................................................5

        A.      Legal Standard ..................................................................................................5

        B.      Bandspeed's Antitrust Claims Are Barred by the Noerr-Pennington
                Doctrine.............................................................................................................6

        C.      The Facts upon which Bandspeed Bases Its Antitrust Claims Cannot as a
                Matter of Law Establish an Antitrust Conspiracy.........................................8

        D.      Bandspeed's Monopsonization and Attempted Monopsonization Claims
                are not Cognizable under Section 2 of the Sherman Act. ...............................11

        E.      Bandspeed's State Law Claims Cannot Survive Summary Judgment
                Because They Derive from Bandspeed's Antitrust Claims, and Fail for the
                Same Reasons. ..................................................................................................12

III.    Conclusion ....................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases**

*Associated News, Inc. v. Curtis Circulation Co., Inc.,*
   Civ.No. H-80-1201, 1986 WL 13791 (S.D. Tex., Dec. 4, 1986) ............................................ 5, 8

*AT&T v. Delta Commc'ns Corp.,*
   408 F. Supp. 1075 (S.D. Miss. 1976) ........................................................................................ 11

*AT&T v. Delta Commc'ns Corp.,*
   579 F.2d 972 (5th Cir. 1978) ..................................................................................................... 11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................................... 10

*Cal. Motor Transport Co. v. Trucking Unlimited,*
   404 U.S. 508 (1972) ...................................................................................................................... 6

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ...................................................................................................................... 5

*Coastal States Marketing, Inc. v. Hunt,*
   694 F.2d 1358 (5th Cir. 1983) ...................................................................................................... 6

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,*
   365 U.S. 127 (1961) ...................................................................................................................... 6

*First Nat'l. Bank of Ariz. v. Cities Serv. Co.,*
   391 U.S. 253 (1968) ...................................................................................................................... 8

*Flash Elecs., Inc. v. Universal Music & Video Distrib. Corp.,*
   312 F. Supp. 2d 379 (E.D.N.Y. 2004) ....................................................................................... 12

*Freeman v. Lasky, Haas & Cohler,*
   410 F.3d 1180 (9th Cir. 2005) ................................................................................................. 6, 7

*Golden Bridge Tech., Inc. v. Motorola, Inc.,*
   547 F.3d 266 (5th Cir. 2008) ..................................................................................................... 10

*Golden Bridge Technology, Inc. v. Nokia, Inc.,*
   No. 6:06-CV-105, 2007 WL 2688487 (E.D. Tex. Sept. 11, 2007) ........................................... 10

*Hanson v. Pittsburgh Plate Glass Indus., Inc.,*
   482 F.2d 220 (5th Cir. 1973) ....................................................................................................... 8

*In re Japanese Elec. Prods. Antitrust Litig.,*
   723 F.2d 238 (3d Cir. 1983) ......................................................................................................... 6

*J.T. Gibbons, Inc. v. Crawford Fitting Co.*,
    565 F. Supp. 167 (E.D. La. 1981) ..................................................................... 8

*Lemelson v. Bendix Corp.*,
    104 F.R.D. 13 (D. Del. 1984) .......................................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................. 5, 10

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992).......................................................................7

*Monsanto Co. v. Spray-Rite Serv.Corp.*,
    465 U.S. 752 (1984) ...................................................................................... 10

*Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobile Corp.*,
    801 F. Supp. 2d 1163 (D.N.M. 2011) .............................................................. 10

*Precision CPAP, Inc. v. Jackson Hosp.*,
    No. 2:05cv1096-MHT, 2010 WL 797170 (M.D. Ala. Mar. 8, 2010) ....................... 11

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
    508 U.S. 49 (1993) ..................................................................................... 7, 8

*Taylor Publ'g Co. v. Jostens Inc.*,
    216 F.3d 465 (5th Cir. 2000).......................................................................... 12

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965) ....................................................................................... 6

*Viazis v. Am. Ass'n of Orthodontists*,
    314 F.3d 758 (5th Cir. 2002)................................................................... 10, 11

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    513 F. Supp. 1100 (E.D. Pa. 1981) .................................................................. 6

**Statutes**

15 U.S.C. § 1......................................................................................................... 3

15 U.S.C. § 15(b)................................................................................................... 8

15 U.S.C. § 2......................................................................................................... 3

**Rules**

Fed. R. Civ. P. 56(c) .............................................................................................. 5

Defendants Garmin, LG, Motorola Mobility, Inc. ("MMI"), Motorola Solutions, Inc. ("MSI), Blackberry, and Toshiba respectfully move this court pursuant to Fed. R. Civ. P. 56 for summary judgment of Bandspeed's antitrust and ancillary claims, and hereby request oral argument.

