IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BANDSPEED, INC., | § § § | |
| Plaintiff, | § § § | CASE NO. 1:11-CV-00771 |
| v. | § § § | |
| GARMIN INTERNATIONAL, INC.; GARMIN USA, INC.; LG ELECTRONICS, INC.; LG ELECTRONICS U.S.A., INC.; LG ELECTRONICS MOBILECOMM U.S.A., INC.; MOTOROLA SOLUTIONS INC. FNA MOTOROLA, INC.; MOTOROLA MOBILITY INC.; BLACKBERRY LIMITED; BLACKBERRY CORPORATION; TOSHIBA CORPORATION; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; AND TOSHIBA AMERICA, INC. | § § § § § § § § § § § § § § § § | |
| Defendants | § § § § | |

**PLAINTIFF BANDSPEED, INC.'S RESPONSE
TO TOSHIBA CORPORATION, TOSHIBA AMERICA, INC., AND TOSHIBA
AMERICA INFORMATION SYSTEMS, INC.'S MOTION FOR
SUMMARY JUDGMENT ON PATENT INFRINGEMENT CLAIMS[1]**

---

[1] On January 10, 2014, Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc. and LG Electronics MobileComm U.S.A., Inc. (collectively, "LG") filed their Motion and Joinder in Toshiba's Motion for Summary Judgment on Patent Infringement Claims (Counts I and II). (Doc. 1503.)  LG adopted all of Toshiba's arguments and did not assert any new basis for summary judgment. Accordingly, although this Response will refer to Toshiba throughout, it is meant as a Response to both Toshiba and LG's Motions.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................I

TABLE OF AUTHORITIES ........................................................................................ II

SUMMARY OF THE ARGUMENT ............................................................................1

GENUINE DISPUTES OF MATERIAL FACT ..........................................................2

OBJECTIONS TO TOSHIBA'S EVIDENCE .............................................................2

ARGUMENT ................................................................................................................3

  I.  Rule 56 Requires Denial of Toshiba's Motion. ...........................................3

  II.  Rules of Contract Construction Under New York Law Require Denial of Toshiba's
Motion. ......................................................................................................3

  III.  The Copyright License of The BPLA Does Not Provide Toshiba a
Patent License.............................................................................................5

    A.  The Unambiguous Language of Section 4 of the BPLA Grants Only a
Copyright License, Not a Patent License. ...........................................5

    B.  Even if Ambiguous, the Extrinsic Evidence of the Parties' Intent Shows that
Section 4 of the BPLA Was Not Intended to Provide a Patent License. .......7

  IV.  Even In The Unlikely Event This Court Adopts Toshiba's Strained Interpretation,
Section 4 Of The BPLA Does Not Provide It With A License To The
Patents-In-Suit. ..........................................................................................9

    A.  Even if Interpreted to Grant a Patent License, Section 4(b) Does Not Grant a
License to Contributions if a Member Withdraws Before Adoption of the
Specification in Which the Contribution Is Included....................................9

    B.  Even if Toshiba's Retroactive Reinterpretation of Section 4(b) to Provide
Patent Licenses Is Correct (Which It Is Not), Toshiba Fails to Satisfy Its
Burden to Prove that the Purported "Contributions" on Which It Relies
Create a License to Bandspeed's Asserted Claims. ......................................12

      1.  Submissions Made by Bandspeed Employees to IEEE Were Not
"Contributions" to Bluetooth SIG as Defined by the BPLA...................12

      2.  Bandspeed Did Not Submit all of the "Contributions" Toshiba
Relies Upon. ...................................................................................13

      3.  Toshiba Has Failed to Meet Its Burden to Show that Bandspeed's
Purported "Contributions" Were Included in Bluetooth
Specification v. 1.2. .......................................................................14

    C.  In all Events, the BPLA Provides a License Only to "Necessary Claims." 15

      1.  Several Asserted Claims Are Not "Necessary Claims" Because They
Are Not "Necessarily Infringed." ....................................................16

      2.  The Asserted Claims that Toshiba Contends were "Contributions"
by Bandspeed Are Not Within the "Scope" as Defined by the BPLA. . 16

CONCLUSION AND PRAYER.................................................................................17

# TABLE OF AUTHORITIES

## <u>CASES</u>

*ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.,*
  485 F.3d 85 (2d Cir. 2007) ........................................................................................11

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.,*
  2012 WL 3890128 (S.D.N.Y. Sept. 7, 2012) ............................................................4, 6

*Ag Pro, Inc. v. Sakraida,*
  437 F.2d 99 (5th Cir. 1971) .........................................................................................3

*Aramony v. United Way of Am.,*
  254 F.3d 403 (2d Cir. 2001) .......................................................................................11

*Armstrong v. Am. Home Shield Corp.,*
  333 F.3d 566 (5th Cir. 2003) .......................................................................................3

*Compagnie Financiere de CIC et de L'Union Europeene v. Merril Lynch, Pierce, Fenner & Smith, Inc.,*
  232 F.3d 153 (2d Cir. 2000).........................................................................................3

*Destiny USA Holdings, LLC v. Citigroup Global Markets Realty Corp.,*
  69 A.D.3d 212, 218, N.Y.S.2d 793 (2009) ...............................................................4, 6

*Ellis-Foster Co. v. Pittsburgh Plate Glass Co.,*
  132 F. Supp. 674 (E.D.N.Y. 1955) ..............................................................................5

*Howard v. Howard,*
  292 A.D.2d 345, 740 N.Y.S.2d 71 (2002) ...................................................................4

*In re Innovatio IP Ventures LLC Patent Litigation,*
  2013 WL 3874042 (N.D. Ill. July 26, 2013)...............................................................12

