**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

```
 1
 2
 3   BANDSPEED, INC.,                    ) AU:11-CV-00771-LY
                                         )
 4      Plaintiff,                       )
                                         )
 5   VS.                                 ) AUSTIN, TEXAS
                                         )
 6   GARMIN INTERNATIONAL INC., et al.,  )
                                         )
 7      Defendants.                      ) JANUARY 9, 2014

 8

 9          ***********************************************
                TRANSCRIPT OF TELEPHONIC MOTIONS HEARING
10
                  BEFORE THE HONORABLE LEE YEAKEL
11          ***********************************************

12
     APPEARANCES:
13
     BANDSPEED, INC.:          CHRISTOPHER V. GOODPASTOR
14                             LINDA K. LEIBFARTH
                               WATTS GUERRA CRAFT LLP
15                             811 BARTON SPRINGS ROAD, SUITE 725
                               AUSTIN, TEXAS 78704
16
     TOSHIBA CORPORATION:      DAVID PHILIP WHITTLESEY
17                             ANDREWS KURTH LLP
                               111 CONGRESS AVENUE, SUITE 1700
18                             AUSTIN, TEXAS 78701

19                             JEFFREY KIRK SHERWOOD
                               JONATHAN L. FALKLER
20                             GERARD A. HADDAD
                               DICKSTEIN SHAPIRO, LLP- DC
21                             1825 I STREET NW
                               WASHINGTON, DC 20006-5403
22
     LG ELECTRONICS, INC.:     WASIF QURESHI
23                             MICHAEL R. RUECKHEIM
                               DAVID J. HEALEY
24                             FISH & RICHARDSON PC
                               1221 MCKINNEY ST, STE 2800
25                             HOUSTON, TEXAS 77010
```

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

```
 1   GARMIN INTERNATIONAL, INC:   CAROLINE ANN BADER
                                  ERISE IP, P.A.
 2                                6201 COLLEGE BLVD., SUITE 300
                                  OVERLAND PARK, KANSAS 66211
 3
     MOTOROLA MOBILITY INC.:      BONNIE M. GRANT
 4   MOTOROLA SOLUTIONS INC.      KILPATRICK TOWNSEND & STOCKTON LLP
                                  1100 PEACHTREE STREET, SUITE 2800
 5                                ATLANTA, GEORGIA 30309

 6                                MARK T. MITCHELL
                                  GARDERE WYNNE SEWELL LLP
 7                                ONE AMERICA CENTER
                                  600 CONGRESS AVENUE, SUITE 3000
 8                                AUSTIN, TEXAS 78701

 9   COURT REPORTER:             ARLINDA RODRIGUEZ, CSR
                                  501 WEST 5TH STREET, SUITE 4152
10                                AUSTIN, TEXAS 78701
                                  (512) 391-8791
11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by computerized stenography, transcript

25   produced by computer.
```

| | | |
|---|---|---|
| 13:59:52 | 1 | (In Chambers) |
| 13:59:52 | 2 | MR. WHITTLESEY:  We've got a bunch of folks on the |
| 13:59:52 | 3 | line.  Maybe we could take roll. |
| 13:59:52 | 4 | David Whittlesey is here for Toshiba. |
| 13:59:58 | 5 | MR. GOODPASTOR:  Good afternoon, Katie.  It's |
| 13:59:59 | 6 | Chris Goodpastor for Bandspeed. |
| 14:00:05 | 7 | MR. QURESHI:  Ms. Carmona, it's Wasif Qureshi for LG, |
| 14:00:09 | 8 | MR. RUECKHEIM:  This is Michael Rueckheim for LG. |
| 14:00:12 | 9 | MR. SHERWOOD:  And Jeff Sherwood and Jon Falkler for |
| 14:00:16 | 10 | Toshiba. |
| 14:00:17 | 11 | MR. HEALEY:  David Healey for LG. |
| 14:00:23 | 12 | MS. BADER:  Caroline Bader for Garmin. |
| 14:00:25 | 13 | MS. LEIBFARTH:  Linda Leibfarth for Bandspeed. |
| 14:00:31 | 14 | MS. GRANT:  Bonnie Grant for the two Motorola |
| 14:00:33 | 15 | defendants, Motorola Mobility and Motorola Solutions. |
| 14:00:37 | 16 | MR. MITCHELL:  Also Mark Mitchell for the Motorola |
| 14:00:39 | 17 | defendants. |
| 14:00:52 | 18 | MR. HADDAD:  This is Gerard Haddad for Toshiba. |
| 14:00:55 | 19 | MS. CARMONA:  Mr. Goodpastor, do you happen to know |
| 14:00:57 | 20 | if that's everyone, or are we expecting anybody else? |
| 14:01:02 | 21 | MR. GOODPASTOR:  I think all the parties are |
| 14:01:05 | 22 | represented.  I wasn't expecting anyone else. |
| 14:01:10 | 23 | MS. CARMONA:  Okay.  Let me go ahead and get |
| 14:01:10 | 24 | Judge Yeakel on the line. |
| 14:01:10 | 25 | THE COURT:  Good afternoon.  From listening -- from |

14:01:15   1  listening to the appearances, I figure it's costing about $6500

14:01:20   2  an hour to conduct this telephone conference.  So I'm glad

14:01:26   3  everybody is in a nice spot to do it.

14:01:29   4          I've gotten some new motions.  The motions never seem

14:01:36   5  to end, and your discovery disputes never seem to end.  Has

14:01:44   6  anything been resolved among any of you -- other than I've got

14:01:48   7  notice of anticipated settlements by a couple of defendants.

14:01:51   8  But with regard to the discovery matters, have you resolved

14:01:55   9  anything, or do you-all continue to resist one another's

14:02:02  10  requests?  That can be answered yes or no.

14:02:10  11          MR. GOODPASTOR:  Your Honor, speaking for Bandspeed,

14:02:12  12  its outstanding motion to compel and motion for protective

14:02:15  13  order have not been resolved.

14:02:17  14          THE COURT:  All right.  So what is the problem?  Why

14:02:19  15  haven't you been able to resolve the discovery matters?  I

14:02:23  16  thought I made it clear at our last conference that needed to

14:02:26  17  be resolved.  And I've gotten these new motions just filed

14:02:30  18  recently, since the 1st of the year, on damages discovery.  And

14:02:36  19  I want to make it clear again before we discuss those, there

14:02:41  20  will be no evidence of damages allowed if that evidence has not

14:02:48  21  first been provided to the other parties.

14:02:51  22          So we can deal with protective orders, we can deal

14:02:55  23  with motions to quash, we can deal with privileges all we want.

14:03:00  24  But just know nothing that has not been provided to all the

14:03:05  25  parties will be admitted in evidence in this case with regard

| | | |
|---|---|---|
| 14:03:10 | 1 | to damages, and you may proceed accordingly under that.  So |
| 14:03:17 | 2 | when we go to trial, I want everyone to be prepared when the |
| 14:03:22 | 3 | objections come to show me exactly what was provided and to |
| 14:03:28 | 4 | tell me when it was provided, because there will be no defense |
| 14:03:32 | 5 | to damages or prosecution of damages with information that has |
| 14:03:36 | 6 | not previously been provided to all parties.  I thought I made |
| 14:03:43 | 7 | that clear at our last phone call, and I cannot understand why |
| 14:03:48 | 8 | I am still receiving problems with regard to discovery damages |
| 14:03:55 | 9 | that you-all are having. |
| 14:03:58 | 10 | MR. GOODPASTOR:  Your Honor, Chris Goodpastor.  I |
| 14:04:01 | 11 | think I can address that.  We have provided all of the |
| 14:04:03 | 12 | information that Bandspeed relies on or Bandspeed's expert is |
| 14:04:08 | 13 | relying on for damages to all defendants.  The issue that the |
| 14:04:15 | 14 | defendants -- the remaining defendants -- not all defendants, |
| 14:04:18 | 15 | but remaining defendants, raise in these motions which we |
| 14:04:22 | 16 | believe are grossly untimely are issues claiming that they have |
| 14:04:28 | 17 | a right to Bandspeed's counsels' work product and a right to |
| 14:04:33 | 18 | depose Bandspeed's counsel.  And we think the motions are |
| 14:04:37 | 19 | wholly improper.  We don't think that's any information that |
| 14:04:40 | 20 | Bandspeed or its experts are going to rely on at trial. |
| 14:04:44 | 21 | THE COURT:  Wait a minute.  You let the word "think" |
| 14:04:47 | 22 | slip into what you were saying.  We're not thinking what you |
| 14:04:51 | 23 | might rely on or might not rely on.  If you put on anything -- |
| 14:04:57 | 24 | if I were to deny the motion to compel and you put on anything |
| 14:05:04 | 25 | that had not been provided whatsoever, whether you thought you |

| | | |
|---|---|---|
| 14:05:09 | 1 | were going to use it or not, it gets stricken. |
| 14:05:13 | 2 | So don't tell me at this late stage what you think |
| 14:05:15 | 3 | you're going to rely on.  You should know exactly and |
| 14:05:20 | 4 | empirically at this point exactly what damage testimony you're |
| 14:05:23 | 5 | going to put on.  And that's what needs to be provided *in toto* |
| 14:05:27 | 6 | to the remaining defendants. |
| 14:05:29 | 7 | MR. GOODPASTOR:  Your Honor, we understand that.  And |
| 14:05:31 | 8 | my use of the word "think" was -- I misspoke.  We have provided |
| 14:05:37 | 9 | what we will put on at trial and what our expert will rely on |
| 14:05:42 | 10 | at trial regarding damages. |
| 14:05:45 | 11 | MR. QURESHI:  Your Honor, I'd like to respond to |
| 14:05:45 | 12 | that.  This is Wasif Qureshi for LG. |
| 14:05:47 | 13 | The problem with what Mr. Goodpastor is offering is |
| 14:05:51 | 14 | that we are not getting information that might help us disprove |
| 14:05:57 | 15 | or discount or discredit what Bandspeed's damages claims are. |
| 14:06:01 | 16 | So, I mean, their damages claim is that through settlement |
| 14:06:07 | 17 | negotiations, Bandspeed accepted lower royalty rates than they |
| 14:06:12 | 18 | otherwise would have had defendants not asserted this license |
| 14:06:15 | 19 | defense. |
| 14:06:16 | 20 | So it's fairly self-serving for Bandspeed to say |
| 14:06:19 | 21 | we're not going to rely on any of those communications, but it |
| 14:06:22 | 22 | is their allegation in this case that those settlement |
| 14:06:26 | 23 | communications are what caused Bandspeed to accept rates lower |
| 14:06:30 | 24 | than they otherwise would have. |
| 14:06:32 | 25 | And, moreover, as detailed in our motions to compel |