As Bandspeed's complaint, prior briefing, and discovery responses make clear, Bandspeed's antitrust claims fail as a matter of law because they are based solely on petitioning conduct that the First Amendment-based *Noerr-Pennington* doctrine shields from antitrust liability.  According to Bandspeed, Defendants' assertion of a license defense to patent litigation amounts to an antitrust violation.  But defending against a lawsuit comprises the very petitioning activity that the *Noerr-Pennington* doctrine protects.

Even if *Noerr-Pennington* didn't apply, which it does, Bandspeed's claims fail because Bandspeed has failed to plead or present evidence showing that Defendants entered into an illegal agreement that improperly restrains trade.  Instead, Bandspeed asks this Court to *infer* an illegal agreement –*i.e.*, a conspiracy—based on an alleged agreement to "retroactively reinterpret" the Bluetooth SIG License.  Despite significant written discovery and countless depositions, Bandspeed's evidence shows nothing more than economically rational business conduct – namely, each Defendant asserting a viable license defense based on the Bluetooth SIG License.  Because this evidence demonstrates nothing more than parallel conduct, Bandspeed's conspiracy claims fail.

For this reason, as well as the other deficiencies with Bandspeed's claims outlined below, the Court should grant Defendants' motion for summary judgment against Bandspeed on its federal antitrust and derivative state law claims.

I.      **BACKGROUND**

In 2001, some nine years before filing its antitrust claim, Bandspeed joined the Bluetooth Special Interest Group (the "Bluetooth SIG").[1]  Dkt. 731, ¶ 91.  Bandspeed participated in standard-setting activities in connection with a particular Bluetooth SIG working group, known as the Co-Existence Working Group.  And Bandspeed actively lobbied the Bluetooth SIG to adopt into a Bluetooth industry standard certain technologies to which Bandspeed now claims proprietary rights.  *See* BSPD00074872-BSPD00074878 (Ex. 1 to Declaration of Christina E. Fahmy ("Fahmy Decl")) at BSPD00074878.  Bandspeed claims to have withdrawn[2] from the Bluetooth SIG at some time after it proposed its technology to the Bluetooth SIG Co-Existence Working Group for inclusion in a draft Bluetooth Specification.  Dkt. 731, ¶ 92.

Bandspeed claims that this withdrawal terminated any royalty-free licensing[3] obligation it owed under the terms of the Bluetooth SIG License.  The Bluetooth SIG License, however, expressly states that:

> All Contributions by a contributing . . . Member that have been submitted for inclusion in any Bluetooth Specification or Draft Bluetooth Specification shall be licensed by the contributing . . . Member to all Licensees . . . under the grant specified in Section 5(b) hereof for all Bluetooth Specifications in which the Contributions become included, **even if such . . . Member has withdrawn** or has been terminated as a Member of Bluetooth SIG.

Bluetooth Patent/Copyright License Agreement (Ex. 2 to Fahmy Decl.) at § 4(b)

---

[1]   The Bluetooth SIG is an industry standard-setting organization that promulgates standards, also known as specifications, for Bluetooth wireless devices, which allow devices made by different manufacturers to communicate – *i.e.* interoperate – with one another.  Dkt. 731, ¶ 82.

[2]   The parties dispute when Bandspeed withdrew from Bluetooth SIG, but resolution of this issue has no bearing on the determination of this motion.

[3]   Bandspeed refers to the Bluetooth SIG license as a royalty-free license.  But Bandspeed and other companies that have joined the Bluetooth SIG received consideration for their agreement to grant licenses to their technologies.  This consideration comes in the form of a return license – *i.e.* a cross-license to other members' technology.  Bluetooth Patent/Copyright License Agreement (Ex. 1) at § 5.

(emphasis added).  Although immaterial to this motion, the parties dispute whether or not the Bluetooth SIG License conveys to Defendants a license to the patents-in-suit, and thus provides Defendants with a valid license defense.