*In re Singer Co. N.V.,*
  262 B.R. 257 (S.D.N.Y. 2001) .....................................................................................5

*Int'l Multifoods Corp. v. Comm. Union Ins. Co.,*
  309 F.3d 76 (2d Cir. 2002)........................................................................................5, 6

*Little v. Liquid Air Corp.,*
  37 F.3d 1069 (5th Cir. 1994) .......................................................................................3

*Mazzeferro v. RLI Ins. Co.,*
  50 F.3d 137 (2d Cir. 1995)........................................................................................5, 6

*Nancy Rose Stormer, P.C. v. County of Oneida,*
  66 A.D.3d 1449, 1450, 886 N.Y.S.2d 298 (2009) .....................................................4, 5

*Sayers v. Rochester Tel. Corp. Supplemental Mgm't Pension Plan,*
  7 F.3d 1091, 1095 (2d Cir. 1993)..........................................................................4

*Tasini v. New York Times Co.,*
  206 F.3d 161 (2d Cir. 1999)..............................................................................4

*Thompson v. Gjivoje,*
  896 F.2d 716, 721 (2d Cir. 1990)....................................................................4, 6

*Topps Co. v. Cadbury Stani S.A.I.C.,*
  526 F.3d 63 (2d Cir. 2008)................................................................................4

## **RULES**

Fed. R. Civ. P. 56 ................................................................................................2

## SUMMARY OF THE ARGUMENT

Defendants Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc. (collectively, "Toshiba") seek summary judgment on Bandspeed's patent infringement claims based solely on the contention that Toshiba has an express license to the '418 and '614 patents pursuant to the terms of the Bluetooth Patent/Copyright License Agreement ("BPLA"). In making this argument, Toshiba asks the Court to violate or ignore long-standing principles of contract construction in order to arrive at its tortured interpretation of the BPLA. Simply stated, the BPLA does not grant Toshiba a license to the patents-in-suit, even if Toshiba's interpretation of the contract is accepted. Accordingly, this Court can and should deny Toshiba's Motion on the following grounds:

- The <u>copyright license</u> of the BPLA does not provide Toshiba a <u>patent license</u>:
    - The unambiguous language of section 4 of the BPLA grants only a copyright license, not a patent license;
    - Even if Section 4 were ambiguous, the extrinsic evidence of the parties' intent shows that the parties did not intend the copyright license of the BPLA to grant a patent license.
- Even in the unlikely event this Court were to adopt Toshiba's strained interpretation, section 4 of the BPLA would not grant Toshiba a license to the patents-in-suit:
    - Even if interpreted to grant a patent license, section 4(b) would not grant a license to the Contribution of a member who withdraws before adoption of the Specification in which its Contribution is included;
    - Even if Toshiba's retroactive reinterpretation of section 4(b) to grant a patent license to Bandspeed's "Contributions" were correct (which it is not), Bandspeed's Asserted Claims still would not be licensed because submissions to the IEEE and the Bluetooth SIG regarding such claims were not included in Bluetooth Specification v. 1.2 and above:
        - o Submissions made by Bandspeed employees to IEEE were not "Contributions" to Bluetooth SIG as defined by the BPLA;
        - o Bandspeed did not submit all of the "Contributions" Toshiba relies upon;
        - o Toshiba has failed to meet its burden to show that Bandspeed's purported "Contributions" were included in Bluetooth Specification v. 1.2.
    - In all events, the Asserted Claims are not licensed because they are not "Necessary Claims" under the BPLA:
        - o Several Asserted Claims are not "Necessary Claims" because they are not "necessarily infringed" by implementation of the Bluetooth Specification; and

1

o The Asserted Claims that Toshiba contends were "Contributions" by Bandspeed are not within the "Scope" as defined by the BPLA.

## GENUINE DISPUTES OF MATERIAL FACT

Toshiba lists a series of purported "undisputed statements of fact." (Mot. at 1 - 7.) Many of these assertions, however, are indeed in dispute, demonstrating that genuine disputes of material fact exist precluding summary judgment. A table of the genuine disputes is attached to this Response as Attachment A.

## OBJECTIONS TO TOSHIBA'S EVIDENCE

Pursuant to Federal Rule of Civil Procedure 56(c)(2), Bandspeed hereby asserts it objections to the following exhibits attached to Toshiba's Motion in support of its purported "undisputed" facts.  The following exhibits cannot be presented in a form that would be admissible under the Federal Rules of Evidence for the reasons stated.

1.     Exhibit 4 – Bluetooth Adopters Agreement Form – Hearsay

Exhibit 4 is inadmissible hearsay under Rules 801 and 802 for which no exception applies.

2.     Exhibit 23 – AFH Specification 0.3 – Hearsay

Exhibit 23 is inadmissible hearsay under Rules 801 and 802 for which no exception applies.

3.     Exhibit 24 – AFH Specification 0.5 – Hearsay

Exhibit 24 is inadmissible hearsay under Rules 801 and 802 for which no exception applies.

4.     Exhibit 25 – AFH Specification 0.7 – Hearsay

Exhibit 25 is inadmissible hearsay under Rules 801 and 802 for which no exception applies.

5.     Exhibit 39 – Declaration of Peter Schwechheimer – Rule 702 Qualification

In his Declaration, Toshiba's damages expert, Peter Schwechheimer, opines regarding his

interpretation of the BPLA as a "RAND-Z licensing policy." (Ex. 39 ¶¶ 5 – 6). However, nowhere in his Declaration are there facts establishing that Mr. Schwechheimer is qualified under Rule 702 to render a legal opinion regarding the BPLA. As such, Mr. Schwechheimer's testimony in this regard should be stuck pursuant to Rule 702.