| 14:06:35 | 1 | that we recently filed, Bandspeed's 30(b)(6) witness pointed |
| 14:06:41 | 2 | directly to its counsel as being aware of how royalty rates |
| 14:06:45 | 3 | were set, what royalty rates were discussed with other parties, |
| 14:06:48 | 4 | which isn't subject to an attorney-client privilege, what |
| 14:06:51 | 5 | accounting was done in order to determine rates; for example, |
| 14:06:55 | 6 | the number of units, past or future, that the parties may have |
| 14:06:59 | 7 | discussed when determining what the amount of the settlement |
| 14:07:02 | 8 | should be. |
| 14:07:03 | 9 | And, moreover and most importantly, which goes to |
| 14:07:05 | 10 | Bandspeed's tens of millions of dollars worth of antitrust |
| 14:07:10 | 11 | damages allegations, is whether Bandspeed indeed was forced to |
| 14:07:14 | 12 | take lower rates or not, as their experts have claimed without |
| 14:07:18 | 13 | any support, mind you.  But we need to be able to go to court |
| 14:07:23 | 14 | and say and tell the jury, you know, Bandspeed's expert is |
| 14:07:27 | 15 | saying that Bandspeed was forced to take a lower rate, but |
| 14:07:31 | 16 | there's no proof whatsoever that that happened. |
| 14:07:35 | 17 | So, I mean, for Bandspeed to say, Well, we've given |
| 14:07:39 | 18 | everything we rely on is sort of self-serving.  We're not |
| 14:07:44 | 19 | getting the information that we would otherwise need to show |
| 14:07:46 | 20 | that their allegations are not correct. |
| 14:07:48 | 21 | THE COURT:  Let me clear this up for a moment.  If |
| 14:07:50 | 22 | Bandspeed takes the position that an element of their damages |
| 14:07:57 | 23 | involves royalty rates that they have accepted, they need to |
| 14:08:02 | 24 | provide the defendants -- Bandspeed needs to provide the |
| 14:08:06 | 25 | defendants with all information surrounding the negotiation of |

| | | |
|---|---|---|
| 14:08:11 | 1 | the royalty rates and how it was obtained. |
| 14:08:14 | 2 | You may take this to the Federal Circuit because I |
| 14:08:19 | 3 | take the broad view that when the Federal Circuit opened the |
| 14:08:22 | 4 | door to settlement negotiations, everything comes in as part of |
| 14:08:28 | 5 | the damage case and you're not going to push me off that |
| 14:08:32 | 6 | position.  That's why we have the Circuit Court. |
| 14:08:35 | 7 | So you have to look at your damages model because |
| 14:08:38 | 8 | you're not going to say, We had a royalty with company X and |
| 14:08:46 | 9 | not have provided all of that information to the defendants. |
| 14:08:50 | 10 | And turned around to the other way, if you're going to assert |
| 14:08:54 | 11 | damages that are in any way based on anything that you have |
| 14:09:00 | 12 | accepted or even knowing that you have accepted damages |
| 14:09:05 | 13 | pursuant to settlement, you still have to provide that |
| 14:09:09 | 14 | information to the defendants in order that they may develop a |
| 14:09:12 | 15 | damages model. |
| 14:09:14 | 16 | That is the door that I believe was opened by the |
| 14:09:17 | 17 | Federal Circuit, and only the Federal Circuit can tell us how |
| 14:09:23 | 18 | wide open it is or close it again.  And that is for them to do. |
| 14:09:27 | 19 | But damages is something that is very, very important in this |
| 14:09:31 | 20 | case, and everything about it needs to be disclosed to |
| 14:09:36 | 21 | everyone. |
| 14:09:37 | 22 | Now, that does not mean I'm going to allow the |
| 14:09:40 | 23 | defendants to depose lawyers because we go down a path there |
| 14:09:50 | 24 | that is fraught with difficulty, but I will hear more argument |
| 14:09:53 | 25 | on that.  But everything has to be disclosed so the defendants |

14:10:01  1  can defend against what the plaintiff asserts.  And what the

14:10:08  2  plaintiff has accepted in the past is something the defendants

14:10:11  3  can use to defend the plaintiff's damages model.  And that's

14:10:17  4  just the way it is in this case.  You may like it or you may

14:10:23  5  not like it, but that's what we're going to do.

14:10:25  6          MR. GOODPASTOR:  Your Honor, we accept that.  I mean,

14:10:27  7  I think you're referring to the *MSTG* case in the Federal

14:10:32  8  Circuit that said you get information regarding negotiation to

14:10:36  9  the extent they're relied upon by the expert witness for your

14:10:40  10 damage model, and we provided that.

14:10:42  11          The problem here is that they're trying to get work

14:10:45  12 product of counsel and consulting experts that they're not

14:10:50  13 entitled to merely because, as you recall, Your Honor, we were

14:10:53  14 ordered to attend settlement conferences by the Court.  And to

14:10:58  15 prepare for those settlement conferences in good faith, of

14:11:01  16 course, we are going to have to advise our client on what we

14:11:05  17 believe damages will be at the trial.

14:11:08  18          Now, these defendants are now claiming that they're

14:11:10  19 entitled to our work product, and we think that's wholly

14:11:14  20 improper.  There is no way that you could ever participate in a

14:11:17  21 case or settle a case if every time that you participated in

14:11:21  22 settlement negotiations, including court-ordered settlement

14:11:25  23 negotiations, the other side was entitled to all of your work

14:11:29  24 product.  It doesn't make sense.

14:11:30  25          THE COURT:  Well, you know, that may be a pretty good

14:11:32  1   statement in general law, but I'm not sure the Federal Circuit

14:11:36  2   agrees with you.

14:11:36  3          MR. GOODPASTOR:  Well, to the extent that we -- our

14:11:40  4   damages expert relies upon the information regarding

14:11:44  5   negotiation, that has been provided.  And with regard to all

14:11:47  6   the lower infracompetitive licenses that we're alleging, we

14:11:54  7   have provided all of those settlement negotiation documents and

14:11:57  8   we provided settlement negotiation documents that were

14:12:00  9   requested by Defendants regarding other licenses.

14:12:04  10         And so everything that's relied upon by our expert

14:12:08  11  witness, which is what the Federal Circuit addresses in *MSTG*,

14:12:13  12  has been provided.  Now, we don't feel an obligation to provide

14:12:14  13  our work product, Your Honor, and we don't think we should be

14:12:16  14  forced to do that.

14:12:17  15         MR. QURESHI:  Let me respond, Your Honor.  Again,

14:12:19  16  this is Wasif Qureshi for LG.  We're not asking for the work

14:12:22  17  product or the mental impressions of Bandspeed's lawyers.  The

14:12:25  18  settlement negotiations are negotiations that were communicated

14:12:29  19  with third parties or with other defendants.  So there's no

14:12:33  20  work product or, as the Federal Circuit has said, there's not

14:12:36  21  settlement privilege, per se, that attaches to those documents,

14:12:40  22  particularly when those, as Your Honor has said, are squarely

14:12:43  23  within the scope of what Bandspeed's damages allegations are.

14:12:48  24         And as far as the production of settlement

14:12:51  25  agreements, I believe the bulk of what has been produced are

14:12:54  1  drafts of settlement agreements, not necessarily the

14:12:57  2  back-and-forth communications that the parties had leading to

14:13:00  3  draft of settlement agreements and ultimate settlement.

14:13:04  4          And, you know, if their expert is going to go up at

14:13:07  5  trial and tell the jury that Defendants -- or Bandspeed had to

14:13:13  6  accept a lower rate, we should have the information justifying

14:13:18  7  or not justifying that.  It can't have a sword and shield

14:13:24  8  approach --

14:13:24  9          THE COURT:  I understand your arguments.  I am

14:13:26  10  disappointed that you can't work that out.  I will take this

14:13:30  11  under advisement.  I will tell you what I am likely to do,

14:13:35  12  unless something dissuades me before I draft the order, is

14:13:39  13  leave it where it lies at this point and start excluding things

14:13:44  14  during trial if proper predicate is not laid or if there is a

14:13:49  15  good objection.

14:13:49  16          So you're going -- you're likely to go into trial not

14:13:54  17  knowing what the result is going be, and I will deal with it as

14:14:03  18  we go along through trial because I have dealt with the

14:14:05  19  discovery disputes in this case for a long time.  I am tired of

14:14:09  20  them.  Damages has not been a secret as to what was going to go

14:14:13  21  on in this case and what was going to have to be proved, and

14:14:17  22  I'm not going to stretch out discovery any further.

14:14:20  23          So I will again look over the motions very carefully,

14:14:25  24  but you're likely to go to trial with what you have and I will

14:14:29  25  listen to your objections as we go along and we'll tailor what

14:14:35   1   testimony I'm going to allow by each party when we get into

14:14:41   2   trial.

14:14:43   3           So with that having been said, what I want to do is

14:14:46   4   go through the older motions that I have and ask you whether or

14:14:52   5   not anything in them is still alive or anything -- whether it's

14:15:00   6   been washed out because of the various settlements we've had

14:15:06   7   since the last time we talked.  And if there is anything still

14:15:09   8   alive in it, what it is, because I want to deal with all of

14:15:15   9   these motions.  And by "all of these motions," I'm leaving out

14:15:18  10   the motions for summary judgment that I have other than to say

14:15:22  11   the Court will entertain no further motions for summary

14:15:26  12   judgments from this point.  Dispositive motions are done at

14:15:31  13   this stage.  So let me --

14:15:33  14           MR. GOODPASTOR:  Your Honor?

14:15:34  15           THE COURT:  Yes?

14:15:35  16           MR. GOODPASTOR:  I'm sorry.  Chris Goodpastor,

14:15:37  17   Your Honor.  I don't mean to interrupt.

14:15:39  18           THE COURT:  No.  Go ahead.

14:15:40  19           MR. GOODPASTOR:  When we -- we were planning to seek

14:15:43  20   summary judgment on some of the numerous defenses that

14:15:48  21   Defendants have raised that we don't believe any supporting --

14:15:51  22           THE COURT:  You know, how long ago did they raise

14:15:53  23   those defenses?  When was their last live responsive pleading

14:15:57  24   filed?

14:15:58  25           MR. GOODPASTOR:  I think it differs for different

14:16:02  1  defendants, Your Honor.  But I think what we were relying on is

14:16:05  2  the fact that the parties had agreed that tomorrow was the

14:16:07  3  deadline for filing those motions for summary judgment.

14:16:11  4          THE COURT:  Well, you can file them tomorrow, then.