In August 2009, Bandspeed sued Sony Electronics, Inc., Nintendo of America, Inc., Apple, Inc., Lego Systems, Inc., Parrot, Inc. and Scosche Industries, Inc. in the Western District for infringement of U.S. Patent Nos. 7,027,418 and 7,570,614.  Case No. 09-cv-00593-LY, Dkt. 1, ¶¶ 14-18, 20-24.  In June 2010, Bandspeed sued Garmin, LG, MMI, MSI, Blackberry, and Toshiba, along with several other End Product Defendants,[4] in the Eastern District of Texas,[5] for allegedly infringing the '418 and '614 patents.  Dkt. 1.

According to Bandspeed, the End Product Defendants make and sell Bluetooth wireless communication devices that allegedly incorporate the technologies covered in the patents-in-suit. Dkt. 731, ¶ 3 & Exhibit A.  After Bandspeed sued the End Product Defendants for infringing the patents-in-suit, each Defendant asserted as a defense to the patent infringement claims that it already held a license to the patents-in-suit under the Bluetooth SIG License Agreement.  Dkts. 168, 177, 179-81, 210, 217, 238.  Bandspeed responded to Defendants' license defense by twice amending its Complaint to assert antitrust claims.[6]  Dkts. 313, 731.

---

[4]   "End-Product Defendants" means Garmin International, Inc.; Garmin USA, Inc.; LG Electronics, Inc.; LG Electronics U.S.A., Inc.; LG Electronics Mobilecomm U.S.A., Inc.; Motorola Solutions, Inc.; Motorola Mobility LLC f/k/a Motorola Mobility, Inc.; BlackBerry Limited; BlackBerry Corporation; Toshiba Corporation; Toshiba America Information Systems, Inc.; and Toshiba America, Inc.

[5]   Subsequently, the Eastern District action was transferred to this Court under the current case number.

[6]   Bandspeed claims that Defendants have engaged in a *per se* illegal conspiracy not only to fix prices and boycott Bandspeed from licensing its Bluetooth-related technologies in violation of Section 1 of the Sherman Act, Dkt 731, ¶¶ 114-125 (citing 15 U.S.C. § 1), but also to monopsonize certain alleged markets for these technologies in violation of Section 2 of the Sherman Act.  Dkt 731, ¶¶ 126-130 (citing 15 U.S.C. § 2).  In addition to the conspiracy

Bandspeed bases its antitrust theory on its claim that Defendants "[have engaged in a] concerted retroactive reinterpretation of Bluetooth SIG's Patent/Copyright License Agreement ("BPLA")".  Dkt. 1243 at 1.  In its Complaint, Bandspeed claims that this alleged misinterpretation of the Bluetooth SIG License—***began in 2010***, after Bandspeed had filed its infringement suits:

> ***Beginning in 2010***, contrary to the express language of the Bluetooth SIG License Agreement, defendants, including Bluetooth SIG, maintained that a Bluetooth SIG Member grants a royalty-free license of claims in its issued patents and pending patent applications that are "necessary" to practice a Bluetooth Specification even if that member withdraws from Bluetooth SIG before the adoption of the Bluetooth Specification.

Dkt. 313 at ¶98; Dkt. 731 at ¶ 95 (emphasis added).

In its discovery responses and later briefing, Bandspeed further defined the "overt acts" it contends comprise the alleged conspiracy:

- Michael Foley, then-Executive Director of Bluetooth SIG, asserted ***in his deposition in this case***, that the Bluetooth SIG License agreement provides a license to the patents-in-suit.  Dkt. 1243 at 15-16; *see* Ex. 3 to Fahmy Decl. at 40-41.

- Several Defendants, including Sony, Parrot, Belkin, Motorola, Kyocera, and GN asserted ***in their respective answers to Bandspeed's complaint,*** that the Bluetooth SIG agreement provides a license to the patents-in-suit.  Dkt. 731, ¶ 96; Dkt. 1243 at 16, 18.

- Defendants asserted, ***in a joint Motion to Transfer this case***, that they were "actively pursuing a license defense based on Plaintiff's participation in the Bluetooth [SIG]. . . .

---

claims, Bandspeed claims that, through this alleged conduct, Defendants Motorola Mobility, Motorola Solutions, Toshiba, and Bluetooth SIG violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by jointly monopsonizing and attempting to jointly monopsonize certain alleged relevant markets for the purchase of patent licenses for Bluetooth technologies.