## ARGUMENT

### I.     RULE 56 REQUIRES DENIAL OF TOSHIBA'S MOTION.

Under Fed. R. Civ. P. 56, the party moving for summary judgment must demonstrate both the absence of a genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Once the absence of a genuine issue of material fact has been demonstrated, the non-movant "must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Id.* Additionally, "[a]ll facts and inferences must be viewed in the light most favorable to the nonmoving party." *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003). Finally, "[s]ummary judgment is the rare exception, and not the rule in patent infringement cases." *Ag Pro, Inc. v. Sakraida*, 437 F.2d 99, 101 (5th Cir. 1971).

### II.     RULES OF CONTRACT CONSTRUCTION UNDER NEW YORK LAW REQUIRE DENIAL OF TOSHIBA'S MOTION.

"The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de CIC et de L'Union Europeene v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). "The question of whether the language of a contract is ambiguous is a question of law to be decided by the Court." *Id.* But "interpretation of ambiguous contract language [wherein extrinsic evidence may be admitted]" usually is a question of fact to be resolved by the fact finder. *Id.* at 158. Nevertheless, "[i]n the event a contract is ambiguous, its interpretation is still a matter [of law] for the court unless determination of the intent of

the parties depends on the credibility of [the] extrinsic evidence or on a choice among reasonable inferences to be drawn from [the] extrinsic evidence." *Destiny USA Holdings, LLC v. Citigroup Global Markets Realty Corp.*, 69 A.D.3d 212, 218, 889 N.Y.S.2d 793 (2009). Ambiguity is "defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). *See also Nancy Rose Stormer, P.C. v. County of Oneida*, 66 A.D.3d 1449, 1450, 886 N.Y.S.2d 298, 299 (2009) ("The proper inquiry in determining whether a contract is ambiguous is whether the agreement on its face is reasonably susceptible of more than one interpretation.") The "reasonably intelligent person" is deemed to be "cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Sayers v. Rochester Tel. Corp. Supplemental Mgm't Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993).

"It is the primary rule of construction of contracts that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations." *Howard v. Howard*, 292 A.D.2d 345, 345, 740 N.Y.S.2d 71 (2002). "A court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, No. 09 Civ. 1976, 2012 WL 3890128, at *5 (S.D.N.Y. Sept. 7, 2012). Moreover, "captions are relevant to contract interpretation." *Int'l Multifoods Corp. v. Comm. Union Ins. Co.*, 309 F.3d 76, 85 (2d Cir. 2002). Indeed, "a contract . . . must be read as a whole, ***including any introductory clause or***

*heading*, to determine the intent of the parties." *Mazzeferro v. RLI Ins. Co.*, 50 F.3d 137, 140 (2d Cir. 1995) (emphasis added).

Finally, "to be entitled to summary judgment, the moving party has the burden of establishing that its construction of the [contract] is the only construction which can fairly be placed thereon." *Nancy Rose Stormer, P.C.*, 66 A.D.3d at 1450, 886 N.Y.S.2d at 299 (internal citations omitted). In addition, "where the dispute turns on whether there is a license at all, the burden is on the alleged infringer to prove the existence of the license." *Tasini v. New York Times Co.*, 206 F.3d 161, 171 (2d Cir. 1999). *See also Ellis-Foster Co. v. Pittsburgh Plate Glass Co.*, 132 F. Supp. 674, 675 (E.D.N.Y. 1955) (holding that the burden of proof is on the patent infringement defendant to show that a license exists); *In re Singer Co. N.V.*, 262 B.R. 257, 265 (S.D.N.Y. 2001) ("The burden of proving that an implied license exists is on the party asserting an implied license as a defense to [patent] infringement.").

## III. THE <u>COPYRIGHT LICENSE</u> OF THE BPLA DOES NOT PROVIDE TOSHIBA A PATENT LICENSE.

### A. The Unambiguous Language of Section 4 of the BPLA Grants Only a Copyright License, Not a Patent License.

Toshiba bases its entire argument regarding its purported license to the patents-in-suit on Section 4(b) of the BPLA. (Mot. at 9 – 12). In doing so, Toshiba ignores both the heading of Section 4 – "Copyright License" – as well as the unambiguous language of that section. Simply stated, Section 4 does not provide a patent license, only a copyright license.

Section 4 of the BPLA reads as follows:

4.    Copyright License.

(a)    Subject to Sections 2 and 6 hereof, each Associate and Adopter Member hereby grants to each of the Promoter and Associate Members of Bluetooth SIG who participate in a Working Group of Bluetooth SIG and to Bluetooth SIG, a worldwide, royalty-free, license under its copyrights in its Contributions to reproduce, distribute, display, perform and create derivative works for the purposes of developing any Draft Bluetooth Specifications or derivative works thereof.

(b)    All Contributions by a contributing Associate or Adopter Member that have been submitted for inclusion in any Bluetooth Specification or Draft Bluetooth Specification shall be licensed by the contributing Associate or Adopter Member to all Licensees (as defined in Section 5(b) hereof) under the grant specified in Section 5(b) hereof for all Bluetooth Specifications in which the Contributions become included, even if such Associate or Adopter Member has withdrawn or been terminated as a Member of Bluetooth SIG.

(Ex. 1, "BPLA"). To begin, the heading of Section 4 shows a clear intent that it applies to copyrights, not patents. Contrary to Toshiba's contention, headings "are relevant to contract interpretation" under New York law. *Int'l Multifoods Corp.*, 309 F.3d at 85. Indeed, introductory headings are vital to determining the intent of the parties. *See Mazzeferro*, 50 F.3d at 140. Here, had the parties intended for Section 4(b) to apply to patents, they could have easily entitled the section "Copyright ***and Patent***" License. They chose not to do so. To ignore the heading of Section 4, which Toshiba asks the Court to do, would be to ignore key evidence of the parties' intent as reflected by the plain meaning of the language they chose to employ. *See Acumen Re Mgmt. Corp.*, 2012 WL 3890128, at *5.