14:16:14  5          MR. GOODPASTOR:  Thank you, Your Honor.

14:16:15  6          THE COURT:  I will recognize tomorrow.

14:16:17  7          Now, Document Number 1270, Bandspeed's motion to

14:16:20  8  compel, filed June 24th, 2013:  What's the status of it?

14:16:27  9          MR. GOODPASTOR:  Your Honor, that motion to compel

14:16:29 10  related primarily to communications regarding the

14:16:34 11  interpretation of the Bluetooth SIG patent copyright license

14:16:41 12  agreement and the defendants' concerted approach towards making

14:16:45 13  those interpretations and negotiating the license of Bandspeed.

14:16:55 14          Those documents have not been provided.  There's been

14:16:57 15  a claim of privilege over those documents that, as we state in

14:17:01 16  our motion and our reply, has not been supported by evidence.

14:17:06 17  And, therefore, we don't think there's a valid claim of

14:17:08 18  privilege there, and we think that those documents go directly

14:17:12 19  to the heart of our conspiracy claims in this case and also go

14:17:18 20  directly to the issues raised in Defendants' motion for summary

14:17:21 21  judgment on the antitrust claim.

14:17:23 22          Essentially, Defendants on one hand are claiming that

14:17:26 23  there is no evidence of conspiracy.  On the other hand, they're

14:17:30 24  saying that all the communications that would show that

14:17:34 25  evidence are privileged either through a joint defense

| | | |
|---|---|---|
| 14:17:38 | 1 | privilege or otherwise. |
| 14:17:39 | 2 | We're not seeking communications directly between |
| 14:17:42 | 3 | lawyers and their clients.  But we do think that the |
| 14:17:44 | 4 | communications between and among the parties, including |
| 14:17:49 | 5 | Bluetooth SIG and others who have settled out, are relevant to |
| 14:17:52 | 6 | whether the defendants got together and, in a concerted effort, |
| 14:17:58 | 7 | agreed to retroactively reinterpret the licensing provisions of |
| 14:18:03 | 8 | the Bluetooth SIG to prevent Bandspeed from claiming or |
| 14:18:08 | 9 | asserting its patent rights in this case. |
| 14:18:13 | 10 | Unfortunately, because of the nature of the privilege |
| 14:18:16 | 11 | allegations, we've been unable to resolve this with Defendants |
| 14:18:20 | 12 | and they have been unwilling to compromise from their position. |
| 14:18:25 | 13 | THE COURT:  Let me hear from the defendants. |
| 14:18:29 | 14 | MR. RUECKHEIM:  Your Honor, this is Michael Rueckheim |
| 14:18:31 | 15 | for LG. |
| 14:18:32 | 16 | I think what Mr. Goodpastor is discussing is |
| 14:18:36 | 17 | document 1270, the joint defense agreement in this case that |
| 14:18:41 | 18 | sought communications between counsel for the various |
| 14:18:44 | 19 | defendants.  We cited law in our response.  This information is |
| 14:18:50 | 20 | clearly privileged.  They could never show any reason why the |
| 14:18:52 | 21 | privilege should be waived in this case. |
| 14:18:56 | 22 | On top of that, at least for LG, we actually provided |
| 14:19:00 | 23 | a witness that stated that outside of privileged |
| 14:19:05 | 24 | communications, there has been no communications between LG and |
| 14:19:08 | 25 | any other defendant or member of the Bluetooth SIG regarding an |

14:19:12  1  interpretation of this Bluetooth SIG license agreement.

14:19:17  2          MR. HEALEY:  Judge, this is Dave Healey for LG.  And

14:19:18  3  I apologize.  I'll just say one quick thing here.  This is

14:19:23  4  really the whole guts of the *Noerr-Pennington* antitrust thing,

14:19:27  5  and that is this antitrust claim is based on the lawyers and

14:19:31  6  this lawsuit -- I guess me and the other lawyers for Toshiba

14:19:38  7  and the lawyers for Apple and the lawyers for Samsung and all

14:19:41  8  these other lawyers around the State of Texas and other places

14:19:44  9  in the country -- after this lawsuit was filed, all of us

14:19:49  10 getting together and conspiring to file a sham defense of

14:19:51  11 patent license based upon the Bluetooth SIG agreement.

14:19:55  12         And now what's going on is they're asking for

14:20:00  13 communications between all these law firms that have been

14:20:03  14 defending this lawsuit to try to find evidence or say that

14:20:07  15 we're hiding evidence that all of us got together and made an

14:20:10  16 agreement to raise a defense, that we've been a sham and fraud

14:20:15  17 on the Court, so we could force down a settlement.

14:20:18  18         And you know, that's -- that goes to the guts of it

14:20:21  19 here.  And, you know, just to me, if there were anything like

14:20:27  20 that that fell into any kind of exception, you know, fine.  But

14:20:32  21 there's not anything like that, and so the joint defense

14:20:36  22 communications are what they are.  It's a remarkable claim, and

14:20:40  23 one we think is barred.

14:20:42  24         MR. GOODPASTOR:  Your Honor, if I may address that?

14:20:45  25         THE COURT:  Well, just a minute.  Does anybody with

| | | |
|---|---|---|
| 14:20:48 | 1 | Toshiba want to say anything about that?  Or has Toshiba |
| 14:20:51 | 2 | already spoken?  I heard LG, but I didn't hear anybody identify |
| 14:20:56 | 3 | themselves as part of Toshiba. |
| 14:20:58 | 4 | MR. SHERWOOD:  Your Honor, this is Jeff Sherwood for |
| 14:21:01 | 5 | Toshiba.  I would just say that I think Mr. Healey's |
| 14:21:06 | 6 | characterization is correct, that in the nature of these |
| 14:21:08 | 7 | things, when a bunch of defendants are sued, as the Court is |
| 14:21:12 | 8 | well aware, joint defense groups are formed to coordinate and |
| 14:21:16 | 9 | try to streamline the defense and that's what happened here. |
| 14:21:19 | 10 | And the plaintiffs have shown no reason why it should be a |
| 14:21:24 | 11 | allowed to pierce those communications. |
| 14:21:29 | 12 | THE COURT:  All right.  Now, Mr. Goodpastor. |
| 14:21:34 | 13 | MR. GOODPASTOR:  Thank you, Your Honor.  The |
| 14:21:35 | 14 | defendants are portraying the allegations of this case, we |
| 14:21:39 | 15 | believe, inaccurately in an attempt to set them up to be |
| 14:21:42 | 16 | knocked down by the *Noerr-Pennington* doctrine or other defenses |
| 14:21:45 | 17 | that they've asserted.  We want to make clear that our |
| 14:21:47 | 18 | allegations are based upon not the assertion of defenses by the |
| 14:21:52 | 19 | defendants.  And we make clear in our papers, our allegations |
| 14:21:55 | 20 | are based upon a conspiracy to reinterpret and change and |
| 14:21:59 | 21 | manipulate the licensing rules of the Bluetooth SIG to |
| 14:22:02 | 22 | disadvantage Bandspeed. |
| 14:22:04 | 23 | Now, the evidence we have seen on this, Your Honor, |
| 14:22:06 | 24 | is not evidence between outside counsel.  What we have seen or |
| 14:22:11 | 25 | what has been produced, but very little of it, has been |

14:22:14   1   evidence between individual companies and Bluetooth SIG -- for

14:22:23   2   example, Parrot and Bluetooth SIG talking about how this

14:22:27   3   agreement should be interpreted and whether this contribution

14:22:30   4   reinterpretation should be made; evidence between Huawei and

14:22:35   5   Bluetooth SIG about how to interpret the agreement in light of

14:22:38   6   Bandspeed's claim -- not between, necessarily, in all cases the

14:22:42   7   outside counsel.

14:22:44   8          Now, I don't know if that exists or not.  But,

14:22:46   9   really, what this goes to -- the heart of what this goes to is

14:22:49  10   the folks in the standard-setting organization and people who

14:22:54  11   control the standard-setting organization manipulating the

14:22:58  12   standard-setting organization to change the rules after the

14:23:01  13   fact to prevent Bandspeed from asserting patent rights.

14:23:06  14          THE COURT:  So what do you have specifically with

14:23:08  15   regard to LG and Toshiba?

14:23:12  16          MR. GOODPASTOR:  We don't have -- they've refused to

14:23:14  17   produce anything.

14:23:15  18          THE COURT:  No.  What evidence do you have that LG

14:23:18  19   and Toshiba specifically were engaged in any practice such as

14:23:26  20   this?

14:23:27  21          MR. GOODPASTOR:  Well, the 5th Circuit -- first of

14:23:29  22   all, the --

14:23:29  23          THE COURT:  No.  I don't want to know what the

14:23:31  24   5th Circuit says.  I want you to answer my question.

14:23:34  25          MR. GOODPASTOR:  Okay.  There are two aspects of it.

| | | |
|---|---|---|
| 14:23:36 | 1 | One is evidence of their control over the Bluetooth SIG and |
| 14:23:39 | 2 | evidence that the Bluetooth SIG as a controlled entity by |
| 14:23:42 | 3 | competitors asserted this change in the rules to benefit those |
| 14:23:47 | 4 | who control it.  And Toshiba and LG are both on the board of |
| 14:23:52 | 5 | the Bluetooth SIG and control it. |
| 14:23:55 | 6 | And we have governance policies of the Bluetooth SIG |
| 14:23:59 | 7 | and the deposition testimony of the executive director of |
| 14:24:01 | 8 | Bluetooth SIG, Mark Powell, testifying that the executive |
| 14:24:04 | 9 | director was in fact empowered with the full authority of the |
| 14:24:08 | 10 | board of directors to implement the rules of the |
| 14:24:10 | 11 | Bluetooth SIG.  And when Dr. Foley did that, he did that as -- |
| 14:24:15 | 12 | he did that on behalf of Bluetooth SIG, controlled by these |
| 14:24:21 | 13 | competitors.  And that is a concerted effort, in violation of |
| 14:24:23 | 14 | section 1. |
| 14:24:23 | 15 | We have evidence of LG and Toshiba making statements |
| 14:24:32 | 16 | in this case, which the Supreme Court has stated can be used as |
| 14:24:36 | 17 | evidence of a conspiracy, contemporaneously and in a parallel |
| 14:24:45 | 18 | manner such that it indicates that the -- an inference of an |
| 14:24:53 | 19 | agreement, combined with expert testimony showing that each of |
| 14:24:59 | 20 | these defendants had an incentive to conspire, and the |
| 14:25:10 | 21 | likelihood of independent action is not as great as likelihood |
| 14:25:14 | 22 | of conspiracy in this case. |
| 14:25:15 | 23 | And we also have what many courts have referred to as |
| 14:25:19 | 24 | plus factors in this case that they call basically |
| 14:25:24 | 25 | circumstantial evidence of conspiracy.  That includes numerous |

14:25:28  1  past interpretations by the Bluetooth SIG that are at odds with

14:25:33  2  this new interpretation by the Bluetooth SIG and the folks who

14:25:38  3  control the Bluetooth SIG about how the license agreement works

14:25:41  4  and whether or not there are in fact licensing for

14:25:45  5  contributions made by members of the Bluetooth SIG.