In particular, the [D]efendants allege that Plaintiff licensed its technology, including the

patents-in suit, to any member of Bluetooth SIG under the Bluetooth SIG License

Agreement." Dkt 1243 at 19.

Critically, every action advanced by Bandspeed as an "overt act" in support of its conspiracy

claims was undertaken by each Defendant as part of its defense of this litigation, which

Bandspeed itself brought. And these acts all occurred after Bandspeed had filed suit.

## II.   Argument

The alleged conduct on which Bandspeed bases its antitrust claims cannot, as a legal matter,

support those claims. As explained below, Defendants' license defense is conduct *immune* from

application of the antitrust laws. The summary judgment inquiry should end at this point.

Nonetheless, Defendants describe below additional, independent bases on which Bandspeed's

antitrust claims fail as a matter of law.

### A.   Legal Standard

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Where, as here, "the factual context renders respondents' claim implausible. . . the claim is one

that simply makes no economic sense-respondents must come forward with more persuasive

evidence to support their claim than would otherwise be necessary." *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "The Fifth Circuit has consistently granted

summary judgment in antitrust cases in which opposing parties have failed to present significant

probative evidence to support their claims." *Associated News, Inc. v. Curtis Circulation Co., Inc.*, Civ.No. H-80-1201, 1986 WL 13791, at *2 (S.D. Tex., Dec. 4, 1986).

      **B.**      **Bandspeed's Antitrust Claims Are Barred by the *Noerr-Pennington* Doctrine.**

      Bandspeed's entire antitrust theory rests on petitioning conduct undertaken by Defendants to defend themselves against the infringement actions brought by Bandspeed.  These acts cannot provide the predicate anticompetitive conduct necessary to establish an antitrust violation because the *Noerr-Pennington* doctrine exempts such petitioning from antitrust scrutiny.  Bandspeed's antitrust claims therefore fail as a matter of law.

      The *Noerr-Pennington* doctrine, which generally exempts government petitioning activity from antitrust scrutiny, also shields conduct undertaken in connection with litigation. *See Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *see also United Mine Workers v. Pennington*, 381 U.S. 657, 669-672 (1965) (government petitioning activities immune from antitrust laws); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 135, 143 (1961) (same).  Specifically, courts have made plain that the *Noerr-Pennington* doctrine precludes antitrust challenges attacking conduct related to prosecuting or defending a civil action.  *See, e.g.*, *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) (holding that "petitioning immunity protects joint litigation"); *Lemelson v. Bendix Corp.*, 104 F.R.D. 13, 18 (D. Del. 1984)  ("Their joint defense, standing alone, cannot provide any basis for antitrust liability"); *see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 513 F. Supp. 1100, 1155–57 (E.D. Pa. 1981), *rev'd. in part on other grounds, In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238 (3d Cir. 1983).  The *Noerr-Pennington* doctrine thus immunizes positions taken in litigation.  *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (holding *Noerr* immunity applies to petitions where "defendants make

representations and present arguments to support their request that the court do or not do something"). Even if the Defendants jointly undertook the litigation activities, the conduct still could not be subject to attack under the antitrust laws. *See McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1561-62 (11th Cir. 1992) (holding that jointly instituting litigation is immune even when used "to achieve anti-competitive goals"). Discovery responses, too, are immunized as "incidental" to petitioning. *See Freeman*, 410 F.3d at 1185.

Bandspeed's antitrust claims fail under these standards. The only evidence Bandspeed offers to support its claims, as explained below, shows that Bandspeed seeks to hold Defendants liable under the antitrust laws merely for defending themselves against Bandspeed's patent claims—core petitioning conduct that *Noerr-Pennington* protects. Bandspeed's various amended complaints acknowledge that the alleged "retroactive reinterpretation" of the Bluetooth SIG agreement, which forms the basis for the antitrust claims here, occurred ***after*** Bandspeed sued Defendants. Dkt. 313 at ¶98; Dkt. 731 at ¶ 95. Tellingly, Bandspeed did not assert any antitrust claims in its initial infringement action. Only after each End Product Defendant asserted a license defense to the infringement claims did Bandspeed assert antitrust claims. Dkt. 313 at ¶¶ 98-103, Dkt. 731 at ¶¶ 95-97. Similarly, Bandspeed's only evidence of the charged "conspiracy" consists of the respective license defenses that each End Product Defendant asserted in its Answer submitted to this Court and the deposition testimony described above, which confirms that Bandspeed challenges only positions taken in litigation. Dkt. 1243 at 15-16, 18-19; *see Bandspeed's Objections and Responses to End Product Defendants' Interrogatory No. 14* (Ex. 3 to Fahmy Decl.) at 40-41.