Further, nowhere in Section 4 does the word patent appear. Just like with the heading, the parties easily could have included such language had they intended for the license to apply to patents. Second, reading Sections 4(a) and (b) together, it is clear they both apply to copyright licenses. Indeed, subsection 4(a) addresses copyright licenses for Contributions used to develop any "Draft Bluetooth Specifications," while subsection 4(b) addresses copyright licenses for Contributions that "become included" in a final Bluetooth Specification. Taken as a whole, Section 4 addresses copyright licenses for Contributions to both draft and final Bluetooth Specifications. As such, the plain meaning of Section 4's language reflects the "apparent purpose which the parties sought to accomplish." *Thompson*, 896 F.2d at 721.

Finally, the term "Contribution" in Section 4 of the BPLA does not contemplate the licensing of patents. Indeed, Section 4(b) of the BPLA refers to the licensing of "Contributions." "Contribution" is defined under Section 1(h) of the BPLA as "any written or electronic document submitted to a Working Group for inclusion into a Bluetooth Specification by a Bluetooth SIG Member." By definition, the right to reproduce written or electronic material in a document is granted under a copyright license. If the drafters of the BPLA had intended to grant a patent license under Section 4(b), they would have included language regarding the licensing of *patented technology described in* Contributions to the Bluetooth SIG. As it exists, the license in Section 4(b) grants only the right to reproduce written or electronic material in Contributions to the Bluetooth SIG.

## B. Even if Ambiguous, the Extrinsic Evidence of the Parties' Intent Shows that Section 4 of the BPLA Was Not Intended to Provide a Patent License.

As set forth above, the unambiguous language of the BPLA demonstrates that Section 4(b) grants only a copyright license, not a patent license. As such, Toshiba's motion must be denied as a matter of law. Alternatively, to the extent the Court finds the BPLA ambiguous on this point, then extrinsic evidence of the parties intent must be considered. Even in that event, the Court can still rule on the issue as a matter of law "unless determination of the intent of the parties depends on the credibility of [the] extrinsic evidence or on a choice among reasonable inferences to be drawn from [the] extrinsic evidence." *Destiny USA Holdings, LLC*, 69 A.D.3d at 218. Contrary to Toshiba's argument, the only extrinsic evidence of the parties' intent that pre-dates this litigation shows that the parties, including the drafter of the BPLA, Bluetooth SIG, intended Section 4(b) to grant only a copyright license. That evidence includes the following:

- January 2003 emails from Bluetooth SIG's General Manager to "contributing" members of the Bluetooth SIG Coexistence Working Group state that members may withdraw prior to adoption of the Specification without granting a patent license, omitting any claim that patented technology in "Contributions" are licensed

regardless of withdrawal.[2]

- A June 2001 presentation by Per Hoffman, the Bluetooth SIG Head of Legal Matters, states that a royalty-free *copyright* license is granted for Contributions, but omits any such discussion regarding patent licenses.[3]

- A June 2012 publication by Bluetooth SIG to its members entitled "Bluetooth.org – IP Protections" states that a royalty-free *copyright* license is granted for Contributions under Section 4 of the BPLA, but omits any such discussion regarding patent licenses.[4]

- If every Contribution to Bluetooth SIG constituted a license agreement, Bluetooth SIG would necessarily track member Contributions. Bluetooth SIG admits, however, that it has never tracked Contributions at all.[5]

- Every submission that Bandspeed purportedly made to Bluetooth SIG, on the form provided by Bluetooth SIG, contained the following statements: "No license, express or implied, by estoppel or otherwise, to any intellectual property rights are granted herein" and "Readers should not design products based on this document."[6]

Further, Toshiba's contention that Bandspeed interpreted Section 4(b) to grant a patent license is misleading. Specifically, Toshiba claims that Bandspeed's former CFO, John Curtin, admitted this during his deposition. (Mot. at 14). In fact, Mr. Curtin testified that he was not qualified to render a legal opinion on the interpretation of Section 4(b), and that because he had not reviewed the BPLA in eleven or twelve years, he could be led "down any primrose path" regarding its interpretation.[7] Moreover, Mr. Curtin made clear

---

[2] *E.g.*, Ex. 2, Jan. 17, 2003 E-mail from Tom Siep (Bluetooth SIG) ("The review is for the purposes of each member company having the opportunity to withdraw from the SIG prior to the Adoption of the profile (or core in this case). * * * "This allows the member company the ability to preserve its own IPR in the new work and keep it from being included in the IPR pool of the SIG. They would preserve it by withdrawing from the SIG, thereby losing all rights to using the SIG\'s [*sic*] IPR."). Ex. 3, Powell (BTSIG) Dep. at 52:20 – 53:16; 126:7 – 20

[3] Ex. 4, BLUETOOTH084204 - 084222, June 6, 2001 presentation "Access to Bluetooth IP" by Per Hoffman, Bluetooth SIG Head of Legal Matters, at 16 ("Copyright in draft Bluetooth Specifications"), 17 ("Copyright in final Bluetooth Specifications") and 18 ("Patent cross license").

[4] Ex. 5, Bluetooth.org – IP Protections, Dep. Ex 361.

[5] Ex. 6, Oct. 21, 2010 Ltr. from BTSIG counsel to Huawei, BLUETOOTH084199 – 084202; Ex. 7, Foley Dep. at 159:14-24 ("We really don't have records of that, and we don't track individual contributions made on any particular specification.").

[6] E.g., Ex. 8, Hopset Switching Discussion Document, Jan. 8, 2002, BSPD00095395 – BSPD00095396; Ex. 3, Powell (BTSIG) Dep. at 148:13 – 149:11.