14:25:49  6        We also have other plus factors that show -- that

14:25:52  7  refer to the opportunity for individual companies to conspire,

14:25:59  8  and we've cited that in our response to summary judgment motion

14:26:03  9  which shows that not only do these folks -- many of these folks

14:26:09  10  participate in the same organizations within Bluetooth SIG,

14:26:13  11  many of them were in the coexistence working group of the

14:26:16  12  Bluetooth SIG.  And after the fact -- after Bandspeed asserted

14:26:21  13  its patent rights, they also occupied positions in the same

14:26:26  14  groups and had an opportunity to trade information regarding

14:26:29  15  Bandspeed's assertion of its rights in that regard.

14:26:42  16        MR. HEALEY:  If Mr. Goodpastor is done, this is Dave

14:26:44  17  Healey for LG, I would just like a quick minute to respond.

14:26:47  18        THE COURT:  I suspect you'll be longer than a minute,

14:26:50  19  but go ahead, Mr. Healey.

14:26:52  20        MR. HEALEY:  I'll try, Your Honor.  Bottom line, I

14:26:54  21  think the second big category of discovery he wanted was based

14:26:58  22  on statements that LG and Toshiba had made in this case.

14:27:02  23  That's not statements people made in depositions.  That's

14:27:05  24  statements lawyers made in pleadings and briefs.  And that's

14:27:08  25  exactly the kind of thing that is protected by the First

14:27:11 1  Amendment.

14:27:13 2          The second thing, Your Honor, is that the test to set

14:27:17 3  aside that privilege -- and it's kind of kooky we're even

14:27:22 4  talking about it because I can't even see any way they get

14:27:24 5  close to this -- is that our defense is so objectively

14:27:28 6  unreasonable, so frivolous, that it's a sham.  And because it's

14:27:31 7  a sham, a fraud on the court, then, you know, we basically are

14:27:37 8  in that fraud exception.

14:27:39 9          Bottom line, this is a written contract.  It's a

14:27:42 10  written set of rules.  It says what it says.  It is what it is.

14:27:46 11  And we, as lawyers, have made our arguments on what that

14:27:51 12  paragraph says or that contract says.  They're making their

14:27:56 13  arguments on what it says.  We think our arguments are better,

14:28:00 14  but they're sure not a fraud on the Court, and they're sure no

14:28:03 15  basis to come to all these law firms who have been representing

14:28:06 16  their clients in this case as zealous, honest lawyers and say,

14:28:10 17  No.  You-all are part of this fraud on the Court.  We want all

14:28:14 18  your communications between each other.

14:28:17 19          Do I have to testify at trial and say:  No.  I didn't

14:28:19 20  commit fraud on the Court.  I firmly believe this license

14:28:23 21  defense is a good defense as a matter of law and I'll explain

14:28:25 22  to you and the jury why I think it's a good defense as a matter

14:28:29 23  of law.

14:28:30 24          THE COURT:  I've heard all I need to hear on that

14:28:32 25  motion.  I want to proceed to Document Number 1274, Bandspeed's

14:28:37    1    corrected motion to compel end-product defendants to produce

14:28:40    2    30(b)(6) witnesses in the United States at a single location

14:28:45    3    and on a reasonable schedule.

14:28:46    4            I was of the impression that we got that resolved in

14:28:51    5    our last conversation.  Am I wrong?

14:28:55    6            MR. GOODPASTOR:  No.  We're wrong.  We made the

14:28:57    7    reservation of the right to tax the expenses as cost, but the

14:29:05    8    30(b)(6) depositions did occur.  Now, we do have a motion

14:29:11    9    outstanding regarding the lack of preparation of LG's 30(b)(6)

14:29:16   10    witnesses which we have not resolved.  But the motion to compel

14:29:21   11    to produce witnesses in the United States has been resolved

14:29:26   12    subject to our reservation.

14:29:26   13            THE COURT:  And subject to the court statements that

14:29:29   14    would tax it as cost at the end; is that correct?

14:29:32   15            MR. GOODPASTOR:  That is correct, Your Honor.

14:29:33   16            THE COURT:  All right.  Anybody disagree with that?

14:29:37   17       (No response)

14:29:37   18            THE COURT:  All right.  Motion for protective order

14:29:39   19    by LG Electronics, filed July 26th, 2013, Document 1344?

14:29:48   20            MR. RUECKHEIM:  Your Honor, this is Mike Rueckheim

14:29:52   21    for LG again.  It's our impression that these motions for

14:29:54   22    protective order are actually moot at this point.  The 30(b)(6)

14:30:01   23    depositions have occurred, and discovery is now closed and

14:30:07   24    neither party moved to compel further 30(b)(6) testimony.

14:30:12   25            THE COURT:  All right.

| | | |
|---|---|---|
| 14:30:12 | 1 | MR. GOODPASTOR:  Your Honor, this is Chris Goodpastor |
| 14:30:14 | 2 | for Bandspeed.  We don't believe that's the case.  We don't |
| 14:30:17 | 3 | believe that the issues raised in the motion for protective |
| 14:30:21 | 4 | order were valid, and we explain that in our response.  What |
| 14:30:25 | 5 | happened -- |
| 14:30:25 | 6 | THE COURT:  Well, wait a minute.  It's their motion. |
| 14:30:30 | 7 | If they think it's moot at this point, are you going to argue |
| 14:30:33 | 8 | that I go ahead and grant their motion for protective order? |
| 14:30:36 | 9 | MR. GOODPASTOR:  No, Your Honor.  But I think as part |
| 14:30:39 | 10 | of the motion for protective order, if you deny it, Rule 26 |
| 14:30:43 | 11 | gives you the opportunity to order the production of the |
| 14:30:48 | 12 | witnesses.  What we have here is basically a situation where |
| 14:30:52 | 13 | they refuse to produced witnesses on numerous topics, filed a |
| 14:30:55 | 14 | motion for protective order a couple of days before when we |
| 14:30:58 | 15 | were flying to Korea.  And then, you know, we've flown over to |
| 14:31:02 | 16 | Korea and we get there -- and, you know, they gave us notice |
| 14:31:05 | 17 | they weren't going to produce them.  But we get there, and we |
| 14:31:09 | 18 | basically fly to Korea and we take the depositions and we don't |
| 14:31:12 | 19 | have an opportunity to resolve the motion for protective order |
| 14:31:15 | 20 | before the flight to Korea.  And we get there and we take |
| 14:31:18 | 21 | whatever depositions on whatever topics they agree to produce, |
| 14:31:22 | 22 | but then we come back and don't have deposition testimony on |
| 14:31:24 | 23 | those topics. |
| 14:31:25 | 24 | And so if you deny the motion for protective order, |
| 14:31:28 | 25 | which we think you do, Rule 26 gives you the opportunity to |

14:31:31  1    order them to go ahead and produce witnesses on those topics or

14:31:36  2    exclude, we believe, because of the nature of the way it was

14:31:41  3    raised.  But we would like to have the opportunity to have

14:31:45  4    witness testimony on some of those topics.

14:31:50  5         And so if they don't believe it's moot and don't

14:31:53  6    intend to assert the motion any longer, they can withdraw it.

14:31:57  7    We certainly don't have any disagreement with that.  But what

14:32:00  8    we've got is a situation where we weren't given witnesses on a

14:32:02  9    good number of topics.

14:32:04  10        THE COURT:  Well, you may just have to go to trial

14:32:06  11   without the witnesses.  And if they put on witnesses and you

14:32:10  12   haven't had discovery with regard to them, I can always exclude

14:32:16  13   the testimony.  I don't think there needs to be a deposition of

14:32:23  14   every human being in the world that might have ever breathed

14:32:26  15   the word "Bandspeed" or "LG" or "Toshiba."  And these are

14:32:31  16   things that I'm more than happy to deal with as the case goes

14:32:35  17   along.

14:32:39  18        MR. GOODPASTOR:  Understood, Your Honor.

14:32:40  19        THE COURT:  Now, motion for protective order as to

14:32:43  20   certain 30(b)(6) topics by -- well, Garmin's gone.  Does

14:32:47  21   Document 1369 apply to anyone else?  The Garmin motion?

14:32:56  22        MS. GRANT:  No.  It's just for Garmin, Your Honor.

14:33:00  23        THE COURT:  Bandspeed's motion to strike or limit

14:33:02  24   end-product defendants' invalidity contentions, phase III,

14:33:06  25   filed August 20th, 2013, Document 1389.  Mr. Goodpastor?

| | | |
|---|---|---|
| 14:33:11 | 1 | MR. GOODPASTOR:  We received a limitation of |
| 14:33:19 | 2 | infringement contentions, not what we requested, but a |
| 14:33:22 | 3 | limitation of infringement contentions not, we believe, in a |
| 14:33:28 | 4 | timely manner.  But the first time we received them was in the |
| 14:33:30 | 5 | expert report that was served on the evening of November 1st or |
| 14:33:35 | 6 | maybe the early morning of November 2nd. |
| 14:33:38 | 7 | We did our very best to respond to those infringement |
| 14:33:41 | 8 | contentions as asserted.  And so at this time we don't believe |
| 14:33:47 | 9 | that there's anything remaining on that motion.  However, we |
| 14:33:54 | 10 | are -- would like to reserve our rights to the extent that |
| 14:33:58 | 11 | something wasn't provided in a timely manner to -- as |
| 14:34:03 | 12 | Your Honor has indicated earlier, to exclude evidence on that |
| 14:34:06 | 13 | at trial. |
| 14:34:07 | 14 | THE COURT:  You're not waiving any right.  Anything I |
| 14:34:12 | 15 | do with these motions you can bring up during trial when we're |
| 14:34:15 | 16 | going through the evidence.  So I don't want to hear from |
| 14:34:18 | 17 | anybody that we had a conference call on January the 9th and |
| 14:34:22 | 18 | anybody waived anything, because I don't consider you-all |
| 14:34:26 | 19 | waiving anything. |
| 14:34:27 | 20 | Does anyone on the defendants' side care to comment |
| 14:34:30 | 21 | at this point? |
| 14:34:33 | 22 | MR. RUECKHEIM:  Your Honor, this is Michael Rueckheim |
| 14:34:36 | 23 | again for LG.  Basically, if Bandspeed is withdrawing the |
| 14:34:38 | 24 | motion, I don't think we have anything further. |
| 14:34:40 | 25 | THE COURT:  I don't think Mr. Goodpastor is |

14:34:42  1  withdrawing it.  I think he's just answering my question.