Finally, no factual basis exists for invoking any exception to *Noerr-Pennington*. Any exception to *Noerr-Pennington* requires, as an initial matter, that the position taken in litigation

be "objectively baseless." *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 51 (1993). No matter how this Court rules on the license defense, there can be no genuine dispute that Defendants have a reasonable basis for asserting their respective license defenses. Moreover, Bandspeed cannot seek to invoke an exception to *Noerr-Pennington* for the additional reason that it does not claim and cannot prove that Defendants have asserted the license defense as a sham in a bid to harm a competitor through the litigation process. *See id.* at 60-61.

Accordingly, the End Product Defendants respectfully request that the Court enter summary judgment in their favor on all antitrust claims raised by Bandspeed.

### C.    The Facts upon which Bandspeed Bases Its Antitrust Claims Cannot as a Matter of Law Establish an Antitrust Conspiracy.

Even if *Noerr-Pennington* did not foreclose its antitrust claims, which it does, Bandspeed has not pled and cannot prove a legally-viable antitrust conspiracy claim against any Defendant. For the conspiracy claims to survive summary judgment, Bandspeed must have pled and it must be able to present evidence showing that Defendants entered into an illegal agreement that improperly restrains trade. *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-290 (1968); *Associated News, Inc.*, 1986 WL 13791 at *2 (section 1); *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 565 F. Supp. 167, 182 (E.D. La. 1981) (section 2).

Instead, Bandspeed asks this Court to *infer* an illegal agreement –*i.e.*, a conspiracy— based on an alleged agreement to "retroactively reinterpret" the Bluetooth SIG License. By its own admission, Bandspeed does not contend that the Bluetooth SIG License itself represents the allegedly illegal concerted conduct.[7] Dkt. 1243 at 1. In fact, in its Complaint, Bandspeed notes

---

[7]    Indeed, the License cannot serve as the predicate concerted conduct supporting Bandspeed's antitrust conspiracy claims because the parties, including Bandspeed (Dkt. 731, ¶¶ 86, 91) all

that Defendants' "unlawful agreement" is "contrary to the terms of the Bluetooth License Agreement."  Dkt. 731, ¶ 98; *see also* Dkt. 1243 at 1 (antitrust claims based on "retroactive **reinterpretation**" of License) (emphasis added); *see also* Ex. 3 to Fahmy Decl. ("the purported basis for the refusal of End-Product Defendants, current and former defendants, and members of Bluetooth SIG to license Bandspeed's technology is a mere pretext and is **contrary to the plain meaning of the BPLA**") (emphasis added).

Despite months of exhaustive discovery and numerous depositions of Defendants, Bandspeed, however, has shown no direct or even circumstantial evidence to support any inference that the End Product Defendants conspired among themselves or with anyone else) to "reinterpret" the Bluetooth SIG License.  Indeed, in its discovery responses, Bandspeed did not identify any communications that support Bandspeed's "retroactive" interpretation theory.  *See Bandspeed's Objections and Responses to End Product Defendants' Interrogatory No. 26* (Ex. 4 to Fahmy Decl.).  The only facts that Bandspeed has disclosed in discovery to support its conspiracy claims merely show that each End Product Defendant ***independently raised a license defense*** in response to Bandspeed's patent infringement claims in this action.  *See* Ex. 3 to Fahmy Decl.; Dkt. 1243 at 16, 18-19.  These facts demonstrate nothing more than lawful parallel conduct.  Moreover, it was in each End Product Defendant's individual economic self-interest – and made great sense – for each Defendant independently to assert a license defense to the patent

entered into the Bluetooth SIG License long before the four-year statute of limitations period applicable to all private antitrust actions.  *Hanson v. Pittsburgh Plate Glass Indus., Inc.*, 482 F.2d 220, n. 14 (5th Cir. 1973); 15 U.S.C. § 15(b).  For this reason, Bandspeed disavowed reliance on the Bluetooth SIG License and rested its antitrust claims squarely on the theory that Defendants allegedly conspired to "retroactively reinterpret" the Bluetooth SIG License in connection with this litigation.  Dkt. 1243 at 1.