[7] Ex. 9, Curtin Dep. at 218:13 - 23

that he was testifying only in his individual capacity, not as a corporate representative of Bandspeed—thus any interpretation he may or may not have had regarding Section 4(b) is not binding on Bandspeed and does not reflect its interpretation.[8] Further, Mr. Curtin did not testify that section 4(b) granted a license to Bandspeed's patents despite Bandspeed's withdrawal from Bluetooth SIG before the adoption of the Specification v. 1.2. See *infra* Part IV.

Accordingly, because the extrinsic evidence is capable of only one reasonable interpretation – that Section 4(b) grants only a copyright license – the Court can so rule as a matter of law. *See* Doc. 1511, Bandspeed's Motion for Summary Judgment on Defendants' Affirmative Defenses and Counterclaims. If the Court were to determine that resolving the intent of the parties depends on the credibility of the extrinsic evidence or on a choice among reasonable inferences to be drawn from the extrinsic evidence, the ambiguity must then be decided by the fact-finder, further mandating denial of Toshiba's Motion.

## IV.  EVEN IN THE UNLIKELY EVENT THIS COURT ADOPTS TOSHIBA'S STRAINED INTERPRETATION, SECTION 4 OF THE BPLA WOULD NOT PROVIDE TOSHIBA WITH A LICENSE TO THE PATENTS-IN-SUIT.

### A.  Even if Interpreted to Grant a Patent License, Section 4(b) Would Not Grant a License to the Contribution of a Member Who Withdraws Before Adoption of the Specification in Which its Contribution Is Included.

As set forth above, Section 4(b) of the BPLA does not grant a patent license. Even if the Court were to adopt Toshiba's strained interpretation, however, Toshiba's Motion must still be denied because Section 4(b) would not grant a license to the Contribution of a Member who withdraws before adoption of the Specification in which its Contribution is included. Toshiba disregards this fact by focusing only on the language of Section 4(b), ignoring the other provisions in the contract—including Sections 5(b) and 7(b)—which must be considered as a whole if Toshiba's interpretation of section 4(b) is assumed to be

---

[8] *Id.* at 222:13 – 223:1.

correct (which it is not). (Mot. at 15 – 19).

Although listed under the heading of "Copyright License," Section 4(b) refers to Section 5(b). Any license granted under Section 5(b), however, is "*[e]ffective upon the adoption by Bluetooth SIG of each Bluetooth Specification* . . . ." (Ex. 1, §§ 4(b), 5(b) (emphasis added)). Thus, under Toshiba's interpretation, Section 5(b) expressly states that the license to a Member's Contribution is not created until the adoption of the Contribution into the Bluetooth Specification.[9] Consequently, given the language of Sections 4(b) and (5)(b), if one is not a Member at the time a Contribution is adopted into a Bluetooth Specification, no license to the Contribution is granted to Bluetooth SIG members.

This rule applies notwithstanding the language at the end of Section 4(b), which states that the license described in 4(b) applies "even if such [Member] has withdrawn or been terminated as a Member of Bluetooth SIG." (*Id.* § 4(b)). When Sections 4(b) and 5(b) are read together, the above-quoted language is properly interpreted as applying to entities that withdraw from membership in Bluetooth SIG after adoption of a Bluetooth Specification incorporating the then-Member's Contribution.

Section 7(b) of the BPLA further supports this interpretation (again assuming that Toshiba's proposed interpretation of Section 4(b) is correct). The language of Section 7(b)(iii) provides that a Member that has withdrawn from membership in Bluetooth SIG prior to its Contribution being adopted into a Specification has the choice of <u>not granting</u> a license to its Contribution. (*Id.* § 7(b)(iii)).[10] By its very terms, the language of Section 7(b)(iii) indicates that no license grant is given under Section 4(b) in such circumstances.

Moreover, contrary to Toshiba's contention, Section 7(b)(iii) is not a "general

---

[9] This interpretation is confirmed by BT SIG on its own website. *See* Ex. 5 BLUETOOTH 001784.

[10] *See also* Ex. 5.

provision" of the BPLA that is trumped by more specific terms. (Mot. at 16, n. 5). Indeed, Section 7 is a specific provision that addresses withdrawal or termination of a member, and subsection (b)(iii) further specifically addresses a withdrawing member's right to license (or not to license) its Contribution included in a Bluetooth Specification after the effective date of its withdrawal. As a result, the rule of contract construction relied upon by Toshiba – i.e. specific provisions trump general provisions – does not apply here.[11]

Further, Section 7(b)(iv) states that in the situation where a Member withdraws *after adoption* of its Contribution in a Bluetooth Specification, the license grant of Section 5(b) continues after withdrawal. *Id.* § 7(b)(iv). Section 7(b)(vi) provides that all licenses terminate with respect to a withdrawing Member, "including those set forth in Section 5, except as set out in Section 7(b)(3), (4) and (5)." Under Section 7(b)(3), (4) and (5), the only license that survives the withdrawal of a Member is the license granted under Section 5 with respect to all Bluetooth Specificaitons "adopted prior to the effective date of withdrawal" Thus, any license granted under Section 4(b) would be expunged upon withdrawal.