14:34:47  2           MR. RUECKHEIM:  Okay.  Then let me restate.

14:34:51  3           THE COURT:  See, this is the problem with this case,

14:34:53  4  is you-all really don't communicate very well and you don't

14:34:56  5  listen to one another and you draw conclusions from what you

14:34:59  6  think you hear instead of objectively looking at exactly what

14:35:05  7  was said and determining the words that were said.  And that's

14:35:08  8  the problem the Court has had with every lawyer in this case

14:35:11  9  since it was first filed.  Now proceed.

14:35:16  10          MR. RUECKHEIM:  Okay.  Your Honor, I believe we're

14:35:18  11  discussing docket 1381.

14:35:21  12          THE COURT:  You heard that.  That's good.

14:35:24  13          MR. RUECKHEIM:  Bandspeed's motion regarding

14:35:27  14  invalidity contentions.  The reason for my confusion is I

14:35:29  15  noticed Mr. Goodpastor I think discussed infringement

14:35:32  16  contentions a couple of times.  I know there's an outstanding

14:35:35  17  motion on that.

14:35:36  18          With regard to 1381, we actually discussed this with

14:35:40  19  Bandspeed and the Court in the last couple of hearings.  And my

14:35:43  20  understanding -- I wasn't on the first hearing where this was

14:35:45  21  discussed, but Defendants actually -- the Court ordered

14:35:48  22  Defendants to not file any responses -- briefings to that

14:35:53  23  motion and to meet and confer with Bandspeed to determine a

14:35:57  24  schedule where Defendants would limit the number of prior art

14:35:59  25  references asserted in this case.  And as Mr. Goodpastor said,

14:36:03 1 Defendants did that.  That's been done now for a couple of

14:36:06 2 months, and that's where we stand.

14:36:07 3        THE COURT:  All right.

14:36:07 4        MR. GOODPASTOR:  And just quickly, Your Honor, we

14:36:11 5 didn't agree on the schedule.  That's the problem I was

14:36:14 6 raising, and that's the right I was reserving.  We had a

14:36:16 7 schedule where we actually had an opportunity for our expert to

14:36:20 8 review the numerous invalidity contentions and sufficient time

14:36:24 9 to develop an expert report.  So the parties did not agree on

14:36:25 10 the schedule.

14:36:27 11        THE COURT:  Defendant Toshiba Corporation, Toshiba

14:36:30 12 America Information Systems, Inc., and Toshiba America Inc.'s

14:36:34 13 motion for an order of protection as to certain 30(b)(6)

14:36:38 14 topics, filed October 11th, 2013, Document 1401?

14:36:45 15        MR. HADDAD:  This is Gerard Haddad for Toshiba,

14:36:48 16 Your Honor.  Assuming Bandspeed is still seeking information --

14:36:58 17 a witness on certain 30(b)(6) topics, we were seeking a motion

14:37:02 18 for protective order from the Court because certain of

14:37:04 19 Bandspeed's topics were seeking things like expert opinion.

14:37:08 20 There was a whole list of deposition topics directed to

14:37:15 21 *Georgia-Pacific factors which are* squarely within expert

14:37:19 22 testimony and not factors that are -- are not topics under

14:37:25 23 which a party can provide fact testimony.

14:37:30 24        They didn't characterize these topics as seeking

14:37:34 25 particular facts.  They were just seeking what we -- for

14:37:39  1  example, what we contend to be a reasonable royalty in this

14:37:43  2  case.  We have no fact witness who could testify to that.  We

14:37:46  3  have an expert who has, but it was a whole series of topics on

14:37:50  4  that seeking expert opinion.

14:37:52  5       Other topics were seeking legal analysis.  And,

14:37:55  6  finally, there were -- there were several topics seeking sales

14:38:01  7  of goods outside the United States which have nothing to do

14:38:06  8  with patent infringement of U.S. patents.  They were seeking

14:38:10  9  worldwide sales.

14:38:11  10      And so our motion for protective order, Your Honor,

14:38:15  11  was directed to those topics on worldwide sales, topics seeking

14:38:20  12  expert testimony, and topics seeking legal analysis, for

14:38:24  13  example, interpretation of a contract.

14:38:28  14      That's where we had left it.  After we filed that

14:38:32  15  motion, Your Honor, we did have depositions in Japan.  We

14:38:36  16  provided very knowledgeable witnesses.  And I guess I'd have to

14:38:43  17  hear from Bandspeed to see where they stand on that now.

14:38:46  18      THE COURT:  Mr. Goodpastor?

14:38:48  19      MR. GOODPASTOR:  Quickly, Your Honor, we disagree

14:38:50  20  that we were seeking expert testimony.  We referred to the

14:38:55  21  facts that underlie *Georgia-Pacific* factors such as licenses

14:39:01  22  and other facts that underlie that.  We actually had meet and

14:39:05  23  confer before we went over to Japan to take these depositions

14:39:09  24  on this very issue and sent over redlines that made it very

14:39:12  25  clear we were only seeking facts and not seeking expert

14:39:15  1  testimony.  To the extent there were underlying facts, we just

14:39:19  2  wanted the witness to either say what they were or tell us that

14:39:21  3  the company didn't have them, but we weren't provided that

14:39:24  4  opportunity.

14:39:24  5       We're not seeking legal analysis.  What we were

14:39:28  6  seeking with regard to previous interpretations of the license

14:39:31  7  agreement is whether or not there was any evidence of Toshiba

14:39:39  8  or any of the other defendants, including Bluetooth SIG, taking

14:39:42  9  the position that they are now taking with regard to the

14:39:46  10  interpretation of the license agreement.

14:39:48  11       We were not seeking a legal opinion or anything like

14:39:51  12  that.  We were seeking factual information -- and Bluetooth SIG

14:39:54  13  produced some of this, but we didn't get it from Toshiba or

14:39:58  14  other individual defendants -- whether there was factual

14:40:01  15  information that showed that Toshiba or other defendants

14:40:04  16  interpreted the contract the way they now claim it should be

14:40:07  17  interpreted.  And we don't think that exists, but we wanted to

14:40:10  18  make sure of that.

14:40:11  19       We have the same problem with the Toshiba depositions

14:40:14  20  that we had with the LG depositions, which is we met and

14:40:17  21  conferred beforehand, and Mr. Haddad was kind enough to tell us

14:40:22  22  which topics they weren't producing witnesses on.  But there

14:40:25  23  was no way the protective order could be resolved before we had

14:40:28  24  to fly to Japan and take the depositions.  And, therefore, we

14:40:31  25  got over there, we took the depositions on the topics they

14:40:34  1    agreed to produce the witnesses on, and weren't allowed to take

14:40:38  2    the deposition on the other topics, which we think are critical

14:40:41  3    parts of our case.

14:40:43  4            THE COURT:  What critical parts of your case are you

14:40:45  5    referring to?

14:40:46  6            MR. GOODPASTOR:  Well, the facts underlying certain

14:40:49  7    *Georgia-Pacific* factors, Your Honor, including other license

14:40:54  8    agreements that are related to the technology at issue; facts

14:40:59  9    regarding interpretations -- previous interpretations of the

14:41:02  10   license agreement in the past.  If it is shown that Toshiba or

14:41:06  11   other defendants have interpreted the license agreement the way

14:41:09  12   that we think the plain language of the license agreement

14:41:17  13   indicates, then we think that's very important to not only our

14:41:19  14   antitrust claim, but also to our defense of their counterclaim

14:41:23  15   and their defense of license in this case under that agreement.

14:41:27  16           And so, you know, you may have seen that Toshiba

14:41:30  17   filed a motion of summary judgment claiming that its

14:41:32  18   interpretation of the license agreement is correct and

14:41:35  19   referring to documents it purports to represent as evidence of

14:41:41  20   intent of the parties.

14:41:42  21           Well, we want that same evidence and information from

14:41:45  22   Toshiba.  We want to know how they've interpreted this

14:41:49  23   situation and this license in the past to see what they're

14:41:51  24   claiming now about the intent of the parties is actually

14:41:54  25   consistent with the facts.  And, unfortunately, we haven't been

14:41:57  1  given the opportunity to get those depositions on those

14:42:00  2  topics.

14:42:01  3          And so, like LG, we had to fly over there, get what

14:42:04  4  we could, what they agreed to put up, and then we came back.

14:42:07  5  Now, with the understanding you said there aren't going to be

14:42:10  6  more depositions in this case, we would make the same

14:42:14  7  reservation of rights to exclude evidence on those topics at

14:42:18  8  trial.

14:42:19  9          MR. HADDAD:  Your Honor, may I respond?  First I

14:42:22  10  think -- I think the way the deposition topics have been

14:42:25  11  characterized have been -- have been re-characterized in a way

14:42:30  12  that aren't the way they're written.  I mean, one example of

14:42:34  13  one of the topics is whether and how the antitrust laws of the

14:42:37  14  United States apply to the Bluetooth SIG?