9

infringement claims, given the objective grounds for the defense set out in the Bluetooth SIG

License.  Bluetooth Patent/Copyright License Agreement (Ex. 2 to Fahmy Decl.) at § 4(b).

Indeed, it would have been economically ***irrational*** for an End Product Defendant ***not*** to assert

the license defense in response to Bandspeed's infringement suit.   *See Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 566 (2007) ("no reason to infer that the companies had agreed among

themselves to do what was only natural anyway.").

        Thus, the facts Bandspeed offers provide insufficient legal grounds for inferring a

conspiracy, because they are just as consistent with unilateral, independent conduct as with any

alleged conspiracy.  *Monsanto Co. v. Spray-Rite Serv.Corp.*, 465 U.S. 752, 764 (1984)*;*

*Matsushita,* 475 U.S. at 594; *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 270-71

(5th Cir. 2008); *Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobile Corp.*, 801 F. Supp. 2d

1163, 1193 (D.N.M. 2011).

        Nor can Bandspeed avoid summary judgment merely by augmenting facts showing

parallel conduct with evidence that these Defendants are members in a trade association[8] or

standard-setting organization.  *See, e.g.*, *Twombly*, 550 U.S. at 567 n.12 (trade association);

*Golden Bridge Technology, Inc. v. Nokia, Inc.*, No. 6:06-CV-105, 2007 WL 2688487 at *6-7

(E.D. Tex. Sept. 11, 2007) (standard-setting organization).  Merely alleging parallel conduct

together with membership in an industry trade association or standard-setting organization,

without more, is insufficient as a matter of law to state an antitrust conspiracy claim.  *See, e.g.*,

*Viazis v. Am. Ass'n of Orthodontists,* 314 F.3d 758, 764 (5th Cir. 2002) (trade association "not by

its nature a 'walking conspiracy', its every denial of some benefit amounting to an unreasonable

---

[8]    Bandspeed's complaint identified the Bluetooth SIG as a trade association.  Dkt. 731,¶ 82.

restraint of trade"); *Golden Bridge Technology, Inc. v. Nokia, Inc.*, 2007 WL 2688487 at *6-7 (standard-setting organization). Bandspeed must put forth facts that tend to exclude the possibility that the Defendants acted unilaterally, which it cannot do by merely proving that Defendants engaged in parallel conduct and were all Bluetooth SIG members. *Viazis,* 314 F.3d at 762. It has not even attempted to show more.

Because Bandspeed cannot as a matter of law exclude the possibility that Defendants acted independently in asserting the Bluetooth SIG License as a defense to Bandspeed's infringement claims, summary judgment should be granted to Defendants on the conspiracy claims. *Id.*

> **D.    Bandspeed's Monopsonization and Attempted Monopsonization Claims are not Cognizable under Section 2 of the Sherman Act.**

In addition, Bandspeed's monopsonization and attempted monopsonization claims, under Section 2 of the Sherman Act, fail as a matter of law. According to Bandspeed, three Defendants – MMI, MSI, and Toshiba – collectively monopsonized and attempted to monopsonize certain alleged relevant markets for Bluetooth technologies. Dkt 731, ¶¶131-135. In other words, these Defendants supposedly engaged in anticompetitive practices to enable them to share monopsony power among themselves. But shared monopsony claims are not cognizable under Section 2 of the Sherman Act. *See Precision CPAP, Inc. v. Jackson Hosp.*, No. 2:05cv1096-MHT, 2010 WL 797170, at *14 (M.D. Ala. Mar. 8, 2010) ("The former Fifth Circuit Court of Appeals, consistent with other courts that have addressed the issue, has rejected any claim of violation of § 2 of the Sherman Act predicated on a theory of shared monopoly."), *citing AT&T v. Delta Commc'ns Corp.*, 579 F.2d 972 (5th Cir. 1978); *AT&T v. Delta Commc'ns Corp.*, 408 F. Supp. 1075, 1106 (S.D. Miss. 1976) (granting summary judgment on antitrust claims because unsupported by the evidence, and dismissing pendent state antitrust claims; finding that permitting shared monopoly

(oligopoly) claims under Section 2 would "amend[] the [Sherman] Act to subject to antitrust regulation businesses which lack the § 2  required market control and the § 1 conspiracy"); *see also Flash Elecs., Inc. v. Universal Music & Video Distrib. Corp.,* 312 F. Supp. 2d 379, 396 (E.D.N.Y. 2004) (holding that Section 2 liability requires actual or attempted monopolization by **one** Defendant).  Accordingly, this provides another basis for granting summary judgment to Defendants MSI, MMI, Toshiba, and the Bluetooth SIG on the monopsonization and attempted monopsonization claims.