Accordingly, under the BPLA, a Member's patent licensing *obligations* terminate upon the Member's withdrawal from Bluetooth SIG, except those obligations regarding final Bluetooth Specifications adopted by Bluetooth SIG before the effective date of withdrawal. It is undisputed that Bandspeed withdrew from Bluetooth SIG on or around

---

[11] Indeed, the cases cited by Toshiba prove this point. First, in *Aramony v. United Way of Am.*, 254 F.3d 403 (2d Cir. 2001), the "general" language in question was included in an introductory article of the contract captioned "Purpose of the Plan." *Id.* at 413. The Court held that this article was the equivalent of a "whereas" clause in a contract, and thus was trumped by more specific language later on in the contract. *Id.* Second, the court in *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 102 (2d Cir. 2007) did not rely on the general versus specific construction rule in reaching its decision, holding instead that taking all of the contracts pertinent provisions together, only one reasonable interpretation was possible. *Id.*

December 16, 2002,[12] almost a year before the adoption of adaptive frequency hopping into Bluetooth Specification v. 1.2 on November 5, 2003.[13] Bandspeed, therefore, did not grant a patent license to Toshiba or other Bluetooth SIG members under the BPLA.

**B. Even if Toshiba's Retroactive Reinterpretation of Section 4(b) to Provide a Patent License Were Correct (Which It Is Not), Toshiba Fails to Satisfy Its Burden to Prove that the Purported "Contributions" on Which It Relies Provide a License to Bandspeed's Asserted Claims.**

"[P]atent law looks to individual claims to define the scope of a patent right." *In re Innovatio IP Ventures LLC Patent Litigation*, No. 11 C 9308, 2013 WL 3874042, at *8 (N.D. Ill. July 26, 2013). As such, licenses in a standard setting organization must be viewed on a patent-claim-by-patent-claim basis. *Id.* This conclusion is also required by the BPLA's definition of "Necessary Claims," i.e., the claims of a patent that are subject to a licensing obligation: "Necessary Claims do not include any claims (i) other than those set forth above *even if contained in the same patent* as Necessary Claims." (Ex. 1 § 1(l) (emphasis added)).

1. Submissions Made by Bandspeed Employees to IEEE Were Not "Contributions" to Bluetooth SIG as Defined by the BPLA.

Toshiba's claim that a patent license exists under Section 4(b) relies on the premise that purported "Contributions" that Bandspeed made to IEEE, a standard setting organization separate and apart from Bluetooth SIG, constitute "Contributions" to Bluetooth SIG. (Mot. at 10 – 11). Toshiba ignores the definition of key terms in the BPLA, including "Contribution" and "Working Group." The BPLA defines a "Contribution" as "any written or electronic document submitted to a <u>Working Group for inclusion into a Bluetooth Specification</u> by a Bluetooth SIG Member or agreed upon in writing or electronically by a Bluetooth SIG Member that such is a Contribution of such Bluetooth

---

[12] Ex. 10, Bandspeed's Dec. 12, 2002 BTSIG withdrawal letter and certified U.S. Mail Return Receipt to Bluetooth SIG ("2002 Withdrawal Letter"); Ex. 11, Scott Dep. at 71:12-21; 84:1-98:21 (testimony on receipt of Bandspeed's withdrawal letter and U.S. Postal Service Return Receipt dated Dec. 16, 2002 and signed by Christine Scott).

[13] Ex. 7, Foley (BTSIG) Dep. at 103:3 - 25.

SIG Member. (Ex. 1 ¶ 1(h)). "Working Group" is defined as "the body of individuals given the task of creating a Draft Bluetooth Specification that meets the criteria of the Working Group Directive assigned that particular Working Group by Bluetooth SIG. ***Working Groups are formed by Bluetooth SIG based on Working Group Directives.***" (*Id.* § 1(n) (emphasis added). Accordingly, purported submissions made by Bandspeed to IEEE are not "Contributions" because they were not submitted by Bandspeed to a Bluetooth SIG "Working Group."

2.  Bandspeed Did Not Submit all of the "Contributions" Toshiba Relies Upon.

Toshiba attaches a number of exhibits to its Motion that it claims are "Contributions" that Bandspeed made to Bluetooth SIG. Contrary to Toshiba's contention, however, Bandspeed simply did not submit several of these purported "Contributions." For example, Toshiba claims that Bandspeed contributed Exhibits 24 (AFH Specification 0.5, dated May 29, 2002), 25 (AFH Draft Specification v. 0.7h, dated November 6, 2002) and 18 (Pseudocode of Instant Channel Replacement) (Mot. at 6, 10). However, the undisputed evidence in the case is that Bandspeed stopped participating in Bluetooth SIG in March 2002, closing its Melbourne, Australia office and ceasing work in the Bluetooth field.[14] Indeed, as early as October 2002, Bluetooth SIG knew that Bandspeed was no longer participating.[15] Furthermore, the only purported "contributor" listed on Exhibit 24 and 25 is former Bandspeed employee Hongbing Gan. But he left the company on April 6, 2002 and did not participate in Bluetooth SIG after that time.[16] As such, Exhibits 24 and 25 could

---

[14] Ex. 12, Skafidas Dep. at 73:15 – 22; 177:20 – 24; Ex. 13 Sapozhnykov Dep. at 12:30 – 13:14; Ex. 14, Bluetooth SIG Coexistence Working Group AFH Specification, Dep. Ex. 369; Ex. 15, Eversole Dep. (11/14/13) at 275:16-276:3; 336:11-14; Ex. 16, Gan Dep. at 7:7-14 (left Bandspeed in April 2002); 12:19-20 (did not participate in Bluetooth SIG after leaving Bandspeed); 35:15-22 (attended only one Bluetooth SIG meeting, which took place in early 2002).

[15] Ex. 17 CSR0055954 Email from J. Linsky to Coexistence Group, October 24, 2002 (indicating working group knew that Bandspeed was no longer participating).