14:42:40  15          But what we did do at the deposition, Your Honor, on

14:42:47  16  a number of these topics we withdrew objections and told

14:42:51  17  counsel for Bandspeed that if they can ask a question in a

14:42:55  18  non-objectionable way, we would let the witness answer.  And

14:42:59  19  Bandspeed did not ask -- we produced a witness who is our

14:43:04  20  representative to the Bluetooth SIG.  And Mr. -- his name is

14:43:08  21  Mr. Adachi.  He was not asked a single question related to

14:43:12  22  antitrust issues, relating to the market for licenses of

14:43:15  23  Bluetooth technology, relating to any government investigation

14:43:19  24  relating to the Bluetooth SIG.  We had no blanket objection to

14:43:23  25  that, and Bandspeed did not ask questions on those.  We

```
14:43:26   1   would -- if they could ask a factual question, we would have
14:43:29   2   let them answer them and we told them that.  We told them that
14:43:33   3   at the deposition.
14:43:34   4        So if -- but looking at these particular topics, the
14:43:37   5   way they're phrased, we were -- we were tasked with divining
14:43:41   6   what facts might underlie these topics that are really topics
14:43:47   7   directed to experts or lawyers.  And had they said we want
14:43:53   8   facts on this topic, we could have -- possibly we could have
14:43:57   9   given them that.
14:43:58  10        MR. GOODPASTOR:  Again, Your Honor, Chris Goodpastor.
14:44:00  11   We had an extensive meet and confer before, and we made those
14:44:07  12   very arguments -- all we are looking for were facts.  We
14:44:10  13   weren't looking for a legal opinion.  And all we wanted the
14:44:12  14   witness to be able to say is are you aware of the facts or are
14:44:17  15   you not?
14:44:17  16        And we were told there are not going to be witnesses
14:44:20  17   produced on many topics, and there weren't.  Now, when we got
14:44:23  18   to Japan after flying for 14 hours, we were told when we got
14:44:27  19   there that, Okay.  You can ask some questions on some topics
14:44:31  20   and we did our best.  But on some topics and some questions,
14:44:35  21   the witness was instructed not answer.
14:44:37  22        And so, again, we make the same reservation of
14:44:41  23   rights.  I understand for administrative purposes ordering
14:44:44  24   another deposition, the Court doesn't desire to do that and I
14:44:47  25   understand that.
```

| | | |
|---|---|---|
| 14:44:48 | 1 | THE COURT:  But let me tell you, even if I were |
| 14:44:52 | 2 | compelled to do that or impelled to do that, I don't think we |
| 14:44:56 | 3 | accomplish anything because you-all always disagree on what |
| 14:45:00 | 4 | questions were asked and what answers were given and whether |
| 14:45:02 | 5 | somebody was properly prepared. |
| 14:45:06 | 6 | I told you this before, and I'm going to tell you |
| 14:45:08 | 7 | this again:  I have never in my 10-plus years on this bench had |
| 14:45:12 | 8 | a case where the lawyers can agree on less and do not cooperate |
| 14:45:19 | 9 | any more than you do.  You may think you're cooperating, but I |
| 14:45:23 | 10 | have seen very little in the entire history of this case that |
| 14:45:28 | 11 | makes me think that anybody has worked hard to get this case |
| 14:45:31 | 12 | ready for trial and with the understanding that their job is to |
| 14:45:35 | 13 | get the case ready for trial and pay attention to what the law |
| 14:45:42 | 14 | is and what the discovery rules are. |
| 14:45:44 | 15 | Everybody slices it as thin as they can slice it. |
| 14:45:50 | 16 | Everybody construes everything in their favor.  Nobody cuts |
| 14:45:53 | 17 | anybody any slack in this case.  And I've just never had a |
| 14:46:00 | 18 | group of lawyers that behave that way before.  So I just want |
| 14:46:03 | 19 | you to know that.  That's the mind set I go into this trial |
| 14:46:06 | 20 | with, and that is that nobody has any credibility with me.  So |
| 14:46:08 | 21 | you don't need to worry about that. |
| 14:46:10 | 22 | But, you know, if I ordered another deposition, we'd |
| 14:46:14 | 23 | be right back having another telephone conference or hearing on |
| 14:46:17 | 24 | what did or did not happen in it.  You know, it's time to get |
| 14:46:23 | 25 | everything together and go to trial, and somebody's going to |

14:46:28  1   get cut and somebody's not.  Or it's going to go both ways

14:46:32  2   because there are going to be objections sustained and

14:46:34  3   objections denied.  And we'll package the whole thing up, and

14:46:37  4   you can go to Washington with it.  I mean, that's the way it

14:46:41  5   works.  So I think I've heard what I need to hear on this one.

14:46:46  6          Now, Plaintiff Bandspeed, Inc.'s motion to exclude

14:46:49  7   written alternative to compel End-Product Defendants to provide

14:46:53  8   responses to interrogatory 13 and produce knowledgeable

14:46:58  9   30(b)(6) witnesses on noninfringement, filed November 4, 2013.

14:47:03  10          I thought I was clear many months ago on

14:47:07  11   interrogatory 13, and it's like "Box 13" in South Texas.  It

14:47:17  12   just keeps coming back.  What is the problem with

14:47:20  13   interrogatory 13?

14:47:25  14          MR. GOODPASTOR:  Your Honor, the end-product

14:47:28  15   defendants told you last time we were at a hearing that there

14:47:35  16   wasn't any information or they provided the information they

14:47:37  17   thought they needed to provide.  And I thought you made clear

14:47:41  18   in that hearing that if it wasn't provided, it wasn't coming in

14:47:41  19   or if it was not timely provided, it wasn't coming in.  And we

14:47:45  20   needed that information to take the depositions of the chip

14:47:50  21   manufacturers as well as prepare our infringement report that

14:47:57  22   was due on November 1st.

14:47:58  23          Well, we got very delayed responses.  After your

14:48:02  24   admonition Defendants began producing more information, but it

14:48:09  25   was produced in such a late and untimely manner that it was

14:48:13  1  impossible for us to fully consider in our expert reports and

14:48:17  2  it was impossible for us to fully consider it all in our

14:48:20  3  preparation for the chip maker/manufacturer depositions within

14:48:26  4  the time period for the fact discovery cutoff.

14:48:33  5       So in our reply we basically took your direction,

14:48:36  6  Your Honor, and reserved our rights to exclude this evidence at

14:48:39  7  trial because we don't think it was timely provided.  We think

14:48:42  8  the subsequent responses after the first hearing we had showed

14:48:45  9  that the information was in the possession of these defendants,

14:48:49 10  and they just chose not to provide it.  And that prejudiced

14:48:53 11  Bandspeed from including it in its expert infringement report

14:48:58 12  as well as getting the information it needed from the chip

14:49:02 13  manufacturers.

14:49:02 14       THE COURT:  All right.  LG and Toshiba, listen up.

14:49:05 15  It was and has been and is my ruling that everything requested

14:49:11 16  in interrogatory 13 that I previously ordered is to be

14:49:16 17  provided, and it was to be provided some months ago.

14:49:20 18  Therefore, when this case begins, anything that is tangentially

14:49:28 19  related to a request in interrogatory 13 that you haven't

14:49:31 20  provided, not only -- well, what that means is that I will

14:49:38 21  strike any testimony I've previously let in that involved

14:49:43 22  anything that you haven't provided with regard to

14:49:45 23  interrogatory 13.  And if Mr. Goodpastor timely raises it at

14:49:52 24  trial, I will not allow any information in on that because I

14:49:56 25  have had all I want of the way the defendants have consistently

14:50:02  1   tried to restrict interrogatory 13.

14:50:04  2          Mr. Goodpastor is correct on this point, and I have

14:50:07  3   consistently ordered that information provided.  So you and

14:50:12  4   your clients just be forewarned on the risk you're running.

14:50:15  5   And, Mr. Goodpastor, you may be prepared and ready to go on

14:50:20  6   anything that anybody attempts to bring out that you think

14:50:27  7   would have been affected by interrogatory 13, and I will take

14:50:31  8   it up as we go along.

14:50:32  9          Now I will hear from Toshiba and LG.

14:50:40  10         MR. HADDAD:  Your Honor, this is Gerard Haddad for

14:50:42  11  Toshiba.  We believe we did supplement our response to

14:50:47  12  interrogatory 13.  We've provided -- since this motion was

14:50:53  13  filed, we provided very detailed expert reports and have had

14:50:57  14  expert depositions.  We think we've fully disclosed all our

14:51:02  15  positions in the interrogatory and then with our expert, with

14:51:08  16  his report on noninfringement.

14:51:11  17         THE COURT:  Well, I'm not interested in the expert

14:51:14  18  report.  That's kind of tangential.  That may have slipped

14:51:23  19  something in or not.  What I'm going to look at is exactly what

14:51:26  20  was provided in response to interrogatory 13 what was described

14:51:31  21  as a response to interrogatory 13.

14:51:32  22         You don't satisfy interrogatory 13 and my previous

14:51:36  23  ruling if you provide something in other reports that you have

14:51:40  24  not designated as being in specific response to

14:51:43  25  interrogatory 13.  I'm not going to guess what was in response

14:51:49  1  to interrogatory 13 and what was not in response to

14:51:53  2  interrogatory 13 or whether anybody has decided it must have

14:51:57  3  been in response to interrogatory 13 because of the way the

14:52:02  4  other evidence at trial is going in.  If it wasn't designated

14:52:06  5  as an interrogatory response, it does not count as an

14:52:09  6  interrogatory response in this case.

14:52:15  7          MR. HADDAD:  Yes, Your Honor.

14:52:16  8          THE COURT:  All right.  Bandspeed's motion for

14:52:19  9  protective order limiting the scope of End-Product Defendants'

14:52:23  10  second amended notice of deposition, filed November 12th, 2013.

14:52:31  11          MR. GOODPASTOR:  Yes, Your Honor.  This motion

14:52:33  12  involved basically very two simple issues.  One was 30(b)(6)

14:52:40  13  topics seeking the legal opinion.  Those topics basically

14:52:48  14  sought Bandspeed's legal opinion.  And, actually, the topic

14:52:51  15  used the word "opinion" in it about its rights and obligations

14:52:55  16  under the Bluetooth patent copyright license agreement.  And

14:52:58  17  that's a matter for the lawyers to argue about, not a matter

14:53:01  18  for a fact witness to testify about.  It wasn't about whether

14:53:06  19  Bandspeed had evidence of previous interpretations of the

14:53:09  20  agreement.  It was actually Bandspeed's opinions about its

14:53:12  21  rights, and that was clearly seeking a legal opinion.

14:53:15  22          The other issue, Your Honor, related to orders that

14:53:19  23  you issued in the last phase of this case and in the early

14:53:22  24  phase of this -- or early part of the second phase of this case

14:53:26  25  relating to whether the same 30(b)(6) topics for Bandspeed

14:53:35  1  could be asserted and deposed on twice.

14:53:38  2          And at the very beginning of this case, in the CSR

14:53:42  3  phase, your order said that we were going to get these

14:53:46  4  depositions done in the most efficient manner.  And that if

14:53:49  5  Bandspeed was deposed on a 30(b)(6) topic once or was noticed

14:53:54  6  for a 30(b)(6) topic and all of these defendants had

14:53:58  7  opportunity to ask questions at those depositions, under that

14:54:01  8  order, those defendants are precluded from re-deposing

14:54:09  9  Bandspeed on those topics.

14:54:10  10          When we got the latest 30(b)(6) notice of Bandspeed

14:54:14  11  for the deposition of Bandspeed on two days in November, a

14:54:19  12  goodly portion of those topics had already been addressed in

14:54:22  13  previous depositions, of which all defendants had an

14:54:25  14  opportunity to question the witness.