### E. Bandspeed's State Law Claims Cannot Survive Summary Judgment Because They Derive from Bandspeed's Antitrust Claims, and Fail for the Same Reasons.

Bandspeed's state law unfair competition, civil conspiracy, unjust enrichment, and permanent injunction claims must fall with its antitrust claims.  Each of these claims requires an underlying "illegal act." *See Taylor Publ'g Co. v. Jostens Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citation omitted) (unfair competition); *RTLC AG Prods. v. Treatment Equip. Co*., 195 S.W.3d 824, 833 (Tex. App. 2006) (civil conspiracy); *Los Cucos Mexican Café, Inc. v. Sanchez*, No. 13-05-578-CV, 2007 Tex. App. LEXIS 3408, at *13-14 (Tex. App., May 3, 2007) (unjust enrichment).  The only "illegal acts" alleged by Bandspeed against Motorola are its fatally flawed antitrust claims.  (Dkt. 731, ¶¶ 141, 144, 147).  Because the state-law claims are merely derivative of Bandspeed's antitrust allegations, they too cannot survive summary judgment.

### III. Conclusion

The *Noerr-Pennington* doctrine squarely forecloses Bandspeed's antitrust and derivative claims. Moreover, for independent reasons, Bandspeed's antitrust conspiracy claims under Sections 1 and 2 of the Sherman Act and its shared monopsonization claim and attempted monopsonization claims under Section 2 of the Sherman Act fail as a matter of law.  Bandspeed

also advances no cognizable antitrust case theory.  The derivative state law claims, all of which

rest exclusively on Bandspeed's antitrust claims, therefore fail as a matter of law as well.

      For all these reasons, this Court should grant summary judgment for the End Product

Defendants on Bandspeed's antitrust and state-law claims.


Dated: October 31, 2013

| | |
|---|---|
| | By: */s/ Steven D. Moore* |
| Local Counsel: | Steven D. Moore (pro hac vice) |
| | smoore@kilpatricktownsend.com |
| Mark T. Mitchell (Tex. Bar No. 1421770) | KILPATRICK TOWNSEND LLP |
| mmitchell@gardere.com | Eighth Floor |
| GARDERE WYNNE SEWELL LLP | Two Embarcadero Center |
| One American Center, Suite 3000 | San Francisco, CA 94111 |
| 600 Congress Avenue | (415) 576.0200 (telephone) |
| Austin, TX 78701-2978 | (415) 576.0300 (facsimile) |
| Telephone: (512) 542-7072 | |
| Facsimile: (512-542-7272) | Peter M. Boyle (pro hac vice) |
| | pboyle@kilpatricktownsend.com |
| | Christina E. Fahmy (pro hac vice) |
| | cfahmy@kilpatricktownsend.com |
| | KILPATRICK TOWNSEND LLP |
| | 607 14th St NW, Suite 900 |
| | Washington D.C. 20005 |
| | 202 508-5800 (telephone) |
| | 202 508-5858 (facsimile) |
| | |
| | Bonnie M. Grant (Tex. Bar No. 24067634) |
| | bgrant@kilpatricktownsend.com |
| | KILPATRICK TOWNSEND LLP |
| | Suite 2800 |
| | 1100 Peachtree Street |
| | Atlanta, Georgia 30309-4530 |
| | (404) 815-6500 (Telephone) |
| | (404) 815-6555 (Facsimile) |
| | |
| | Matias Ferrario (pro hac vice) |
| | mferrario@kilpatricktownsend.com |
| | James L. Howard (pro hac vice) |
| | jhoward@kilpatricktownsend.com |

Caroline K. Wray (pro hac vice)
cwray@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
1001 West Fourth Street
Winston-Salem, NC 27104
(336) 607-7500 (Telephone)
(336) 607-7400 (Facsimile)