[16] Ex. 16 Gan Dep. at 9:7 – 14; 12:17 – 20.

not have been "contributed" by Bandspeed. Moreover, Vitaly Sapozhnykov, another Melbourne-based Bandspeed employee, did not recall ever making submissions to Bluetooth SIG, including Exhibit 18, of which he is a purported author.[17] Finally, Exhibits 18, 24 or 24 are not listed by Mr. Gan on Exhibit 14 – Bandspeed Expertise in Adaptive Frequency Hoping (AFH) – as a "Contribution" by Bandspeed. (Ex. 14 to Toshiba's Mot.). Accordingly, Bandspeed never submitted these "Contributions."

   3.   <u>Toshiba Has Failed to Meet Its Burden to Show that Bandspeed's Purported "Contributions" Were Included in Bluetooth Specification v. 1.2.</u>

Finally, Toshiba has not presented competent evidence showing that any purported Bandspeed "Contributions" were included in Bluetooth Specification v. 1.2. In making this contention, Toshiba relies exclusively on the Declaration of its patent expert, Dr. David J. Goodman. (Mot. at 11 – 12). Dr. Goodman's analysis and conclusion that Bandspeed's "Contributions" were included in the Specification is based entirely upon Appendix K to his expert report and the subsequent Errata to the same. (Ex. 36 to Toshiba's Mot. at ¶ 5). Appendix K, however, is limited to IEEE presentations and AFH Draft Specification v. 0.7h, neither of which are "Contributions" under the BPLA, as demonstrated above.

Further, Dr. Goodman's opinions regarding this issue carry little weight – if they should be admitted at all – given his deposition testimony. First, when asked who prepared Appendix K to his report, he answered "[m]ostly the lawyers."[18] As such, Appendix K is not Dr. Goodman's own, independent analysis.[19] Second, although he opines in his Declaration that "Bandspeed made Contributions to the IEEE and Bluetooth SIG that were eventually adopted by the respective organization," Dr. Goodman made clear during his deposition that he would not offer any opinion at trial regarding the construction of the BPLA—including whether or not Bandspeed's "Contributions" were

---

[17] Ex. 13 Sapozhnykov Dep. at 35:26 – 29; 38:17 – 23.
[18] Ex. 18 Goodman Dep. at 170:19 – 20.
[19] Ex. 19 Melendez Dec. at ¶ 4.

licensed—and that, in fact, he was not qualified to do so.[20] By summarily opining that Bandspeed made "Contributions," Dr. Goodman has delved into the construction and interpretation of the BPLA – a task that he previously admitted he would not or could not do.[21]

Finally, as explained in more detail in the Declaration of Dr. Jose Melendez attached to this Response, Claims 2, 22, 41, 70 and 109 of the '418 patent, together with Claims 37, 89 and 94 of the '614 patent were not shown to have Bluetooth Specification v.1.2 citations for each and every claim limitation, therefore infringement of those claims <u>cannot</u> be found based solely on compliance with Bluetooth Specification v.1.2.[22] As such, because these Claims' limitations are not included in the Bluetooth Specification, the Claims cannot be licensed as so-called "Contributions" under the BPLA. Accordingly, Toshiba's Motion must be denied.

### C. In all Events, the BPLA Provides a License Only to "Necessary Claims."

It is undisputed that read together, Sections 4(b) and 5(b) provide a license only to "Necessary Claims" as that term is defined by the BPLA. "Necessary Claims" are those claims of the patents that:

> (b) are necessarily infringed by implementing those portions of a Bluetooth Specification and/or Foundation Specification within the bounds of the Scope, wherein a claim is *necessarily infringed* only when it is not possible to avoid infringing it because there is no technically reasonable non-infringing alternative for implementing such portions of the Bluetooth Specification and/or Foundation Specification within the bounds of the *Scope*.

(Ex. 1 § 1(l) (emphasis added)). The BPLA defines "Scope" as:

> the protocols and data formats *needed for Bluetooth interoperability*, and the electrical signaling characteristics solely to the extent disclosed with particularity in a Bluetooth Specification and/or Foundation Specification where the sole purpose of such disclosure is to enable products to interoperate, interconnect or communicate as defined within such Bluetooth Specification and/or Foundation Specification.

---

[20] Ex. 18 Goodman Dep. 57:13 – 21; 175:5 – 9.
[21] Ex. 19 Melendez Dec. at ¶ 5
[22] *Id.* at ¶¶ 8 – 11.

(Ex. 1 § 1(m)) (emphasis added). When applying these definitions to the facts here, it is clear that Toshiba was not granted a license to all of Bandspeed's patent claims.

1. Several Asserted Claims Are Not "Necessary Claims" Because They Are Not "Necessarily Infringed."

As previously discussed, Claims 2, 22, 41, 70 and 109 of the '418 patent, together with Claims 37, 89 and 94 of the '614 patent do not have Bluetooth Specification v.1.2 citations for each and every claim limitation, and are specifically not infringed solely on the basis of compliance with Bluetooth Specification v.1.2.[23] As such, these Claims are not "Necessary Claims" because they are not "necessarily infringed" under the BPLA.[24] Further, it is possible to avoid practicing the remainder of the Asserted Claims, while compliant with the Bluetooth Specification v.1.2 and later specifications, if AFH functionality is simply "turned off."[25] Turning off this functionality allows for maintaining of interoperability with other Bluetooth systems, and, as such, is an interoperability alternative.[26] In all events, Toshiba has failed to meet its burden to show that it is not possible to avoid infringing the claims through technically reasonable non-infringing alternatives for implementing the portions of the Bluetooth Specification on which Bandspeed relies for infringement.

2. The Asserted Claims that Toshiba Contends were "Contributions" by Bandspeed Are Not Within the "Scope" as Defined by the BPLA.

Finally, Bandspeed's purported Contributions are not "Necessary Claims" because they are not within the "Scope" as defined by the BPLA. Specifically, the asserted claims are not "the protocols and data formats needed for Bluetooth interoperability." Indeed, Dr. Melendez sets forth in his Declaration that he "found that at least one limitation of each and every claim is practiced by a portion of the Bluetooth Specification v.1.2 (and above)

---

[23] Id.