14:54:27  15          And so based on the Court's earlier order and in

14:54:30  16  reliance on that, we asserted protection to prevent basically

14:54:39  17  giving all of the defendants a second bite of the apple and

14:54:42  18  unnecessarily taking the time and harassing the witnesses of

14:54:45  19  Bandspeed.

14:54:46  20          Bandspeed has provided depositions of three different

14:54:52  21  30(b)(6) witnesses.  And Mr. Eversole, the CEO of Bandspeed,

14:54:57  22  has now been deposed on three separate deposition occasions,

14:55:03  23  the first one way back right after the case was filed, the

14:55:07  24  second one for two days in 2012, and now a third session for

14:55:15  25  two days in 2013.  And we did not think it was appropriate for

14:55:18  1  the defendants to retread old ground that they clearly had the

14:55:22  2  opportunity to investigate in earlier depositions.

14:55:30  3       MR. RUECKHEIM:  Your Honor, this is Michael Rueckheim

14:55:32  4  for LG.  I'm sorry.  I really wanted to jump in there.  We

14:55:35  5  believe the issue for Bandspeed's motion for protective order

14:55:39  6  is basically moot at this point, as is LG's motion for

14:55:42  7  protective order.  End-product defendants haven't moved to

14:55:47  8  compel Bandspeed to produce deposition testimony on these

14:55:50  9  topics that are in dispute, and we're not going to at this

14:55:54 10  point.  Discovery is closed.

14:55:56 11       MR. HEALEY:  Your Honor, this is Dave Healey for LG.

14:55:59 12  I agree with Mr. Goodpastor on one point, and that is that the

14:56:03 13  Bluetooth SIG license is a question of law for the Court and,

14:56:07 14  you know, it's not a subject of whether I committed a

14:56:11 15  conspiratorial act with the lawyers over at Toshiba.

14:56:16 16       THE COURT:  All right.  Bandspeed's motion to exclude

14:56:20 17  or, in the alternative, compel LG defendants for failure to

14:56:24 18  adequately prepare 30(b)(6) representatives that was filed

14:56:29 19  November the 26th?

14:56:30 20       MR. GOODPASTOR:  Your Honor, we are still maintaining

14:56:32 21  that motion.  And, given your statements, we'll seek to exclude

14:56:36 22  testimony on the topics that the witnesses were not prepared

14:56:41 23  for at trial.  In summary, the witnesses that were provided

14:56:46 24  after we flew 7,000 miles to Seoul, Korea at considerable

14:56:55 25  expense were not prepared for numerous topics.  We outlined

14:56:59  1  those topics in the motion.

14:57:01  2          Both of the witnesses testified to reviewing only a

14:57:01  3  single document in preparation for the deposition.  Neither of

14:57:04  4  the witnesses spoke with any other LG employees in preparation

14:57:08  5  for the deposition and only met with LG's attorneys.  And

14:57:15  6  Mr. Jo, who was designated on behalf of not just LG

14:57:19  7  Electronics, but also LG Mobilecom and LG USA, stated that he

14:57:26  8  didn't undertake any investigation in preparation for his

14:57:30  9  testimony on behalf of those two codefendant organizations.

14:57:34 10  And, in fact, when I asked him, you know, where they were

14:57:38 11  headquartered, he couldn't tell me.

14:57:40 12          So these go to issues concerning the licensing

14:57:44 13  topics.  They go to issues concerning damages topics, including

14:57:54 14  market share and royalties received or paid by LG under

14:57:58 15  licensing agreements related to Bluetooth functionality.  For

14:58:02 16  example, Mr. Jeon had not even reviewed the relevant license

14:58:05 17  agreements and couldn't provide any testimony on those.

14:58:08 18          And so because of what we view as blatant lack of

14:58:14 19  preparation, we move to compel.  We understand that compelling

14:58:20 20  another deposition at this point based on your statements is

14:58:23 21  unlikely, and so we reserve the right to exclude evidence being

14:58:27 22  presented by LG on those topics because of the nature and

14:58:30 23  wholesale lack of preparation of these witnesses.

14:58:33 24          THE COURT:  All right.  Let me hear from LG.

14:58:37 25          MR. RUECKHEIM:  Your Honor this is Michael Rueckheim

14:58:39  1   for LG.  We were a little surprised when we saw Bandspeed's

14:58:45  2   motion.  Bandspeed deposed two LG witnesses in Korea, as

14:58:50  3   Mr. Goodpastor said, full days.  These are eight-, nine-hour

14:58:53  4   days.  There are complete deposition transcripts.  Bandspeed

14:58:58  5   also had the opportunity to depose a witness from the U.S. LG

14:59:03  6   defendant on issues that relate to the U.S. defendants.  And

14:59:07  7   the issues that were noticed for Korea all related to knowledge

14:59:12  8   within the parent corporations.

14:59:16  9        The witnesses in this case were chosen because they

14:59:19  10  were both senior engineering management who were in the best

14:59:22  11  position to provide testimony on these topics.  Mr. Goodpastor

14:59:26  12  just now in his motion mischaracterized their testimony, that

14:59:29  13  the witnesses did not review any documents.  The witness

14:59:33  14  testimony in the deposition, and the transcript is clear,

14:59:35  15  stated that it could not know the identities of certain

14:59:38  16  documents but, yes, they met with attorneys several times and

14:59:41  17  looked at several documents in order to prepare.  There's

14:59:45  18  direct testimony that I think Mr. Goodpastor mentioned LG's

14:59:48  19  witness Mr. Jo, that he spoke with members of his Bluetooth

14:59:53  20  team in order to provide testimony.

14:59:55  21        The main problem here is that Bandspeed noticed

14:59:59  22  somewhere between 150 and 200 different topics, a lot of them

15:00:05  23  broadly worded, a lot of them related to expert testimony and

15:00:09  24  legal testimony.  And LG provided objections in its response

15:00:13  25  that broadly ordered topics do not really help LG prepare for

15:00:18  1  the deposition, but we're going to go through and find the best

15:00:20  2  people to provide answers.  And that's pretty much what the

15:00:23  3  transcripts show.

15:00:24  4       THE COURT:  All right.  I'll take that up at trial.

15:00:27  5  Let me make it clear to all three of the remaining parties that

15:00:34  6  I'm going to look at this carefully as the trial goes on.  And

15:00:38  7  if any party offers any testimony on any issue that was

15:00:46  8  properly noticed for a deposition and then not provided, that

15:00:53  9  testimony will not be allowed.  That doesn't -- in other words,

15:00:58 10  what I want you-all to know is this is not limited to the party

15:01:02 11  who was deposed testimony, but anyone who seeks to offer

15:01:09 12  testimony or testify about a matter that was properly noticed

15:01:14 13  and for which the information was not previously provided,

15:01:17 14  we're not going to allow it.  So all three of you need to know

15:01:21 15  that.  That cuts across the board.

15:01:24 16       So look at your evidence, make sure you know what it

15:01:27 17  is, and be prepared to tell the Court, if there is an

15:01:31 18  objection, where that information was previously provided.  I

15:01:36 19  don't want everybody to look around and say, Well, we went to

15:01:39 20  Korea and took a deposition, and he really didn't say anything

15:01:43 21  about this.  I want specificity out of all three of you when we

15:01:48 22  get into trial about all of your testimony and when it was

15:01:52 23  provided and all of these discovery matters.

15:01:57 24       Now, Toshiba Corporation, Toshiba America Inc.,

15:02:01 25  Toshiba America Information Systems motion for summary judgment

| | | |
|---|---|---|
| 15:02:05 | 1 | I'm not going to take up right now but I'll have a ruling out |
| 15:02:08 | 2 | on it.  Response was due day before yesterday.  Did you-all |
| 15:02:14 | 3 | file a response? |
| 15:02:16 | 4 | MR. GOODPASTOR:  No, Your Honor.  There was an |
| 15:02:18 | 5 | extension of the response date -- |
| 15:02:19 | 6 | THE COURT:  Okay. |
| 15:02:19 | 7 | MR. GOODPASTOR:  -- that was joint -- subject of a |
| 15:02:23 | 8 | joint motion, and I believe that response date is now the 14th. |
| 15:02:26 | 9 | THE COURT:  Okay.  All right.  What now do you want |
| 15:02:32 | 10 | to bring up? |
| 15:02:43 | 11 | MR. HADDAD:  Your Honor, there is also a motion |
| 15:02:44 | 12 | pending for summary judgment on antitrust issues. |
| 15:02:47 | 13 | THE COURT:  Yes.  And I will deal with it.  I'm not |
| 15:02:50 | 14 | going to entertain argument on it. |
| 15:02:53 | 15 | MR. QURESHI:  Your Honor, this is Wasif Qureshi for |
| 15:02:55 | 16 | LG.  I wanted to raise two items.  Regarding summary judgment |
| 15:02:59 | 17 | motions, as Mr. Goodpastor mentioned, the parties have agreed |
| 15:03:02 | 18 | for summary judgments to be filed by tomorrow, January 10th. |
| 15:03:07 | 19 | And it wasn't clear to me from the Court's comments earlier |
| 15:03:10 | 20 | whether the Court will also allow LG to file two motions.  We |
| 15:03:15 | 21 | planned to file a motion for summary judgment on no indirect |
| 15:03:19 | 22 | infringement on certain claims and also -- |
| 15:03:21 | 23 | THE COURT:  Here's the situation you're in.  Those |
| 15:03:26 | 24 | summary judgments motions could very well be carried through |
| 15:03:29 | 25 | trial because by filing them this late and my having to give |

15:03:38  1  time for responses and replies, we get right up to where when I

15:03:43  2  want to try this case.  And so how are you going to handle

15:03:51  3  that?  Because I can take what you have in your motions for

15:03:57  4  summary judgment and carry them through trial.

15:04:02  5      MR. QURESHI:  Well, what I can suggest, Your Honor, I

15:04:04  6  understand Mr. Goodpastor was planning to file a summary

15:04:07  7  judgment motion tomorrow, too.  We can meet and confer and try

15:04:09  8  to come up with an abbreviated briefing schedule on the

15:04:13  9  response and the reply.

15:04:14  10      THE COURT:  Well, it still doesn't give me time to

15:04:16  11  rule on it.  I mean, we're right at the -- what?  Do you think

15:04:18  12  I don't have any other cases?  That I've just been sitting

15:04:21  13  around waiting for you-all to get everything in so I can study

15:04:24  14  it all and sit down and draft a reasoned opinion?

15:04:30  15      MR. HEALEY:  Your Honor, this is Dave Healey for LG.