**COUNSEL FOR DEFENDANTS
MOTOROLA MOBILITY LLC &
MOTOROLA SOLUTIONS, INC.**

By: _____ /s/ *Caroline A. Bader*
Steve McConnico
State Bar No. 13450300
Steve Wingard
State Bar No. 00788694
Scott, Douglass & McConnicco,
L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300
(512) 474-0731 Facsimile
swingard@scottdoug.com

Michelle L. Marriott
State Bar No. 24043802
Adam P. Seitz
Caroline A. Bader
Erise IP, P.A.
6201 W. College Blvd, Ste. 300
Overland Park, KS 66211
Phone: 913.777.5600
Fax: 913.777.5601
michelle.mariott@eriseip.com
adam.seitz@eriseip.com
carrie.bader@eriseip.com

**FOR DEFENDANTS GARMIN
INTERNATIONAL, INC.
AND GARMIN USA, INC.**

By: */s/ Bradley S. Lui*
    Bradley S. Lui, D.C. Bar No. 425033

By: */s/ Michael R. Rueckheim*
    David J. Healey (09327980)
    Wasif Qureshi (24048155)
    Brian G. Strand (24041166)
    Michael R. Rueckheim (24081129)
    **FISH & RICHARDSON PC**
    1221 McKinney Street, Ste. 2800
    Houston, TX 77010
    Tel: (713) 654-5300
    Fax: (713) 652-0109
    healey@fr.com
    qureshi@fr.com
    strand@fr.com
    Rueckheim@fr.com

    Michael J. McKeon
    FISH & RICHARDSON PC
    1425 K Street N.W., 11th Floor
    Washington, D.C. 20005
    Tel: (202) 783-5070
    Fax: (202) 283-7331
    mckeon@fr.com

**COUNSEL FOR DEFENDANTS LG
ELECTRONICS, INC., LG ELECTRONICS
U.S.A., INC., AND LG ELECTRONICS
MOBILECOMM U.S.A., INC.**

By: */s/ David P. Whittlesey*

14

BLui@mofo.com
Hector G. Gallegos, CA Bar No.
175137
HGallegos@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC  20006-1888
Telephone:   202.887.1500
Facsimile:    202.887.0763
Hector C. Gallegos is not admitted in
the District of Columbia. Practice
supervised by principals of firm
admitted to the District of Columbia
Bar.
Vincent J. Belusko, CA Bar No.
100282
BBelusko@mofo.com
Bita Rahebi, CA Bar No. 209351
BRahebi@mofo.com
Dylan J. Raife, CA Bar No. 288346
DRaife@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017-3453
Telephone:   213.892.5200
Facsimile:    213.892.5454


Francis C. Ho, CA Bar No. 247426
FHo@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco CA  94105-2482
Telephone:   415.268.7000
Facsimile:    415.268.7522

David B. Weaver
Texas Bar No. 00798576
Email: dweaver@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Telephone:  512.542.8651
Facsimile:    512.236.3476

David P. Whittlesey
dwhittlesey@andrewskurth.com
State Bar No. 00791920
J. Roger Williams, Jr.
rwilliams@andrewskurth.com
ANDREWS KURTH LLP
State Bar No. 21555650
111 Congress Avenue, Suite 1700
Austin, Texas, 78701
Telephone: (512) 320-9200
Facsimile: (512) 320-9292

Jeffrey K. Sherwood
SherwoodJ@dicksteinshapiro.com
State Bar No. 24009354
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, D.C.  20006
(202) 420-2200 (office)
(202) 420-2201 (fax)

**ATTORNEYS FOR DEFENDANTS
TOSHIBA CORPORATION, TOSHIBA
AMERICA INFORMATION SYSTEMS,
INC. & TOSHIBA AMERICA, INC.**

William L. LaFuze
Texas Bar No. 11792500
Email: wlafuze@velaw.com
Steve R. Borgman
Texas Bar No. 02670300
Email: sborgman@velaw.com
VINSON & ELKINS LLP
First City Tower
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone:   713.758.2595
Facsimile:   713.615.5317

**COUNSEL FOR DEFENDANTS
BLACKBERRY LIMITED;
BLACKBERRY CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 31st day of October, 2013.

/s/ *Steven D. Moore*

17