[24] Id. at ¶ 12.

[25] Id.

[26] Ex. 19 Melendez Dec. at ¶ 12.

that is not required for Bluetooth interoperability."[27] Further, as Michael Powell, Executive Director of BT SIG testified during his deposition, the versions of the Specification in existence before v. 1.2 was adopted allowed Bluetooth interoperability (i.e. Bluetooth products interoperated before AFH was introduced).[28] As a result, AFH is not needed for Bluetooth interoperability, it simply improves interoperability significantly.

## CONCLUSION AND PRAYER

This Court should deny Toshiba's and LG's Motion for Summary Judgment. Bandspeed prays for such other and further relief to which it may be justly entitled.

---

[27] *Id.* at ¶ 13.
[28] Ex. 3 Powell Dep. at 169:13 - 16.

Dated: January 14, 2014

By:    */s/ Mikal C. Watts*

Mikal C. Watts
State Bar. No. 20981820
Christopher V. Goodpastor
State Bar No. 00791991
Linda K. Leibfarth *(pro hac vice)*
WATTS GUERRA LLP
811 Barton Springs Road
Suite 725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0502
Email: mcwatts@wattsguerra.com
      cgoodpastor@wattsguerra.com
      lleibfarth@wattsguerra.com

Edward W. Allred
State Bar No. 50511764
Francisco Guerra, IV
State Bar No. 00797784
Mark Fassold
State Bar No. 24012609
Shalimar S. Wallis
State Bar No. 24033191
WATTS GUERRA LLP
300 Convent Street, Suite 100
San Antonio, Texas 78205
Telephone: (210) 527-0500
Facsimile: (210) 527-0501
Email: eallred@wattsguerra.com
      fguerra@wattsguerra.com
      mfassold@wattsguerra.com
      swallis@wattsguerra.com

Andrew G. DiNovo
State Bar No. 00790594
Adam G. Price
State Bar No. 24027750
DINOVO PRICE ELLWANGER & HARDY LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627
Email: adinovo@dpelaw.com
      aprice@dpelaw.com

**ATTORNEYS FOR PLAINTIFF**
**BANDSPEED, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 14, 2014 the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties listed below.

/s/ *Christopher V. Goodpastor*
Christopher V. Goodpastor

Stephen E. McConnico
Steven J. Wingard
Paige Arnette Amstutz
SCOTT, DOUGLASS & MCCONNICO
600 Congress Avenue, Suite 1500
Austin, TX 78701
Email: smcconnico@scottdoug.com
        Swingard@scottdoug.com
        pamstutz@scottdoug.com
*Via Email*

Adam P. Seitz
Michelle L. Marriott
Caroline A. Bader
Erise IP, P.A.
6201 College Blvd., Suite 300
Overland Park, KS 66211
Email: adam.seitz@eriseip.com
        Michelle.marriott@eriseip.com
        Carrie.bader@eriseip.com
*Via Email*

**ATTORNEYS FOR DEFENDANTS GARMIN
INTERNATIONAL, INC. AND GARMIN USA, INC.**

David J. Healey
Wasif H. Qureshi
Michael R. Rueckheim
FISH & RICHARDSON PC
1221 McKinney Street, Ste 2800
Houston, TX 77010
Email: healey@fr.com
        qureshi@fr.com
        strand@fr.com
*Via Email*

20

Michael J. McKeon
FISH & RICHARDSON PC
1425 K Street N.W., 11th Floor
Washington, D.C. 20005
Email: mckeon@fr.com
*Via Email*

**ATTORNEYS FOR DEFENDANTS LG ELECTRONICS, INC.,
LG ELECTRONICS U.S.A., INC., AND LG ELECTRONICS
MOBILECOMM U.S.A., INC.**

William H. Boice
Michael J. Turton
Bonnie M. Grant
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
Email: bboice@kilpatricktownsend.com
mturton@kilpatricktownsend.com
bgrant@kilpatricktownsend.com
*Via Email*

Steven D. Moore
Caroline K. Wray
Matias Ferrario
James L. Howard
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Email: smoore@kilpatricktownsend.com
cwray@kilpatricktownsend.com
mferrario@kilpatricktownsend.com
jihoward@kilpatricktownsend.com
*Via Email*

Mark A. Mayfield
Mark T. Mitchell
GARDERE WYNNE SEWELL LLP
One America Center
600 Congress Avenue
Suite 3000
Austin, TX 78701
Email: mmayfield@gardere.com
mmitchell@gardere.com
*Via Email*

Christina E. Fahmy
Peter M. Boyle
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 2005
Email: Cfahmy@kilpatricktownsend.com
     Pboyle@kilpatricktownsend.com
*Via Email*

**ATTORNEYS FOR DEFENDANTS MOTOROLA MOBILITY LLC
AND MOTOROLA SOLUTIONS, INC.**


Jeffrey K. Sherwood
Gerard Haddad
Jonathan Falkler
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006-5403
Email: sherwoodj@dicksteinshapiro.com
     haddadg@dicksteinshapiro.com
     falklerj@dicksteinshapiro.com
*Via Email*

David Philip Whittlesey
J. Rogers Williams, Jr.
ANDREWS KURTH LLP
111 Congress Avenue
Suite 1700
Austin, TX 78701
Email: dwhittlesey@akllp.com
        Rwilliams@andrewskurth.com
*Via Email*

**ATTORNEYS FOR DEFENDANTS TOSHIBA CORPORATION,
TOSHIBA AMERICA INFORMATION SYSTEMS, INC. AND
TOSHIBA AMERICA, INC.**