15:04:33  16  And I certainly am aware the burden on the Court.  We're going

15:04:37  17  to go back and make sure we look at things and that we don't

15:04:41  18  file a single thing that won't be properly briefed and ready to

15:04:46  19  go.  I think the Court has, between the antitrust motion that's

15:04:49  20  been briefed for a while and the Toshiba motion, the two key

15:04:54  21  motions that will resolve the case.  So we're going to be real

15:04:58  22  careful about anything else we file.

15:05:01  23      THE COURT:  Well, I'm just telling you, don't hold

15:05:03  24  your breath for a ruling because, you know, I think this case

15:05:10  25  is much more efficiently handled by trial.  I think it would

15:05:14   1   have been more efficiently handled by trial if we tried it

15:05:18   2   18 months ago.

15:05:19   3           I haven't seen anything get accomplished very much

15:05:22   4   from the time that the manufacturer defendants settled out and

15:05:28   5   we were left with just end-product defendants.

15:05:32   6           MR. WHITTLESEY:  Judge, we do have 25 less parties or

15:05:35   7   so.

15:05:35   8           THE COURT:  Well, yeah.  But, you know, that's just a

15:05:37   9   factor of time, and that doesn't bother me.  I've got -- you

15:05:41  10   know, I've got a visiting judge in San Antonio or a senior

15:05:46  11   judge in San Antonio that's just dying to come up here and deal

15:05:48  12   with the rest of my docket.  So that's -- you know, that's not

15:05:51  13   a consideration.  It's the issues and the lack of agreement on

15:05:57  14   getting this case ready for trial that is most bothersome to me

15:06:03  15   in the case, not how long it's going to take.  That's not a big

15:06:09  16   deal with me.

15:06:13  17           MR. WHITTLESEY:  Judge, quick question.  This is

15:06:14  18   David Whittlesey.  We've got some out-of-town lawyers --

15:06:15  19   actually, a lot of out-of-town lawyers in the case.  Most of

15:06:17  20   them are out of town, and they're making hotel reservations and

15:06:21  21   that sort of thing, and I think they're planning on coming on

15:06:24  22   February 17th.  And just checking with the Court, is that still

15:06:27  23   your plan, to try the case?  Was February 17th the day?

15:06:32  24           THE COURT:  Well, actually, February 18th was the day

15:06:34  25   I had in mind, but I haven't heard anything today that makes me

```
15:06:38   1    think I wouldn't want to pick a jury on February the 18th.
15:06:44   2              MR. WHITTLESEY:  Great.
15:06:45   3              THE COURT:  We're going to try it a little
15:06:48   4    disjointedly because I've got some sentencings in there that
15:06:51   5    I'm going to have to deal with as we go along and some criminal
15:06:55   6    matters, so don't think we're going to try this straight
15:06:58   7    through.  But I don't see any reason why we can't pick a jury
15:07:08   8    on the 18th and proceed forward.  Anybody have a disagreement
15:07:11   9    with that?
15:07:13  10              MR. GOODPASTOR:  No, Your Honor.
15:07:15  11              MR. HEALEY:  Your Honor, this is Dave Healey for LG.
15:07:17  12    We don't have any disagreement.  I would urge the Court to look
15:07:22  13    at that antitrust Noerr-Pennington motion because that just
15:07:29  14    involves all these lawyers who have been counsel in this case.
15:07:32  15              MR. GOODPASTOR:  Your Honor, Chris Goodpastor.  I
15:07:35  16    think you've already stated you don't want to hear any more
15:07:39  17    argument on our motion, but our response address the
15:07:41  18    Noerr-Pennington pending argument squarely.  It simply doesn't
15:07:44  19    apply in this context for a number of reasons, and it's all
15:07:48  20    based on Supreme Court precedent.  So we'll just refer you to
15:07:51  21    that and move on.
15:07:53  22              THE COURT:  How long do you think it will take you to
15:07:56  23    try this case?
15:08:01  24              MR. GOODPASTOR:  The parties -- Your Honor, the
15:08:04  25    parties had previously discussed a two-week trial.
```

| | | |
|---|---|---|
| 15:08:08 | 1 | THE COURT:  That's 10 trial days? |
| 15:08:10 | 2 | MR. GOODPASTOR:  Ten trial days.  Yes, sir. |
| 15:08:13 | 3 | THE COURT:  Everybody concur? |
| 15:08:19 | 4 | MR. SHERWOOD:  Your Honor, this is Jeff Sherwood for |
| 15:08:21 | 5 | Toshiba.  We think that's probably about right. |
| 15:08:24 | 6 | THE COURT:  All right.  How closely linked are |
| 15:08:27 | 7 | Toshiba and LG in their defenses?  I haven't heard anything |
| 15:08:32 | 8 | that make me think your interests diverge.  I ask this question |
| 15:08:37 | 9 | for purposes of determining strikes I'm going to allow. |
| 15:08:46 | 10 | MR. HEALEY:  Your Honor, if what the infringement and |
| 15:08:51 | 11 | damages and everything is focused on, the standard and, |
| 15:08:55 | 12 | obviously, the antitrust I won't get into, again, yeah, then |
| 15:09:01 | 13 | the standard is what the standard is.  And, you know, there's |
| 15:09:04 | 14 | differences in each party's situation on how their products are |
| 15:09:09 | 15 | configured and their sales, and there's some real issues there. |
| 15:09:12 | 16 | But if, you know, this case turns out that it's |
| 15:09:17 | 17 | specifics about LG products that are different from the |
| 15:09:20 | 18 | standard or specifics on Toshiba stuff that is different from |
| 15:09:24 | 19 | the standard, these parties have nothing to do with each other, |
| 15:09:27 | 20 | frankly, other than whether or not they bought the chips from |
| 15:09:31 | 21 | the same person, because most of the stuff is in the chip from |
| 15:09:35 | 22 | the vendor.  But it really just depends.  If this is focused on |
| 15:09:40 | 23 | the standard and that's what the case is about, that's one |
| 15:09:43 | 24 | thing.  If it's about our individual products, that's another. |
| 15:09:46 | 25 | THE COURT:  Only you-all can tell me.  You know, |

15:09:51  1  otherwise I'll just decide how many strikes you're going to

15:09:55  2  get.  Right now it's three to a side.  Everybody comfortable

15:09:58  3  with that?

15:10:01  4         MR. HEALEY:  Your Honor, unless Mr. Goodpastor can

15:10:03  5  tell us this is just about the standard, I think we'd like to

15:10:05  6  have, you know, at least three -- there will only be two

15:10:09  7  defendants at trial, and we'd like to have our own three

15:10:13  8  strikes.

15:10:13  9         MR. GOODPASTOR:  Your Honor, we think there's

15:10:16  10  sufficient overlap between the two defendants that three

15:10:19  11  strikes per side is more than adequate.  A lot of the

15:10:22  12  infringement case based on the standard.  The chips -- I would

15:10:29  13  have to check to see if Toshiba and LG overlap in chip

15:10:32  14  manufacturers.  I don't know that off the top of my head.  But

15:10:35  15  because of a good portion of the infringement case is based on

15:10:38  16  the standard, we think that three strikes per side is

15:10:41  17  appropriate.

15:10:43  18         MR. HEALEY:  If it's about -- if it's about the

15:10:46  19  standard or it's not.  And if it's not about the standard or

15:10:50  20  it's mostly about the standard or about a bunch of other stuff,

15:10:53  21  too, at a minimum we should get our own set of strikes.  And,

15:10:57  22  heck, depending on what Mr. Goodpastor is going to do, we may

15:11:01  23  even, God forbid, have to say, well, we should have a separate

15:11:05  24  infringement trial under the AIA.

15:11:08  25         But it's his case.  And if it's about the standard,

| | | |
|---|---|---|
| 15:11:09 | 1 | it's about the standard.  If not we're not, we're not lumped in |
| 15:11:12 | 2 | with Toshiba, we're not the same business, we're not accused of |
| 15:11:16 | 3 | anything because of doing business with Toshiba.  We've got our |
| 15:11:20 | 4 | products; they've got theirs. |
| 15:11:21 | 5 | THE COURT:  Well, we won't know what it's going to be |
| 15:11:24 | 6 | 'til we get into it.  You remember some months ago I told you |
| 15:11:28 | 7 | that I would want an agreed charge.  Have you-all spent any |
| 15:11:33 | 8 | time working on your charge? |
| 15:11:35 | 9 | MR. GOODPASTOR:  Your Honor, we spent time working on |
| 15:11:37 | 10 | the charge.  We have not met and conferred about an agreed |
| 15:11:41 | 11 | charge yet. |
| 15:11:42 | 12 | THE COURT:  Well, it's time. |
| 15:11:43 | 13 | MR. GOODPASTOR:  Understood. |
| 15:11:46 | 14 | THE COURT:  Because it is my intention to allow the |
| 15:11:49 | 15 | jury copies of the charge throughout the trial so they'll know |
| 15:11:53 | 16 | where they're headed with this and what questions they're going |
| 15:11:57 | 17 | to have to answer. |
| 15:11:59 | 18 | MR. GOODPASTOR:  Understood.  Your Honor, I just got |
| 15:12:03 | 19 | a notice from our administrator that they're saying that the |
| 15:12:06 | 20 | call only has five minutes left, and so they're going to |
| 15:12:11 | 21 | circulate a new call number.  I apologize for this glitch. |
| 15:12:14 | 22 | THE COURT:  Do we need more than five minutes? |
| 15:12:18 | 23 | MR. GOODPASTOR:  I'll defer to Your Honor on that. |
| 15:12:21 | 24 | THE COURT:  Well, I've asked what I want to ask. |
| 15:12:24 | 25 | Anybody have anything? |

15:12:27  1            MR. SHERWOOD:  I had one short question.  With jury

15:12:31  2   selection starting on the 18th, as I understand it, the various

15:12:36  3   pretrial documents, the charge, and so forth would be due 14

15:12:40  4   days before.  And I just wanted to confirm that.

15:12:42  5            THE COURT:  That's correct.

15:12:44  6            MR. SHERWOOD:  Thank you, Your Honor.

15:12:45  7            THE COURT:  Anything else?

15:12:46  8        (No response)

15:12:47  9            THE COURT:  All right.  Thank you-all.  I look

15:12:50  10  forward to seeing you on the 18th.

15:12:53  11            (End of transcript)

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1  **UNITED STATES DISTRICT COURT      )**

2  **WESTERN DISTRICT OF TEXAS          )**

3       I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7       I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10      WITNESS MY OFFICIAL HAND this the 14th day of

11  January 2014.

12

13                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
14                              Expiration Date:  12/31/2014
                                Official Court Reporter
15                              United States District Court
                                Austin Division
16                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
17                              (512) 391-8791

18

19

20

21

22

23

24

25